monetary award, irreparable harm is not established and injunctive relief will not issue. B. G. H. Insurance Syndicate, Inc. v. Presidential Fire & Casualty Company, 549 So. 2d 197 (Fla. 3d DCA 1989). Further, money damages and loss of business to a competitor will not suffice to demonstrate irreparable injury. State Agency for Health Care Admin. V. Continental Car Services, Inc. 650 So. 2d 173 (Fla. 2d DCA 1995).

*Plaintiff is not Likely to Succeed on the Merits*

21. Plaintiff concedes that its tablets are destructible and can be destroyed and turned into weapons. However, it argues that since its tablets are comparable to its competitors, this Court should relieve Plaintiff of its contractual obligation to provide the proper tablet and correct service issues at the Sebastian County Detention Facility, ignore the tampering of the tablets by the inmates as intended users at the Sebastian County Facility, and allow for the continued harm of great risk to the inmates and employees at the facility.

22. Plaintiff chose to provide tablets and related services to correction facilities, whose users are inmates. This is not a provider of equipment to a school whose students are closely monitored by teachers. Plaintiff has the obligation to ensure that the equipment it provides complies with the requirements of its contract with Correct Solutions including that the tablets are "ruggedized and correctional grade" and proper and appropriate for the use of inmates in correctional facilities. Whether other competitors also offer inferior products is not relevant to this Court's determination as to whether it should enjoin Correct Solutions from protecting its correctional facility customers and relieve Smart Solutions from its duty under the contract to cure its defective performance and equipment. Injunctive relief should not prevent Correct Solutions from exercising its contractual rights under the contract to provide Plaintiff

with the notice to cure the defective performance and equipment that is causing harm to its correctional facility customers.

23.     Plaintiffs argument that Correct Solutions waived its right to require Plaintiff to cure its breach is without merit. Plaintiff acknowledges on page 26 of its Motion that the conduct identified in the Notice to Cure could amount to a breach of the contract. However, it argues that because Plaintiff displayed its tablets to Correct Solutions and the tablets had a glass screen, Correct Solutions should know that the glass could be broken and used as a weapon. That argument does not support any waiver and is yet another argument as to why Plaintiff is unwilling or unable to cure the defects in its equipment and live up to its contractual obligations.

*No Public Interest Would Be Served By An Injunction*
*Relieving Plaintiff From Curing Its Breach*

24.     The Notice to Cure was required because Plaintiff is providing an inferior tablet that can and is being altered into weapons. Thus, Plaintiff's equipment can be used to cause bodily injury to the inmates and other employees at the Facility.

25.     Plaintiff's cursory and minimal analysis of the public interest requirement for a temporary injunction is because the considerations of public interest support the denial of an injunction.  Plaintiff ignores the fact that the requested injunction which would relieve Plaintiff from having to address equipment and service issues at Sebastian County are directly contrary to public interest and would result in continued risk to inmates and employees of a non-party to this action.  Florida law is clear that an "injunction will not be granted where it is readily apparent that it will result in confusion and disorder and produce an injury to the public that outweighs the individual right of

the complainant to have the relief sought." *Florida Land Co. v. Orange County*, 418 So.2d 370, 372 (Fla. 5th DCA 1982).

<div align="center">

**CERTIFICATE OF SERVICE**

</div>

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on 19th day of September, 2019.

HARLLEE & BALD, P.A.


By: *s/ Kimberly A. Bald*
KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4841-9324-3814. v. 2

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
*Case No: 19-CA-008089*

### DEFENDANT'S EXHIBIT A

*to Correct Solutions' Memorandum in Opposition to Plaintiff's Emergency Motion to Temporarily Enjoin Improper Termination of Agreement and to Enforce Court Approved Stipulation*

Filing # 95064247 E-Filed 08/30/2019 03:36:47 PM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                        Case No: 19-CA-008089

        Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

        Defendant.

_____/

## STIPULATION TO PRESERVE THE *STATUS QUO* PENDING FINAL HEARING ON THE MERITS

        Plaintiff, Smart Communications Holding, Inc. and Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC (hereinafter the "Parties"), hereby stipulate and agree as follows:

        1.     Plaintiff filed its Verified Complaint on August 2, 2019 relating to certain contracts described in the Complaint; specifically a Mutual Confidentiality and Nondisclosure Agreement attached to the Complaint as Exhibit A ("NDA") and a Master Services Agreement attached to the Complaint as Exhibit B ("MSA").

        2.     Defendant filed its Answer, Affirmative Defenses and Counterclaim to Verified Complaint on August 28, 2019.

        3.     Based on their positions set forth in the pleadings, the Parties dispute whether a purported termination letter sent by Defendant to Plaintiff was proper and/or effective.

        4.     The Parties have agreed to extend the preservation of the status quo for the full pendency of this action, as set forth herein.

{HC00256826:1}

5.     This Court has subject matter jurisdiction over this action and personal jurisdiction over Defendant.

6.     The Parties agree that, until a Court Order permits otherwise, (a) the Parties shall perform under the MSA; (b) Defendant shall not direct the disconnecting or removing of Plaintiff's equipment or services based on Defendant's purported "Notice of Termination" letter dated July 17, 2019 from any of the customers identified in the MSA, including the Schedules to the MSA; (c) Defendant shall not induce or solicit complaints about Plaintiff from any of the customers identified in the MSA and Schedules or the Miller County Sheriff's Office; (d) the Parties shall not inform any of the customers identified in the MSA and Schedules or the Miller County Sheriff's Office that they do not have a contractual relationship with each other or otherwise disavow the other Party's status under the MSA; and (e) neither of the Parties shall solicit or attempt to hire an employee directly employed by the other; however, this provision does not apply to Bruce Johnson in the event he is an employee of Plaintiff.

7.     The Parties do not waive any rights or remedies as set forth in the MSA or the NDA including any based upon any default or failure to perform by a Party prior to or subsequent to the execution of this Stipulation.

8.     This Stipulation does not constitute an admission by any of the Parties as to any of the allegations or legal arguments contained in Plaintiff's Verified Complaint or Motion for Temporary Injunction or in Defendant's Answer, Affirmative Defenses and Counterclaim. The Parties expressly reserve their rights to argue or raise any of the issues raised in the Verified Complaint, the Motion for Temporary Injunction, and the Defendant's Answer, Affirmative Defenses and Counterclaim at any time.

[BC00256826 1]

9.     Subject to any intervening motions, which the Parties retain all rights to file and schedule for hearing, the Parties shall schedule a final hearing on the merits of the Verified Complaint and the Answer, Affirmative Defenses and Counterclaim as soon as practicable. However, so long as Defendant does not violate the terms of this Stipulation, Plaintiff agrees to cease pursuing Court intervention on the Motion for Temporary Injunction, including seeking an expedited hearing for the relief requested therein. Defendant understands that any violation of this Stipulation will result in Plaintiff immediately scheduling a hearing on its Motion for Temporary Injunction to occur as soon as the Court's schedule permits.

10.     Defendant waives the defenses of lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and insufficiency of process. Defendant preserves all other defenses to the Verified Complaint and Motion.

Executed this 30th day of August, 2019.

/s/ Brad F. Barrios
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN 96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL, P.A.
100 North Tampa Street, Suite 1900
Tampa, FL  33602
Tel: (813) 443-2199
Fax: (813) 443-2193
Attorneys for Plaintiff

/s/ Kimberly A. Bald
Kimberly A Bald – FBN 434190
E-mail: kab@harlleebald.com
James E. Lynch – FBN 46219
HARLLEE & BALD, P.A.
202 Old Main Street
Bradenton, FL  34205-7817
Tel: (941) 744-5537
Fax: (941) 744-5547
Attorneys for Defendant

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
*Case No: 19-CA-008089*

**DEFENDANT'S EXHIBIT B**

*to Correct Solutions' Memorandum in Opposition to Plaintiff's Emergency Motion to Temporarily Enjoin Improper Termination of Agreement and to Enforce Court Approved Stipulation*

 

## Schedule 1

This Schedule is between Correct Solutions, LLC, hereinafter referred to as "Customer," and Smart Communications Holding, Inc. and/or its designated subsidiary or assignee, with principal offices located at 4522 W North B St., Tampa, Florida 33609, hereinafter referred to as "We," Us," or "Provider." This Schedule is part of and governed by the Master Service Agreement, the "Agreement", executed by the Parties. The terms and conditions of the Agreement are incorporated herein by reference. This schedule shall be coterminous with the Agreement.

The Customer's Facility address is: 675 Government Street, Marksville, Louisiana 71351

Provider shall install and/or provide the following Hardware, Software, Systems and Services as required by Customer at the facility indicated above:

### SmartKiosks and Secure Network

1. The SmartKiosk system and its entire supporting infrastructure are provided at no cost to the Avoyelles Parish Sheriff's Office or inmate.

2. Provider will furnish the proprietary SmartKiosk on a 20:1 inmate to tablet ratio based on the Average Daily Population ("ADP").

3. The SmartKiosk is a custom, wired, ruggedized and correctional grade kiosk of our custom specifications that will connect to our secure network.

4. The SmartKiosk software operating system and applications are all custom-compiled for a corrections environment to ensure that only the minimum operating system components and applications are present. The inmate only has access to applications that are approved for their use, and the operating system is only allowed to connect to our own secure wireless network within the facility.

5. The network itself is designed to facilitate applications within a corrections environment. We utilize a deny-by-default policy on all traffic, so nothing may traverse the network unless specifically allowed and enabled. We utilize a defense-in-depth strategy which employs many layers of security. If any one layer of security is breached, there are many others to provide continuing protection.

### Electronic Messaging

6. We will provide at no cost to Customer a fully functional electronic messaging system for the inmates of the Customer's Jail Facilities. We are exclusively responsible for providing all of the hardware tablets, the software to include the operating systems and application software, and all networking requirements needed for operation of the system. Provider shall be entitled to all revenue derived from electronic messaging and photo delivery.

7. We will provide at no cost to Customer the labor for the installation of the electronic messaging system.

8. We will provide at no cost to Customer the labor, hardware, and software needed for the continued operating, maintaining, and networking of the electronic messaging system.

9. Provider is responsible for all the costs and future costs associated with any modification, reconfiguration, or upgrade of the electronic messaging system at the Customer Jail Facilities. These costs do not include the costs of the actual electrical power.

10. Provider will maintain records for a period of seven (7) years from the date the record is made. Upon request, we will provide Customer with copies of the requested record for the purpose of inspecting, examining, and auditing the Provider's records directly relevant to Customer.

11. Provider will provide each inmate of the Customer Jail Facilities, two (2) message credits per week at no charge to satisfy the needs of indigent inmates.

12. We will provide Customer with the capability of monitoring and reviewing all electronic messages and attachments sent through the electronic messaging system, except those messages deemed to be privileged under law between attorney and client. Further, Provider will maintain a record of all electronic messages sent through the electronic messaging system for a period of seven (7) years from the time the message is sent.

13. Friends and Family can access the electronic messaging and photo delivery system via the Smartjailmail.com website.

14. Electronic Messaging. Each email message is billed at one credit ($0.50).

15. Photo Delivery Service. Each approved photo is billed at two credits ($1.00).

### Customer's Responsibilities

16. Customer will provide us with access to the Customer Jail Facilities and space within the Facilities, subject to operational security requirements, for the purposes of installing, networking, and maintaining of the electronic messaging system. Customer will provide at no cost the necessary escorts for the installation personnel. The escorts must have access to the necessary inmate housing areas, I.T. and utility rooms to facilitate a timely installation. Emergency access to the system will be granted as needed to Contractor Monday through Friday 8:00 am to 4:00 pm. Non-emergency access will be granted within twenty-four (24) hour notice from Contractor.

17. Customer will include information regarding the Smart Jail Mail System in the Inmate Handbook and in all other areas where information on the Inmate Telephone System is located.

18. Customer will provide information regarding Smart Jail Mail messaging system in at least one location next to the inmate mailing address on the Customer website, with a link to the SmartJailMail.com website.

19. Upon completion of installation and appropriate system testing, Customer will allow the electronic messaging to go live within forty-eight (48) hours' notice of system availability.

20. Customer will provide a list electronically twice each day of all inmates residing in the Customer Jail Facilities and their current housing assignments. Provider will use this listing to ensure that each inmate is authorized to use only those tablets appropriate to their housing assignment.

21. Customer will give prompt notice to Provider of any trouble or irregularity in the functioning of any individual kiosk in particular or the electronic messaging system as a whole.

### Grievances, General and Medical Requests

22. We shall provide at no cost to the Customer and Inmate electronic general and medical requests as well as well as electronic grievance forms via the SmartTablet.

23. Our System presents Inmates with a list of available forms, and once a form has been selected and submitted, it is automatically routed to the appropriate person or department for processing. Automated timers, alerts, and escalation paths help to ensure that requests are handled in a timely manner to ensure compliance with internal policies and accreditation standards (if applicable). Each type of request has a suite of controls to fine-tune policies around who can submit which requests, how often, and a variety of other restrictions to help prevent staff from becoming overloaded. Requests can be easily reassigned to another individual or department as needed, and like everything else, all actions and access to these systems are logged and audited. Reports are available to show

request aging, who is answering requests on time (or not), and one-click compliance reports to aide with accreditation reporting.

## Rules, Regulations & Communications

24. The SmartTablet is designed to provide at the Sheriff's Office discretion a mandatory electronic signature acknowledging that the inmate has received an electronic copy of the Inmate Handbook. The Inmate Handbook is always available on the SmartTablet for easy reference. Changes and additions to the handbook or other rules and regulations can be changed easily by staff members. Inmates also have access to the PREA Act at all times on the SmartTablet. The SmartTablet has the ability for the Administrators to post announcements, communications and notices to the entire inmate population, or certain housing units or individual inmates. A common posting is both the PREA Act and everyday items such as menus.

## Law Library

25. We shall provide access via the SmartTablet to a law library in partnership with Casemaker Legal to the Sheriff's Office and inmates at no cost.  The law library provides access to Federal and State statutes and case law, as well as a legal dictionary, practice manual, and other legal aides to assist inmates with researching material appropriate for their case. Casemaker updates this library every day as new information becomes available and is used by a number of State BAR associations as the preferred platform for their registered attorneys to use for legal research.

## Video Visitation

26. We will provide at no cost to Customer a fully functional remote video visitation system for the inmates of the Customer's Jail Facilities. We are exclusively responsible for providing all of the hardware tablets, the software to include the operating systems and application software, and all networking requirements needed for operation of the system. Provider shall be entitled to all revenue derived from remote video visitation system.

27. We will provide at no cost to Customer the labor for the installation of the video visitation system.

28. We will provide at no cost to Customer the labor, hardware, and software needed for the continued operating, maintaining, and networking of the video visitation system.

29. Provider is responsible for all the costs and future costs associated with any modification, reconfiguration, or upgrade of the video visitation system at the Customer Jail Facilities. These costs do not include the costs of the actual electrical power.

30. We will provide Customer with the capability of monitoring the video visitations, except those visitations deemed to be privileged under law between attorney and client. Further, Provider will maintain a record of all parties of the video visitation system for a period of seven (7) years from the time of the visitation.

31. Friends and Family can access and purchase and schedule the video visitation sessions via the Smartjailmail.com website.  The video visitation sessions are only available in fifteen (15) or thirty (30) minute blocks.

32. Each fifteen (15) minutes video visitation block is billed at seven dollars and fifty cents ($7.50).

33. Each thirty (30) minutes video visitation block is billed at fifteen dollars and zero cents ($15.00).

## Customer Responsibilities

34. Customer will provide us with access to the Customer Jail Facilities and space within the Facilities, subject to operational security requirements, for the purposes of installing, networking, and maintaining of the video visitation system. Emergency access to the system will be granted as needed to Contractor Monday through Friday 8:00 am to 4:00 pm. Non-emergency access will be granted within twenty-four (24) hour notice from Contractor.

35. Customer will include information regarding the video visitation System in the Inmate Handbook and in all other areas where information on the Inmate Telephone System is located.

36. Customer will provide information regarding video visitation system in at least one location next to the inmate mailing address on the Customer website, with a link to the SmartJailMail.com website.

37. Upon completion of installation and appropriate system testing, Customer will allow the video visitation system to go live within forty-eight (48) hours' notice of system availability.

38. Customer will provide a list electronically twice each day of all inmates residing in the Customer Jail Facilities and their current housing assignments. Provider will use this listing to ensure that each inmate is authorized to use only those tablets appropriate to their housing assignment.

39. Customer will give prompt notice to Provider of any trouble or irregularity in the functioning the video visitation system as a whole.

## MailGuard™ Patent Pending Postal Mail Elimination System

40. Provider is the exclusive licensee of MailGuard™, the patent pending postal mail elimination system.

41. We shall provide MailGuard™ at no cost to Customer. MailGuard™ converts regular incoming postal mail into an electronic document that is delivered to the inmate recipient via the SmartKiosk™ within the Customer Jail Facility; and

42. We shall provide all of the equipment and support services to operate the MailGuard™ system and transmit incoming routine postal mail into an electronic document to be delivered to the inmate on the SmartKiosk™ at no cost to Customer; and

43. Customer Jail Facility shall provide the inmate the option of designating MailGuard as their Agent for processing incoming routine postal mail. For purposes of this contract, "routine mail" means all regular incoming correspondence between inmates, family and friends and excludes all legal mail, packages, books, magazines, periodicals and religious mail. All legal mail, packages, books, magazines, or other non-routine inmate mail will still be sent to the jail for delivery.

44. MailGuard will only integrate with and transmit incoming routine mail to the SmartKiosk™.

45. Provider is responsible for all the future costs associated with any modification, reconfiguration, or upgrade of the MailGuard™ system at the Customer Jail Facilities. These costs do not include the costs of the actual electrical power.

46. MailGuard shall become the Inmates designated Agent to process and electronically deliver incoming routine inmate mail pursuant to Customer's mail policy which shall promote the intent of this Agreement.

47. Customer will instruct and advertise on its website that all incoming routine mail must be sent to the designated Post Office Box for electronic delivery via the MailGuard™ system.

48. Provider shall be solely responsible for the cost of maintaining the Post Office Box designated by the Customer for incoming routine mail to be sent

49. Provider will retrieve incoming routine mail from the designated Post Office Box and process and transmit that mail in an expeditious manner.

50. Provider will shred all processed mail unless the Customer requests in writing to Provider that all or particular inmate mail must be stored. All mail stored for more than thirty (30) days must be stored in a separate storage facility controlled by Provider and the Customer shall be billed monthly for the storage amount.

51. The MailGuard™ public website will allow inmates to log into their account and retrieve electronic copies of their processed incoming routine mail for twelve (12) months from the date of their release from the Customer's Jail Facility.

52. Provider will maintain electronic records for a period of seven (7) years from the date of the inmate's release from the Customer's Jail Facility. During the term of this Agreement and upon request, we will provide Customer with electronic copies of the requested record for the purpose of inspecting, examining, and auditing the Provider's records directly relevant to Customer's Jail Facility.

53. MailGuard will provide Customer with the capability of monitoring and reviewing all electronic mail sent through the MailGuard™ system, except those messages deemed to be privileged under law between attorney and client.

54. The work to be performed by MailGuard under this Agreement may, at its discretion, be performed directly by it wholly or in part through a subcontractor of its choosing.


        **IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by the duly authorized Officers and Agents and have set their hands and seals hereto as of the day and year written below.


Customer: Correct Solutions, LLC

By: _____

Name: Patrick Temple

Title: Managing Director

Date: 9/13/17

Email: Patrick@correctsolutionsgroup.com

Notice Address:
182 Bastille Lane
Ruston, LA 71270


Provider: Smart Communications Holding, Inc.

By: _____

Name: James P. Logan

Title: Vice President

Date: 8-31-17

Email: jim.logan@smartjailmail.com

Notice Address:
4522 West North B Street
Tampa, Fl. 33609

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
*Case No: 19-CA-008089*

### DEFENDANT'S EXHIBIT C

*to Correct Solutions' Memorandum in Opposition to Plaintiff's Emergency*
*Motion to Temporarily Enjoin Improper Termination of Agreement and to*
*Enforce Court Approved Stipulation*

ROEDEL PARSONS KOCH
BLACHE BALHOFF    McCOLLISTER

A  LAW  CORPORATION

roedelparsons.com

**Luke F. Piontek, Partner**
*Lpiontek@roedelparsons.com*
*Baton Rouge Office*

*Telephone  (225) 929-7033*
*Direct Dial  (225) 329-1293*
*Facsimile  (225) 928-4925*

September 13, 2019

**VIA CERTIFIED MAIL**
**#7016 0750 0000 6885 1345**
Smart Communications Holding, Inc.
10491 72nd Street
Seminole, Florida 33777

Attention: James P. Logan

RE:    Notice to Cure pursuant to Master Services Agreement between
Correct Solutions, LLC and Smart Communications Holding, Inc.
(Correct Solutions, LLC's customer: Sebastian County)

Dear Mr. Logan:

You are hereby notified that Smart Communications Holding, L.L.C. ("Smart") is in default under the terms of the Master Services Agreement ("MSA") with Correct Solutions, LLC ("Correct Solutions"), dated August 31, 2017, and Schedule 1 – Sebastian County, AR ("Schedule 1") of the MSA, also dated August 31, 2017, respecting the provision of equipment and services to Correct Solutions' customer, Sebastian County Detention Center ("Sebastian County").

Specifically, Paragraph 3 of Schedule 1 provides that the "SmartTablet" unit provided by Smart "is a custom, wireless, ruggedized and correctional grade tablet of [Smart's] custom specification..." Meanwhile, Paragraph 8 of Schedule 1 states, in part, that, "Our asset management system keeps records of all devices throughout their lifecycle so that we can see the full history of any device in real-time.... We see which devices are being used, how often, identify charging and battery issues, and other common problems before they result in device failure so that service can be initiated before a problem is even reported. Our monitoring systems watch our remoted infrastructure 24/7 and alert our technicians in real-time if any issues are detected."

In fact, the tablets and supporting equipment provided by Smart to Correct Solutions' customer, Sebastian County, were not "correctional grade" in any correctional sense. The tablets provided by Smart have been rather easily dismantled and fashioned into crude weapons. Additionally, inmates at Sebastian County have readily removed the batteries from Smart's tablets which batteries have been used to charge illegal cell phones in the facility. The attached exhibits, supplied by Sebastian County, provide photographic evidence of the defectiveness of Smart's equipment. As you are well aware, safety and security are top priorities for Correct Solutions'

customer, Sebastian County, and the defective tablets provided by Smart allow inmates to easily circumvent these priorities. As such, Smart is in violation of Paragraph 3 of Schedule 1.

In addition, Smart has failed to timely install and/or provide electronic education and/or entertainment options (*e.g.*, electronic books and games) on the tablets provided to Sebastian County. Sebastian County requested the installation of electronic education and/or entertainment options over a year ago, but Smart has neglected to carry out such installment. Paragraph 2 of the MSA provides that Smart "shall be the sole and exclusive provider" of, among other services, "electronic education, electronic self-help, … [and] electronic entertainment…" to Correct Solutions' customer facilities. Smart's failure to timely install and/or provide electronic education and/or entertainment options violates Paragraph 2 of the MSA.

Further, according to Sebastian County, the tablets Smart provided to Sebastian County experience near constant failures and performance deficiencies. Smart has also directed Sebastian County regarding how to allegedly repair the inoperable, broken, or defective tablets rather than repairing the tablets itself. Paragraph 7 of the MSA states, in part, that "In the event a tablet stops working, no longer holds a charge, is damaged, or is otherwise in need of service, facility staff can replace the malfunctioning tablet with a new working SmartTablet", and that Smart "will provide pickup and delivery of malfunctioning and replacement SmartTablets at no charge to the Sheriff's Office." Paragraph 8 of the MSA sets forth Smart's "Maintenance and Support Plan" regarding the tablets. Smart's provision of tablets that are in a state of near constant failure, as well as its failure or refusal to repair inoperable, broken, or defective tablets, violates Paragraphs 7 and 8 of the MSA.

Under Paragraph 9 of the MSA, "If either party defaults in the performance of any obligation under this agreement, then the non-defaulting Party must give written notice to the defaulting Party specifically describing the nature of the default." This letter serves as Correct Solutions' notice to Smart of the nature of the default, set forth above. Paragraph 9 continues, stating, "The defaulting Party shall have thirty (30) days after receipt of notice of default to cure." This letter also serves as Correct Solutions' notice to cure the default with respect to the defective tablets provided to Sebastian County within thirty (30) days of receipt of this letter. Failure to cure may result in immediate termination of the MSA and other agreement(s) between Smart and Correct Solutions.

As the attached photographs very clearly suggest, allowing the intended end-users of Smart's equipment to have continued access to these apparently defective and/or substandard products may very well lead to consequences considerably more grave than mere customer dissatisfaction. Therefore, Smart must provide Sebastian County with "ruggedized and correctional grade tablet[s]", which naturally must be tamper-proof, with electronic education, and electronic entertainment (books and games) installed, and must repair any inoperable, broken, or defective tablets, within thirty (30) days of receipt of this notice to cure. With that in mind, your prompt attention to the matter is greatly appreciated.

Sincerely,

Luke F. Piontek
*Counsel for Correct Solutions, LLC*

CC:   David L. Gann (via email only)
      General Counsel
      Smart Communications Holding, Inc.





IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

      Plaintiff,

v.                               Case No: 2019 CA 008089

CORRECT  SOLUTIONS,  LLC,  a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

**NOTICE OF COMPLIANCE WITH PLAINTIFF'S NOTICE
TO PRODUCE DOCUMENTS AT THE SEPTEMBER 20, 2019
EVIDENTIARY HEARING**

Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC (Correct

Solutions), by and through its undersigned counsel, hereby provides notice of the

production of documents to Plaintiff, Smart Communications Holding, Inc., with Bates

No. Correct Solutions Subpoena 0001 through Correct Solutions Subpoena 0008 at the

hearing on Plaintiff's Emergency Motion to Temporarily Enjoin Improper Termination of

Agreement and to Enforce Court Approved Stipulation scheduled for September 20, 2019

at 9:30 a.m.

**CERTIFICATE OF SERVICE**

I hereby certify that this document has been filed through the Florida Courts E-

filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes,

Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street,

Suite  1900,  Tampa,  FL    33602;  bbarrios@bajocuva.com;  dhayes@bajocuva.com;

kturkel@bajocuva.com; tdeleo@bajocuva.com on the 20th day of September, 2019.

HARLLEE & BALD, P.A.


By:  s/James E. Lynch
    KIMBERLY A. BALD
    Florida Bar No. 0434190
    JAMES E. LYNCH
    Florida Bar No. 046219
    202 Old Main Street
    Bradenton, FL 34205
    Telephone: 941-744-5537
    Facsimile: 941-744-5547
    KAB@harlleebald.com
    JEL@harlleebald.com
    DDF@harlleebald.com
    CL@harlleebald.com

    and

    LUKE F. PIONTEK
    Roedel, Parsons, Kock, Blache,
    Balhoff & McCollister
    Louisiana Bar No. 19979
    8440 Jefferson Highway, Suite 301
    Baton Rouge, LA. 70809
    Telephone Number 225/929-7033
    Facsimile Number 225/928-4925
    LPiontek@roedelpartons.com

    Attorneys for Correct Solutions, LLC

4819-3934-8646, v. 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT, IN AND
FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA

## CLERK'S MINUTES OF NON-JURY TRIAL

**SMART COMMUNICATIONS HOLDING, INC**

**Case Number:** 19-CA-008089

**Division:** J

### Plaintiff / Petitioner

**CORRECT SOLUTIONS, LLC**

### Defendant / Respondent

**Date:** 09/20/19

**Judge:** REX M. BARBAS

**Bailiff:** JAMES HENDERSON

**Court Opened:** 9:30 AM

**Court Clerk:** TINA CARRIZOSA

**Court Reporter:**

| | | | | | |
|---|---|---|---|---|---|
| [] | Primary Plaintiff | SMART COMMUNICATIONS HOLDINGS, INC | [] Present | [] | Not Present |
| [] | Representative | | [] Present | [] | Not Present |
| [] | Other Plaintiff (s) | | [] Present | [] | Not Present |

**Being Represented By Counsel** KENNETH GEORGE TURKEL, ESQ.,

| | | | | | |
|---|---|---|---|---|---|
| [] | Primary Defendant | CORRECT SOLUTIONS, LLC | [] Present | [] | Not Present |
| [] | Representative | | [] Present | [] | Not Present |
| [] | Other Defendant (s) | | [] Present | [] | Not Present |

**Being Represented By Counsel** KIMBERLY A BALD, ESQ.,

Page 1 of

Be it remembered that in the above styled cause:

[ ]   **Court had been hearing Opening Statements**

[ ]   **Court had been hearing the Evidence**

[ ]   **Counsel for the Plaintiff had announced to the Court that they rest at:** _____

[ ]   **Counsel for the Defendant had announced to the Court that they rest at:** _____

[ ]   **Court had been hearing Closing Arguments**

[ ]   **Court deliberating their Verdict**

[ ]   _____

When the Court recessed at _____ until _____ and the

[ ]   **Proceeded to hear the Opening Statements**

[X]   **Proceeded to hear the Evidence**

[ ]   **Counsel for the Plaintiff announced to the Court that they rest at:** _____

[ ]   **Counsel for the Defendant announced to the Court that they rest at:** _____

[]   **Proceeded to hear the Closing Arguments**

[ ]   **Counsel for the respective parties announced to the Court that both parties have a settlement.**

[ ]   **Being in the Open Court:**

　　[ ] **Plaintiff's**   [ ] **Defendant's**  counsel moved the Court for a _____

and after due consideration the Court [ ]  **Granted** [ ]  **Denied**  said Motion at _____

[ ]   **Retired to consider Verdict at** _____

[ ]   **Returned to continue Deliberations at** _____

[ ]   **After due consideration, returned to Open court and returned the Verdict for:**

　　[ ]   **The Plaintiff**   [ ]   **The Defendant** _____

　　[ ]   _____ in the above styled cause.

Court Ordered Recess at   10:40 P.m   until   N/A

**Page 2  of**

Filing # 96014336 E-Filed 09/19/2019 09:16:55 PM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

     Plaintiff,

v.                         Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

     Defendant.

_____/

**NOTICE OF FILING AFFIDAVITS OF PATRICK TEMPLE IN OPPOSITION
TO PLAINTIFF'S EMERGENCY MOTION AND IN SUPPORT OF CORRECT
SOLUTIONS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S EMERGENCY MOTION**

     Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC ("Correct

Solutions"), hereby files the following affidavits in opposition to Plaintiff's Emergency

Motion to Temporarily Enjoin Improper Termination of Agreement and to Enforce Court

Approved Stipulation and in support of Correct Solutions' Memorandum in Opposition

to Plaintiff's Emergency Motion to Temporarily Enjoin Improper Termination of

Agreement and to Enforce Court Approved Stipulation, and for any other allowable

purpose including at the hearing scheduled in this action for September 20, 2019:

1. Affidavit of Patrick Temple in Opposition to Plaintiff's Emergency Motion (re:
   Non-Availability of Mark Turner) dated September 19, 2019; and

2. Affidavit of Patrick Temple in Opposition to Plaintiff's Emergency Motion
   dated September 19, 2019.

**CERTIFICATE OF SERVICE**

     I hereby certify that this document has been filed through the Florida Courts E-

filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes,

Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street,

Suite 1900, Tampa, FL    33602;  bbarrios@bajocuva.com;  dhayes@bajocuva.com;

kturkel@bajocuva.com; tdeleo@bajocuva.com on ___19___ day of September, 2019.

HARLLEE & BALD, P.A.

By: _____

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4829-2376-2086, v. 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

     Plaintiff,

v.                                                    Case No: 2019 CA 008089

CORRECT  SOLUTIONS, LLC, a/k/a
CORRECT   SOLUTIONS   GROUP,
LLC,

     Defendant.

_____/

## AFFIDAVIT OF PATRICK TEMPLE IN OPPOSITION
## TO PLAINTIFF'S EMERGENCY MOTION
## (RE: NON-AVAILABILITY OF MARK TURNER)

STATE OF LOUISIANA
PARISH OF LINCOLN

     BEFORE ME, the undersigned authority personally appeared this day Patrick

Temple, who after being first duly sworn, deposes and says:

     1.     I am over the age of 18 years and competent to make this Affidavit. This

Affidavit is made upon my personal knowledge.

     2.     I am the Managing Director of Correct Solutions, LLC, the defendant in

this action.

     3.     Mark Turner is the Director of Sales for Correct Solutions, LLC and

operates out of Wills Point, Texas.  Mr. Turner oversees the customer accounts of

Correct Solutions, LLC from a sales and customer service perspective, including the

customer account for the Sebastian County, Arkansas Sheriff's Office which operates the jail in Sebastian County, Arkansas.

4.    In the role of Director of Sales, Mr. Turner has specific personal knowledge regarding the Correct Solutions, LLC customer accounts including the customer account for the Sebastian County, Arkansas Sheriff's Office and the numerous problems the Sebastian County, Arkansas Sheriff's Office has experienced with products and services offered by Plaintiff, Smart Communications Holding, Inc. in the jail in Sebastian County, Arkansas.  Accordingly, Mr. Turner is an extremely important witness for Correct Solutions, LLC in this action.

5.    Mr. Turner left for a pre-planned vacation on September 18, 2019 and will be unavailable to attend the hearing on Plaintiff's Emergency Motion scheduled for September 20, 2019 concerning the Sebastian County, Arkansas Sheriff's Office and the numerous problems the Sebastian County, Arkansas Sheriff's Office has experienced with products and services offered by Plaintiff, Smart Communications Holding, Inc. Mr. Turner's vacation has been planned for approximately two (2) years and includes a portion where he will be traveling on a cruise ship.  Mr. Turner is set to return from his vacation on October 5, 2019.

6.    Plaintiff, Smart Communications Holding, Inc. was notified on August 28, 2019 of Mr. Turner's unavailability commencing September 18, 2019 as Mr. Turner verified the allegations of Correct Solutions, LLC's Verified Emergency Motion for Continuance which was provided to counsel for Plaintiff via electronic mail on August 28, 2019 in a good faith effort to resolve the issues contained therein pursuant to Administrative Order S-2019-007 and pursuant to Florida Rule of Civil Procedure

1.460, which states "if a continuance is sought on the ground of non-availability of a witness, the motion must show when it is believed the witness will be available." The Verified Emergency Motion for Continuance was served (but not filed) by Correct Solutions, LLC discloses that from September 18, 2019 through October 5, 2019, Mr. Turner was unavailable and it lists earlier dates in September 2019 and dates beginning Monday, October 7, 2019 when Mr. Turner would be available to testify.

FURTHER AFFIANT SAYETH NOT.

_____
PATRICK TEMPLE

SWORN TO AND SUBSCRIBED before me, this __19th__ day of September, 2019 by Patrick Temple who is personally known to me ~~or who produced~~ ____N/A____ ~~as identification.~~

_____
NOTARY PUBLIC
Printed Name: James H Hunter
My Commission Expires: with Life
La Bar Roll #21807

3

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

     Plaintiff,

v.                                                                Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP,
LLC,

     Defendant.

_____/

## AFFIDAVIT OF PATRICK TEMPLE IN OPPOSITION
## TO PLAINTIFF'S EMERGENCY MOTION

STATE OF LOUISIANA
PARISH OF LINCOLN

     BEFORE ME, the undersigned authority personally appeared this day Patrick Temple, who after being first duly sworn, deposes and says:

     1.    I am over the age of 18 years and competent to make this Affidavit. This Affidavit is made upon my personal knowledge.

     2.    I am the Managing Director of Correct Solutions, LLC ("Correct Solutions"), the defendant in this action.

     3.    In my position as Managing Director of Correct Solutions, I have specific knowledge regarding the operations of Correct Solutions.

     4.    I have specific knowledge regarding the allegation in Paragraph 12 and 15 of Plaintiff's Emergency Motion that Correct Solutions attempted to buy Smart Communications. I asked Mark Turner, Director of Sales for Correct Solutions, to travel

to Florida to speak with Smart Communications executives to see if the company had interest in selling and to perform due diligence. Mark Turner attended a meeting in Florida with Smart Communications executives. There was no legitimate interest by Smart Communications in selling their business, and no legitimate interest by Correct Solutions in purchasing Smart Communications as a result of the hearing. Since that meeting, Correct Solutions has made the decision not to pursue purchasing Smart Communications and no further dialogue has taken place regarding a purchase and sale of Smart Communications.

5.     I have specific knowledge that the allegation in Paragraph 17 of Plaintiff's Emergency Motion that "Correct [Solutions] has obtained the ability to provide electronic messaging services similar to those provided by Smart [Communications]" is false. Correct Solutions has never had, and does not have, the ability to provide electronic messaging services directly to its customers, and that is why Correct Solutions sub-contracts those services out to companies such as Smart Communications. The reference to an "iMate E-Device" on the website of Correct Solutions as of August 2, 2019 was referencing a prior third-party offering by Correct Solutions from several years ago, and the "iMate E-Device" was never fully implemented in any customer facility (only beta tested). Moreover, the "iMate E-Device" has not been offered for sale by the third-party since January 2019.

6.     I have specific knowledge that the allegation in Paragraph 18 of Plaintiff's Emergency Motion that Correct Solutions is "cutting off direct communication" between Smart Communications and Correct Solutions customers or is "failing to provide access" by Smart Communications to Correct Solutions customers is false. Correct Solutions has

actively encouraged Smart Communications to respond to service issues at the customer facilities and that is bolstered by Correct Solutions sending the September 13, 2019 Notice of Default/Notice to Cure to Smart Communication pursuant to the explicit terms of the Master Services Agreement between the parties. Moreover, Correct Solutions has implemented a "trouble ticket system" with the knowledge of Smart Communications so that Correct Solutions can comply with its contractual obligation under each of the Schedules to the Master Services Agreement to provide "prompt notice" to Smart Communications of any "trouble or irregularity" with the Smart Communications equipment or services offered to the customer facilities of Correct Solutions.

7.   I have specific knowledge that the allegation in Paragraph 18 of Plaintiff's Emergency Motion that Correct Solutions is "allowing third party facilities to destroy Smart [Communication's] equipment" is false. No person employed by Correct Solutions has instructed or "allowed" a customer facility of Correct Solutions to destroy Smart Communication equipment.

FURTHER AFFIANT SAYETH NOT.

PATRICK TEMPLE

SWORN TO AND SUBSCRIBED before me, this 19th day of September, 2019 by Patrick Temple who is personally known to me ~~or who produced~~ _____N/A_____ ~~as identification.~~

NOTARY PUBLIC
James H Hunter
My Comm Stw Expires with Life
LA Bar Roll # 24907

3

Printed Name:_____
My Commission Expires:

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

      Plaintiff,

v.                          Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## NOTICE OF CORRECTION TO CORRECT SOLUTIONS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION

Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC ("Correct Solutions"), hereby files its Notice of Correction as to **Defendant's Exhibit B** to Correct Solutions' Memorandum in Opposition to Plaintiff's Emergency Motion to Temporarily Enjoin Improper Termination of Agreement and to Enforce Court Approved Stipulation. A copy of the correct **Defendant's Exhibit B** is attached to this Notice of Correction. **Defendant's Exhibit B** is the Schedule between Correct Solutions as Customer and Smart Communications Holding, Inc. as Provider pertaining to Sebastian County, Arkansas.

### CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on 19Th day of September, 2019.

HARLLEE & BALD, P.A.

By: _____
KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4829-2376-2086, v. 1

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
*Case No: 19-CA-008089*

### DEFENDANT'S EXHIBIT B

*to Correct Solutions' Memorandum in Opposition to Plaintiff's Emergency Motion to Temporarily Enjoin Improper Termination of Agreement and to Enforce Court Approved Stipulation*

 

### Schedule 1 – Sebastian County, AR

This Schedule is between Correct Solutions, LLC, hereinafter referred to as "Customer," and Smart Communications Holding, Inc. and/or its designated subsidiary or assignee, with principal offices located at 4522 W North B St., Tampa, Florida 33609, hereinafter referred to as "We," Us," or "Provider." This Schedule is part of and governed by the Master Service Agreement, the "Agreement", executed by the Parties. The terms and conditions of the Agreement are incorporated herein by reference. This schedule shall be coterminous with the Agreement.

The Customer's Facility address is: 800 South A Street, Fort Smith, AR 72901

Provider shall install and/or provide the following Hardware, Software, Systems and Services as required by Customer at the facility indicated above:

### SmartTablets and Secure Network

1. The SmartTablet system and its entire supporting infrastructure are provided at no cost to the Sebastian County Sheriff's Office or inmate.

2. Provider will furnish the proprietary SmartTablet on a 1:1 inmate to tablet ratio based on the Average Daily Population ("ADP"). Sufficient reserve tablets shall also be provided. Customer shall determine which inmates have access to the SmartTablets. Provider reserves the right to periodically evaluate and adjust the ratio based on usage and with agreement of Customer.

3. The SmartTablet is a custom, wireless, ruggedized and correctional grade tablet of our custom specifications that will connect to our secure network.

4. The SmartTablet software operating system and applications are all custom-compiled for a corrections environment to ensure that only the minimum operating system components and applications are present. The inmate only has access to applications that are approved for their use, and the operating system is only allowed to connect to our own secure wireless network within the facility.

5. The network itself is designed to facilitate applications within a corrections environment. We utilize a deny-by-default policy on all traffic, so nothing may traverse the network unless specifically allowed and enabled. We utilize a defense-in-depth strategy which employs many layers of security. If any one layer of security is breached, there are many others to provide continuing protection.

### Distribution and Refurbishment Plan

6. We will provide a tablet charging station and "home base" within each housing unit within the facility. These home bases can be permanently installed into a housing area (e.g. wall mounted) or can be provided as mobile carts to allow for bulk transportation of tablets as needed. Each home base provides the necessary connections for charging the tablets, as well as a convenient storage location to ensure all tablets are accounted for during non-usage times.

7. Each tablet is assigned to a specific housing area and will only allow inmates within that housing area to sign in and use a tablet. Individual tablets are not assigned to specific inmates. Any inmate in a given housing unit may use any tablet that is assigned to that housing unit. If a tablet that an inmate is using stops working, they can return it to the home base or to a deputy for maintenance, and then take a different tablet and sign on and gain full access to their account and content. Provider will provide to the Customer a sufficient number of extra SmartTablets so that the available number of SmartTablets will always exceed the actual inmate population. In the event a tablet stops working, no longer holds a charge, is damaged, or is otherwise in need of service, facility staff can replace the malfunctioning tablet with a new working SmartTablet. We will provide pickup and delivery of malfunctioning and replacement SmartTablets at no charge to the Sheriff's Office.

## Maintenance and Support Plan

8. Our asset management system keeps records of all devices throughout their lifecycle so that we can see the full history of any device in real-time. Each tablet checks with our network when it is powered on and relays its current status information for tracking and pre-emptive notification for service. We see which devices are being used, how often, identify charging and battery issues, and other common problems before they result in device failure so that service can be initiated before a problem is even reported. Our monitoring systems watch our remote infrastructure 24/7 and alert our technicians in real-time if any issues are detected. Using remote network access and remote troubleshooting techniques, we can typically pinpoint the cause of a failure and dispatch the appropriate parts and personnel to repair infrastructure failures very quickly. We also utilize backup external network connectivity by using a local wireline broadband provider as our primary transit, and utilize a cellular data connection as a backup which automatically comes online in the event that the primary connection becomes unavailable. This helps to ensure that the system can continue to operate even in the event of an outage at a third-party connectivity provider.

## Electronic Messaging

9. We will provide at no cost to Customer a fully functional electronic messaging system for the inmates of the Customer's Jail Facilities. We are exclusively responsible for providing all of the hardware tablets, the software to include the operating systems and application software, and all networking requirements needed for operation of the system. Provider shall be entitled to all revenue derived from electronic messaging and photo delivery.

10. We will provide at no cost to Customer the labor for the installation of the electronic messaging system.

11. We will provide at no cost to Customer the labor, hardware, and software needed for the continued operating, maintaining, and networking of the electronic messaging system.

12. Provider is responsible for all the costs and future costs associated with any modification, reconfiguration, or upgrade of the electronic messaging system at the Customer Jail Facilities. These costs do not include the costs of the actual electrical power.

13. Provider will maintain records for a period of seven (7) years from the date the record is made. Upon request, we will provide Customer with copies of the requested record for the purpose of inspecting, examining, and auditing the Provider's records directly relevant to Customer.

14. Provider will provide each inmate of the Customer Jail Facilities, two (2) message credits per week at no charge to satisfy the needs of indigent inmates.

15. We will provide Customer with the capability of monitoring and reviewing all electronic messages and attachments sent through the electronic messaging system, except those messages deemed to be privileged under law between attorney and client. Further, Provider will maintain a record of all electronic messages sent through the electronic messaging system for a period of seven (7) years from the time the message is sent.

16. Friends and Family can access the electronic messaging and photo delivery system via the Smartjailmail.com website.

17. Electronic Messaging. Each email message is billed at one credit ($0.50).

18. Photo Delivery Service. Each approved photo is billed at two credits ($1.00).

## Customer's Responsibilities

19. Customer will provide us with access to the Customer Jail Facilities and space within the Facilities, subject to operational security requirements, for the purposes of installing, networking, and maintaining of the electronic messaging system. Customer will provide at no cost the necessary escorts for the installation personnel. The escorts must have access to the necessary inmate housing areas, I.T. and utility rooms to facilitate a timely installation. Emergency access to the system will be granted as needed to Contractor Monday through Friday 8:00 am to 4:00 pm. Non-emergency access will be granted within twenty-four (24) hour notice from Contractor.

20. Customer will include information regarding the Smart Jail Mail System in the Inmate Handbook and in all other areas where information on the Inmate Telephone System is located.

21. Customer will provide information regarding Smart Jail Mail messaging system in at least one location next to the inmate mailing address on the Customer website, with a link to the SmartJailMail.com website.

22. Upon completion of installation and appropriate system testing, Customer will allow the electronic messaging to go live within forty-eight (48) hours' notice of system availability.

23. Customer will provide a list electronically twice each day of all inmates residing in the Customer Jail Facilities and their current housing assignments. Provider will use this listing to ensure that each inmate is authorized to use only those tablets appropriate to their housing assignment.

24. Customer will give prompt notice to Provider of any trouble or irregularity in the functioning of any individual kiosk in particular or the electronic messaging system as a whole.

## Grievances, General and Medical Requests

25. We shall provide at no cost to the Customer and Inmate electronic general and medical requests as well as well as electronic grievance forms via the SmartTablet.

26. Our System presents Inmates with a list of available forms, and once a form has been selected and submitted, it is automatically routed to the appropriate person or department for processing. Automated timers, alerts, and escalation paths help to ensure that requests are handled in a timely manner to ensure compliance with internal policies and accreditation standards (if applicable). Each type of request has a suite of controls to fine-tune policies around who can submit which requests, how often, and a variety of other restrictions to help prevent staff from becoming overloaded. Requests can be easily reassigned to another individual or department as needed, and like everything else, all actions and access to these systems are logged and audited. Reports are available to show request aging, who is answering requests on time (or not), and one-click compliance reports to aide with accreditation reporting.

## Rules, Regulations & Communications

27. The SmartTablet is designed to provide at the Sheriff's Office discretion a mandatory electronic signature acknowledging that the inmate has received an electronic copy of the Inmate Handbook. The Inmate Handbook is always available on the SmartTablet for easy reference. Changes and additions to the handbook or other rules and regulations can be changed easily by staff members. Inmates also have access to the PREA Act at all times on the SmartTablet. The SmartTablet has the ability for the Administrators to post announcements, communications and notices to the entire inmate population, or certain housing units or individual inmates. A common posting is both the PREA Act and everyday items such as menus.

## Law Library

28. We shall provide access via the SmartTablet to a law library in partnership with Casemaker Legal to the Sheriff's Office and inmates at no cost. The law library provides access to Federal and State statutes and case law, as well as a legal dictionary, practice manual, and other legal aides to assist inmates with researching material appropriate for their case. Casemaker updates this library every day as new information becomes available and is used by a number of State BAR associations as the preferred platform for their registered attorneys to use for legal research.

## Customer Responsibilities

29. Customer will provide us with access to the Customer Jail Facilities and space within the Facilities, subject to operational security requirements, for the purposes of installing, networking, and maintaining of the video visitation system. Emergency access to the system will be granted as needed to Contractor Monday through Friday 8:00 am to 4:00 pm. Non-emergency access will be granted within twenty-four (24) hour notice from Contractor.

30. Customer will include information regarding the video visitation System in the Inmate Handbook and in all other areas where information on the Inmate Telephone System is located.

31. Customer will provide information regarding video visitation system in at least one location next to the inmate mailing address on the Customer website, with a link to the SmartJailMail.com website.

32. Upon completion of installation and appropriate system testing, Customer will allow the video visitation system to go live within forty-eight (48) hours' notice of system availability.

33. Customer will provide a list electronically twice each day of all inmates residing in the Customer Jail Facilities and their current housing assignments. Provider will use this listing to ensure that each inmate is authorized to use only those tablets appropriate to their housing assignment.

34. Customer will give prompt notice to Provider of any trouble or irregularity in the functioning the video visitation system as a whole.

## MailGuard™ Patent Pending Postal Mail Elimination System

35. Provider is the exclusive licensee of MailGuard™, the patent pending postal mail elimination system.

36. We shall provide MailGuard™ at no cost to Customer. MailGuard™ converts regular incoming postal mail into an electronic document that is delivered to the inmate recipient via the SmartKiosk™ within the Customer Jail Facility; and

37. We shall provide all of the equipment and support services to operate the MailGuard™ system and transmit incoming routine postal mail into an electronic document to be delivered to the inmate on the SmartKiosk™ at no cost to Customer; and

38. Customer Jail Facility shall provide the inmate the option of designating MailGuard as their Agent for processing incoming routine postal mail. For purposes of this contract, "routine mail" means all regular incoming correspondence between inmates, family and friends and excludes all legal mail, packages, books, magazines, periodicals and religious mail. All legal mail, packages, books, magazines, or other non-routine inmate mail will still be sent to the jail for delivery.

39. MailGuard will only integrate with and transmit incoming routine mail to the SmartKiosk/Tablet Solutions™

40. Provider is responsible for all the future costs associated with any modification, reconfiguration, or upgrade of the MailGuard™ system at the Customer Jail Facilities. These costs do not include the costs of the actual electrical power.

41. MailGuard shall become the Inmates designated Agent to process and electronically deliver incoming routine inmate mail pursuant to Customer's mail policy which shall promote the intent of this Agreement.

42. Customer will instruct and advertise on its website that all incoming routine mail must be sent to the designated Mail Box for electronic delivery via the MailGuard™ system.

43. Provider shall be solely responsible for the cost of maintaining the Mail Box for incoming routine mail to be sent.

44. Provider will retrieve incoming routine mail from the designated Mail Box and process and transmit that mail in an expeditious manner.

45. Provider will shred all processed mail unless the Customer requests in writing to Provider that all or particular inmate mail must be stored. All mail stored for more than thirty (30) days must be stored in a separate storage facility controlled by Provider and the Customer shall be billed monthly for the storage amount.

46. The MailGuard™ public website will allow inmates to log into their account and retrieve electronic copies of their processed incoming routine mail for twelve (12) months from the date of their release from the Customer's Jail Facility.

47. Provider will maintain electronic records for a period of seven (7) years from the date of the inmate's release from the Customer's Jail Facility. During the term of this Agreement and upon request, we will provide Customer with electronic copies of the requested record for the purpose of inspecting, examining, and auditing the Provider's records directly relevant to Customer's Jail Facility.

48. MailGuard will provide Customer with the capability of monitoring and reviewing all electronic mail sent through the MailGuard™ system, except those messages deemed to be privileged under law between attorney and client.

49. The work to be performed by MailGuard under this Agreement may, at its discretion, be performed directly by it wholly or in part through a subcontractor of its choosing.

**IN WITNESS WHEREOF**, the Parties have caused this Agreement to be executed by the duly authorized Officers and Agents and have set their hands and seals hereto as of the day and year written below.

Customer: Correct Solutions, LLC.

By:

Name: Patrick Temple

Title: Managing Director

Date: 9/13/17

Email: Patrick@correctsolutionsgroup.com

Notice Address:
182 Bastille Lane
Ruston, LA 71270

Provider: Smart Communications Holding, Inc.

By:

Name: James P. Logan

Title: Vice President

Date: 8-31-17

Email: jim.logan@smartjailmail.com

Notice Address:
4522 West North B Street
Tampa, FL 33609

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

     Plaintiff,

v.                                                    Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

     Defendant.

_____/

**NOTICE OF FILING AFFIDAVITS OF PATRICK TEMPLE IN OPPOSITION
TO PLAINTIFF'S EMERGENCY MOTION AND IN SUPPORT OF CORRECT
SOLUTIONS' MEMORANDUM IN OPPOSITION TO
PLAINTIFF'S EMERGENCY MOTION**

     Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC ("Correct

Solutions"), hereby files the following affidavits in opposition to Plaintiff's Emergency

Motion to Temporarily Enjoin Improper Termination of Agreement and to Enforce Court

Approved Stipulation and in support of Correct Solutions' Memorandum in Opposition

to Plaintiff's Emergency Motion to Temporarily Enjoin Improper Termination of

Agreement and to Enforce Court Approved Stipulation, and for any other allowable

purpose including at the hearing scheduled in this action for September 20, 2019:

1.   Affidavit of Patrick Temple in Opposition to Plaintiff's Emergency Motion (re:

     Non-Availability of Mark Turner) dated September 19, 2019; and

2.   Affidavit of Patrick Temple in Opposition to Plaintiff's Emergency Motion

     dated September 19, 2019.

**CERTIFICATE OF SERVICE**

     I hereby certify that this document has been filed through the Florida Courts E-

filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL   33602; bbarrios@bajocuva.com; dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on __19__ day of September, 2019.

HARLLEE & BALD, P.A.

By: _____

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4829-2376-2086, v. 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

    Plaintiff,

v.                                                     Case No: 2019 CA 008089

CORRECT  SOLUTIONS, LLC, a/k/a
CORRECT   SOLUTIONS    GROUP,
LLC,

    Defendant.

_____/

### AFFIDAVIT OF PATRICK TEMPLE IN OPPOSITION
### TO PLAINTIFF'S EMERGENCY MOTION
### (RE: NON-AVAILABILITY OF MARK TURNER)

STATE OF LOUISIANA
PARISH OF LINCOLN

    BEFORE ME, the undersigned authority personally appeared this day Patrick Temple, who after being first duly sworn, deposes and says:

    1.    I am over the age of 18 years and competent to make this Affidavit. This Affidavit is made upon my personal knowledge.

    2.    I am the Managing Director of Correct Solutions, LLC, the defendant in this action.

    3.    Mark Turner is the Director of Sales for Correct Solutions, LLC and operates out of Wills Point, Texas. Mr. Turner oversees the customer accounts of Correct Solutions, LLC from a sales and customer service perspective, including the

customer account for the Sebastian County, Arkansas Sheriff's Office which operates the jail in Sebastian County, Arkansas.

4.     In the role of Director of Sales, Mr. Turner has specific personal knowledge regarding the Correct Solutions, LLC customer accounts including the customer account for the Sebastian County, Arkansas Sheriff's Office and the numerous problems the Sebastian County, Arkansas Sheriff's Office has experienced with products and services offered by Plaintiff, Smart Communications Holding, Inc. in the jail in Sebastian County, Arkansas. Accordingly, Mr. Turner is an extremely important witness for Correct Solutions, LLC in this action.

5.     Mr. Turner left for a pre-planned vacation on September 18, 2019 and will be unavailable to attend the hearing on Plaintiff's Emergency Motion scheduled for September 20, 2019 concerning the Sebastian County, Arkansas Sheriff's Office and the numerous problems the Sebastian County, Arkansas Sheriff's Office has experienced with products and services offered by Plaintiff, Smart Communications Holding, Inc. Mr. Turner's vacation has been planned for approximately two (2) years and includes a portion where he will be traveling on a cruise ship. Mr. Turner is set to return from his vacation on October 5, 2019.

6.     Plaintiff, Smart Communications Holding, Inc. was notified on August 28, 2019 of Mr. Turner's unavailability commencing September 18, 2019 as Mr. Turner verified the allegations of Correct Solutions, LLC's Verified Emergency Motion for Continuance which was provided to counsel for Plaintiff via electronic mail on August 28, 2019 in a good faith effort to resolve the issues contained therein pursuant to Administrative Order S-2019-007 and pursuant to Florida Rule of Civil Procedure

1.460, which states "if a continuance is sought on the ground of non-availability of a witness, the motion must show when it is believed the witness will be available." The Verified Emergency Motion for Continuance was served (but not filed) by Correct Solutions, LLC discloses that from September 18, 2019 through October 5, 2019, Mr. Turner was unavailable and it lists earlier dates in September 2019 and dates beginning Monday, October 7, 2019 when Mr. Turner would be available to testify.

FURTHER AFFIANT SAYETH NOT.

_____
PATRICK TEMPLE


SWORN TO AND SUBSCRIBED before me, this 19th day of September, 2019 by Patrick Temple who is personally known to me ~~or who produced~~ N/A ~~as identification.~~

_____
NOTARY PUBLIC
Printed Name: JAMES H HUNTER
My Commission Expires: with LIFE
LA BAR ROLL # 24807

3

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

     Plaintiff,

v.                          Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP,
LLC,

     Defendant.

_____/

## AFFIDAVIT OF PATRICK TEMPLE IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION

STATE OF LOUISIANA
PARISH OF LINCOLN

BEFORE ME, the undersigned authority personally appeared this day Patrick Temple, who after being first duly sworn, deposes and says:

1.    I am over the age of 18 years and competent to make this Affidavit. This Affidavit is made upon my personal knowledge.

2.    I am the Managing Director of Correct Solutions, LLC ("Correct Solutions"), the defendant in this action.

3.    In my position as Managing Director of Correct Solutions, I have specific knowledge regarding the operations of Correct Solutions.

4.    I have specific knowledge regarding the allegation in Paragraph 12 and 15 of Plaintiff's Emergency Motion that Correct Solutions attempted to buy Smart Communications. I asked Mark Turner, Director of Sales for Correct Solutions, to travel

to Florida to speak with Smart Communications executives to see if the company had interest in selling and to perform due diligence. Mark Turner attended a meeting in Florida with Smart Communications executives. There was no legitimate interest by Smart Communications in selling their business, and no legitimate interest by Correct Solutions in purchasing Smart Communications as a result of the hearing. Since that meeting, Correct Solutions has made the decision not to pursue purchasing Smart Communications and no further dialogue has taken place regarding a purchase and sale of Smart Communications.

5.     I have specific knowledge that the allegation in Paragraph 17 of Plaintiff's Emergency Motion that "Correct [Solutions] has obtained the ability to provide electronic messaging services similar to those provided by Smart [Communications]" is false. Correct Solutions has never had, and does not have, the ability to provide electronic messaging services directly to its customers, and that is why Correct Solutions sub-contracts those services out to companies such as Smart Communications. The reference to an "iMate E-Device" on the website of Correct Solutions as of August 2, 2019 was referencing a prior third-party offering by Correct Solutions from several years ago, and the "iMate E-Device" was never fully implemented in any customer facility (only beta tested). Moreover, the "iMate E-Device" has not been offered for sale by the third-party since January 2019.

6.     I have specific knowledge that the allegation in Paragraph 18 of Plaintiff's Emergency Motion that Correct Solutions is "cutting off direct communication" between Smart Communications and Correct Solutions customers or is "failing to provide access" by Smart Communications to Correct Solutions customers is false. Correct Solutions has

actively encouraged Smart Communications to respond to service issues at the customer facilities and that is bolstered by Correct Solutions sending the September 13, 2019 Notice of Default/Notice to Cure to Smart Communication pursuant to the explicit terms of the Master Services Agreement between the parties. Moreover, Correct Solutions has implemented a "trouble ticket system" with the knowledge of Smart Communications so that Correct Solutions can comply with its contractual obligation under each of the Schedules to the Master Services Agreement to provide "prompt notice" to Smart Communications of any "trouble or irregularity" with the Smart Communications equipment or services offered to the customer facilities of Correct Solutions.

7.    I have specific knowledge that the allegation in Paragraph 18 of Plaintiff's Emergency Motion that Correct Solutions is "allowing third party facilities to destroy Smart [Communication's] equipment" is false. No person employed by Correct Solutions has instructed or "allowed" a customer facility of Correct Solutions to destroy Smart Communication equipment.

FURTHER AFFIANT SAYETH NOT.

_____
PATRICK TEMPLE

SWORN TO AND SUBSCRIBED before me, this ___19th___ day of September, 2019 by Patrick Temple who is personally known to me or who produced ___N/A___ as identification.

_____
NOTARY PUBLIC
JAMES H HUNTER
My Commission Expires with Life
LA Bar Roll # 24807

3

Printed Name:_____
My Commission Expires:

| PLAINTIFF / DEFENDANT EXHIBIT LIST – CIVIL COURT | | Form No. |
|---|---|---|

**SMART COMMUNICATIONS HOLDING, INC**
Plaintiff

CASE NO: 19-CA-008089

**KENNETH GEORGE TURKEL**

DIVISION:   J

Plaintiff's Attorney
**BAJO CUVA COHEN AND TURKEL, PA**
100 N. TAMPA ST STE 1900
TAMPA, FLORIDA 33602

Bar #: 867233

Bar #:

Plaintiff Attorney's Address

Hearing Date(s): 09/20/19

VS.

**CORRECT SOLUTIONS, LLC**

Deputy Clerk: TINA CARRIZOSA

Defendant

**HARLLEE & BALD, P.A.**

202 12TH ST W
BRADENTON, FLORIDA 34205
Defendant's Attorney

Bar #: 434190

Defendant Attorney's Address

COURT REPORTER:

BAILIFF: JAMES HENDERSON

Judge:

| EXHIBIT # | DESCRIPTION OF EXHIBITS | MARKED | ADMITTED | W/ OR W/O OBJECTION | LOCATION |
|---|---|---|---|---|---|
| 1. | EMAIL FROM ALAN JOHNSON TO RICK FERGUSON- SUBJECT:  SMART TABLET SYSTEM | 09/20/19 | 09/20/19 | | 71-3-1 |
| 2. | EMAIL FROM RICK FERGUSON TO ALAN JOHNSON DATED 09/12/19 AT 10:51:46 AM | 09/20/19 | 09/20/19 | | 1 |
| 3. | | | | | |
| 4. | | | | | |
| 5. | | | | | |
| 6. | | | | | |
| 7. | | | | | |
| 8. | | | | | |
| 9. | | | | | |
| 10. | | | | | |
| 11. | | | | | |

Inventoried By: _JMorgan_    _Tina Carrizosa_  Date: __09-23-19__

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

**NOTICE OF INTENT TO SERVE**
**SUBPOENA DUCES TECUM WITHOUT DEPOSITION**

      PLEASE TAKE NOTICE that, pursuant to Rule 1.351 of the Florida Rules of Civil

Procedure, Plaintiff, Smart Communications U.S., Inc. ("Smart Comm"), intends, after 10 days,

and if no objections are received from any party, to serve the attached Subpoena directed to the

following:

    1)  Tech Friends, Inc.
        2225 E. Highland Dr.
        Jonesboro, AR 72401

            Via its Florida Registered Agent
            Corporation Service Company
            Tallahassee, FL 32301-2525 on-party to this action:

DATED:  September 25, 2019.

                                */s/ Brad F. Barrios*_____
                                Kenneth G. Turkel – FBN 867233
                                E-mail: kturkel@bajocuva.com
                                Brad F. Barrios – FBN 35293
                                E-mail: bbarrios@bajocuva.com
                                David A. Hayes – FBN  96657
                                E-mail: dhayes@bajocuva.com
                                BAJO | CUVA | COHEN | TURKEL

100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of September, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
          JEL@harlleebald.com
          DDF@harlleebald.com
          CL@harlleebald.com

*/s/ Brad F. Barrios*
Attorney

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                                Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## SUBPOENA DUCES TECUM WITHOUT DEPOSITION

THE STATE OF FLORIDA:

    1)  Tech Friends, Inc.
       2225 E. Highland Dr.
       Jonesboro, AR  72401

            Via its Florida Registered Agent
            Corporation Service Company
            Tallahassee, FL  32301-2525

YOU ARE COMMANDED to appear at Bajo | Cuva | Cohen | Turkel, 100 N. Tampa Street, Suite 1900, Tampa, FL 33602, on **Friday, October 25, 2019, at 10:00 a.m.** and to have with you at that time and place the following:

### SEE EXHIBIT "A"

It is the intent of this subpoena that each and every document and thing in your care, custody, or control, or available to you, no matter how insignificant that item may appear to the party to whom this subpoena is directed, be produced.

This subpoena encompasses all documents and things, regardless of how old, including anything that might be on microfilm/micro-fiche or kept at another location.

To comply with the subpoena, you are to produce each and every document or thing which has ever been a part of your file.  If any document or thing is not produced, you are to

1

identify that document or thing by date, title, author, and recipient; and identify the person, pursuant to whose instruction the documents or things were not produced, by name, address and employer.

These items will be inspected and may be copied at that time.  You will not be required to surrender the original items.

**YOU MAY COMPLY WITH THIS SUBPOENA BY PROVIDING LEGIBLE COPIES OF THE ITEMS TO BE PRODUCED TO BAJO | CUVA | COHEN | TURKEL, ATTN: BRAD F. BARRIOS, 100 N. TAMPA STREET, SUITE 1900, TAMPA, FL  33602 ON OR BEFORE THE SCHEDULED DATE OF PRODUCTION.**

You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation.

**You may mail, e-mail to bbarrios@bajocuva.com, or deliver the copies to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel, 100 N. Tampa Street, Suite 1900, Tampa, FL  33602 and thereby eliminate your appearance at the time and place specified above.**

You have the right to object to the production pursuant to this subpoena at any time before production by giving written notice to the attorney whose name appears on this subpoena.

**THIS WILL NOT BE A DEPOSITION.  NO TESTIMONY WILL BE TAKEN.**

If you fail to:

(1) appear as specified; or
(2) furnish the records instead of appearing as provided above; or
(3) object to this subpoena

You may be in contempt of court.  You are subpoenaed to appear by the following attorney, and unless excused from this subpoena by this attorney or the court, you shall respond to this subpoena as directed.

**\*\*RECORDS CUSTODIAN – PLEASE COMPLETE ATTACHED AFFIDAVIT\*\***

**PLEASE GOVERN YOURSELF ACCORDINGLY.**

DATED on October ___, 2019.

For the Court

_____
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com

2

Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*


   **If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.  Please contact [identify applicable court personnel by name, address, and telephone number] at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

## ATTACHMENT "A" TO SUBPOENA DUCES TECUM
## ISSUED TO TECH FRIENDS, INC.

### INSTRUCTIONS

As used in this Exhibit:

1.  **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.  "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, letters, emails, text messages, chats, social media posts or messages, telephone conversations or face to face conversations, meetings and conferences.

3.  "**You**," "**Your**," and/or "**Tech Friends**" means Tech Friends, Inc., and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.  "**Correct Solutions**" means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

5.  "**LaSalle**" means LaSalle Corrections or any of its affiliates, subsidiaries, or agents, including but not limited to LaSalle Southwest Corrections.

6.  "**Avoyelles**" means Avoyelles Parish Sheriff's Office, Marksville, LA, or any related entity which operates or contracts for a correctional facility in Avoyelles Parish, LA.

7.  "**Bowie**" means LaSalle Corrections-Bowie County Jail, Texarkana, TX, or any related entity which operates or contracts for a correctional facility in Bowie County, TX.

8.      **"Lamar"** means Lamar County Sheriff's Office/Lamar County Jail, Purvis, MS, or any related entity which operates or contracts for a correctional facility in Lamar County, MS.

9.      **"Miller"** means Miller County Sheriff's Office, Texarkana, AR, or any related entity which operates or contracts for a correctional facility in Miller County, AR.

10.     **"Moore"** means Moore County Sheriff's Dept./Moore County Jail, Lynchburg, TN, or any related entity which operates or contracts for a correctional facility in Moore County, TN.

11.     **"Sebastian"** means Sebastian County Sheriff's Dept., Fort Smith, AR, or any related entity which operates or contracts for a correctional facility in Sebastian County, AR.

12.     **"St. Louis"** means City of St. Louis City Justice Center/Medium Security Institution, St. Louis, MO, or any related entity which operates or contracts for a correctional facility in St. Louis, MO.

13.     **"Washington"** means Washington County Sheriff's Dept., Fayetteville, AR, or any related entity which operates or contracts for a correctional facility in Washington County, AR.

14.     **"Wayne"** means Wayne County Sheriff's Office, Jesup, GA, or any related entity which operates or contracts for a correctional facility in Wayne County, GA.

15.     "**Smart-Correct Facility**" means any correctional facility that has tablets or kiosks identified with a "Smart Communications" brand or logo and which is also serviced by Correct Solutions in some capacity.

16.     "**Smart-LaSalle Facility**" means any correctional facility that has tablets or kiosks identified with a "Smart Communications" brand or logo and which is also managed by LaSalle.

17.     **"Inmate Services"** means any electronic services provided by you to a correctional facility for use by inmates through kiosks, tablets, or video equipment at said correctional facility, including, but not limited to, email, instant messaging, text messaging, video visitation, grievance forms, medical forms, commissary forms, entertainment content, and educational content.

18.     In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

19.     A separate answer shall be furnished for each request.

5

## REQUESTS

1)   All communications with Correct Solutions from September 13, 2017 to the present related to Your providing Inmate Services for the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

2)   All text messages with Correct Solutions from September 13, 2017 to the present related to Your providing Inmate Services for the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

3)   All communications with the following from September 13, 2017 to the present related to Your providing Inmate Services: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

4)   All presentations provided by You to the following from September 13, 2017 to the present regarding providing Inmate Services: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

5)   Photographs of the front and back of each model of tablets that You used to provide Inmate Services to correctional facilities as of September 13, 2017.

6)   Photographs of the front and back of each model of tablets that You currently use to provide Inmate Services to correctional facilities.

7)   One physical sample of each model tablet that You used to provide Inmate Services to correctional facilities as of September 13, 2017.

8)   One physical sample of each model tablet that You currently use to provide Inmate Services to correctional facilities.

9)   Documents sufficient to demonstrate the design, construction, and materials used for each model of tablets that You used to provide Inmate Services to correctional facilities as of September 13, 2017.

10)  Documents sufficient to demonstrate the design, construction, and materials used for each model of tablets that You currently use to provide Inmate Services to correctional facilities.

11)  All documents and/or photographs from September 13, 2017 to the present relating to any durability issues with your tablets, including, but not limited to, customer complaints, communications regarding inmate tampering or destruction of tablets, and photographs of tablets that have been dismantled or damaged.

12) All documents, including, but not limited to, draft contracts, negotiations, correspondence, and final contracts between You and Correct Solutions related to Your providing Inmate Services for the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

13) All draft contracts, negotiations, correspondence, and final contracts between You and the following facilities since September 13, 2017 related to Your providing Inmate Services: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

14) Documents sufficient to demonstrate the revenue You generated by providing Inmate Services from September 13, 2017 to the present at the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, any Smart-LaSalle Facility.

15) Documents sufficient to demonstrate the number of tablets You have deployed, on a month-to-month basis, from September 13, 2017 to the present at the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

16) All documents and communications wherein You, Correct Solutions, or any of the following reference the existence of a contract between Smart Communications and Correct Solutions: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

17) All documents and communications wherein You, Correct Solutions, or any of the following reference the fact that Smart Communications provides services to any of the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

## RECORDS CUSTODIAN CERTIFICATION
## OF BUSINESS RECORDS

RECORDS PROVIDER:

**Tech Friends, Inc.**
**2225 E. Highland Dr.**
**Jonesboro, AR  72401**

DATE: _____, 2019

TO:   Brad F. Barrios
        BAJO | CUVA | COHEN | TURKEL
        101 E. Kennedy Blvd., Suite 1900
        Tampa, FL  33602

**RE:  BUSINESS RECORDS OF TECH FRIENDS, INC.**

      I, _____, as custodian of the business records of the above named person, hereby certify that the enclosed records regarding the above named person, consisting of  _____ photocopied pages, are correct copies of the records maintained in a designated record set that were made at or near the time of the occurrence by a person with knowledge of the matters therein, and that the records were kept in the course of regularly conducted business activity and made as a regular practice in the course of the regularly conducted business activity.

                              _____
                              **Signature of Records Custodian**


                              _____
                              **Company**

8

Filing # 96307061 E-Filed 09/25/2019 05:47:28 PM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                            Case No: 19-CA-008089

        Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

        Defendant.
_____/

## AMENDED NOTICE OF INTENT TO SERVE
## SUBPOENA DUCES TECUM WITHOUT DEPOSITION

        PLEASE TAKE NOTICE that, pursuant to Rule 1.351 of the Florida Rules of Civil

Procedure, Plaintiff, Smart Communications Holding, Inc. ("Smart Comm"), intends, after 10

days, and if no objections are received from any party, to serve the attached Subpoena directed to

the following:

    1) Tech Friends, Inc.
       2225 E. Highland Dr.
       Jonesboro, AR 72401

            Via its Florida Registered Agent
            Corporation Service Company
            Tallahassee, FL 32301-2525 on-party to this action:

DATED:  September 25, 2019.

                                    /s/ Brad F. Barrios
                                    Kenneth G. Turkel – FBN 867233
                                    E-mail: kturkel@bajocuva.com
                                    Brad F. Barrios – FBN 35293
                                    E-mail: bbarrios@bajocuva.com
                                    David A. Hayes – FBN  96657
                                    E-mail: dhayes@bajocuva.com
                                    BAJO | CUVA | COHEN | TURKEL

{BC00258974:1}

100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of September, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
         JEL@harlleebald.com
         DDF@harlleebald.com
         CL@harlleebald.com

*/s/ Brad F. Barrios*
Attorney

2

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                   Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## SUBPOENA DUCES TECUM WITHOUT DEPOSITION

THE STATE OF FLORIDA:

    1)  Tech Friends, Inc.
        2225 E. Highland Dr.
        Jonesboro, AR  72401

                Via its Florida Registered Agent
                Corporation Service Company
                Tallahassee, FL  32301-2525

      YOU ARE COMMANDED to appear at Bajo | Cuva | Cohen | Turkel, 100 N. Tampa Street, Suite 1900, Tampa, FL 33602, on **Friday, October 25, 2019, at 10:00 a.m.** and to have with you at that time and place the following:

### SEE EXHIBIT "A"

      It is the intent of this subpoena that each and every document and thing in your care, custody, or control, or available to you, no matter how insignificant that item may appear to the party to whom this subpoena is directed, be produced.

      This subpoena encompasses all documents and things, regardless of how old, including anything that might be on microfilm/micro-fiche or kept at another location.

      To comply with the subpoena, you are to produce each and every document or thing which has ever been a part of your file.  If any document or thing is not produced, you are to

identify that document or thing by date, title, author, and recipient; and identify the person, pursuant to whose instruction the documents or things were not produced, by name, address and employer.

These items will be inspected and may be copied at that time.  You will not be required to surrender the original items.

**YOU MAY COMPLY WITH THIS SUBPOENA BY PROVIDING LEGIBLE COPIES OF THE ITEMS TO BE PRODUCED TO BAJO | CUVA | COHEN | TURKEL, ATTN: BRAD F. BARRIOS, 100 N. TAMPA STREET, SUITE 1900, TAMPA, FL  33602 ON OR BEFORE THE SCHEDULED DATE OF PRODUCTION.**

You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation.

**You may mail, e-mail to bbarrios@bajocuva.com, or deliver the copies to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel, 100 N. Tampa Street, Suite 1900, Tampa, FL  33602 and thereby eliminate your appearance at the time and place specified above.**

You have the right to object to the production pursuant to this subpoena at any time before production by giving written notice to the attorney whose name appears on this subpoena.

**THIS WILL NOT BE A DEPOSITION.  NO TESTIMONY WILL BE TAKEN.**

If you fail to:

(1) appear as specified; or
(2) furnish the records instead of appearing as provided above; or
(3) object to this subpoena

You may be in contempt of court.  You are subpoenaed to appear by the following attorney, and unless excused from this subpoena by this attorney or the court, you shall respond to this subpoena as directed.

**\*\*RECORDS CUSTODIAN – PLEASE COMPLETE ATTACHED AFFIDAVIT\*\***

**PLEASE GOVERN YOURSELF ACCORDINGLY.**

DATED on October ___, 2019.

For the Court

_____
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com

2

Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN 96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

    **If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance. Please contact [identify applicable court personnel by name, address, and telephone number] at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

## ATTACHMENT "A" TO SUBPOENA DUCES TECUM
## ISSUED TO TECH FRIENDS, INC.

## INSTRUCTIONS

As used in this Exhibit:

1.   **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.   "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, letters, emails, text messages, chats, social media posts or messages, telephone conversations or face to face conversations, meetings and conferences.

3.   "**You**," "**Your**," and/or "**Tech Friends**" means Tech Friends, Inc., and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.   **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

5.   "**LaSalle**" means LaSalle Corrections or any of its affiliates, subsidiaries, or agents, including but not limited to LaSalle Southwest Corrections.

6.   **"Avoyelles"** means Avoyelles Parish Sheriff's Office, Marksville, LA, or any related entity which operates or contracts for a correctional facility in Avoyelles Parish, LA.

7.   **"Bowie"** means LaSalle Corrections-Bowie County Jail, Texarkana, TX, or any related entity which operates or contracts for a correctional facility in Bowie County, TX.

4

8.      **"Lamar"** means Lamar County Sheriff's Office/Lamar County Jail, Purvis, MS, or any related entity which operates or contracts for a correctional facility in Lamar County, MS.

9.      **"Miller"** means Miller County Sheriff's Office, Texarkana, AR, or any related entity which operates or contracts for a correctional facility in Miller County, AR.

10.     **"Moore"** means Moore County Sheriff's Dept./Moore County Jail, Lynchburg, TN, or any related entity which operates or contracts for a correctional facility in Moore County, TN.

11.     **"Sebastian"** means Sebastian County Sheriff's Dept., Fort Smith, AR, or any related entity which operates or contracts for a correctional facility in Sebastian County, AR.

12.     **"St. Louis"** means City of St. Louis City Justice Center/Medium Security Institution, St. Louis, MO, or any related entity which operates or contracts for a correctional facility in St. Louis, MO.

13.     **"Washington"** means Washington County Sheriff's Dept., Fayetteville, AR, or any related entity which operates or contracts for a correctional facility in Washington County, AR.

14.     **"Wayne"** means Wayne County Sheriff's Office, Jesup, GA, or any related entity which operates or contracts for a correctional facility in Wayne County, GA.

15.     "**Smart-Correct Facility**" means any correctional facility that has tablets or kiosks identified with a "Smart Communications" brand or logo and which is also serviced by Correct Solutions in some capacity.

16.     "**Smart-LaSalle Facility**" means any correctional facility that has tablets or kiosks identified with a "Smart Communications" brand or logo and which is also managed by LaSalle.

17.     **"Inmate Services"** means any electronic services provided by you to a correctional facility for use by inmates through kiosks, tablets, or video equipment at said correctional facility, including, but not limited to, email, instant messaging, text messaging, video visitation, grievance forms, medical forms, commissary forms, entertainment content, and educational content.

18.     In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

19.     A separate answer shall be furnished for each request.

## REQUESTS

1) All communications with Correct Solutions from September 13, 2017 to the present related to Your providing Inmate Services for the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

2) All text messages with Correct Solutions from September 13, 2017 to the present related to Your providing Inmate Services for the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

3) All communications with the following from September 13, 2017 to the present related to Your providing Inmate Services: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

4) All presentations provided by You to the following from September 13, 2017 to the present regarding providing Inmate Services: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

5) Photographs of the front and back of each model of tablets that You used to provide Inmate Services to correctional facilities as of September 13, 2017.

6) Photographs of the front and back of each model of tablets that You currently use to provide Inmate Services to correctional facilities.

7) One physical sample of each model tablet that You used to provide Inmate Services to correctional facilities as of September 13, 2017.

8) One physical sample of each model tablet that You currently use to provide Inmate Services to correctional facilities.

9) Documents sufficient to demonstrate the design, construction, and materials used for each model of tablets that You used to provide Inmate Services to correctional facilities as of September 13, 2017.

10) Documents sufficient to demonstrate the design, construction, and materials used for each model of tablets that You currently use to provide Inmate Services to correctional facilities.

11) All documents and/or photographs from September 13, 2017 to the present relating to any durability issues with your tablets, including, but not limited to, customer complaints, communications regarding inmate tampering or destruction of tablets, and photographs of tablets that have been dismantled or damaged.

12) All documents, including, but not limited to, draft contracts, negotiations, correspondence, and final contracts between You and Correct Solutions related to Your providing Inmate Services for the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

13) All draft contracts, negotiations, correspondence, and final contracts between You and the following facilities since September 13, 2017 related to Your providing Inmate Services: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

14) Documents sufficient to demonstrate the revenue You generated by providing Inmate Services from September 13, 2017 to the present at the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, any Smart-LaSalle Facility.

15) Documents sufficient to demonstrate the number of tablets You have deployed, on a month-to-month basis, from September 13, 2017 to the present at the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

16) All documents and communications wherein You, Correct Solutions, or any of the following reference the existence of a contract between Smart Communications and Correct Solutions: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

17) All documents and communications wherein You, Correct Solutions, or any of the following reference the fact that Smart Communications provides services to any of the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

## RECORDS CUSTODIAN CERTIFICATION
## OF BUSINESS RECORDS

RECORDS PROVIDER:

**Tech Friends, Inc.**
**2225 E. Highland Dr.**
**Jonesboro, AR  72401**

DATE: _____, 2019

TO:    Brad F. Barrios
       BAJO | CUVA | COHEN | TURKEL
       101 E. Kennedy Blvd., Suite 1900
       Tampa, FL  33602

       **RE:  BUSINESS RECORDS OF TECH FRIENDS, INC.**

      I, _____, as custodian of the business records of the above named person, hereby certify that the enclosed records regarding the above named person, consisting of _____ photocopied pages, are correct copies of the records maintained in a designated record set that were made at or near the time of the occurrence by a person with knowledge of the matters therein, and that the records were kept in the course of regularly conducted business activity and made as a regular practice in the course of the regularly conducted business activity.

                 _____
                 **Signature of Records Custodian**

                 _____
                 **Company**

8

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

      Plaintiff,

v.                                   Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## REPLY TO PLAINTIFF/COUNTER-DEFENDANT'S
## AFFIRMATIVE DEFENSES

      Defendant/Counter-Plaintiff, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC (Correct Solutions), replies to the Affirmative Defenses of Plaintiff/Counter-Defendant, Smart Communications Holding, Inc. ("Smart Communications"), and says:

      1.    Correct Solutions denies the First Affirmative Defense. As an avoidance, Correct Solutions states that the NDA continues in full force and effect and both the NDA and the Master Services Agreement were breached by Smart Communications. In accordance with the terms of the Master Services Agreement, Smart Communications is required to remove its equipment upon the termination of the contract and no injunctive relief is necessary. Further, the parties agree that a violation of the NDA would cause damage to the non-violating party and therefore Correct Solutions is entitled to recover any damages it proves at trial.

2.      Correct Solutions denies the Second Affirmative Defense. As an avoidance, Correct Solutions states that Smart Communications intentionally or negligently provided inferior equipment and poor services to Correct Solutions' customers. Smart Communications failed to provide ruggedized and correctional grade tablets and equipment to the facilities for use by inmates and failed to timely and adequately address the defective equipment and services provided by Smart Communications. Moreover, Smart Communications has the ability in real time to identify which equipment is not in operation and not withstanding real time notice, Smart Communications either intentionally or negligently failed to perform. Finally, Smart Communications has alienated at least one of Correct Solutions' customers based on its conduct.

3.      Correct Solutions denies the Third Affirmative Defense. As an avoidance, Correct Solutions states that the NDA continues in full force and effect and both the NDA and the Master Services Agreement were breached by Smart Communications.

4.      Correct Solutions denies the Fourth Affirmative Defense.

5.      Correct Solutions denies the Fifth Affirmative Defense.

6.      Correct Solutions denies the Sixth Affirmative Defense.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL    33602; bbarrios@bajocuva.com;

dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on 2nd

day of October, 2019.

HARLLEE & BALD, P.A.

By: _____

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4828-5794-1415, v. 1

3

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

       Plaintiff,

v.                            Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

       Defendant.
_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S
FIRST REQUEST FOR PRODUCTION**

Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC (Correct

Solutions), hereby serves its Response to Plaintiff's First Request for Production, and says

as follows:

**General Objections**

Correct Solutions objects to the Definitions and Instructions contained in the First

Request for Production served by Plaintiff to the extent the Definitions and Instructions

exceed what is authorized by the Florida Rules of Civil Procedure, or Florida law, or

require Correct Solutions to create documents which do not currently exist.

Correct Solutions objects to the First Request for Production served by Plaintiff to

the extent it seeks the production of documents protected by the attorney-client privilege,

the work product doctrine or any other applicable privilege.

Correct Solutions objects to each request for production that requires all

documents be produced as Correct Solutions cannot guarantee that the documents in its

possession constitute all documents that would fall within the category.

Correct Solutions objects to producing the documents at the offices of counsel for

Plaintiff as the documents are being accumulated by Correct Solutions' counsel located in Bradenton, Florida.

Subject to, and without waiving the foregoing General Objections, Correct Solutions responds to Plaintiff's First Request for Production served by Plaintiff as follows and will produce the responsive documents on a mutually agreeable date, time, and location.

## RESPONSES TO DOCUMENTS REQUESTED

1.   The responsive documents shall be produced.

2.   The responsive documents shall be produced.

3.   The responsive documents shall be produced.

4.   Correct Solutions objects to producing any documents pertaining to a potential replacement for Smart's services, systems, or equipment who will provide any equipment, systems or services after the schedule between Correct Solutions and Smart expires. Subject to this objection, responsive documents, if any, shall be produced.

5.   The responsive documents shall be produced.

6.   The responsive documents shall be produced.

7.   The responsive documents shall be produced.

8.   Correct Solutions objects to producing any documents pertaining to a potential replacement for Smart's services, systems, or equipment who will provide any equipment, systems or services after the schedule between Correct Solutions and Smart expires. Subject to this objection, responsive documents, if any, shall be produced.

9.   The responsive documents shall be produced.

10.   The responsive documents shall be produced.

11.   The responsive documents shall be produced.

12.   Correct Solutions objects to producing any documents pertaining to a

2

potential replacement for Smart's services, systems, or equipment who will provide any equipment, systems or services after the schedule between Correct Solutions and Smart expires. Subject to this objection, responsive documents, if any, shall be produced.

13.   The responsive documents shall be produced.

14.   The responsive documents shall be produced.

15.   The responsive documents shall be produced.

16.   Correct Solutions objects to producing any documents pertaining to a potential replacement for Smart's services, systems, or equipment who will provide any equipment, systems or services after the schedule between Correct Solutions and Smart expires. Subject to this objection, responsive documents, if any, shall be produced.

17.   The responsive documents shall be produced.

18.   The responsive documents shall be produced.

19.   The responsive documents shall be produced.

20.   Correct Solutions objects to producing any documents pertaining to a potential replacement for Smart's services, systems, or equipment who will provide any equipment, systems or services after the schedule between Correct Solutions and Smart expires. Subject to this objection, responsive documents, if any, shall be produced.

21.   The responsive documents shall be produced.

22.   The responsive documents shall be produced.

23.   The responsive documents shall be produced.

24.   Correct Solutions objects to producing any documents pertaining to a potential replacement for Smart's services, systems, or equipment who will provide any equipment, systems or services after the schedule between Correct Solutions and Smart expires. Subject to this objection, responsive documents, if any, shall be produced.

25.   The responsive documents shall be produced.

26.    The responsive documents shall be produced.

27.    The responsive documents shall be produced.

28.    Correct Solutions objects to producing any documents pertaining to a potential replacement for Smart's services, systems, or equipment who will provide any equipment, systems or services after the schedule between Correct Solutions and Smart expires. Subject to this objection, responsive documents, if any, shall be produced.

29.    The responsive documents shall be produced.

30.    The responsive documents shall be produced.

31.    The responsive documents shall be produced.

32.    Correct Solutions objects to producing any documents pertaining to a potential replacement for Smart's services, systems, or equipment who will provide any equipment, systems or services after the schedule between Correct Solutions and Smart expires. Subject to this objection, responsive documents, if any, shall be produced.

33.    Correct Solutions objects to producing any documents pertaining to Miller County as Correct Solutions and Smart have no contractual relationship as to Miller County. No documents including communication between Correct Solutions and Miller County have any relevancy to any issues in this action nor will they lead to the discovery of relevant documents. Moreover, Smart is now a direct competitor as to the services Correct Solutions provides to Miller County and this request seeks documents and information which would assist Smart in its efforts to compete with Correct Solutions and have no relation to any issue in the litigation.

34.    Correct Solutions objects to producing any documents pertaining to Miller County as Correct Solutions and Smart have no contractual relationship as to Miller County. No documents including communication between Correct Solutions and Miller County have any relevancy to any issues in this action nor will they lead to the discovery

4

of relevant documents. Moreover, Smart is now a direct competitor as to the services Correct Solutions provides to Miller County and this request seeks documents and information which would assist Smart in its efforts to compete with Correct Solutions and have no relation to any issue in the litigation.

35.     Correct Solutions objects to producing any documents pertaining to Miller County as Correct Solutions and Smart have no contractual relationship as to Miller County. No documents including communication between Correct Solutions and Miller County have any relevancy to any issues in this action nor will they lead to the discovery of relevant documents. Moreover, Smart is now a direct competitor as to the services Correct Solutions provides to Miller County and this request seeks documents and information which would assist Smart in its efforts to compete with Correct Solutions and have no relation to any issue in the litigation.

36.     Correct Solutions objects to producing any documents pertaining to Miller County as Correct Solutions and Smart have no contractual relationship as to Miller County. No documents including communication between Correct Solutions and Miller County have any relevancy to any issues in this action nor will they lead to the discovery of relevant documents. Moreover, Smart is now a direct competitor as to the services Correct Solutions provides to Miller County and this request seeks documents and information which would assist Smart in its efforts to compete with Correct Solutions and have no relation to any issue in the litigation.

37.     There are no Joint Customers between Correct Solutions and Smart. Any responsive documents pertaining to Correct Solutions' customers as to how to report to Smart's defective equipment, services or other issues pertaining to Smart from January 1, 2019 to the present.

38.     Correct Solutions objects to producing any documents that fall within the

5

attorney-client privilege or which constitute work product. Subject to this objection, the responsive documents will be produced. Any withheld documents shall be listed on a privilege log that shall be served after the responsive documents have been organized and Bates numbered.

39.     Correct Solutions objects to producing any documents that fall within the attorney-client privilege or which constitute work product. Subject to this objection, the responsive documents will be produced. Any withheld documents shall be listed on a privilege log that shall be served after the responsive documents have been organized and Bates numbered.

40.     Correct Solutions objects to producing any documents that fall within the attorney-client privilege or which constitute work product. Subject to this objection, the responsive documents will be produced. Any withheld documents shall be listed on a privilege log that shall be served after the responsive documents have been organized and Bates numbered.

41.     Correct Solutions objects to this request as it is overly broad and may include communications that are unrelated to the equipment and services provided by Smart. Subject to this objection, responsive documents relating to Smart shall be produced.

42.     Correct Solutions objects to this request as it is overly broad and may include communications that are unrelated to the equipment and services provided by Smart. Subject to this objection, responsive documents relating to Smart shall be produced.

43.     To the extent there are any responsive documents, they shall be produced.

44.     To the extent there are any responsive documents, they shall be produced.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL   33602; bbarrios@bajocuva.com;  dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on the 11th day of October, 2019.

HARLLEE & BALD, P.A.

By: _____
KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Koch, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4828-9957-5464 v 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

      Plaintiff,

v.                               Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## DEFENDANT'S RESPONSE TO PLAINTIFF'S
## SECOND REQUEST FOR PRODUCTION

    Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC (Correct Solutions), hereby serves its Response to Plaintiff's Second Request for Production, and says as follows:

### General Objections

    Correct Solutions objects to the Definitions and Instructions contained in the Second Request for Production served by Plaintiff to the extent the Definitions and Instructions exceed what is authorized by the Florida Rules of Civil Procedure, or Florida law, or require Correct Solutions to create documents which do not currently exist.

    Correct Solutions objects to the Second Request for Production served by Plaintiff to the extent it seeks the production of documents protected by the attorney-client privilege, the work product doctrine, or any other applicable privilege.

    Correct Solutions objects to each request for production that requires all documents be produced as Correct Solutions cannot guarantee that the documents in its possession constitute all documents that would fall within the category.

Correct Solutions objects to producing the documents at the office of counsel for Plaintiff as the documents are being accumulated by Correct Solutions counsel located in Bradenton, Florida.

Subject to, and without waiving the foregoing General Objections, Correct Solutions responds to Plaintiff's Second Request for Production served by Plaintiff as follows and will produce the responsive documents on a mutually agreeable date, time, and location.

## RESPONSES TO DOCUMENTS REQUESTED

1.   The responsive documents shall be produced.

2.   The responsive documents shall be produced.

3.   An exemplar shall be made available at the office of Harllee & Bald.

4.   The responsive documents shall be produced.

5.   The responsive documents shall be produced.

6.   The responsive documents shall be produced.

7.   The responsive documents shall be produced.

8.   The responsive documents shall be produced.

9.   The responsive documents shall be produced.

10.   Correct Solutions objects to producing any documents pertaining to communications between a potential provider who may provide services or equipment commencing subsequent to the expiration of the schedule between Correct Solutions and Smart for Sebastian County. Subject to this objection, to the extent responsive documents exist, they shall be provided.

11.   None.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL  33602; bbarrios@bajocuva.com; dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on 15th day of October, 2019.

HARLLEE & BALD, P.A.

By: _____

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4842-1232-7336 v 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

      Plaintiff,

v.                                Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.
_____/

## DEFENDANT'S REQUEST FOR COPIES

Pursuant to Fla. R. Civ. P. 1.351(e), Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC hereby requests copies of all documents produced in response to Plaintiff, Smart Communications Holding, Inc., Subpoena Duces Tecum without Deposition directed to Tech Friends, Inc. Defendant agrees to pay reasonable copy charges for copies of the documents produced.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com;

kturkel@bajocuva.com; tdeleo@bajocuva.com on this __16__ day of October, 2019.

HARLLEE & BALD, P.A.

By: _____
KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

      Plaintiff,

v.                                                                      Case No: 2019 CA 008089

CORRECT  SOLUTIONS,  LLC,  a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## DEFENDANT'S SECOND REQUEST FOR ADMISSIONS

Pursuant to Florida Rule of Civil Procedure 1.370, Defendant, Correct Solutions, LLC,

a/k/a Correct Solutions Group, LLC (herein "Correct Solutions"), requests Plaintiff, Smart

Communications Holding, Inc. (herein "Smart Communications"), to admit the following:

    1.    At no time since June 15, 2017 has Correct Solutions, LLC offered to perform

to any of the eight facilities described in paragraph 19 of the Verified Complaint any of the

services granted to Smart Communications under the Master Service Agreement.

    2.    At no time since June 15, 2017 has Correct Solutions, LLC offered to provide

to any facility the iMate E-Device referenced in paragraph 29 of your Verified Complaint.

    3.    As of January 2019, the iMate E-Device was no longer serviced by Lattice, Inc.

    4.    As of the filing of the Verified Complaint, Smart Communications knew that

Correct Solutions, LLC did not provide electronic messaging services other than through a

third party vender.

    5.    At no time since June 15, 2017 has Correct Solutions, LLC sold or offered for

sale a tablet that performed the services granted to Smart Communications in the

agreement.

6.     At the time of the filing of the Verified Complaint, Smart Communications was aware that the iMate E-Device was no longer available in the market.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Esquire, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on 18th day of October, 2019.

HARLLEE & BALD, P.A.

By: _____
KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelparsons.com

Attorneys for Correct Solutions, LLC

4832-0063-2998, v. 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

       Plaintiff,

v.                          Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

       Defendant.

_____/

### DEFENDANT'S SECOND REQUEST FOR PRODUCTION
### OF DOCUMENTS TO PLAINTIFF

Pursuant to Florida Rule of Civil Procedure 1.350, Defendant Correct Solutions,

LLC a/k/a Correct Solutions Group, LLC ("Correct Solutions") requests Plaintiff, Smart

Communications Holding, Inc. ("Smart Communications"), to serve its written Response

within thirty (30) days after service of this Request and to produce the documents for

inspection and copying on December 3, 2019 beginning at 11:00 A.M. at the offices of Bajo

Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602, or at such

other reasonable time and place as mutually agreeable by the parties, the originals and all

non-identical copies of the following designated documents in your possession, custody

or control or which can be discovered by reasonably diligent efforts.

### DEFINITIONS

1.      The term "you" or "your" shall mean Smart Communications Holding, Inc.

to whom this Second Request for Production of Documents is addressed, and all other

persons acting on behalf of Smart Communications Holding, Inc.

2.      The term "communication(s)" means any documents that are, or which relate to or refer to, correspondence, letters, notes, memoranda, telegrams, inquiries, discussions, conversations, translations, telephone conversations, facsimiles, electronic mail messages, instant messages, text messages, negotiations, agreements, meetings, and any other forms of written communication or documents that in any way relate to or refer to verbal or other communications.

3.      The term "document(s)" means any written or graphic material or other means of preserving thought or expression, any tangible thing and electronically stored information (ESI) from which information can be obtained, including but not limited to the complete original or true copy thereof and any non-identical copy and all drafts of correspondence, electronic mail (email), social media postings, social media communications (i.e. direct messages), memoranda, notes, messages, bulletins, notes of meetings or other communications, notes of interoffice and intraoffice telephone calls, diaries, calendars, logs, chronological data, minutes, books, reports, appraisals, charts, ledgers, invoices, worksheets, data compilations, data sheets, data processing cards, receipts, tax returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, agreements, transcripts, statistics, surveys, magazine or newspaper articles, photographs, graphs, microfiche, microfilm, videotape, recordings, and electronic, mechanical or electric recordings or representations of any kind (including without limitation, tapes, cassettes, discs and recordings), hard copy printouts of any "e-mail" communications or the equivalent and "deleted" but recoverable electronic files.

4.      The term "document(s)" also includes all data (even if available only in computer readable form), text, or information stored on a computer, computer disk, CD-ROM, USB memory stick, e-mail, e-mail file, voicemail, or other archive medium and

all information in any computer database although not yet printed out.

     5.    If any document has been prepared in several copies which are not identical, or if the original identical copies are no longer identical by reason of subsequent notation or other modification, including, but not limited to, notations on the backs of pages thereto, each non-identical copy is a separate document within the meaning of the term "document(s)" as defined above.

     6.    All responsive electronically stored information (ESI) shall be provided in a reasonably usable native format with metadata preserved and shall be free from any impediment affecting access and evaluation of the information. Excel® spreadsheets shall be provided in native format.

## INSTRUCTIONS AS TO ELECTRONIC DATA

Electronic data is a source for discovery and/or evidence. Florida law and court rules pertaining to the preservation of records applies to electronic data in substantially the same manner as applied to paper records. Therefore, electronic data pertaining in any manner whatsoever to this lawsuit, whether stored on-line or archived off-line, should be preserved.

## INSTRUCTIONS AS TO CLAIM OF PRIVILEGE, WORK PRODUCT, ETC.

With respect to those documents withheld from production as being privileged or subject to protection as trial preparation material, please submit with your response to the document production a "Privilege Log" as required by Fla. R. Civ. P. 1.280(b)(5).

## DOCUMENTS REQUESTED

     1.    For the time period of January 1, 2018 to present, any documents and/or communications including any closing documents pertaining to the purchase of all or part of Lattice, Inc. by Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc.

2.      For the time period of January 1, 2018 to present, any documents and/or communications, including but not limited to assignments, leases, or licenses, reflecting the relationship between Lattice, Inc. and Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc.

3.      For the time period of January 1, 2018 to present, any documents and/or communications reflecting or relating to any consideration paid by Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc. to Lattice, Inc. to acquire an ownership interest in, license with or assignment from Lattice, Inc.

4.      For the time period of January 1, 2018 to present, any documents and/or communications pertaining to agreements, contracts, assignments, licenses, indemnifications or guarantees between Lattice, Inc. and Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc.

5.      For the time period of January 1, 2018 to present, any documents reflecting any contractual relationship with current or former employees of Lattice, Inc. by Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc.

6.      For the time period of January 1, 2018 to present, any documents and/or communications between Lattice, Inc. and Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc. regarding Correct Solutions.

7.      For the time period of January 1, 2018 to present, any documents and/or communications between Lattice, Inc. and Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc. regarding the support and maintenance provided to Correct Solutions for the Nexus hardware and software.

8.      For the time period of January 1, 2018 to present, any employment contracts or agreements related to employment between Bruce Johnson and Lattice, Inc. and/or Bruce Johnson and Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc.

9.      For the time period of January 1, 2018 to present, any documents and/or communications pertaining to any non-compete agreements requested or required of Bruce Johnson by Lattice, Inc. and/or by Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc.

10.      Any documents pertaining to communications and/or meetings between

Bruce Johnson and Jon Logan and/or James Logan during the pendency of this litigation regarding Correct Solutions, the employment of Bruce Johnson with Lattice, Inc, Smart Communications or any of its affiliates, controlled entities, agents or assigns including Smart Communications Collier, Inc., any terms of employment of Bruce Johnson, any noncomplete agreements and any employment with Correct Solutions.

11.    For the time period of January 1, 2017 to present, any documents and/or communications between any of the eight facilities listed in paragraph 19 of the Verified Complaint including their officers, employees or agents, and Smart Communications regarding the hardware, software, or systems provided by Smart Communications pursuant to the applicable Schedule to the MSA.

12.    For the time period of January 1, 2017 to present, any documents or communications reflecting any trouble tickets or other notifications of issues or problems with any hardware, software, or systems reported to, or received by, Smart Communications from any source or system pertaining to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

13.    For the time period of January 1, 2017 to present, any documents and/or communications reflecting any responses, repairs, maintenance or corrections provided by Smart Communications for any of the facilities listed in paragraph 19 of the Verified Complaint in response to any trouble tickets or notifications produced in response to paragraph 12 above.

14.    For the time period of January 1, 2017 to present, any reports of issues or problems received by Smart Communications through its "real-time" asset management system or monitoring system referred to in the "Maintenance and Support Plan" section in the Schedules to the MSA.

15.    For the time period of January 1, 2017 to present, any documents or communications, including but not limited to calendars or expense reports, reflecting dates when a Smart Communications employee was physically on-site at any of the eight facilities listed in paragraph 19 of the Verified Complaint.

16.    For the time period of January 1, 2017 to present, any documents and/or communications concerning the marketing of the version of the tablets provided by Smart Communication to any of the eight facilities listed in paragraph 19 of the Verified Complaint pursuant to the applicable Schedule to the MSA.

17.    For the time period of January 1, 2017 to present, any documents and/or communications concerning the marketing of any version of tablets offered by Smart Communications to any customers other than the eight facilities listed in paragraph 19 of the Verified Complaint.

18.    For the time period of January 1, 2017 to present, any documents and/or communications concerning the specifications of the tablets provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

19.     For the time period of January 1, 2017 to present, any documents and/or communications concerning the specifications of tablets provided by Smart Communications to any customers other than the eight facilities listed in paragraph 19 of the Verified Complaint.

20.     For the time period of January 1, 2017 to present, any documents or communications pertaining to complaints or notices received by Smart Communications about the destruction of tablets provided by Smart Communications or reconfiguration of tablets provided by Smart Communications into contraband from any of the eight facilities listed in paragraph 19 of the Verified Complaint.

21.     Any documents or communications pertaining to the "product offerings of Smart's competitors" as alleged in paragraph 7 of the Second Declaration of Jon Logan filed in this action on September 17, 2019.

22.     For the time period of January 1, 2017 to present, any documents and/or communications, including internal communications of Smart Communications, related to the structural performance of the version(s) of tablets provided by Smart Communication to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

23.     For the time period of January 1, 2017 to the present, any documents or communications pertaining to any alterations to the Smart Communications tablets provided to facilities by Smart other than the eight facilities listed in paragraph 19 of the Verified Complaint.

24.     Any documents and/or communications pertaining to the differences, if any, between the structural performance and components of tablets provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint and the tablets provided by Smart Communications to facilities other than those eight facilities.

25.     For the time period of January 1, 2016 to present, any documents pertaining to any testing performed by, or for, Smart Communications to ensure that the tablets provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint were ruggedized and of correctional grade.

26.     For the time period of January 1, 2016 to present, any documents pertaining to any testing performed by, or for, Smart Communications to ensure that the Smart Kiosk provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint was ruggedized and of correctional grade.

27.     For the time period of January 1, 2017 to present, any documents or communications, including internal communications of Smart Communications, related to the structural performance of tablets provided by Smart Communications to facilities other than the eight facilities listed in paragraph 19 of the Verified Complaint.

28.     For the time period of January 1, 2017 to present, any documents or communications, including internal communications of Smart Communications, related to the structural performance of tablets from competitors of Smart Communications.

29.     For the time period of January 1, 2017 to present, any documents or communications sent directly by Jon Logan or James Logan of Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

30.     For the time period of January 1, 2016 to present, any documents or communications testing the durability of the tablets provided by Smart Communications to facilities other than the eight facilities listed in paragraph 19 of the Verified Complaint.

31.     For the time period of January 1, 2017 to present, any documents or communications regarding the definition of "corrections-grade" tablet as referenced in paragraph 14 of the Second Declaration of Jon Logan filed in this action on September 17, 2019.

32.     For the time period of January 1, 2017 to present, any documents, videos, or communications regarding the demonstration provided by Smart Communications to Correct Solutions as referenced in paragraph 22 of the Second Declaration of Jon Logan filed in this action on September 17, 2019.

33.     For the time period of January 1, 2017 to present, any documents or communications provided to Correct Solutions by Smart Communications to support that the tablets provided by Smart Corrections under the Schedules to the MSA are "correctional grade."

34.     For the time period of January 1, 2017 to present, any documents or communications provided to Correct Solutions by Smart Communications to support that the tablets provided by Smart Communications under the Schedules to the MSA comply with industry standards.

35.     For the time period of January 1, 2017 to present, any documents or communications between any of the eight facilities listed in paragraph 19 of the Verified Complaint and Smart Communications related to the construction or destruction of the tablets provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

36.     For the time period of January 1, 2017 to present, any documents or communications between Correct Solutions and Smart Communications related to the construction of the tablets provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

37.     Any documents and/or communications, including but not limited to calendars, related to the "tech" that was sent to Avoyelles Parish as stated in Exhibit H to the Second Declaration of Jon Logan filed in this action on September 17, 2019.

38.     Any documents and/or communications pertaining to any work, repairs or maintenance provided by the "tech" referenced in paragraph 36 above.

39.    For the time period of January 1, 2018 to present, any documents and/or communications from Jon Logan to any facility other than the eight facilities listed in paragraph 19 of the Verified Complaint requesting a meeting similar to the e-mail attached as Exhibit E to the Second Declaration of Jon Logan filed in this action on September 17, 2019.

40.    For the time period of January 1, 2018 to present, any documents and/or communications between Jennifer Tongate and any employee, agent or officer of any of the eight facilities listed in paragraph 19 of the Verified Complaint.

41.    For the time period of January 1, 2017 to present, any documents and/or communications received by Smart Communications from any third party relating to the eight facilities listed in paragraph 19 of the Verified Complaint.

42.    For the time period of January 1, 2017 to present, any documents and/or communications pertaining to any efforts by Correct Solutions to terminate any of the Schedules or the MSA with Smart Communications.

43.    For the time period of January 1, 2017 to present, any documents and/or communications pertaining to any efforts by Correct Solutions to bring in another provider of services to the eight facilities listed in paragraph 19 of the Verified Complaint during the duration of the Schedules to the MSA between Correct Solutions and Smart Communications.

44.    Photographs of the front and back of each model of tablet that Smart Communications provided to correctional facilities as of September 13, 2017.

45.    Photographs of the front and back of each model of tablet that Smart Communications has provided to correctional facilities since September 13, 2017.

46.    One physical sample of each model of tablet that Smart Communications provided to correctional facilities as of September 13, 2017.

47.    One physical sample of each model of tablet that Smart Communications has provided to correctional facilities since September 13, 2017.

48.    Any documents or communications sufficient to demonstrate the design, construction, and materials used for each model of tablet that Smart Communications provided to correctional facilities as of September 13, 2017.

49.    Any documents or communications sufficient to demonstrate the design, construction, and materials used for each model of tablet that Smart Communications has provided to correctional facilities since September 13, 2017.

50.    For the time period September 13, 2017 to present, any documents or communications, including but not limited to photographs, pertaining to any durability issues with the tablets provided by Smart Communications, including but not limited to customer complaints, communications regarding inmate tampering or destruction of tablets, and photographs of tablets that have been deconstructed, damaged, or destroyed.

51.    Any documents you have received as a result of any public records request made to any facility involving Correct Solutions for the time period of January 1, 2019 to present.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on this 18th day of October, 2019.

HARLLEE & BALD, P.A.

By:

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Koch, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4848-8425-5657 v 1

9

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

      Plaintiff,

v.                              Case No: 2019 CA 008089

CORRECT  SOLUTIONS,  LLC,  a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

**NOTICE OF TAKING DEPOSITION
OF CORPORATE REPRESENTATIVE(S) OF PLAINTIFF
[Rule 1.310(b))6)]**

Please take notice that on Tuesday, October 29, 2019, at 10:00 a.m. at the offices

of Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602,

the Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC will take the

deposition of the corporate representative(s) of Smart Communications Holding, Inc., by

oral examination before a court reporter, notary public, or before some other official

authorized to take depositions who is not a party to this case or interested in the events of

this action. The deposition is being taken on Plaintiff's Motion for Partial Summary

Judgment on Counts I and II of the Complaint and for such other purposes as are

permitted under the Florida Rules of Civil Procedure or any other applicable rule of civil

procedure.

It is the duty of Smart Communications Holding, Inc. under Florida Rule of Civil

Procedure 1.310(b)(6) to designate one or more of its officers, directors, managing agents,

or other persons who consent to do so, to testify on its behalf as to the matters known or

reasonably available to Smart Communications Holding, Inc. regarding the following:

1. The negotiation and execution of the Mutual Confidentiality and Nondisclosure Agreement (the "NDA").

2. The negotiation and execution of the Master Services Agreement (the "MSA").

3. The discussion regarding the duties and obligations of the parties to preserve confidential information exchanged between the parties at any time.

4. The discussions regarding the default provisions of the NDA and the MSA.

5. Any discussions between the parties regarding the language used in the NDA.

6. Any discussions between the parties regarding the language used in the MSA.

7. The issues raised in Plaintiff's Motion for Partial Summary Judgment.

8. Smart Communications' contention that the MSA is superseded by the NDA such that neither party can be in violation of the NDA.

9. Smart Communications' contention that Correct Solutions may not rely on a violation of the NDA as predicate to terminate the MSA.

10. Smart Communications' contention that Correct Solutions may not rely on a violation of the Confidential Information and Non-Disclosure provision of the MSA as a predicate to terminate the MSA.

11. Smart Communications' contention that the termination was ineffective.

12. Smart Communications' contention that Correct Solutions is prohibited from terminating the MSA for disclosure of confidential information.

13. Smart Communications' attorneys' fees and costs as claimed in Plaintiff's Motion for Partial Summary Judgment on Counts I and II of the Complaint.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-

filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes,

Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street,

Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com;

kturkel@bajocuva.com; tdeleo@bajocuva.com on _18TH_ day of October, 2019.

HARLLEE & BALD, P.A.

By: _____

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4842-7002-2826. v. 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                        Case No: 19-CA-008089

        Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

        Defendant.

_____/

**PLAINTIFF'S NOTICE OF SERVICE
OF VERIFIED ANSWERS AND OBJECTIONS TO
<u>DEFENDANT'S FIRST SET OF INTERROGATORIES</u>**

Plaintiff, Smart Communications Holding, Inc., by and through undersigned counsel, and

pursuant to Florida Rule of Civil Procedure 1.340, serves its verified answers and objections to

Defendant's First Set of Interrogatories.

                                       */s/ Brad F. Barrios*
                                       Kenneth G. Turkel – FBN 867233
                                       E-mail:  kturkel@bajocuva.com
                                       Brad F. Barrios – FBN 35293
                                       E-mail: bbarrios@bajocuva.com
                                       David A. Hayes – FBN  96657
                                       E-mail: dhayes@bajocuva.com
                                       BAJO | CUVA | COHEN | TURKEL
                                       100 North Tampa Street, Suite 1900
                                       Tampa, Florida 33602
                                       (813) 443-2199 (telephone)
                                       (813) 443-2193 (facsimile)
                                       *Counsel for Plaintiff*

{BC00263883;1}

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 17th day of October, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
        JEL@harlleebald.com
        DDF@harlleebald.com
        CL@harlleebald.com

<div align="right">

*/s/ Brad F. Barrios*　　　　　　　
Attorney

</div>

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

Case No: 19-CA-008089

     Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

     Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**<u>FIRST REQUEST FOR PRODUCTION OF DOCUMENTS</u>**

Plaintiff, Smart Communications Holding, Inc. ("Smart"), pursuant to Rule 1.350, Florida

Rules of Civil Procedure, responds to Defendant, Correct Solutions, LLC's, First Request for

Production of Documents (the "Requests") as follows:

**<u>GENERAL OBJECTIONS</u>**

A.     Smart objects to these Requests to the extent that they seek the disclosure of

information protected from discovery by the attorney-client privilege, the work product doctrine,

or any other applicable privilege or exemption.  Inadvertent disclosure of privileged or protected

information shall not waive any applicable privilege or work product protection.

B.     To the extent that these Requests seek documents or information involving topics

other than those addressed by the operative pleadings, Smart objects to the requests for production

of documents as irrelevant to the subject matter of the pending litigation and not reasonably

calculated to lead to the discovery of admissible evidence.

{BC00263866:1}

C.      Smart objects to these Requests to the extent they purport to impose duties or responsibilities greater than those imposed by the Florida Rules of Civil Procedure.

D.      Smart objects to these Requests to the extent they seek confidential or proprietary information or trade secrets.

E.      Smart objects to these Requests to the extent they seek documents that do not exist or that is not in Smart's possession, custody, or control, or that is equally available to Defendant.

F.      Smart objects to these Requests to the extent they seek documents from Smart that are either already in the possession of Defendant.

G.      Smart objects to these Requests to the extent they seek documents from a time period that is unduly burdensome, unnecessarily broad, and not reasonably calculated to lead to the discovery of admissible evidence.

H.      Smart objects to these Requests to the extent they use words and phrases that are not defined in an understandable manner.  To the extent feasible Smart will interpret terms and phrases used in the Requests as understood by Smart.

These general objections shall be deemed continuing as to each request for production of documents, and are neither waived nor limited in anyway by the following responses.

## RESPONSE TO REQUESTS FOR PRODUCTION

1.      Any communications between Smart Communications and the City of St. Louis, Missouri pertaining to the provision or prospective provision of telephone services by Smart Communications to the City of St. Louis, Missouri, and, in particular, the detention facility owned and/or operated by the City of St. Louis, Missouri.

**Response:**      **To the extent such documents exist within Smart's possession, custody, or control, Smart will produce documents responsive to this request.**

2.      Any communications between Smart Communications and the City of St. Louis, Missouri pertaining to Correct Solutions, LLC, its employees and agents, the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 and/or the Master Services Agreement signed by Smart Communications on August 31, 2017.

**Response:**    **Smart objects to this request on the grounds that it is overbroad, ambiguous, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart is unaware of the identity of every Correct Solutions employee and agent.  As such, it could not evaluate whether any communication between Smart and the City of St. Louis, Missouri "pertain[ed] to" these individuals or entities.  Further, every communication from Smart to the City of St. Louis, Missouri that involved Smart's services for that entity could be considered "pertaining to" the Master Services Agreement signed by Smart on August 31, 2017.**

3.      Any communications between Smart Communications and Lattice, Inc. pertaining to Correct Solutions, LLC, its employees and agents, the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 and/or the Master Services Agreement signed by Smart Communications on August 31, 2017.

**Response:**    **Smart objects to this request on the grounds that it is unduly burdensome and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart is unaware of the identity of every Correct Solutions employee and agent.  As such, it could not evaluate whether any communication between Smart and Lattice pertain[ed] to" these individuals or entities.  Even if Smart was given a list of Correct Solutions' employees and agents, the request would still be unduly burdensome as it would require Smart to locate and review every communication it has had with Lattice, Inc., and then conduct an analysis of whether each of those communications "pertain[ed] to" Correct Solutions, its employees, its agents, or the agreements referenced.  Further, a communication between Smart and Lattice that simply references Correct Solutions would be responsive to this request, but would have no relevance to any of the claims or defenses raised in this case.**

4.      Any documents pertaining to the allegations set forth in paragraph 12 of your Verified Complaint.

**Response:**    **Smart objects to this request on the grounds that it is overbroad and vague with respect to the use of the term "pertaining to."  Subject to and without waiving this objection and to the extent such documents exist within Smart's possession, custody, or control, Smart will produce non-privileged documents that support its allegations of paragraph 12 of the Verified Complaint.**

5.      Any documents pertaining to the allegations set forth in paragraph 13 of your Verified Complaint, particularly with regard to your allegation that, "The facility customers, some of which were existing Correct Solutions customers, became Joint Customers of both parties." Included in this request is all documents containing the phrase "Joint Customers" or "Joint Customer" and/or identifying Correct Solutions, LLC's facility customers as Smart Communications' customers.

**Response:       Smart objects to this request on the grounds that it is overbroad, vague, and would include information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Every communication or document exchanged between Smart and any of the Joint Customers could "pertain[] to" the allegation that facility customers became joint customers of both parties. Accordingly, the scope of this request is so broad that a complete production in response to this request would undoubtedly include information that has no relevance or bearing on the facts, claims, issues, or defenses in this case. However, Smart is aware of certain documents such as contracts between Correct Solutions and facilities, which are in the possession of Correct Solutions, that describe services provided by Smart directly to facilities. Subject to and without waiving its objections, Smart Communications will produce the aforementioned contracts in its possession.**

6.      Any documents pertaining to the allegations set forth in paragraph 27 of your Verified Complaint.

**Response:       Smart objects to this request on the grounds that it is overbroad and vague with respect to the use of the term "pertaining to." Subject to and without waiving these objections and to the extent such documents exist within Smart's possession, custody, or control, Smart will produce documents responsive to this request, Smart will produce non-privileged documents that support its allegations of paragraph 27 of the Verified Complaint.**

7.      Any documents pertaining to the allegations that Correct Solutions had knowledge of Smart Communications' intent to provide telephone services as described in paragraph 28 of the Verified Complaint.

**Response:       Smart objects to this request on the grounds that it is overbroad and vague with respect to the use of the term "pertaining to." Subject to and without waiving these objections and to the extent such documents exist within Smart's possession, custody, or control, Smart will produce non-privileged documents that support its allegations of paragraph 28 of the Verified Complaint.**

8.     Any documents pertaining to the allegations contained in paragraph 29 of the Verified Complaint that Correct Solutions has introduced new technology at correctional facilities referred to as iMate E-Device including but not limited to e-mails, correspondence, marketing materials.

**Response:      Smart objects to this request on the grounds that it is overbroad and vague with respect to the use of the term "pertaining to." Subject to and without waiving these objections and to the extent such documents exist within Smart's possession, custody, or control, Smart will produce non-privileged documents that support its allegations of paragraph 29 of the Verified Complaint.**

9.     Any communications between Smart Communications and the City of St. Louis regarding the mailing described in paragraph 31 of the Verified Complaint, including but not limited to any discussions, including follow-up emails from Smart Communications and responses from the City of St. Louis, regarding the service purposed and commissions paid.

**Response:      To the extent such documents exist within Smart's possession, custody, or control, Smart will produce documents responsive to this request.**

10.    To the extent not provided in response to the preceding Request for Production No. 9, produce any document pertaining to Smart Communication's acquisition of the email address of Frank Turner - the employee of the City of St. Louis to whom Smart Communications directed its email solicitation.

**Response:      Smart objects to this request on the grounds that it is overbroad and vague, for example, with respect to the use of the terms "pertaining to" and "acquisition of." Smart also objects to the characterization of the email referred to as a "solicitation." Subject to and without waiving these objections, and to the extent such documents exist within Smart's possession, custody, or control, Smart will produce documents responsive to this request.**

11.    To the extent not provided in response to the preceding Request for Production No. 9, produce any document pertaining to Smart Communication's decision to offer a 100% commission to the City of St. Louis for the provision of inmate telephone services, as stated in Smart Communication's email solicitation.

**Response:      Smart objects to this request on the grounds that it is overbroad, includes information that is neither relevant nor likely to lead to the discovery of admissible evidence, and seeks disclosure of confidential business information.  As phrased, the request would include all internal communications and documents that discuss the commissions to be offered to each facility by Smart, which has no bearing on the facts, issues, claims, or defenses in this case.  Rather, that information is confidential business information, the disclosure of which would put Smart Communications at a competitive disadvantage in the industry.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of October, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
          JEL@harlleebald.com
          DDF@harlleebald.com
          CL@harlleebald.com

                                        */s/ Brad F. Barrios*
                                        Kenneth G. Turkel – FBN 867233
                                        E-mail:  kturkel@bajocuva.com
                                        Brad F. Barrios – FBN 35293
                                        E-mail: bbarrios@bajocuva.com
                                        David A. Hayes – FBN  96657
                                        E-mail: dhayes@bajocuva.com
                                        BAJO | CUVA | COHEN | TURKEL
                                        100 North Tampa Street, Suite 1900
                                        Tampa, Florida 33602
                                        (813) 443-2199 (telephone)
                                        (813) 443-2193 (facsimile)
                                        *Counsel for Plaintiff*

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                 Case No: 19-CA-008089

       Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

       Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**FIRST REQUESTS FOR ADMISSION**

       Plaintiff, Smart Communications Holding, Inc. ("Smart"), responds to Defendant, Correct

Solutions, LLC's, First Requests for Admission as follows:

**GENERAL OBJECTIONS**

       A.        Smart objects to these Requests for Admission to the extent they seek disclosure

of information protected from discovery by the attorney-client privilege and/or the work-product

doctrine, or any other applicable privilege or exemption.  Inadvertent disclosure of privileged or

protected information shall not waive any applicable privilege or work-product protection.

       B.        Smart objects to these Request for Admission to the extent that they purport to,

or in fact, alter or enlarge their obligations pursuant to the Florida Rules of Civil Procedure and/or

Florida case law.

       C.        To the extent that these Request for Admissions seek information involving

topics other than those addressed by the pleadings, Smart objects to the Requests for Admission

as irrelevant to the subject matter of the pending litigation and not reasonably calculated to lead to the discovery of admissible evidence.

D.        All responses are made without waiving any objections as to relevance, privilege or admissibility. These general objections shall be deemed continuing as to each interrogatory and are neither waived nor limited in any way by the following responses.

## RESPONSES AND OBJECTIONS

1.        Please admit that, prior to the execution of the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 and the Master Services Agreement signed by Smart Communications on August 31, 20I7 with Correct Solutions, LLC, Smart Communications had not provided any services, including but not limited to, the "electronic messaging, grievance and medical forms, video visitation, ... law library, entertainment, [or] educational content," to the City of St. Louis, Missouri, and, in particular, the detention facility owned and/or operated by the City of St. Louis, Missouri.

**Response:        Admitted.**

2.        Please admit that the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 between Smart Communications and Correct Solutions, LLC defines as "Confidential Information" the "pricing, fees and programming fees offered to the receiving party or other customers or potential customers by the disclosing party".

**Response:        Admitted that a true and correct copy of the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 between Smart Communications and Correct Solutions, LLC is attached as Exhibit B to Defendant's Counterclaim. As a written instrument, the agreement speaks for itself and is the best evidence of its contents.**

3.        Please admit that the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 between Smart Communications and Correct Solutions, LLC defines as "Confidential Information" the "identities of actual customers, investors or other individuals and entities having a current business relationship with the disclosing party".

**Response:        Admitted that a true and correct copy of the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 between Smart Communications and Correct Solutions, LLC is attached as Exhibit B to Defendant's Counterclaim. As a written instrument, the agreement speaks for itself and is the best evidence of its contents.**

4.      Please admit that the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 between Smart Communications and Correct Solutions, LLC defines as "Confidential Information" "trade secrets, consisting of confidential and proprietary information not generally known to the public".

**Response:      Admitted that a true and correct copy of the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 between Smart Communications and Correct Solutions, LLC is attached as Exhibit B to Defendant's Counterclaim. As a written instrument, the agreement speaks for itself and is the best evidence of its contents.**

5.      Please admit that Smart Communications was introduced to the City of St. Louis, Missouri by and through Correct Solutions, LLC, and/or its employees and agents, which introduction arose out of the business relationship between Smart Communications and Correct Solutions, LLC resulting from the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 and/or the Master Services Agreement signed by Smart Communications on August 31, 2017.

**Response:      Smart Communications objects to the characterization that it was "introduc[ed] to the City of St. Louis" by and through Correct Solutions, LLC. Denied that the business relationship between Smart and Correct Solutions "resulted" from the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 and/or the Master Services Agreement signed by Smart on August 31, 2017. Otherwise, admitted.**

6.      Please admit that Smart Communications had never met Frank Turner - the employee of the City of St. Louis to whom Smart Communications directed its solicitation email - prior to its introduction to the City of St. Louis by and through Correct Solutions, LLC and/or its employees and agents.

**Response:      Smart Communications objects to the characterization that it was "introduc[ed] to the City of St. Louis" by and through Correct Solutions, LLC. Denied that Smart sent a "solicitation email" to Frank Turner. Admitted that Smart Communications met Frank Turner while providing services to the City of St. Louis.**

7.      Please admit that Smart Communications came into possession of the email address of Frank Turner - the employee of the City of St. Louis to whom Smart Communications directed its solicitation email -after its introduction to the City of St. Louis by and through Correct Solutions, LLC and/or its employees and agents.

**Response:      Smart Communications objects to the characterization that it was "introduc[ed] to the City of St. Louis" by and through Correct Solutions, LLC. Denied that Smart sent a "solicitation email" to Frank Turner. Admitted that Smart Communications obtained the email address of Frank Turner during the course of providing services to the City of St. Louis.**

8.      Please admit that Smart Communications only learned of the email address of Frank Turner - the employee of the City of St. Louis to whom Smart Communications directed its solicitation email -as a result of Smart Communications' work for the City of St. Louis arising out of the business relationship between Smart Communications and Correct Solutions, LLC resulting from the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 and/or the Master Services Agreement signed by Smart Communications on August 31, 2017.

        **Response:       Denied that Smart sent a "solicitation email" to Frank Turner. Denied that the business relationship between Smart and Correct Solutions "resulted" from the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 and/or the Master Services Agreement signed by Smart Communications on August 31, 2017. Admitted that Smart Communications obtained the email address of Frank Turner during the course of providing services to the City of St. Louis**

9.      Please admit that Smart Communications was aware at the time it made its offer to provide inmate telephone services to the City of St. Louis at a 100% phone commission that such commission was higher than the commission Correct Solutions, LLC provided to the City of St. Louis for such services.

        **Response:       Admitted that Smart Communications was generally aware that 100% phone commission would be higher than any other inmate telephone service provider's commission.  Otherwise, denied.**

10.     Please admit that Smart Communications only learned the amount of the commission that Correct Solutions, LLC provided to the City of St. Louis for inmate telephone services as a result of the business relationship between Smart Communications and Correct Solutions, LLC resulting from the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 and/or the Master Services Agreement signed by Smart Communications on August 31, 2017.

        **Response:       Denied.**

11.     Please admit that Smart Communications was aware at the time it made its offer to provide inmate telephone services to the City of St. Louis that Correct Solutions, LLC had the exclusive right to provide such services to the City of St. Louis.

        **Response:       Denied.**

12.     Please admit that Smart Communications was aware at the time it made its offer to provide inmate telephone services to the City of St. Louis that Correct Solutions, LLC earned revenues from providing such services to the City of St. Louis.

       **Response:     Admitted that Smart Communications had a general understanding that inmate telephone service providers like Correct Solutions, LLC earned revenue by providing their services; denied that Smart Communications was aware of the specific details of Correct Solutions, LLC's contract or relationship with the City of St. Louis.**

13.     Please admit that neither the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 nor the Master Services Agreement signed by Smart Communications on August 31, 2017 contains the phrases "Joint Customer" or "Joint Customers".

       **Response:     Admitted that a true and correct copy of the Mutual Confidentiality and Nondisclosure Agreement dated June 15, 2017 between Smart Communications and Correct Solutions, LLC is attached as Exhibit B to Defendant's Counterclaim. As a written instrument, the agreement speaks for itself and is the best evidence of its contents.**

14.     Please admit that the term "Customer" in the Master Services Agreement signed by Smart Communications on August 31, 2017 refers solely to Correct Solutions, LLC.

       **Response:     Denied.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 17th day of October, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
          JEL@harlleebald.com
          DDF@harlleebald.com
          CL@harlleebald.com

                                        */s/ Brad F. Barrios*
                                        Kenneth G. Turkel – FBN 867233
                                        E-mail:  kturkel@bajocuva.com
                                        Brad F. Barrios – FBN 35293
                                        E-mail: bbarrios@bajocuva.com
                                        David A. Hayes – FBN  96657
                                        E-mail: dhayes@bajocuva.com
                                        BAJO | CUVA | COHEN | TURKEL
                                        100 North Tampa Street, Suite 1900
                                        Tampa, Florida 33602
                                        (813) 443-2199 (telephone)
                                        (813) 443-2193 (facsimile)
                                        *Counsel for Plaintiff*

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

     Plaintiff,

v.                          Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

     Defendant.

_____/

### AMENDED NOTICE OF TAKING DEPOSITION
### OF CORPORATE REPRESENTATIVE(S) OF PLAINTIFF
### [Rule 1.310(b))6)]

Please take notice that on Wednesday, October 30, 2019, at 10:00 a.m. at the offices of Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602, the Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC will take the deposition of the corporate representative(s) of Smart Communications Holding, Inc., by oral examination before a court reporter, notary public, or before some other official authorized to take depositions who is not a party to this case or interested in the events of this action. The deposition is being taken on Plaintiff's Motion for Partial Summary Judgment on Counts I and II of the Complaint and for such other purposes as are permitted under the Florida Rules of Civil Procedure or any other applicable rule of civil procedure.

It is the duty of Smart Communications Holding, Inc. under Florida Rule of Civil Procedure 1.310(b)(6) to designate one or more of its officers, directors, managing agents,

or other persons who consent to do so, to testify on its behalf as to the matters known or reasonably available to Smart Communications Holding, Inc. regarding the following:

1.  The negotiation and execution of the Mutual Confidentiality and Nondisclosure Agreement (the "NDA").

2.  The negotiation and execution of the Master Services Agreement (the "MSA").

3.  The discussion regarding the duties and obligations of the parties to preserve confidential information exchanged between the parties at any time.

4.  The discussions regarding the default provisions of the NDA and the MSA.

5.  Any discussions between the parties regarding the language used in the NDA.

6.  Any discussions between the parties regarding the language used in the MSA.

7.  The issues raised in Plaintiff's Motion for Partial Summary Judgment.

8.  Smart Communications' contention that the NDA is superseded by the MSA such that neither party can be in violation of the NDA.

9.  Smart Communications' contention that Correct Solutions may not rely on a violation of the NDA as predicate to terminate the MSA.

10. Smart Communications' contention that Correct Solutions may not rely on a violation of the Confidential Information and Non-Disclosure provision of the MSA as a predicate to terminate the MSA.

11. Smart Communications' contention that the termination was ineffective.

12. Smart Communications' contention that Correct Solutions is prohibited from terminating the MSA for disclosure of confidential information.

13. Smart Communications' attorneys' fees and costs as claimed in Plaintiff's Motion for Partial Summary Judgment on Counts I and II of the Complaint.

**CERTIFICATE OF SERVICE**

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com;

kturkel@bajocuva.com; tdeleo@bajocuva.com on _25th_ day of October, 2019.

HARLLEE & BALD, P.A.

By: _____
KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Koch, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4851-9040-6571, v 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS HOLDING, INC.

Case No: 19-CA-008089

     Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

     Defendant.

_____/

## MOTION FOR PROTECTIVE ORDER ON DEPOSITION DATE

Plaintiff, Smart Communications Holding, Inc. ("Smart"), by counsel and pursuant to Florida Rules of Civil Procedure 1.280(c) and the Court's inherent authority, moves for the entry of an order protecting Smart from appearing at a deposition noticed by Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC ("CSG"), for October 30, 2019. The grounds on which this motion is based and the reasons it should be granted are as follows.

### Introduction

Smart filed this action for declaratory and injunctive relief to prevent CSG from improperly terminating the Master Services Agreement (the "Agreement") entered into by the parties, thereby protecting the rights for which Smart bargained. Smart filed a Motion for Partial Summary Judgment on Counts I and II of the Complaint ("Motion for Summary Judgment") based on the narrow legal argument that CSG may not terminate the Agreement based on a purported violation of the confidentiality provision.

Smart's Motion for Summary Judgment relies only the language of the Agreement, which is plain and unambiguous. Smart has not filed affidavits in support of the Motion for Summary Judgment or relied on any evidence extrinsic to the Agreement.

Nevertheless, CSG initially requested numerous depositions it indicated it needed to defend the Motion for Summary Judgment. Smart disagreed that any discovery, especially the scope requested, was proper. The parties had several discussions about the issue, including Smart attempting to obtain CSG's position about why discovery, including depositions of witnesses who had no involvement in the negotiation or execution of the Agreement, was necessary to argue about the meaning of the language of the Agreement.

As of October 17, 2019, CSG was still seeking to take "depositions" and asked Smart for dates because counsel wanted to send out "notices." Smart responded that it still did not understand the need for the depositions. The following day, when the undersigned was out of town, CSG unilaterally noticed the deposition of Smart's corporate representative for October 29, 2019. A copy of the Notice is attached as **Exhibit A**.

CSG's notice was the first signal that it had narrowed its discovery requests to a deposition of Smart's corporate representative about topics that related to the Agreement, as opposed to its previous demands for multiple depositions. Although Smart did not, and still does not, agree that such discovery will lead to admissible evidence on the construction of the Agreement, which is the province of the Court, Smart nevertheless agreed to allow the corporate representative deposition. However, Smart informed CSG that if CSG intended to make arguments based on the testimony of a Smart witness, then Smart would need a deposition of CSG's corporate representative on the same topics. CSG agreed and the parties attempted to clear dates for the depositions. Smart did not previously request a deposition of CSG's corporate representative

because Smart's position has always been that depositions were unnecessary at this stage. However, now that CSG had agreed to narrow its deposition demands, Smart was willing to cooperate, but only if it received a similar deposition in return.

Smart informed CSG that, in the interest of efficiency, both witnesses should be deposed on the same day. Smart's corporate representative intends to attend the deposition of CSG's corporate representative, as is its right under the rules of procedure. Thus, narrow depositions scheduled on two different dates means missing work on two different dates, traveling to the deposition site, and otherwise disrupting the ordinary business of the parties.

Further, Smart informed CSG that, if the goal of the depositions was to obtain pure testimony about the true intent of the parties, then fairness weighed in favor of them occurring on the same day. The alternative would allow one party to prepare its witness after having a chance to review and analyze the testimony of the opposing witness.

Smart provided several dates in November, well in advance of the November 25, 2019 hearing on the Motion for Summary Judgment, on which Smart's counsel and witness could be available. On October 23, 2019, Smart emailed CSG and provided dates of November 5, 6, 7, 11, and 12 as definitely being available. Smart also indicated that October 30 might work, but counsel would know until the following day because of a conflict that may clear. These dates were provided with the understanding that the depositions would occur on the same date.

CSG responded and indicated she was seeking dates from CSG's representative, but wanted to keep Smart's deposition scheduled for the following week. The next day, the undersigned emailed CSG's counsel and conveyed that his conflict had cleared, but that, again, it did not make sense to hold the depositions on different days, that the same day seems to be a more fair process, and that "we should be able to make almost any date work."

CSG responded that counsel and the CSG witness were only available on the afternoon of November 13, 2019 and that counsel was going to notice Smart's deposition for October 30, 2019. Smart did not agree and suggested that both depositions take place on the afternoon of November 13, 2019 and that Smart could stay as late as required to complete both depositions. The parties had previously discussed the fact that these depositions were narrow and should not require more than a few hours.

CSG did not agree and indicated that they would not have enough time to complete both depositions after starting at 1:00 on the afternoon of November 13, 2019. Instead, on October 25, 2019, CSG filed its Notice of Deposition of Smart's corporate representative to take place on October 30, 2019. A copy of the Notice is attached as **Exhibit B**. Smart respectfully seeks a protective order precluding its deposition unless it is scheduled on the same day as CSG's deposition.  Smart's offer to schedule both depositions for November 13, 2019 (or any other day in November) remains open.

<u>**Argument**</u>

A trial court has broad discretion to oversee discovery and to protect the parties that come before it and may fashion remedies in accord with efficiency and common sense. *See Rojas v. Ryder Truck Rental, Inc.,* 641 So.2d 855, 857 (Fla. 1994).  Florida Rule of Civil Procedure 1.280(c) provides:

> **(c) Protective Orders.** Upon motion by a party or by the person from whom discovery is sought, and **for good cause shown**, **the court** in which the action is pending **may make any order to protect a party or person from** annoyance, embarrassment, oppression, or **undue burden or expense** that justice requires, including one or more of the following: (1) that the discovery not be had; (2) that the **discovery may be had only on specified terms and conditions, including a designation of the time or place**; (3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; (4) that certain

matters not be inquired into, or that the scope of the discovery be limited to certain matters; (5) that discovery be conducted with no one present except persons designated by the court; (6) that a deposition after being sealed be opened only by order of the court; (7) that a trade secret or other confidential research, development, or commercial information not be disclosed or be disclosed only in a designated way; and (8) that the parties simultaneously file specified documents or information enclosed in sealed envelopes to be opened as directed by the court. If the motion for a protective order is denied in whole or in part, the court may, on such terms and conditions as are just, order that any party or person provide or permit discovery. The provisions of rule 1.380(a)(4) apply to the award of expenses incurred in relation to the motion.

Fla. R. Civ. P. 1.280(c).

Here, Smart seeks an order that discovery be "had only on specified terms and conditions, including a designation of time and place," as permitted by Rule 1.280. Good cause exists to stay or prohibit a deposition that is not fairly scheduled with the opposing party.

As a threshold matter, the Motion for Summary Judgment presents a pure legal question that can be adjudicated from a reading of the plain terms of the Agreement.  In fact, in an action on an unambiguous contract, only the contract is admissible. *See Carlon, Inc. v. Southland Diversified Co*., 381 So.2d 291, 293 (Fla. 4th DCA 1980) (parol evidence is inadmissible to vary or contradict plain terms of a contract); *see also Metro Dev. Group, LLC v. 3D-C&C, Inc.,* 941 So.2d 11, 13-14 (Fla. 2d DCA 2006) (affirming summary judgment on unambiguous agreement and finding that extrinsic evidence is only admissible when a collateral matter renders a contract ambiguous).

Nevertheless, Smart agreed to a deposition of its corporate representative on narrow issues under the condition that CSG's deposition occur on the same date in the interests of justice and convenience. Smart provided numerous dates for the depositions, and even stated they could make any date work. In return, Smart received no dates between now and November 25, 2019 on which they could participate in two depositions on very narrow issues. Instead, CSG unilaterally decided

that it would schedule Smart's deposition for next Wednesday and then offer an afternoon eighteen days later for the CSG deposition. Smart did not agree to this schedule, which essentially doubles the time and money Smart will have to spend on depositions it deems to be unnecessary in the first place.

<u>**Conclusion**</u>

Based on the foregoing, Smart respectfully requests that this Court enter an order prohibiting the deposition of Smart's corporate representative from taking place on October 30, 2019 and for such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail: kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 25th day of October, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
          JEL@harlleebald.com
          DDF@harlleebald.com
          CL@harlleebald.com

                                        /s/ Brad F. Barrios
                                        Attorney

# EXHIBIT A

*to Plaintiff's Motion for Protective Order*

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

      Plaintiff,

v.                                 Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## NOTICE OF TAKING DEPOSITION
## OF CORPORATE REPRESENTATIVE(S) OF PLAINTIFF
### [Rule 1.310(b))6)]

Please take notice that on Tuesday, October 29, 2019, at 10:00 a.m. at the offices
of Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602,
the Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC will take the
deposition of the corporate representative(s) of Smart Communications Holding, Inc., by
oral examination before a court reporter, notary public, or before some other official
authorized to take depositions who is not a party to this case or interested in the events of
this action. The deposition is being taken on Plaintiff's Motion for Partial Summary
Judgment on Counts I and II of the Complaint and for such other purposes as are
permitted under the Florida Rules of Civil Procedure or any other applicable rule of civil
procedure.

It is the duty of Smart Communications Holding, Inc. under Florida Rule of Civil
Procedure 1.310(b)(6) to designate one or more of its officers, directors, managing agents,

or other persons who consent to do so, to testify on its behalf as to the matters known or

reasonably available to Smart Communications Holding, Inc. regarding the following:

1.  The negotiation and execution of the Mutual Confidentiality and Nondisclosure Agreement (the "NDA").

2.  The negotiation and execution of the Master Services Agreement (the "MSA").

3.  The discussion regarding the duties and obligations of the parties to preserve confidential information exchanged between the parties at any time.

4.  The discussions regarding the default provisions of the NDA and the MSA.

5.  Any discussions between the parties regarding the language used in the NDA.

6.  Any discussions between the parties regarding the language used in the MSA.

7.  The issues raised in Plaintiff's Motion for Partial Summary Judgment.

8.  Smart Communications' contention that the MSA is superseded by the NDA such that neither party can be in violation of the NDA.

9.  Smart Communications' contention that Correct Solutions may not rely on a violation of the NDA as predicate to terminate the MSA.

10. Smart Communications' contention that Correct Solutions may not rely on a violation of the Confidential Information and Non-Disclosure provision of the MSA as a predicate to terminate the MSA.

11. Smart Communications' contention that the termination was ineffective.

12. Smart Communications' contention that Correct Solutions is prohibited from terminating the MSA for disclosure of confidential information.

13. Smart Communications' attorneys' fees and costs as claimed in Plaintiff's Motion for Partial Summary Judgment on Counts I and II of the Complaint.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-

filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes,

Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street,

Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com;

kturkel@bajocuva.com; tdeleo@bajocuva.com on ___18^TH___ day of October, 2019.

HARLLEE & BALD, P.A.

By: _____

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4842-7002-2826. v. 1

# EXHIBIT B

*to Plaintiff's Motion for Protective Order*

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

      Plaintiff,

v.                            Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## AMENDED NOTICE OF TAKING DEPOSITION
## OF CORPORATE REPRESENTATIVE(S) OF PLAINTIFF
### [Rule 1.310(b))6)]

Please take notice that on Wednesday, October 30, 2019, at 10:00 a.m. at the offices of Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602, the Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC will take the deposition of the corporate representative(s) of Smart Communications Holding, Inc., by oral examination before a court reporter, notary public, or before some other official authorized to take depositions who is not a party to this case or interested in the events of this action. The deposition is being taken on Plaintiff's Motion for Partial Summary Judgment on Counts I and II of the Complaint and for such other purposes as are permitted under the Florida Rules of Civil Procedure or any other applicable rule of civil procedure.

It is the duty of Smart Communications Holding, Inc. under Florida Rule of Civil Procedure 1.310(b)(6) to designate one or more of its officers, directors, managing agents,

or other persons who consent to do so, to testify on its behalf as to the matters known or reasonably available to Smart Communications Holding, Inc. regarding the following:

1. The negotiation and execution of the Mutual Confidentiality and Nondisclosure Agreement (the "NDA").

2. The negotiation and execution of the Master Services Agreement (the "MSA").

3. The discussion regarding the duties and obligations of the parties to preserve confidential information exchanged between the parties at any time.

4. The discussions regarding the default provisions of the NDA and the MSA.

5. Any discussions between the parties regarding the language used in the NDA.

6. Any discussions between the parties regarding the language used in the MSA.

7. The issues raised in Plaintiff's Motion for Partial Summary Judgment.

8. Smart Communications' contention that the NDA is superseded by the MSA such that neither party can be in violation of the NDA.

9. Smart Communications' contention that Correct Solutions may not rely on a violation of the NDA as predicate to terminate the MSA.

10. Smart Communications' contention that Correct Solutions may not rely on a violation of the Confidential Information and Non-Disclosure provision of the MSA as a predicate to terminate the MSA.

11. Smart Communications' contention that the termination was ineffective.

12. Smart Communications' contention that Correct Solutions is prohibited from terminating the MSA for disclosure of confidential information.

13. Smart Communications' attorneys' fees and costs as claimed in Plaintiff's Motion for Partial Summary Judgment on Counts I and II of the Complaint.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com;

kturkel@bajocuva.com; tdeleo@bajocuva.com on _25th_ day of October, 2019.

HARLLEE & BALD, P.A.

By: _____

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Koch, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4851-9040-6571, v 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## NOTICE OF CANCELLATION OF HEARING

**PLEASE TAKE NOTICE** that the hearing upon Plaintiff's Motion for Partial Summary

Judgment on Counts I and II of Complaint before the Honorable Rex M. Barbas on

**November 25, 2019, at 2:00 p.m.** has been cancelled.

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 6th day of November, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
          JEL@harlleebald.com
          DDF@harlleebald.com
          CL@harlleebald.com

                                         */s/ Brad F. Barrios*                                    
                                         Attorney

## IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
## IN AND FOR HILLSBOROUGH COUNTY, STATE OF FLORIDA
## CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

      Plaintiff,

                                    Case No: 19-CA-008089

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

### NON-PARTY, TECH FRIENDS, INC'S OBJECTIONS AND
### RESPONSE TO SUBPOENA DUCES TECUM WITHOUT DEPOSITION

      Non-Party, Tech Friends, Inc., ("Tech Friends"), by and through its undersigned counsel, and pursuant to Fla. R. Civ. P. 1.351(c), hereby responds to Plaintiff, Smart Communications Holding, Inc.'s Subpoena Duces Tecum Without Deposition (the "Subpoena") served on October 9, 2019 as follows:

### General Objections and Objections to Definitions

      Tech Friends makes the following General Objections and Objections to Definitions, whether or not separately set forth hereafter, and which are hereby incorporated by reference into Tech Friends' responses to the foregoing particular requests.  Tech Friends expressly reserves the right to amend or supplement its responses.

      1.      Tech Friends hereby objects to the subpoena pursuant to Rule 1.351(c).

      2.      The subpoena is invalid for requiring production of documents elsewhere than Jonesboro, Arkansas.

{00010890;1}                      1

3.      Tech Friends objects to the definitions of "Smart-Correct Facility," and "Smart-LaSalle Facility," on the grounds that those terms are ambiguous, and it is unclear which facilities are referenced.

4.      Tech Friends objects to the requests insofar as they seek production of documents or information protected by the attorney-client, work product, or other privilege.

5.      Tech Friends objects to the Subpoena to the extent that it calls for discovery that is unduly burdensome, vague, or overly broad (and therefore not reasonably calculated to lead to the discovery of admissible evidence).

6.      Tech Friends objects to the Subpoena to the extent it calls for discovery asking Tech Friends to disclose confidential or proprietary information, and/or information that qualifies as a trade secret.

7.      Tech Friends objects to each of the requests insofar as they seek to impose on Tech Friend's obligations and burdens beyond those required by the Florida Rules of Civil Procedure.

8.      By interposing specific objections below to particular requests, Tech Friends in no way implies that documents exist responsive to the particular request.

### Specific Objections and Responses to Numbered Requests

1.      All communications with Correct Solutions from September 13, 2017 to the present related to Your providing Inmate Services for the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

**RESPONSE: Tech Friends specifically objects to the terms "Smart-Correct Facility," and "Smart-LaSalle Facility," on the grounds that those terms are ambiguous, and it is unclear which facilities are referenced.  Tech Friends also specifically objects to this request as it is overly broad, and seeks confidential and proprietary information that is not reasonably calculated to lead to the discovery of admissible evidence.**

2.      All text messages with Correct Solutions from September 13, 2017 to the present related to Your providing Inmate Services for the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

**RESPONSE: Tech Friends specifically objects to the terms "Smart-Correct Facility," and "Smart-LaSalle Facility," on the grounds that those terms are ambiguous, and it is unclear which facilities are referenced.  Tech Friends also specifically objects to this request as it is overly broad, and seeks confidential and proprietary information that is not reasonably calculated to lead to the discovery of admissible evidence.**

3.      All communications with the following from September 13, 2017 to the present related to Your providing Inmate Services: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

**RESPONSE: Tech Friends specifically objects to the terms "Smart-Correct Facility," and "Smart-LaSalle Facility," on the grounds that those terms are ambiguous, and it is unclear which facilities are referenced.  Tech Friends also specifically objects to this request as it is overly broad, and seeks confidential and proprietary information that is not reasonably calculated to lead to the discovery of admissible evidence.**

4.      All presentations provided by You to the following from September 13, 2017 to the present regarding providing Inmate Services: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart- LaSalle Facility.

**RESPONSE: Tech Friends specifically objects to the terms "Smart-Correct Facility," and "Smart-LaSalle Facility," on the grounds that those terms are ambiguous, and it is unclear which facilities are referenced.  Tech Friends also specifically objects to this request as it is overly broad, and seeks confidential and proprietary information that is not reasonably calculated to lead to the discovery of admissible evidence.**

5.      Photographs of the front and back of each model of tablets that You used to provide Inmate Services to correctional facilities as of September 13, 2017.

**RESPONSE: Tech Friends specifically objects to this request as it is overly broad, and seeks confidential and proprietary trade secret information that is not reasonably calculated to lead to the discovery of admissible evidence.**

6.      Photographs of the front and back of each model of tablets that You currently use to provide Inmate Services to correctional facilities.

**RESPONSE: Tech Friends specifically objects to this request as it is overly broad, and seeks confidential and proprietary trade secret information that is not reasonably calculated to lead to the discovery of admissible evidence.**

7.      One physical sample of each model tablet that You used, to provide Inmate Services to correctional facilities as of September 13, 2017.

**RESPONSE: Tech Friends specifically objects to this request as it is overly broad, and seeks confidential and proprietary trade secret information that is not reasonably calculated to lead to the discovery of admissible evidence**.

8.      One physical sample of each model tablet that You currently use to provide Inmate Services to correctional facilities.

**RESPONSE: Tech Friends specifically objects to this request as it is overly broad, and seeks confidential and proprietary trade secret information that is not reasonably calculated to lead to the discovery of admissible evidence.**

9.      Documents sufficient to demonstrate the design, construction, and materials used for each model of tablets that You used to provide Inmate Services to correctional facilities as of September 13, 2017.

**RESPONSE: Tech Friends specifically objects to this request as it is overly broad, and seeks confidential and proprietary trade secret information that is not reasonably calculated to lead to the discovery of admissible evidence.**

10.     Documents sufficient to demonstrate the design, construction, and materials used for each model of tablets that You currently use to provide Inmate Services to correctional facilities.

**RESPONSE: Tech Friends specifically objects to this request as it is overly broad, and seeks confidential and proprietary trade secret information that is not reasonably calculated to lead to the discovery of admissible evidence.**

11.     All documents and/or photographs from September 13, 2017 to the present relating to any durability issues with your tablets, including, but not limited to, customer complaints, communications regarding inmate tampering or destruction of tablets, and photographs of tablets that have been dismantled or damaged

**RESPONSE: Tech Friends specifically objects to this request as it is overly broad, and seeks confidential and proprietary trade secret information that is not reasonably calculated to lead to the discovery of admissible evidence.**

12.     All documents, including but not limited to, drafts, contracts, negotiations, correspondence, and final contracts between You and Correct Solutions related to Your providing Inmate Services for the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

**RESPONSE: Tech Friends specifically objects to the terms "Smart-Correct Facility," and "Smart-LaSalle Facility," on the grounds that those terms are ambiguous, and it is unclear which facilities are referenced.  Tech Friends also specifically objects to this request as it is overly broad, and seeks confidential and proprietary information that is not reasonably calculated to lead to the discovery of admissible evidence.**

13.     All draft contracts, negotiations, correspondence, and final contracts between You and the following facilities since September 13, 2017 related to Your providing Inmate Services: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

**RESPONSE: Tech Friends specifically objects to the terms "Smart-Correct Facility," and "Smart-LaSalle Facility," on the grounds that those terms are ambiguous, and it is unclear which facilities are referenced.  Tech Friends also specifically objects to this request as it is overly broad, and seeks confidential and proprietary information that is not reasonably calculated to lead to the discovery of admissible evidence.**

14.     Documents sufficient to demonstrate the revenue You generated by providing Inmate Services from September 13, 2017 to the present at the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

**RESPONSE: Tech Friends specifically objects to the terms "Smart-Correct Facility," and "Smart-LaSalle Facility," on the grounds that those terms are ambiguous, and it is unclear which facilities are referenced.  Tech Friends also specifically objects to this request as it is overly broad, and seeks confidential and proprietary information that is not reasonably calculated to lead to the discovery of admissible evidence.**

15.     Documents sufficient to demonstrate the number of tablets You have deployed, on a month-to-month basis, from September 13, 2017 to the present at the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

**RESPONSE: None.**

16.     All documents and communications wherein You, Correct Solutions, or any of the following reference the existence of a contract between Smart Communications and Correct Solutions: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

**RESPONSE: Tech Friends specifically objects to the terms Smart-Correct Facility," and "Smart-LaSalle Facility," on the grounds that those terms are ambiguous, and it is unclear which facilities are referenced. Tech Friends also specifically objects to this request as it is overly broad, and seeks confidential and proprietary information that is not reasonably calculated to lead to the discovery of admissible evidence.**

17.     All documents and communications wherein You, Correct Solutions, or any of the following reference the fact that Smart Communications provides services to any of the following: Avoyelles, Bowie, Lamar, Miller, Moore, Sebastian, St. Louis, Washington, Wayne, any Smart-Correct Facility, and any Smart-LaSalle Facility.

**RESPONSE: Tech Friends specifically objects to the terms "Smart-Correct Facility," and "Smart-LaSalle Facility," on the grounds that those terms are ambiguous, and it is unclear which facilities are referenced. Tech Friends also specifically objects to this request as it is overly broad, and seeks confidential and proprietary information that is not reasonably calculated to lead to the discovery of admissible evidence.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on November 8, 2019, a true and correct copy of the foregoing was electronically filed with the Florida Courts E-Filing Portal System, which will send an electronic notice of filing to Kenneth G. Turkel, Esquire, kturkel@bajocuva.com, tdeleo@bajocuva.com, Brad F. Barrios, Esquire, bbarrios@bajocuva.com, David Hayes, Esquire, dhayes@bajobcuva.com, Baj, Cuva, Cohen, Turkel, 100 North Tampa Street, Suite 1900, Tampa, Florida 33602, *Attorneys for Plaintiff*; Kimberly A. Bald, Esquire, kab@harlleebald.com, James E. Lynch, Esquire, jel@harlleebald.com, ddf@harlleebald.com, cl@harlleebald.com, Harllee & Bald, P.A., 202 Old Main Street, Bradenton, Florida 34205, *Attorneys for Defendant Correct Solutions LLC*; and Luke F. Piontek, lpiontek@roedelpartons.com, Roedel, Parsons, Kock, Blache, Balhoff & McCollister, 8440 Jefferson Highway, Suite 301, Baton Rouge, LA 70809, *Attorneys for Defendant Correct Solutions LLC.*

/s/ *Jon P. Tasso*
ETHAN J. LOEB
Florida Bar No. 0668338
ethanl@sblfirm.com
loisf@sblfirm.com
JON P. TASSO
Florida Bar No. 0120510
jont@sblfirm.com
heatherw@sblfirm.com
SMOLKER, BARTLETT, LOEB,
HINDS & THOMPSON, P.A.
100 N. Tampa Street, Suite 2050
Tampa, Florida 33602
Telephone:  (813) 223-3888
Facsimile:  (813) 228-6422
*Attorneys for Tech Friends, Inc.*

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                    Case No: 19-CA-008089

       Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

       Defendant.

_____/

## NOTICE OF INTENT TO SERVE
## <u>SUBPOENAS FOR DOCUMENTS IN ANOTHER STATE</u>

PLEASE TAKE NOTICE that, pursuant to Rule 1.410 of the Florida Rules of Civil

Procedure, Plaintiff, Smart Communications Holding, Inc., intends, after 10 days, and if no

objections are received from any party, to present the attached Subpoenas to authorities in each

state competent to issue subpoenas with identical terms. Upon issuance of the subpoenas, they

will be promptly served on the following:

           1.        Sebastian County Sheriff's Office
                       800 South A. Street
                       Fort Smith, AR  72901

           2.        Capt. Dumas
                       Sebastian County Sheriff's Office
                       800 South A. Street
                       Fort Smith, AR  72901

           3.        Miller County Sheriff's Office/Miller County Jail
                       2300 East Street
                       Texarkana, AR  71854

4.      Warden Walker
        Miller County Sheriff's Office/Miller County Jail
        2300 East Street
        Texarkana, AR  71854

5.      Lasalle Corrections on behalf of
        Bowie County Correctional Center
        105 W. Front Street
        Texarkana, TX  75501-5610

6.      Avoyelles Parish Sheriff's Office
        675 Government Street
        Marksville, LA  71351

7.      Lamar County Sheriff's Office
        Lamar County Jail
        201 Main Street
        Purvis, MS  39475

8.      Washington County Sheriff's Office
        1155 W. Clydesdale Dr.
        Fayetteville, AR  72701

9.      Alan Johnson
        Washington County Sheriff's Office
        1155 W. Clydesdale Dr.
        Fayetteville, AR  72701

10.     Metro Moore County Sheriff's Office
        Moore County Jail
        58 Elm Street S.
        Lynchburg, TN  37353

11,     Wayne County Sheriff's Office
        266 E. Walnut Street
        Jesup, GA  31546

12.     City of St. Louis, Missouri
        City Justice Center
        200 South Tucker Blvd.
        St. Louis, MO  63102

13.     Frank Turner
        City of St. Louis, Missouri
        City Justice Center
        200 South Tucker Blvd.
        St. Louis, MO  63102

DATED:  November 8, 2019.

                              /s/ Brad F. Barrios
                              Kenneth G. Turkel – FBN 867233
                              E-mail:  kturkel@bajocuva.com
                              Brad F. Barrios – FBN 35293
                              E-mail:  bbarrios@bajocuva.com
                              David A. Hayes – FBN  96657
                              E-mail: dhayes@bajocuva.com
                              BAJO | CUVA | COHEN | TURKEL
                              100 North Tampa Street, Suite 1900
                              Tampa, Florida 33602
                              (813) 443-2199 (telephone)
                              (813) 443-2193 (facsimile)
                              *Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of November, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
          JEL@harlleebald.com
          DDF@harlleebald.com
          CL@harlleebald.com

                              /s/ Brad F. Barrios
                              Attorney

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                              Case No: 19-CA-008089

        Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a       **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,    **AD TESTIFICANDUM**
                                    (pursuant to the Uniform Interstate Deposition
        Defendant.                and Discovery Act and LA Rev Stat §13:3825)

_____/

**SUBPOENA DUCES TECUM AND AD TESTIFICANDUM**
**PURSUANT TO THE UNIFORM INTERSTATE DISCOVERY ACT**

THE STATE OF FLORIDA:

      TO:    **A representative of**
            **Avoyelles Parish Sheriff's Office**
            **675 Government Street**
            **Marksville, LA  71351**

      YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to M&S Court Reporters, 3402 Jackson Street, Suite E, Alexandria, LA  71301 on

December 13, 2019, at 10:00 a.m.  You may comply with this subpoena by mailing legible

copies of the items to be produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel,

100 N. Tampa Street, Suite 1900, Tampa, FL  33602 or by E-Mail to BBarrios@Bajocuva.com.

If you fail to comply, you may be in contempt of court.

      YOU ARE FURTHER COMMANDED to appear before a person authorized by law to

take depositions at M&S Court Reporters, 3402 Jackson Street, Suite E, Alexandria, LA  71301

on February 11, 2020 @ 1:00 p.m. for the taking of your deposition in this action concerning the documents produced by you as well as any topic listed in Schedule B.

      If you fail to appear, you may be in contempt of court.

      You are subpoenaed to appear by the following attorney, and unless excused from this subpoena by this attorney or the court, you shall respond to this subpoena as directed.

      Dated on _____, 2019.

 

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*


      *If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

## SCHEDULE "A" TO SUBPOENA DUCES TECUM
## ISSUED TO AVOYELLES PARISH SHERIFF'S OFFICE

### INSTRUCTIONS

As used in this Exhibit:

1. **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.  "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.  **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.  **"Avoyelles"** means Avoyelles Parish Sheriff's Office, Marksville, LA, or any related entity which operates or contracts for a correctional facility in Avoyelles Parish, LA.

5.  In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6.  A separate answer shall be furnished for each request.

## **REQUESTS**

1)    All existing contracts and agreements, including all addenda and schedules between Avoyelles Parish and/or Avoyelles Parish Sheriff's Office ("Avoyelles") and Correct Solutions.

2)    All internal communications and all communications between Avoyelles and Correct Solutions relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3)    All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4)    All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5)    All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6)    All existing contracts and agreements, including all addenda and schedules between Avoyelles and Tech Friends, Inc. ("Tech Friends').

7)    All communications between Avoyelles and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

8)    All communications between Avoyelles and Tech Friends from January 1, 2019 to the present.

## SCHEDULE "B" TO SUBPOENA DUCES TECUM
## ISSUED TO AVOYELLES PARISH SHERIFF'S OFFICE

1.      The relationship between Avoyelles Parish Sheriff's Office and Smart Communications, Inc.

2.      The relationship between Avoyelles Parish Sheriff's Office and Correct Solutions, LLC a/k/a Correct Solutions Group, LLC.

3.      Any Contracts and Agreements between Avoyelles Parish Sheriff's Office and Smart Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.      Any discussions between Avoyelles and Tech Friends, Inc. from January 1, 2019 to the present.

5.      Any discussions between Avoyelles and Correct Solutions regarding Smart Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a      **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,    **AD TESTIFICANDUM**
                                (pursuant to Tex Civ. Prac. & Rem. Code Ann.
      Defendant.                § 20.002)
_____/

## SUBPOENA DUCES TECUM AND AD TESTIFICANDUM

THE STATE OF FLORIDA:

      TO:    **A representative of**
                **Lasalle Corrections on behalf of**
                **Bowie County Correctional Center**
                **105 W. Front Street**
                **Texarkana, TX  75501-5610**

      YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to Alliance Security, 209 Oakhill Rd., Texarkana, TX  75501, on December 13, 2019

at 10:00 a.m..  You may comply with this subpoena by mailing legible copies of the items to be

produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel, 100 N. Tampa Street,

Suite 1900, Tampa, FL  33602 or by E-Mail to BBarrios@Bajocuva.com.  If you fail to comply,

you may be in contempt of court.

      YOU ARE FURTHER COMMANDED to appear before an affiliate of U.S. Legal

Support or a person authorized by law to take depositions at Country Inn & Suites, 1918

University Avenue, Texarkana, TX 75503 on January 30, 2020 at 9:00 a.m.. for the taking of

your deposition in this action concerning the documents produced by you as well as any topic

listed in Schedule B.

    If you fail to appear, you may be in contempt of court.

    You are subpoenaed to appear by the following attorney, and unless excused from this

subpoena by this attorney or the court, you shall respond to this subpoena as directed.

    Dated on November __, 2019.

<div style="text-align:right">

/s/ Brad F. Barrios_____
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail:  bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

</div>

    *If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

SCHEDULE "A" TO SUBPOENA DUCES TECUM
ISSUED TO LASALLE CORRECTIONS ON BEHALF OF BOWIE COUNTY
<u>CORRECTIONAL CENTER</u>

<u>INSTRUCTIONS</u>

As used in this Exhibit:

1.   **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.    "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.    **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.    **"Bowie"** means Bowie County and/or LaSalle Corrections or any related entity which operates or contracts for a correctional facility in Texarkana, TX.

5.    In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6.    A separate answer shall be furnished for each request.

## REQUESTS

1)   All existing contracts and agreements, including all addenda and schedules between Bowie County Correctional Center and or LaSalle Corrections ("Bowie County") and Correct Solutions.

2)   All internal communications and all communications between Bowie County and Correct Solutions, relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3)   All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4)   All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5)   All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6)   All existing contracts and agreements, including all addenda and schedules between Bowie and Tech Friends, Inc. ("Tech Friends').

7)   All communications between Bowie and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

8)   All communications between Bowie and Tech Friends from January 1, 2019 to the present.

**SCHEDULE "B" TO SUBPOENA DUCES TECUM**
**ISSUED TO LASALLE CORRECTIONS ON BEHALF OF BOWIE COUNTY**
<u>**CORRECTIONAL CENTER**</u>

1.      The relationship between LaSalle Corrections and/or Bowie County Correctional Center and Smart Communications, Inc.

2.      The relationship between LaSalle Corrections and/or Bowie County Correctional Center and Correct Solutions, LLC a/k/a Correct Solutions Group, LLC.

3.      Any Contracts and Agreements between LaSalle Corrections and/or Bowie County Correctional Center and Smart Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.      Any discussions between Bowie and Tech Friends, Inc. from January 1, 2019 to the present.

5.      Any discussions between Bowie and Correct Solutions regarding Smart Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                          Case No: 19-CA-008089

       Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a       **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,    **AD TESTIFICANDUM**
                                   (pursuant to the Mo. Supreme Court R. 57.08
       Defendant.               and Mo. Ann. Stat. §492.100)

_____/

**SUBPOENA DUCES TECUM AND AD TESTIFICANDUM**

THE STATE OF FLORIDA:

      TO:     **A representative of**
              **The City of St. Louis**
              **City Justice Center**
              **200 S. Tucker Blvd.**
              **St. Louis, M.D.  63102**

      YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to Alaris Litigation Services, 711 North 11th Street, St. Louis, MO  63101, on

December 13, 2019 at 10:00 a.m.  You may comply with this subpoena by mailing legible copies

of the items to be produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel, 100 N.

Tampa Street, Suite 1900, Tampa, FL  33602 or by E-Mail to BBarrios@Bajocuva.com.  If you

fail to comply, you may be in contempt of court.

      YOU ARE FURTHER COMMANDED to appear before an affiliate of U.S. Legal

Support or a person authorized by law to take depositions at Alaris Litigation Services, 711

North 11th Street, St. Louis, MO  63101 on February 25, 2020 at 1:00 p.m.. for the taking of your deposition in this action concerning the documents produced by you as well as any topic listed in Schedule B.

If you fail to appear, you may be in contempt of court.

You are subpoenaed to appear by the following attorney, and unless excused from this subpoena by this attorney or the court, you shall respond to this subpoena as directed.

Dated on November ___, 2019.

/s/ Brad F. Barrios
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
Counsel for Plaintiff

*If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

## SCHEDULE "A" TO SUBPOENA DUCES TECUM
## ISSUED TO CITY OF ST. LOUIS/CITY JUSTICE CENTER

### INSTRUCTIONS

As used in this Exhibit:

1.   **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.    "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.    **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.    **"City of St. Louis"** means the City of St. Louis and/or City Justice Center or any related entity which operates or contracts for a correctional facility in the City of St. Louis, MO.

5.    In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6.    A separate answer shall be furnished for each request.

## REQUESTS

1)   All existing contracts and agreements, including all addenda and schedules between the City of St. Louis and/or City Justice Center ("City of St. Louis") and Correct Solutions.

2)   All internal communications and all communications between the City of St. Louis and Correct Solutions, relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3)   All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4)   All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5)   All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6)   All existing contracts and agreements, including all addenda and schedules between The City of St. Louis and Tech Friends, Inc. ("Tech Friends').

7)   All communications between The City of St. Louis and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

8)   All communications between The City of St. Louis and Tech Friends from January 1, 2019 to the present.

**SCHEDULE "B" TO SUBPOENA DUCES TECUM**
<u>**ISSUED TO CITY OF ST. LOUIS/CITY JUSTICE CENTER**</u>

1.      The relationship between the City of St. Louis and/or City Justice Center and Smart Communications, Inc.

2.      The relationship between the City of St. Louis and/or City Justice Center and Correct Solutions, LLC a/k/a Correct Solutions Group, LLC.

3.      Any Contracts and Agreements between the City of St. Louis and/or City Justice Center and Smart Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.      Any discussions between The City of St. Louis and Tech Friends, Inc. from January 1, 2019 to the present.

5.      Any discussions between The City of St. Louis and Correct Solutions regarding Smart Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                              Case No: 19-CA-008089

        Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a       **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,    **AD TESTIFICANDUM**
                                     (pursuant to the Mo. Supreme Court R. 57.08
        Defendant.                 and Mo. Ann. Stat. §492.100)
_____/

**SUBPOENA DUCES TECUM AND AD TESTIFICANDUM**

THE STATE OF FLORIDA:

      TO:   **Frank Turner**
             **The City of St. Louis**
             **City Justice Center**
             **200 S. Tucker Blvd.**
             **St. Louis, M.D.  63102**

      YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to Alaris Litigation Services, 711 North 11th Street, St. Louis, MO  63101, on

December 13, 2019 at 10:00 a.m.  You may comply with this subpoena by mailing legible copies

of the items to be produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel, 100 N.

Tampa Street, Suite 1900, Tampa, FL  33602 or by E-Mail to BBarrios@Bajocuva.com.  If you

fail to comply, you may be in contempt of court.

      YOU ARE FURTHER COMMANDED to appear before an affiliate of U.S. Legal

Support or a person authorized by law to take depositions at Alaris Litigation Services, 711

North 11th Street, St. Louis, MO  63101 on February 25, 2020 at  9:30 a.m.. for the taking of your deposition in this action concerning the documents produced by you as well as any topic listed in Schedule B.

If you fail to appear, you may be in contempt of court.

You are subpoenaed to appear by the following attorney, and unless excused from this subpoena by this attorney or the court, you shall respond to this subpoena as directed.

Dated on November ___, 2019.

*/s/ Brad F. Barrios*_____
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

*If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

**SCHEDULE "A" TO SUBPOENA DUCES TECUM**
**ISSUED TO FRANK TURNER, CITY OF ST. LOUIS/CITY JUSTICE CENTER**

**INSTRUCTIONS**

As used in this Exhibit:

1.    **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.    "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.    **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.    **"City of St. Louis"** means the City of St. Louis and/or City Justice Center or any related entity which operates or contracts for a correctional facility in the City of St. Louis, MO.

5.    In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6.    A separate answer shall be furnished for each request.

## REQUESTS

1) All existing contracts and agreements, including all addenda and schedules between the City of St. Louis and/or City Justice Center ("City of St. Louis") and Correct Solutions.

2) All internal communications and all communications between the City of St. Louis and Correct Solutions, relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3) All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4) All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5) All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6) All existing contracts and agreements, including all addenda and schedules between The City of St. Louis and Tech Friends, Inc. ("Tech Friends').

7) All communications between The City of St. Louis and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

8) All communications between The City of St. Louis and Tech Friends from January 1, 2019 to the present.

**SCHEDULE "B" TO SUBPOENA DUCES TECUM**
**ISSUED TO FRANK TURNER, CITY OF ST. LOUIS/CITY JUSTICE**
**CENTER**

1.     The relationship between the City of St. Louis and/or City Justice Center and Smart Communications, Inc.

2.     The relationship between the City of St. Louis and/or City Justice Center and Correct Solutions, LLC a/k/a Correct Solutions Group, LLC.

3.     Any Contracts and Agreements between the City of St. Louis and/or City Justice Center and Smart Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.     Any discussions between The City of St. Louis and Tech Friends, Inc. from January 1, 2019 to the present.

5.     Any discussions between The City of St. Louis and Correct Solutions regarding Smart Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                    Case No: 19-CA-008089

    Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a       **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,   **AD TESTIFICANDUM**
                                   (pursuant to the Uniform Interstate Deposition
    Defendant.                  and Discovery Act and Miss. Code Ann. §11-
_____/    59-1)

**SUBPOENA DUCES TECUM AND AD TESTIFICANDUM**
**PURSUANT TO THE UNIFORM INTERSTATE DISCOVERY ACT**

THE STATE OF FLORIDA:

    TO:    **A representative of Lamar County Sheriff's Office**
              **Lamar County Jail**
              **205 Main Street**
              **Purvis, MS  39475**

    YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to Patsy Ainsworth Reporting, Inc., 301 Hardy Street, Suite A, Hattiesburg, MS

39401 on December 13, 2019 at 10:00 a.m. You may comply with this subpoena by mailing

legible copies of the items to be produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen |

Turkel, 100 N. Tampa Street, Suite 1900, Tampa, FL  33602 or by E-Mail to

BBarrios@Bajocuva.com.  If you fail to comply, you may be in contempt of court.

    YOU ARE FURTHER COMMANDED to appear before a person authorized by law to

take depositions at Patsy Ainsworth Reporting, Inc., 301 Hardy Street, Suite A, Hattiesburg, MS

39401 on February 12, 2020  @ 1:00 p.m. for the taking of your deposition in this action

concerning the documents produced by you as well as any topic listed in Schedule B.

     If you fail to appear, you may be in contempt of court.

     You are subpoenaed to appear by the following attorney, and unless excused from this

subpoena by this attorney or the court, you shall respond to this subpoena as directed.

     Dated on _____, 2019.


                     */s/ Brad F. Barrios*    
                     Kenneth G. Turkel – FBN 867233
                     E-mail:  kturkel@bajocuva.com
                     Brad F. Barrios – FBN 35293
                     E-mail: bbarrios@bajocuva.com
                     David A. Hayes – FBN  96657
                     E-mail: dhayes@bajocuva.com
                     BAJO | CUVA | COHEN | TURKEL
                     100 North Tampa Street, Suite 1900
                     Tampa, Florida 33602
                     (813) 443-2199 (telephone)
                     (813) 443-2193 (facsimile)
                     *Counsel for Plaintiff*


     *If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

## SCHEDULE "A" TO SUBPOENA DUCES TECUM
## <u>ISSUED TO LAMAR COUNTY SHERIFF'S OFFICE</u>

### <u>INSTRUCTIONS</u>

As used in this Exhibit:

1.  **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.  "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.  **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.  **"Lamar"** means Lamar County Sheriff's Department and the Lamar County Jail, Purvis, MS, or any related entity which operates or contracts for a correctional facility in Lamar County, MS.

5.  In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6.  A separate answer shall be furnished for each request.

## <u>REQUESTS</u>

1)   All existing contracts and agreements, including all addenda and schedules between Lamar County Sheriff's Dept. and/or Lamar County Jail ("Lamar County") and Correct Solutions.

2)   All internal communications and all communications between Lamar County and Correct Solutions, relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3)   All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4)   All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5)   All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6)   All existing contracts and agreements, including all addenda and schedules between Lamar and Tech Friends, Inc. ("Tech Friends').

7)   All communications between Lamar and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

8)   All communications between Lamar and Tech Friends from January 1, 2019 to the present.

**SCHEDULE "B" TO SUBPOENA DUCES TECUM**
**ISSUED TO LAMAR COUNTY SHERIFF'S OFFICE**

1.      The relationship between Lamar County Sheriff's Office and Smart
        Communications, Inc.

2.      The relationship between Lamar County Sheriff's Office and Correct Solutions, LLC
        a/k/a Correct Solutions Group, LLC.

3.      Any Contracts and Agreements between Lamar County Sheriff's Office and Smart
        Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.      Any discussions between Lamar and Tech Friends, Inc. from January 1, 2019 to the
        present.

5.      Any discussions between Lamar and Correct Solutions regarding Smart
        Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                        Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a       **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,    **AD TESTIFICANDUM**
                                      (pursuant to the Uniform Interstate Deposition
      Defendant.                   and Discovery Act and Ark. R. Civ. P. 45.1)
_____/

**SUBPOENA DUCES TECUM AND AD TESTIFICANDUM**
**PURSUANT TO THE UNIFORM INTERSTATE DISCOVERY ACT**

THE STATE OF FLORIDA:

     TO:    **A representative of**
            **Miller County Sheriff's Office/Miller County Jail**
            **2300 East Street**
            **Texarkana, AR  71854**

     YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to Alliance Security, 209 Oakhill Rd., Texarkana, TX 75501, on December 13, 2019

at 10:00 a.m.  You may comply with this subpoena by mailing legible copies of the items to be

produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel, 100 N. Tampa Street,

Suite 1900, Tampa, FL  33602 or by E-Mail to BBarrios@Bajocuva.com.  If you fail to comply,

you may be in contempt of court.

     YOU ARE FURTHER COMMANDED to appear before an affiliate of U.S. Legal or a

person authorized by law to take depositions at Best Western Plus, Texarkana Inn & Suites, 5219

Crossroads Pkwy, Texarkana, AR  71854 on January 29, 2020, 1:30 p.m. for the taking of your deposition in this action concerning the documents produced by you as well as any topic listed in Schedule B.

If you fail to appear, you may be in contempt of court.

You are subpoenaed to appear by the following attorney, and unless excused from this subpoena by this attorney or the court, you shall respond to this subpoena as directed.

Dated on November ___, 2019.

> /s/ Brad F. Barrios
> Kenneth G. Turkel – FBN 867233
> E-mail:  kturkel@bajocuva.com
> Brad F. Barrios – FBN 35293
> E-mail: bbarrios@bajocuva.com
> David A. Hayes – FBN  96657
> E-mail: dhayes@bajocuva.com
> BAJO | CUVA | COHEN | TURKEL
> 100 North Tampa Street, Suite 1900
> Tampa, Florida 33602
> (813) 443-2199 (telephone)
> (813) 443-2193 (facsimile)
> *Counsel for Plaintiff*

*If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

## SCHEDULE "A" TO SUBPOENA DUCES TECUM
## ISSUED TO MILLER COUNTY SHERIFF'S OFFICE/MILLER COUNTY JAIL

### INSTRUCTIONS

As used in this Exhibit:

1. **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character. The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.    "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons. Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.    **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.    **"Miller"** means Miller County Sheriff's Office, Miller County Jail or any related entity which operates or contracts for a correctional facility in Miller County, AR.

5.    In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6.    A separate answer shall be furnished for each request.

## REQUESTS

1)    All existing contracts and agreements, including all addenda and schedules between the Miller County Sheriff's Office and/or the Miller County Jail ("Miller County") and Correct Solutions.

2)    All internal communications and all communication between Miller County and Correct Solutions, relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3)    All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4)    All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5)    All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6)    All existing contracts and agreements, including all addenda and schedules between Miller and Tech Friends, Inc. ("Tech Friends').

7)    All communications between Miller and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

8)    All communications between Miller and Tech Friends from January 1, 2019 to the present.

**SCHEDULE "B" TO SUBPOENA DUCES TECUM**
**ISSUED TO MILLER COUNTY SHERIFF'S OFFICE/MILLER COUNTY JAIL**

1.      The relationship between Miller County Sheriff's Office and Smart
        Communications, Inc.

2.      The relationship between Miller County Sheriff's Office and Correct Solutions, LLC
        a/k/a Correct Solutions Group, LLC.

3.      Any Contracts and Agreements between Miller County Sheriff's Office and
        Smart Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.      Any discussions between Miller and Tech Friends, Inc. from January 1, 2019 to the
        present.

5.      Any discussions between Miller and Correct Solutions regarding Smart
        Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                          Case No: 19-CA-008089

    Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a      **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,    **AD TESTIFICANDUM**
                                         (pursuant to the Uniform Interstate Deposition
    Defendant.                    and Discovery Act and Ark. R. Civ. P. 45.1)

_____/

**SUBPOENA DUCES TECUM AND AD TESTIFICANDUM
PURSUANT TO THE UNIFORM INTERSTATE DISCOVERY ACT**

THE STATE OF FLORIDA:

    TO:    **Warden Walker**
               **Miller County Sheriff's Office/Miller County Jail**
               **2300 East Street**
               **Texarkana, AR  71854**

    YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc. ("SmartComm"), to produce and permit inspection and copying of the documents described in Schedule A to Alliance Security, 209 Oakhill Rd., Texarkana, TX  75501, at 10:00 a.m. on December 13, 2019.  You may comply with this subpoena by mailing legible copies of the items to be produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel, 100 N. Tampa Street, Suite 1900, Tampa, FL  33602 or by E-Mail to BBarrios@Bajocuva.com.  If you fail to comply, you may be in contempt of court.

    YOU ARE FURTHER COMMANDED to appear before an affiliate of U.S. Legal or a person authorized by law to take depositions at Best Western Plus, Texarkana Inn & Suites, 5219

Crossroads Pkwy, Texarkana, AR  71854 on January 29, 2020, 9:00 a.m. for the taking of your deposition in this action concerning the documents produced by you as well as any topic listed in Schedule B.

If you fail to appear, you may be in contempt of court.

You are subpoenaed to appear by the following attorney, and unless excused from this subpoena by this attorney or the court, you shall respond to this subpoena as directed.

Dated on November ___, 2019.

/s/ Brad F. Barrios

Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail:  bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

*If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

## SCHEDULE "A" TO SUBPOENA DUCES TECUM
## ISSUED TO WARDEN WALKER, MILLER COUNTY SHERIFF'S OFFICE – <u>MILLER COUNTY JAIL</u>

### <u>INSTRUCTIONS</u>

As used in this Exhibit:

1.   **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.    "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.    **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.    **"Miller"** means Miller County Sheriff's Office, Miller County Jail or any related entity which operates or contracts for a correctional facility in Miller County, AR.

5.    In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6.    A separate answer shall be furnished for each request.

## <u>REQUESTS</u>

1) All existing contracts and agreements, including all addenda and schedules between the Miller County Sheriff's Office and/or the Miller County Jail ("Miller County") and Correct Solutions.

2) All internal communications and all communications between Miller County and Correct Solutions, relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3) All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4) All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5) All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6) All existing contracts and agreements, including all addenda and schedules between Miller and Tech Friends, Inc. ("Tech Friends').

7) All communications between Miller and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

8) All communications between Miller and Tech Friends from January 1, 2019 to the present.

**SCHEDULE "B" TO SUBPOENA DUCES TECUM
ISSUED TO WARDEN WALKER, MILLER COUNTY SHERIFF'S OFFICE –
<u>MILLER COUNTY JAIL</u>**

1.      The relationship between Miller County Sheriff's Office and Smart
Communications, Inc.

2.      The relationship between Miller County Sheriff's Office and Correct Solutions, LLC
a/k/a Correct Solutions Group, LLC.

3.      Any Contracts and Agreements between Miller County Sheriff's Office and
Smart Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.      Any discussions between Miller and Tech Friends, Inc. from January 1, 2019 to the
present.

5.      Any discussions between Miller and Correct Solutions regarding Smart
Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a       **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,     **AD TESTIFICANDUM**
                                         (pursuant to the Uniform Interstate Deposition
      Defendant.                  and Discovery Act and Tenn. Code. Ann. §§
_____/     24-9-201 to 207)

**SUBPOENA DUCES TECUM AND AD TESTIFICANDUM**
**PURSUANT TO THE UNIFORM INTERSTATE DISCOVERY ACT**

THE STATE OF FLORIDA:

      TO:     **A representative of**
                **Metro Moore County Sheriff's Office/Moore County Jail**
                **58 Elm Street S.**
                **Lynchburg, TN 37352**

      YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to Regus, 200 W. Martin Luther King Blvd., Suite 1000, Chattanooga, TN  37402 on

December 13, 2019, at 10:00 a.m.  You may comply with this subpoena by mailing legible

copies of the items to be produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel,

100 N. Tampa Street, Suite 1900, Tampa, FL  33602 or by E-Mail to BBarrios@Bajocuva.com.

If you fail to comply, you may be in contempt of court.

      YOU ARE FURTHER COMMANDED to appear before a person authorized by law to

take depositions at Regus, 200 W. Martin Luther King Blvd., Suite 1000, Chattanooga, TN

37402 on February 18, 2020 @ 1:00 p.m. for the taking of your deposition in this action

concerning the documents produced by you as well as any topic listed in Schedule B.

If you fail to appear, you may be in contempt of court.

You are subpoenaed to appear by the following attorney, and unless excused from this

subpoena by this attorney or the court, you shall respond to this subpoena as directed.

Dated on _____, 2019.

<div style="margin-left: 50%">

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

</div>

*If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

**SCHEDULE "A" TO SUBPOENA DUCES TECUM**
**ISSUED TO METRO MOORE COUNTY SHERIFF'S OFFICE/MOORE COUNTY JAIL**

**INSTRUCTIONS**

As used in this Exhibit:

1. **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2. "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3. **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4. **"Metro Moore"** means Metro Moore County Sheriff's Department and the Moore County Jail, Lynchburg, TN, or any related entity which operates or contracts for a correctional facility in Moore County, TN.

5. In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6. A separate answer shall be furnished for each request.

## REQUESTS

1)    All existing contracts and agreements, including all addenda and schedules between Metro Moore County Sheriff's Dept. and/or Moore County Jail ("Moore County") and Correct Solutions.

2)    All internal communications and all communications between Moore County and Correct Solutions, relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3)    All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4)    All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5)    All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6)    All existing contracts and agreements, including all addenda and schedules between Moore and Tech Friends, Inc. ("Tech Friends').

7)    All communications between Moore and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

8)    All communications between Moore and Tech Friends from January 1, 2019 to the present.

**SCHEDULE "B" TO SUBPOENA DUCES TECUM**
**ISSUED TO MOORE COUNTY SHERIFF'S OFFICE/MOORE COUNTY JAIL**

1.    The relationship between Moore County Sheriff's Office and Smart Communications, Inc.

2.    The relationship between Moore County Sheriff's Office and Correct Solutions, LLC a/k/a Correct Solutions Group, LLC.

3.    Any Contracts and Agreements between Moore County Sheriff's Office and Smart Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.    Any discussions between Moore and Tech Friends, Inc. from January 1, 2019 to the present.

5.    Any discussions between Moore and Correct Solutions regarding Smart Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                         Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a       **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,     **AD TESTIFICANDUM**
                                        (pursuant to the Uniform Interstate Deposition
      Defendant.                   and Discovery Act and Ark. R. Civ. P. 45.1)

_____/

**SUBPOENA DUCES TECUM AND AD TESTIFICANDUM
PURSUANT TO THE UNIFORM INTERSTATE DISCOVERY ACT**

THE STATE OF FLORIDA:

    TO:   **Capt. Dumas**
            **Sebastian County Sheriff's Office**
            **800 South A. Street**
            **Fort Smith, AR  72901**

    YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to 915 W. Main Street, Suite D, Russellville, AR  72801, on December 13, 2019, at

10:00 a.m..  You may comply with this subpoena by mailing legible copies of the items to be

produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel, 100 N. Tampa Street,

Suite 1900, Tampa, FL  33602 or by E-Mail to BBarrios@Bajocuva.com.  If you fail to comply,

you may be in contempt of court.

    YOU ARE FURTHER COMMANDED to appear before an affiliate of U.S. Legal

Support or a person authorized by law to take depositions at Holiday Inn Express – Fort Smith

Executive Park, 6813 Phoenix Avenue, Fort Smith, AR  72903 on January 28, 2020 at 9:30 a.m.

for the taking of your deposition in this action concerning the documents produced by you as

well as any topic listed in Schedule B.

If you fail to appear, you may be in contempt of court.

You are subpoenaed to appear by the following attorney, and unless excused from this

subpoena by this attorney or the court, you shall respond to this subpoena as directed.

Dated on _____, 2019.

/s/ Brad F. Barrios_____
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

*If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

## SCHEDULE "A" TO SUBPOENA DUCES TECUM
## <u>ISSUED TO SEBASTIAN COUNTY SHERIFF'S OFFICE</u>

### <u>INSTRUCTIONS</u>

As used in this Exhibit:

1.  **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.   "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.   **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.   **"Sebastian"** means Sebastian County Sheriff's Department or any related entity which operates or contracts for a correctional facility in Sebastian County, AR.

5.   In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6.   A separate answer shall be furnished for each request.

## REQUESTS

1) All existing contracts and agreements, including all addenda and schedules between Sebastian County Sheriff's Dept. ("Sebastian County") and Correct Solutions.

2) All internal communications and all communications between Sebastian County and Correct Solutions, relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3) All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4) All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5) All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6) All documents, including presentations and notes, relating to the April 2019 meeting between Sebastian and Correct during which the topic of Smart tablets was discussed.

7) All existing contracts and agreements, including all addenda and schedules between Sebastian and Tech Friends, Inc. ("Tech Friends').

8) All communications between Sebastian and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

9) All communications between Sebastian and Tech Friends from January 1, 2019 to the present.

**SCHEDULE "B" TO SUBPOENA DUCES TECUM**
**ISSUED TO CAPT. DUMAS, SEBASTIAN COUNTY SHERIFF'S OFFICE**

1.      The relationship between Sebastian County Sheriff's Office and Smart Communications, Inc.

2.      The relationship between Sebastian County Sheriff's Office and Correct Solutions, LLC a/k/a Correct Solutions Group, LLC.

3.      Any Contracts and Agreements between Sebastian County Sheriff's Office and Smart Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.      Any discussions between Sebastian and Tech Friends, Inc. from January 1, 2019 to the present.

5.      Any discussions between Sebastian and Correct Solutions regarding Smart Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                             Case No: 19-CA-008089

     Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a        **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,    **AD TESTIFICANDUM**
                                     (pursuant to the Uniform Interstate Deposition
     Defendant.                   and Discovery Act and Ark. R. Civ. P. 45.1)
_____/

## SUBPOENA DUCES TECUM AND AD TESTIFICANDUM
## PURSUANT TO THE UNIFORM INTERSTATE DISCOVERY ACT

THE STATE OF FLORIDA:

      TO:    **A representative of**
              **Sebastian County Sheriff's Office**
              **800 South A. Street**
              **Fort Smith, AR  72901**

      YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to 915 West Main Street, Suite D, Russellville, AR  72801, on December 13, 2019 at

10:00 a.m.  You may comply with this subpoena by mailing legible copies of the items to be

produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel, 100 N. Tampa Street,

Suite 1900, Tampa, FL  33602 or by E-Mail to BBarrios@Bajocuva.com.  If you fail to comply,

you may be in contempt of court.

      YOU ARE FURTHER COMMANDED to appear before an affiliate of U.S. Legal

Support or a person authorized by law to take depositions at Holiday Inn Express – Fort Smith

Executive Park, 6813 Phoenix Avenue, Fort Smith, AR  72903 on January 28, 2020 at 1:30 p.m..

for the taking of your deposition in this action concerning the documents produced by you as

well as any topic listed in Schedule B.

If you fail to appear, you may be in contempt of court.

You are subpoenaed to appear by the following attorney, and unless excused from this

subpoena by this attorney or the court, you shall respond to this subpoena as directed.

Dated on November ___, 2019.

<div align="right">

/s/ Brad F. Barrios
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

</div>

*If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

## SCHEDULE "A" TO SUBPOENA DUCES TECUM
## ISSUED TO SEBASTIAN COUNTY SHERIFF'S OFFICE
## INSTRUCTIONS

As used in this Exhibit:

1. **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.  "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.  **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.  **"Sebastian"** means Sebastian County Sheriff's Department or any related entity which operates or contracts for a correctional facility in Sebastian County, AR.

5.  In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6.  A separate answer shall be furnished for each request.

## <u>REQUESTS</u>

1)   All existing contracts and agreements, including all addenda and schedules between Sebastian County Sheriff's Dept. ("Sebastian County") and Correct Solutions.

2)   All internal communications and all communications between Sebastian County and Correct Solutions, relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3)   All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4)   All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5)   All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6)   All documents, including presentations and notes, relating to the April 2019 meeting between Sebastian and Correct during which the topic of Smart tablets was discussed.

7)   All existing contracts and agreements, including all addenda and schedules between Sebastian and Tech Friends, Inc. ("Tech Friends').

8)   All communications between Sebastian and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

9)   All communications between Sebastian and Tech Friends from January 1, 2019 to the present.

## SCHEDULE "B" TO SUBPOENA DUCES TECUM
## <u>ISSUED TO SEBASTIAN COUNTY SHERIFF'S OFFICE</u>

1.   The relationship between Sebastian County Sheriff's Office and Smart Communications, Inc.

2.   The relationship between Sebastian County Sheriff's Office and Correct Solutions, LLC a/k/a Correct Solutions Group, LLC.

3.   Any Contracts and Agreements between Sebastian County Sheriff's Office and Smart Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.   Any discussions between Sebastian and Tech Friends, Inc. from January 1, 2019 to the present.

5.   Any discussions between Sebastian and Correct Solutions regarding Smart Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                    Case No: 19-CA-008089

     Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a    **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,   **AD TESTIFICANDUM**
                               (pursuant to the Uniform Interstate Deposition
     Defendant.              and Discovery Act and Ark. R. Civ. P. 45.1)

_____/

**SUBPOENA DUCES TECUM AND AD TESTIFICANDUM
PURSUANT TO THE UNIFORM INTERSTATE DISCOVERY ACT**

THE STATE OF FLORIDA:

    TO:   **Alan Johnson**
           **Washington County Sheriff's Office**
           **1155 W. Clydesdale Dr.**
           **Fayetteville, AR  72701**

    YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to Professional Reporters, 300 North College Ave., Suite 315, Fayetteville, AR

72701 on December 13, 2019, at 10:00 a.m. You may comply with this subpoena by mailing

legible copies of the items to be produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen |

Turkel, 100 N. Tampa Street, Suite 1900, Tampa, FL   33602 or by E-Mail to

BBarrios@Bajocuva.com.  If you fail to comply, you may be in contempt of court.

    YOU ARE FURTHER COMMANDED to appear before a person authorized by law to

take depositions at Professional Reporters, 300 North College Ave., Suite 315, Fayetteville, AR

72701 on January 27, 2020 @ 9:30 a.m. for the taking of your deposition in this action concerning the documents produced by you as well as any topic listed in Schedule B.

If you fail to appear, you may be in contempt of court.

You are subpoenaed to appear by the following attorney, and unless excused from this subpoena by this attorney or the court, you shall respond to this subpoena as directed.

Dated on _____, 2019.

<div align="right">

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

</div>

*If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

**SCHEDULE "A" TO SUBPOENA DUCES TECUM**
**ISSUED TO WASHINGTON COUNTY SHERIFF'S OFFICE**

**INSTRUCTIONS**

As used in this Exhibit:

1.   **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.   "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.   **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.   **"Washington"** means Washington County Sheriff's Department or any related entity which operates or contracts for a correctional facility in Washington County, AR.

5.   In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6.   A separate answer shall be furnished for each request.

## REQUESTS

1)      All existing contracts and agreements, including all addenda and schedules between Washington County Sheriff's Dept. ("Washington County") and Correct Solutions.

2)      All internal communications and all communications between Washington County and Correct Solutions relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3)      All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4)      All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5)      All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6)      All existing contracts and agreements, including all addenda and schedules between Washington and Tech Friends, Inc. ("Tech Friends').

7)      All communications between Washington and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

8)      All communications between Washington and Tech Friends from January 1, 2019 to the present.

**SCHEDULE "B" TO SUBPOENA DUCES TECUM**
**ISSUED TO ALAN JOHNSON, WASHINGTON COUNTY SHERIFF'S OFFICE**

1.      The relationship between Washington County Sheriff's Office and Smart
        Communications, Inc.

2.      The relationship between Washington County Sheriff's Office and Correct Solutions,
        LLC a/k/a Correct Solutions Group, LLC.

3.      Any Contracts and Agreements between Washington County Sheriff's Office and
        Smart Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.      Any discussions between Washington and Tech Friends, Inc. from January 1, 2019 to the
        present.

5.      Any discussions between Washington and Correct Solutions regarding Smart
        Communications

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a      **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,   **AD TESTIFICANDUM**
                               (pursuant to the Uniform Interstate Deposition
      Defendant.              and Discovery Act and Ark. R. Civ. P. 45.1)

_____/

**SUBPOENA DUCES TECUM AND AD TESTIFICANDUM**
**PURSUANT TO THE UNIFORM INTERSTATE DISCOVERY ACT**

THE STATE OF FLORIDA:

     TO:    **A representative of**
            **Washington County Sheriff's Office**
            **1155 W. Clydesdale Dr.**
            **Fayetteville, AR  72701**

     YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to Professional Reporters, 300 North College Ave., Suite 315, Fayetteville, AR

72701 on December 13, 2019, at 10:00 a.m. You may comply with this subpoena by mailing

legible copies of the items to be produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen |

Turkel, 100 N. Tampa Street, Suite 1900, Tampa, FL  33602 or by E-Mail to

BBarrios@Bajocuva.com.  If you fail to comply, you may be in contempt of court.

     YOU ARE FURTHER COMMANDED to appear before a person authorized by law to

take depositions at Professional Reporters, 300 North College Ave., Suite 315, Fayetteville, AR

72701 on January 27, 2020 @ 1:30 p.m. for the taking of your deposition in this action

concerning the documents produced by you as well as any topic listed in Schedule B.

     If you fail to appear, you may be in contempt of court.

     You are subpoenaed to appear by the following attorney, and unless excused from this

subpoena by this attorney or the court, you shall respond to this subpoena as directed.

     Dated on _____, 2019.

<div align="right">

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

</div>

     *If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

## SCHEDULE "A" TO SUBPOENA DUCES TECUM
## <u>ISSUED TO WASHINGTON COUNTY SHERIFF'S OFFICE</u>

### <u>INSTRUCTIONS</u>

As used in this Exhibit:

1. **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2. "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3. **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4. **"Washington"** means Washington County Sheriff's Department or any related entity which operates or contracts for a correctional facility in Washington County, AR.

5. In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6. A separate answer shall be furnished for each request.

## <u>REQUESTS</u>

1)   All existing contracts and agreements, including all addenda and schedules between Washington County Sheriff's Dept. ("Washington County") and Correct Solutions.

2)   All internal communications and all communications between Washington County and Correct Solutions relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3)   All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4)   All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5)   All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6)   All existing contracts and agreements, including all addenda and schedules between Washington and Tech Friends, Inc. ("Tech Friends').

7)   All communications between Washington and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

8)   All communications between Washington and Tech Friends from January 1, 2019 to the present.

**SCHEDULE "B" TO SUBPOENA DUCES TECUM**
**ISSUED TO WASHINGTON COUNTY SHERIFF'S OFFICE**

1.  The relationship between Washington County Sheriff's Office and Smart Communications, Inc.

2.  The relationship between Washington County Sheriff's Office and Correct Solutions, LLC a/k/a Correct Solutions Group, LLC.

3.  Any Contracts and Agreements between Washington County Sheriff's Office and Smart Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.  Any discussions between Washington and Tech Friends, Inc. from January 1, 2019 to the present.

5.  Any discussions between Washington and Correct Solutions regarding Smart Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                              Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a     **SUBPOENA DUCES TECUM AND**
CORRECT SOLUTIONS GROUP, LLC,   **AD TESTIFICANDUM**
                                    (pursuant to the Uniform Interstate Deposition
      Defendant.               and Discovery Act and O.C.G.A. §§ 24-13-110
_____/    to 116)

### SUBPOENA DUCES TECUM AND AD TESTIFICANDUM
### PURSUANT TO THE UNIFORM INTERSTATE DISCOVERY ACT

THE STATE OF FLORIDA:

      TO:    **A representative of**
                **Wayne County Sheriff's Office**
                **266 E. Walnut Street**
                **Jesup, GA  31546**

      YOU ARE COMMANDED by Plaintiff Smart Communications Holding, Inc.

("SmartComm"), to produce and permit inspection and copying of the documents described in

Schedule A to McKee Court Reporting, 106 Montgomery Street, Savannah, GA  31401 on

December 13, 2019, at 10:00 a.m.. You may comply with this subpoena by mailing legible

copies of the items to be produced for delivery to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel,

100 N. Tampa Street, Suite 1900, Tampa, FL  33602 or by E-Mail to BBarrios@Bajocuva.com.

If you fail to comply, you may be in contempt of court.

      YOU ARE FURTHER COMMANDED to appear before a person authorized by law to

take depositions at  McKee Court Reporting, 106 Montgomery Street, Savannah, GA  31401 on

February 20, 2020, at 1:00 p.m. for the taking of your deposition in this action concerning the documents produced by you as well as any topic listed in Schedule B.

If you fail to appear, you may be in contempt of court.

You are subpoenaed to appear by the following attorney, and unless excused from this subpoena by this attorney or the court, you shall respond to this subpoena as directed.

Dated on _____, 2019.

<div style="text-align:right">

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

</div>

*If you are a person with a disability who needs any accommodation to participate in this deposition, you are entitled, at no cost to you, to the provision of certain assistance. Please contact Brad F. Barrios, Esq., Bajo | Cuva | Cohen | Turkel, 100 N. Tampa St., Suite 1900, Tampa, FL  33602, (813) 443-2199 at least 7 days before your scheduled deposition, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.*

## SCHEDULE "A" TO SUBPOENA DUCES TECUM
## ISSUED TO WAYNE COUNTY SHERIFF'S OFFICE

### INSTRUCTIONS

As used in this Exhibit:

1.    **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.     "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.    **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.    **"Wayne"** means Wayne County Sheriff's Department or any related entity which operates or contracts for a correctional facility in Wayne County, GA.

5.    In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

6.    A separate answer shall be furnished for each request.

## <u>REQUESTS</u>

1) All existing contracts and agreements, including all addenda and schedules between Wayne County Sheriff's Dept. ("Wayne County") and Correct Solutions.

2) All internal communications and all communications between Wayne County and Correct Solutions relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services.

3) All instructions or directives from Correct Solutions about Smart Communications, including, but not limited to, whether or how to communicate with Smart Communications from January 1, 2019 to the present.

4) All internal communications and documents relating to Smart Communications' services, systems, or equipment and/or the potential termination or replacement of Smart Communications' services from January 1, 2019 to the present.

5) All internal communications and documents about Correct Solutions' termination or attempted termination of Smart Communications' services from January 1, 2019 to the present.

6) All existing contracts and agreements, including all addenda and schedules between Wayne and Tech Friends, Inc. ("Tech Friends').

7) All communications between Wayne and Correct Solutions that reference Tech Friends from January 1, 2019 to the present.

8) All communications between Wayne and Tech Friends from January 1, 2019 to the present.

## SCHEDULE "B" TO SUBPOENA DUCES TECUM
## ISSUED TO WAYNE COUNTY SHERIFF'S OFFICE

1.      The relationship between Wayne County Sheriff's Office and Smart
        Communications, Inc.

2.      The relationship between Wayne County Sheriff's Office and Correct Solutions, LLC
        a/k/a Correct Solutions Group, LLC.

3.      Any Contracts and Agreements between Wayne County Sheriff's Office and Smart
        Communications, Inc., Correct Solutions, Inc. and/or Tech Friends, Inc.

4.      Any discussions between Wayne and Tech Friends, Inc. from January 1, 2019 to the
        present.

5.      Any discussions between Wayne and Correct Solutions regarding Smart
        Communications.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS HOLDING, INC.

                                                             Case No: 19-CA-008089

       Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

       Defendant.

_____/

### PLAINTIFF'S MOTION TO COMPEL DISCOVERY

Plaintiff, Smart Communications Holding, Inc. ("Smart"), by counsel and pursuant to Rule 1.380, Florida Rules of Civil Procedure, moves this court for entry of an order compelling discovery from Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC ("Correct"), and in support states as follows:

On September 13, 2019, Smart served its First Request for Production of Documents to Correct and on September 16, 2019 it served its Second Request for Production of Documents (collectively, "Requests for Production"). The Requests for Production asked for responsive documents to be produced within 30 days of the request making the response and documents due on October 14, 2019 (to account for the 30th day falling on a Sunday) and October 16, 2019, respectively. Correct provided timely written responses to each of the requests which included representations that it would provide certain specified responsive documents. However, the responsive documents were not provided.

Counsel for Smart followed up with Correct on multiple occasions after receiving Correct's written responses to determine when documents would actually be produced. After repeated

requests, Correct finally produced a set of documents on November 8, 2019, which were responsive to four out of the eleven requests included in the Second Request for Production and none of the requests included in the First Request for Production. Correct represented that the remainder of the documents would be produced by November 15, 2019.  On November 15, 2019, counsel then represented that only a portion of the remaining documents would be produced. As of the time of this filing, Correct has not produced any additional documents.

It has now been approximately one month since the responsive documents were due. Smart has made repeated requests for these documents and has given Correct ample opportunity to provide such documents above and beyond that allotted by the rules.  Unfortunately, Smart is still left without a complete production forcing Smart to move forward with this motion to compel to ensure Correct's compliance with its discovery obligations.

WHEREFORE, Plaintiff, Smart Communications Holding, Inc., respectfully requests that this Court enter an order: (i) compelling Correct to produce all responsive documents that it represented it would produce; (ii) awarding Smart its attorneys' fees and costs; and (iii) granting such further relief as the Court deems just and proper.

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 15th day of November, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
        JEL@harlleebald.com
        DDF@harlleebald.com
        CL@harlleebald.com

*/s/ Brad F. Barrios*
Attorney

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA

CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

      Plaintiff,

v.                          Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## DEFENDANT'S OBJECTION TO NOTICE OF INTENT TO SERVE SUBPOENAS FOR DOCUMENTS IN ANOTHER STATE

Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC ("Correct Solutions") pursuant to Rule 1.410, Florida Rules of Civil Procedure hereby objects to Plaintiff, Smart Communications Holding, Inc.'s ("Smart Communications") Notice of Intent to Serve Subpoenas for documents in Another State directed to Sebastian County Sheriff's Office, Capt. Dumas at Sebastian County Sheriff's Office, Miller County Sheriff's Office/Miller County Jail, Warden Walker at Miller County Sheriff's Office/Miller County Jail, Lasalle Corrections on behalf of Bowie County Correctional Center, Avoyelles Parish Sheriff's Office, Lamar County Sheriff's Office Lamar County Jail, Washington County Sheriff's Office, Alan Johnson at Washington County Sheriff's Office, Metro Moore County Sheriff's Office Moore County Jail, Wayne County Sheriff's Office, City of St. Louis, Missouri City Justice Center, and Frank Turner at City of St. Louis, Missouri City Justice Center. The Subpoenas require the production of documents for the period of time from January 1, 2019 to the present which would include documents pertaining to the

replacement of Smart Communications, if any, after the contracts between Smart Communications and Correct Solutions expire. The Schedules between Correct Solutions and Smart Communications are subject to a non-renewal right which can be exercised by Smart Communications and/or Correct Solutions no later than 90 days before the renewal of the contracts between Correct Solutions and each facility. Correct Solutions has issued a Notice of Non-Renewal as to the Schedule between Smart Communications and Correct Solutions for the facility located in Washington County and will be issuing Notices of Non-Renewal for each of the additional facilities. Therefore, the Schedules between Smart Communications and Correct Solutions shall terminate on the following dates:

| | |
|---|---|
| City of St. Louis | 07/31/2020 |
| Sebastian County | 03/26/2020 |
| Washington County | 01/03/2020 |
| Bowie County | 11/03/2020 |
| Wayne County | 03/14/2020 |
| Avoyelles Parrish | 10/01/2020 |
| Lamar County | 12/01/2022 |
| Moore County | 01/18/2023 |

As a result, the documents pertaining to the vendor who will provide the services subsequent to the expiration of Smart Communications Schedules constitutes the confidential proprietary and business information of Correct Solutions and/or the facility and is not subject to discovery.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL   33602; bbarrios@bajocuva.com; dhayes@bajocuva.com;

kturkel@bajocuva.com; tdeleo@bajocuva.com on 18th day of November, 2019.

HARLLEE & BALD, P.A.

By: _____
    KIMBERLY A. BALD
    Florida Bar No. 0434190
    JAMES E. LYNCH
    Florida Bar No. 046219
    202 Old Main Street
    Bradenton, FL 34205
    Telephone: 941-744-5537
    Facsimile: 941-744-5547
    KAB@harlleebald.com
    JEL@harlleebald.com
    DDF@harlleebald.com
    CL@harlleebald.com

    and

    LUKE F. PIONTEK
    Roedel, Parsons, Kock, Blache,
    Balhoff & McCollister
    Louisiana Bar No. 19979
    8440 Jefferson Highway, Suite 301
    Baton Rouge, LA. 70809
    Telephone Number 225/929-7033
    Facsimile Number 225/928-4925
    LPiontek@roedelpartons.com

    Attorneys for Correct Solutions, LLC

4831-0806-6477 v 1

3

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                        Case No: 19-CA-008089

        Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

        Defendant.

_____/

## PLAINTIFF'S RESPONSE TO DEFENDANT'S
## SECOND REQUESTS FOR ADMISSION

        Plaintiff, Smart Communications Holding, Inc. ("Smart"), responds to Defendant, Correct

Solutions, LLC's, Second Requests for Admission as follows:

## GENERAL OBJECTIONS

        A.        Smart objects to these Requests for Admission to the extent they seek disclosure

of information protected from discovery by the attorney-client privilege and/or the work-product

doctrine, or any other applicable privilege or exemption.  Inadvertent disclosure of privileged or

protected information shall not waive any applicable privilege or work-product protection.

        B.        Smart objects to these Request for Admission to the extent that they purport to,

or in fact, alter or enlarge their obligations pursuant to the Florida Rules of Civil Procedure and/or

Florida case law.

        C.        To the extent that these Request for Admissions seek information involving

topics other than those addressed by the pleadings, Smart objects to the Requests for Admission

as irrelevant to the subject matter of the pending litigation and not reasonably calculated to lead to the discovery of admissible evidence.

D.        All responses are made without waiving any objections as to relevance, privilege or admissibility. These general objections shall be deemed continuing as to each interrogatory and are neither waived nor limited in any way by the following responses.

## <u>RESPONSES AND OBJECTIONS</u>

1.      At no time since June 15, 2017 has Correct Solutions, LLC offered to perform to any of the eight facilities described in paragraph 19 of the Verified Complaint any of the services granted to Smart Communications under the Master Service Agreement.

        <u>**Response**</u>:      **Without knowledge.**

2.      At no time since June 15, 2017 has Correct Solutions, LLC offered to provide to any facility the iMate E-Device referenced in paragraph 29 of your Verified Complaint.

        <u>**Response**</u>:      **Without knowledge.**

3.      As of January 2019, the iMate E-Device was no longer serviced by Lattice, Inc.

        <u>**Response**</u>:      **Without knowledge.**

4.      As of the filing of the Verified Complaint, Smart Communications knew that Correct Solutions, LLC did not provide electronic messaging services other than through a third party vender.

        <u>**Response**</u>:      **Denied.**

5.      At no time since June 15, 2017 has Correct Solutions, LLC sold or offered for sale a tablet that performed the services granted to Smart Communications in the agreement.

        <u>**Response**</u>:      **Denied.**

6.      At the time of the filing of the Verified Complaint, Smart Communications was aware that the iMate E-Device was no longer available in the market.

        <u>**Response**</u>:      **Denied.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of November, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

/s/ Brad F. Barrios
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                 Case No: 19-CA-008089

   Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

   Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**SECOND REQUEST FOR PRODUCTION OF DOCUMENTS**

   Plaintiff, Smart Communications Holding, Inc. ("Smart"), pursuant to Rule 1.350, Florida

Rules of Civil Procedure, responds to Defendant, Correct Solutions, LLC's ("Defendant"), Second

Request for Production of Documents (the "Requests") as follows:

**GENERAL OBJECTIONS**

   A.  Smart objects to these Requests to the extent that they seek the disclosure of

information protected from discovery by the attorney-client privilege, the work product doctrine,

or any other applicable privilege or exemption.  Inadvertent disclosure of privileged or protected

information shall not waive any applicable privilege or work product protection.

   B.  To the extent that these Requests seek documents or information involving topics

other than those addressed by the operative pleadings, Smart objects to the requests for production

of documents as irrelevant to the subject matter of the pending litigation and not reasonably

calculated to lead to the discovery of admissible evidence.

{BC00265950:1}

C.      Smart objects to these Requests to the extent they purport to impose duties or responsibilities greater than those imposed by the Florida Rules of Civil Procedure.

D.      Smart objects to these Requests to the extent they seek confidential or proprietary information or trade secrets.

E.      Smart objects to these Requests to the extent they seek documents that do not exist or that is not in Smart's possession, custody, or control, or that is equally available to Defendant.

F.      Smart objects to these Requests to the extent they seek documents from Smart that are already in the possession of Defendant.

G.      Smart objects to these Requests to the extent they seek documents from a time period that is unduly burdensome, unnecessarily broad, and not reasonably calculated to lead to the discovery of admissible evidence.

H.      Smart objects to these Requests to the extent they use words and phrases that are not defined in an understandable manner.  To the extent feasible Smart will interpret terms and phrases used in the Requests as understood by Smart.

These general objections shall be deemed continuing as to each request for production of documents, and are neither waived nor limited in anyway by the following responses.

## <u>RESPONSE TO REQUESTS FOR PRODUCTION</u>

1.      For the time period of January 1, 2018 to present, any documents and/or communications including any closing documents pertaining to the purchase of all or part of Lattice, Inc. by Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc.

**<u>Response</u>:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request as seeking information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

2.      For the time period of January 1, 2018 to present, any documents and/or communications, including but not limited to assignments, leases, or licenses, reflecting the relationship between Lattice, Inc. and Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Colliers, Inc.

**Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request as seeking information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

3.      For the time period of January 1, 2018 to present, any documents and/or communications reflecting or relating to any consideration paid by Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc. to Lattice, Inc. to acquire an ownership interest in, license with or assignment from Lattice, Inc.

**Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request as seeking information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

4.      For the time period of January 1, 2018 to present, any documents and/or communications pertaining to agreements, contracts, assignments, licenses, indemnifications or guarantees between Lattice, Inc. and Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc.

**Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request as seeking information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

5.      For the time period of January 1, 2018 to present, any documents reflecting any contractual relationship with current or former employees of Lattice, Inc. by Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc.

    **Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request as seeking information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

6.      For the time period of January 1, 2018 to present, any documents and/or communications between Lattice, Inc. and Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc. regarding Correct Solutions.

    **Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.**

7.      For the time period of January 1, 2018 to present, any documents and/or communications between Lattice, Inc. and Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc. regarding the support and maintenance provided to Correct Solutions for the Nexus hardware and software.

    **Response:      Smart objects to this request on the grounds that it is overbroad, ambiguous, unduly burdensome, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.**

8.      For the time period of January 1, 2018 to present, any employment contracts or agreements related to employment between Bruce Johnson and Lattice, Inc. and/or Bruce Johnson and Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc.

    **Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart further objects to the request to the extent it seeks the disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request to the extent it seeks**

**information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

9.     For the time period of January 1, 2018 to present, any documents and/or communications pertaining to any non-compete agreements requested or required of Bruce Johnson by Lattice, Inc. and/or by Smart Communications or any affiliate, controlled entities, agents, or assigns of Smart Communications, including but not limited to Smart Communications Collier, Inc.

**Response:     Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart further objects to the request to the extent it seeks the disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

10.     Any documents pertaining to communications and/or meetings between Bruce Johnson and Jon Logan and/or James Logan during the pendency of this litigation regarding Correct Solutions, the employment of Bruce Johnson with Lattice, Inc., Smart Communications or any of its affiliates, controlled entities, agents or assigns including Smart Communications Collier, Inc., any terms of employment of Bruce Johnson, any noncompete agreements and any employment with Correct Solutions.

**Response:     Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart further objects to the request to the extent it seeks the disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

11.     For the time period of January 1, 20I7 to present, any documents and/or communications between any of the eight facilities listed in paragraph 19 of the Verified Complaint including their officers, employees or agents, and Smart Communications regarding the hardware, software, or systems provided by Smart Communications pursuant to the applicable Schedule to the MSA.

**Response:     Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase**

**Smart's costs of litigation.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.**

12.    For the time period of January 1, 20I7 to present, any documents or communications reflecting any trouble tickets or other notifications of issues or problems with any hardware, software, or systems reported to, or received by, Smart Communications from any source or system pertaining to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous, for example, with respect to the terms "any," "reflecting," and "pertaining to."  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks the disclosure of confidential, proprietary, or trade secret information.**

13.    For the time period of January 1, 2017 to present, any documents and/or communications reflecting any responses, repairs, maintenance or corrections provided by Smart Communications for any of the facilities listed in paragraph 19 of the Verified Complaint in response to any trouble tickets or notifications produced in response to paragraph 12 above.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, for example, with respect to the terms "any" "reflecting."  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks the disclosure of confidential, proprietary, or trade secret information.**

14.    For the time period of January 1, 2017 to present, any reports of issues or problems received by Smart Communications through its "real-time" asset management system or monitoring system referred to in the "Maintenance and Support Plan" section in the Schedules to the MSA.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks the disclosure of confidential, proprietary, or trade secret information.**

15.  For the time period of January 1, 2017 to present, any documents or communications, including but not limited to calendars or expense reports, reflecting dates when a Smart Communications employee was physically on-site at any of the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:   Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks the disclosure of confidential, proprietary, or trade secret information.**

16.  For the time period of January 1, 2017 to present, any documents and/or communications concerning the marketing of the version of the tablets provided by Smart Communication to any of the eight facilities listed in paragraph 19 of the Verified Complaint pursuant to the applicable Schedule to the MSA.

**Response:   Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart further objects to the request to the extent it seeks the disclosure of confidential, proprietary, or trade secret information.**

17.  For the time period of January 1, 2017 to present, any documents and/or communications concerning the marketing of any version of tablets offered by Smart Communications to any customers other than the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:   Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.**

18.  For the time period of January 1, 2017 to present, any documents and/or communications concerning the specifications of the tablets provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:   Smart objects to this request on the grounds that it is overbroad, unduly burdensome, ambiguous, and seeks information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.**

19.     For the time period of January 1, 2017 to present, any documents and/or communications concerning the specifications of tablets provided by Smart Communications to any customers other than the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.**

20.     For the time period of January 1, 2017 to present, any documents or communications pertaining to complaints or notices received by Smart Communications about the destruction of tablets provided by Smart Communications or reconfiguration of tablets provided by Smart Communications into contraband from any of the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.**

21.     Any documents or communications pertaining to the "product offerings of Smart's competitors" as alleged in paragraph 7 of the Second Declaration of Jon Logan filed in this action on September 17, 2019.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to this request to the extent it seeks documents or information that is already in possession of Defendant and/or in the possession of third parties and equally available to Defendant.**

22.     For the time period of January 1, 2017 to present, any documents and/or communications, including internal communications of Smart Communications, related to the structural performance of the version(s) of tablets provided by Smart Communication to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking**

**information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation. Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.**

23.   For the time period of January 1, 2017 to the present, any documents or communications pertaining to any alterations to the Smart Communications tablets provided to facilities by Smart other than the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous. Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation. Smart further objects to the request to the extent it seeks disclosure of confidential, proprietary, or trade secret information.**

24.   Any documents and/or communications pertaining to the differences, if any, between the structural performance and components of tablets provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint and the tablets provided by Smart Communications to facilities other than those eight facilities.

**Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous. Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation. Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.**

25.   For the time period of January 1, 2016 to present, any documents pertaining to any testing performed by, or for, Smart Communications to ensure that the tablets provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint were ruggedized and of correctional grade.

**Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous. Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation. Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information. Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

26.   For the time period of January 1, 2016 to present, any documents pertaining to any testing performed by, or for, Smart Communications to ensure that the Smart Kiosk provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint was ruggedized and of correctional grade.

**Response:**   **Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

27.   For the time period of January 1, 2017 to present, any documents or communications, including internal communications of Smart Communications, related to the structural performance of tablets provided by Smart Communications to facilities other than the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:**   **Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request as seeking the disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

28.   For the time period of January 1, 2017 to present, any documents or communications, including internal communications of Smart Communications, related to the structural performance of tablets from competitors of Smart Communications.

**Response:**   **Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous. Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation. Smart further objects to the request to the extent it seeks disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

29.    For the time period of January 1, 2017 to present, any documents or communications sent directly by Jon Logan or James Logan of Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

**<u>Response</u>:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks disclosure of confidential, proprietary, or trade secret information.**

30.    For the time period of January 1, 2016 to present, any documents or communications testing the durability of the tablets provided by Smart Communications to facilities other than the eight facilities listed in paragraph 19 of the Verified Complaint.

**<u>Response</u>:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks disclosure of confidential, proprietary, or trade secret information.**

31.    For the time period of January 1, 2017 to present, any documents or communications regarding the definition of "corrections-grade" tablet as referenced in paragraph 14 of the Second Declaration of Jon Logan filed in this action on September 17, 2019.

**<u>Response</u>:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

32.    For the time period of January 1, 2017 to present, any documents, videos, or communications regarding the demonstration provided by Smart Communications to Correct Solutions as referenced in paragraph 22 of the Second Declaration of Jon Logan filed in this action on September 17, 2019.

**<u>Response</u>:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and vague, for example, with respect to the use of the term "any."  Subject to and without waiving these objections, and to the extent such**

documents exist within Smart's possession, custody, or control, Smart will produce documents responsive to this request.

33. For the time period of January 1, 2017 to present, any documents or communications provided to Correct Solutions by Smart Communications to support that the tablets provided by Smart Communications under the Schedules to the MSA are "correctional grade."

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

34. For the time period of January 1, 2017 to present, any documents or communications provided to Correct Solutions by Smart Communications to support that the tablets provided by Smart Communications under the Schedules to the MSA comply with industry standards.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

35. For the time period of January 1, 2017 to present, any documents or communications between any of the eight facilities listed in paragraph 19 of the Verified Complaint and Smart Communications related to the construction or destruction of the tablets provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks disclosure of confidential, proprietary, or trade secret information.**

36. For the time period of January 1, 2017 to present, any documents or communications between Correct Solutions and Smart Communications related to the construction of the tablets provided by Smart Communications to any of the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:     Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

37. Any documents and/or communications, including but not limited to calendars, related to the "tech" that was sent to Avoyelles Parish as stated in Exhibit H to the Second Declaration of Jon Logan filed in this action on September 17, 2019.

**Response:     Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and vague, for example, with respect to the use of the term "any."  Subject to and without waiving these objections, and to the extent such documents exist within Smart's possession, custody, or control, Smart will produce documents responsive to this request.**

38. Any documents and/or communications pertaining to any work, repairs or maintenance provided by the "tech" referenced in paragraph 36 above.

**Response:     Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and vague, for example, with respect to the use of the term "any."  Subject to and without waiving these objections, and to the extent such documents exist within Smart's possession, custody, or control, Smart will produce documents responsive to this request.**

39. For the time period of January 1, 2018 to present, any documents and/or communications from Jon Logan to any facility other than the eight facilities listed in paragraph 19 of the Verified Complaint requesting a meeting similar to the e-mail attached as Exhibit E to the Second Declaration of Jon Logan filed in this action on September 17, 2019.

**Response:     Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.**

40.     For the time period of January 1, 2018 to present, any documents and/or communications between Jennifer Tongate and any employee, agent or officer of any of the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks disclosure of confidential, proprietary, or trade secret information.**

41.     For the time period of January 1, 2017 to present, any documents and/or communications received by Smart Communications from any third party relating to the eight facilities listed in paragraph 19 of the Verified Complaint.

**Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to the request to the extent it seeks disclosure of confidential, proprietary, or trade secret information.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

42.     For the time period of January 1, 2017 to present, any documents and/or communications pertaining to any efforts by Correct Solutions to terminate any of the Schedules or the MSA with Smart Communications.

**Response:      Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to this request to the extent it seeks documents or information that is already in possession of Defendant and/or in the possession of third parties and equally available to Defendant.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

43.  For the time period of January 1, 2017 to present, any documents and/or communications pertaining to any efforts by Correct Solutions to bring in another provider of services to the eight facilities listed in paragraph 19 of the Verified Complaint during the duration of the Schedules to the MSA between Correct Solutions and Smart Communications.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.  Smart further objects to this request to the extent it seeks documents or information that is already in possession of Defendant and/or in the possession of third parties and equally available to Defendant.  Smart further objects to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

44.  Photographs of the front and back of each model of tablet that Smart Communications provided to correctional facilities as of September 13, 2017.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.**

45.  Photographs of the front and back of each model of tablet that Smart Communications has provided to correctional facilities since September 13, 2017.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.**

46.  One physical sample of each model of tablet that Smart Communications provided to correctional facilities as of September 13, 2017.

**Response:    Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous.  Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.**

47.     One physical sample of each model of tablet that Smart Communications has provided to correctional facilities since September 13, 2017.

**Response:     Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous. Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.**

48.     Any documents or communications sufficient to demonstrate the design, construction, and materials used for each model of tablet that Smart Communications provided to correctional facilities as of September 13, 2017.

**Response:     Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous. Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.**

49.     Any documents or communications sufficient to demonstrate the design, construction, and materials used for each model of tablet that Smart Communications has provided to correctional facilities since September 13, 2017.

**Response:     Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous. Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation.**

50.     For the time period September 13, 2017 to present, any documents or communications, including but not limited to photographs, pertaining to any durability issues with the tablets provided by Smart Communications, including but not limited to customer complaints, communications regarding inmate tampering or destruction of tablets, and photographs of tablets that have been deconstructed, damaged, or destroyed.

**Response:     Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous. Smart further objects to this request as seeking information that is neither relevant nor reasonably calculated to lead to the discovery of admissible evidence, and as instead seeking only to harass, oppress, and increase Smart's costs of litigation. Smart further objects to this request to the extent it seeks documents or information that is already in possession of Defendant and/or in the possession of third parties and equally available to Defendant. Smart further objects**

**to the request to the extent it seeks information protected from disclosure by the attorney-client privilege and/or the work product doctrine.**

51.   Any documents you received as a result of any public records request made to any facility involving Correct Solutions for the time period of January 1, 2019 to present.

**<u>Response</u>:   Smart objects to this request on the grounds that it is overbroad, unduly burdensome, and ambiguous, for example, with respect to the terms "any" and "involving." Smart further objects to this request to the extent it seeks documents or information that is already in possession of Defendant and/or in the possession of third parties and equally available to Defendant.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 18th day of November, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail:  bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail:  dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                                 Case No: 19-CA-008089

        Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

        Defendant.

_____/

## PLAINTIFF'S THIRD REQUEST FOR PRODUCTION TO DEFENDANT

Pursuant to Florida Rule of Civil Procedure 1.350, Plaintiff, Smart Communications Holding, Inc. ("Smart") requests Defendant, Correct Solutions, LLC, to produce for inspection and copying each of the documents or categories of documents described hereafter at the law offices of Bajo Cuva Cohen & Turkel, P.A., 100 North Tampa Street, Suite 1900, Tampa, Florida 33602, within 30 days of the date of service.

## Definitions and Instructions

As used in these Requests:

(a)    "YOU" or "YOUR" or "DEFENDANT" or "CSG" means Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC, as well as any agents, representatives, attorneys, employees, and all other PERSONS acting or purporting to act on its behalf.

(b)    "PERSON" means any individual, firm, partnership, association, proprietorship, joint venture, corporation, governmental agency, or other organization or legal or business entity, as well as any agents, attorneys and consultants therefor, and all other PERSONS acting or purporting to act on its behalf.

(c)    "COMMUNICATION" means any correspondence, contact, discussion, or exchange between any two or more PERSONS. Without limiting the foregoing, "COMMUNICATION" includes all DOCUMENTS, telephone conversations or face-to-face conversations, electronic messages, text messages, meetings and conferences.

(d)     "DOCUMENT" means the original and any copy (except for identical copies) of any document or thing subject to production under the Florida Rules of Civil Procedure, that is in your actual or constructive possession, custody, or CONTROL, including any written, printed, recorded, typed, mechanical, electronic, computer stored or graphic matter of any kind however produced or reproduced and all drafts thereof.  Any copy containing thereon or attached thereto any alterations, notes, comments, or other material not included in any original or other copy shall not be deemed an identical copy but shall be deemed a separate document within the foregoing definition.

(e)     "RELATE TO," "RELATED TO" or "REFER TO" means concerning, respecting, summarizing, digesting, embodying, reflecting, establishing, tending to establish, delegating from, tending not to establish, evidencing, not evidencing, comprising, connected with, commenting on, responding to, disagreeing with, showing, describing, analyzing, representing, constituting or including, or having any connection with.

(f)     "JOINT CUSTOMERS" means Avoyelles Parish Sheriff's Office, LaSalle Corrections-Bowie County Jail, Lamar County Jail, Moore County Jail, Sebastian County Sheriff's Office, City of Saint Louis, Missouri, Washington County, Arkansas, and Wayne County, Georgia. This should be construed broadly when any of the foregoing are referenced in Requests to include any entity related to the foregoing list which has contracted with CSG for inmate communication services and such entities' agents, employees, attorneys and consultants therefor, and all other PERSONS acting or purporting to act on its behalf.

(g)     "IDENTIFIED CUSTOMERS" means Miller County, Arkansas and Greene County, Arkansas, together with the JOINT CUSTOMERS.  This should be construed broadly when any of the foregoing are referenced in Requests to include any entity related to the foregoing list which has contracted with CSG for inmate communication services and such entities' agents, employees, attorneys and consultants therefor, and all other PERSONS acting or purporting to act on its behalf.

(h)     In the event any request herein calls for information or for the identification of a DOCUMENT which you deem to be privileged, in whole or in part, the information should be given or the DOCUMENT identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

(i)     A separate answer shall be furnished for each request.

## REQUESTS FOR PRODUCTION OF DOCUMENTS

1.     All communications between Smart and CSG related to the negotiation of the terms of the Master Services Agreement from January 1, 2017 to the present.

2.     All communications, whether between Smart and CSG or internal to CSG, related to the structure of the relationship between Smart and CSG with respect to any of the Identified Customers from January 1, 2017 to the present, including which agreements defined the relationships between CSG, Smart, and/or a Joint Customer.

3.      All internal communications among CSG and/or its employees that reference the term of the Master Services Agreement with respect to any Joint Customer.

4.      All internal communications that reference the phrase "co-terminous" (or "coterminous").

5.      All internal communications that reference termination or non-renewal of Smart's services at any Identified Customer facility, by CSG or the facility.

6.      All communications between CSG and any Identified customer that discuss or define the nature of CSG's relationship with Smart.

7.      All communications between CSG and any Joint Customer since August 1, 2017 regarding the extension or termination of the contract between CSG and such Joint Customer.

8.      All communications between CSG and any Identified Customer that relate to an entity other than Smart providing services similar to those provided by Smart for such Identified Customer.

9.      All communications between CSG and Tech Friends, Inc. ("Tech Friends") related to Tech Friends providing services to any Identified Customer.

10.     All presentations made by Tech Friends regarding Tech Friends providing services to any Identified Customer.

11.     All draft contracts, negotiations, correspondence, and final contracts between CSG and Tech Friends related to Tech Friends providing services to any Identified Customer.

12.     All draft contracts, negotiations, correspondence, and final contracts between any Identified Customer and Tech Friends related to Tech Friends providing services to any Identified Customer.

13.     All communications between CSG and Tech Friends that reference Smart.

14.     All draft contracts and executed contracts, including all addenda and schedules, between CSG and each of the Identified Customers.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of November, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail: lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

/s/ Brad F. Barrios
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

{BC00270173:1}

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                     Case No: 19-CA-008089

       Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

       Defendant.

_____/

## PLAINTIFF'S FIRST REQUEST FOR ADMISSIONS TO DEFENDANT

Pursuant to Florida Rule of Civil Procedure 1.370, Plaintiff, Smart Communications

Holding, Inc. ("Smart") requests Defendant, Correct Solutions, LLC ("CSG"), to admit the

following within 30 days of the date of service.

## REQUESTS FOR ADMISSION

1)     Admit that CSG did not notify Washington County Sheriff's Office of its intent to terminate or non-renew the Correctional Communications Service Agreement attached as Exhibit A on or before October 5, 2019.

2)     Admit that Washington County Sheriff's Office did not notify CSG of its intent to terminate or non-renew the Correctional Communications Service Agreement attached as Exhibit A on or before October 5, 2019.

3)     Admit that CSG has not notified Sebastian County Sheriff's Office of its intent to terminate or non-renew the Contract and Agreement attached as Exhibit B as of the date of CSG's response to this Request for Admissions.

4)     Admit that Sebastian County Sheriff's Office has not notified CSG of its intent to terminate or non-renew the Contract and Agreement attached as Exhibit B as of the date of CSG's response to this Request for Admissions.

5)     Admit that CSG did not notify Wayne County Sheriff's Office of its intent to terminate or non-renew the Contract and Agreement attached as Exhibit C on or before December 15, 2019.

{BC00270025:1}

6)      Admit that Wayne County Sheriff's Office did not notify CSG of its intent to terminate or non-renew the Contract and Agreement attached as Exhibit C on or before December 15, 2019.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 22nd day of November, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
           JEL@harlleebald.com
           DDF@harlleebald.com
           CL@harlleebald.com

/s/ Brad F. Barrios
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

# EXHIBIT A

***to Plaintiff's First Request for Admissions to Defendant***



## CORRECTIONAL COMMUNICATIONS SERVICE AGREEMENT

This telephone service "Shared Revenue" Agreement is entered into, by and between **Washington County Sheriff's Office**, located at 1155 W. Clydesdale Drive, Fayetteville, Arkansas 72701, herein known as the "Customer" and Correct Solutions, LLC, located at 182 Bastille Lane, Ruston Louisiana 71270, herein known as "CSG".

WHEREAS, CSG is engaged in the business of providing certain telecommunications equipment and charge-for-cal telephones and services, and providing automated-operator assisted station-to-station or person-to-person collect telephone calls, and;

WHEREAS, Customer has full operating and management responsibility for the detention facility, jail, or prison, herein known as the Facility, and with respect to those premises so noted, wishes to establish an inmate telephone vending arrangement as described herein:

NOW, THEREFORE, the parties hereto, in consideration of the mutual covenants and agreements contained herein and other good and valuable considerations, do hereby agree as follows:

1. Customer hereby grants CSG an exclusive license to install and operate pay for call telecommunications equipment and phones at the Facility, or any affiliated Facilities, for the purposes of installing and operating such equipment.

2. CSG shall have the exclusive right to obtain usage and billing information, order, connect or disconnect inmate telephone services, select carriers, purchase available public utility equipment, handle all billing and payments. CSG shall be responsible for the payment of all charges in connection with the inmate telephones and processing of all calls and will be responsible for any bad debit and associated unbillables.

3. CSG shall install and maintain the inmate telephones in good working order. CSG will agree to have Technicians dispatched on an agreed upon scheduled basis to keep all inmate telephones in good working order.
   a. CSG shall install 75 (seventy-five) inmate phones in inmate housing area

4. Customer further agrees to allow CSG to install a Lobby Kiosk in the Facility to accept phone payments from friends and family, at no cost to Washington County Sheriff's Office. CSG will assess the following fees for Kiosk transactions:
   $3.00 per cash transaction, $0 - $100 and
   $9.95 for all Credit Card transactions with cap limit of $100 per transaction.
   All funds mailed direct, via Money Order, to CSG will have NO FEE assessed.

5. CSG shall provide the Customer with $10,000 annual fee for VuGate video visitation maintenance and support.

1

Correct Solutions 00054



6. CSG shall provide Customer with value-added features discussed in proposal including: PIN interface with M&M Software for active PIN push and deactivation, Offender voice mail at $1.00 per message, of which Washington County will receive 50% (*fifty percent*) and activation of investigator/web administration for system access.

7. CSG shall be responsible for the managing of all call detail records for the system, including but not limited to: the rating of each record in accord with rates, terms and conditions, for providing intraLATA, interLATA, and interstate telecommunications services as filed with the Public Service Commission, for the blocking and unblocking of user billing numbers, and preparation and processing all qualifying message records for billing and collection of revenue. All call detail records and recordings will be maintained for Customer by CSG for the duration of the term of this contract, plus an additional 2 years after the term.

8. In consideration for this exclusive license and lease agreement CSG shall pay **Washington County** a Commission Fee of **73% (Seventy-Three Percent)** of the Total Gross Revenue for all completed calls regardless of call type with exception to Interstate Calls due to FCC ruling.

    **Phone Rates** will be as follows for the call types below:
    Local calls - $5.00 flat rate;
    Interlata and intralata calls - $5.00 flat rate;
    Interstate calls - $3.15 flat rate for Pre-paid, $3.75 flat rate for Collect (*according to FCC ruling/rate change*)

9. CSG shall provide Customer with a monthly commission report that details all call types, call volumes, and call rates. All rates and charges under this agreement shall conform to the Public Service Commission regulations of Arkansas. On-line Revenue reports will be available to Customer at any time.

10. Legal title to all telephones and installed equipment shall remain vested with CSG. Customer shall not remove or relocate the installed equipment without CSG's express consent. Relocation at Customer's request shall be at Customer's expense. CSG is to accept no liability for holes in walls, floors, or other surfaces that result from the installation or removal of the equipment. Upon termination of this agreement, CSG shall be responsible only for the removal of the equipment. Customer shall restore the premises to their original condition. CSG shall not be responsible for damage to the premises that occur due to vandalism. CSG shall indemnify, defend and hold Customer harmless from any liability in connection with the placement, maintenance, or usage of the telephone equipment.

11. Customer hereby represents that the Facility is owned and/or exclusively operated by the Customer and Customer is authorized to enter into this agreement with respect to the Facility, and that the undersigned is authorized to bind the Facility to this agreement.

Correct Solutions 00055



12. If legal enforcement of the terms of this agreement is necessary, the prevailing party shall be entitled to reasonable attorney's fees and costs. CSG and the Customer mutually agree to cooperate to the fullest extent possible and the best of each party's ability to facilitate the provisioning of terms and services described herein.

13. This agreement shall be deemed to be a contract made under the laws of the State of Arkansas and the interpretation and performance of the agreement shall be governed by all applicable State laws, and shall be binding upon the parties hereto, their successors, and assignees. CSG may assign this agreement to any other competent person or entity capable of performance with written consent of the Customer.

14. The **Term** of this agreement shall be for 12 calendar months starting when CSG platform is installed and first call is successful. This agreement will automatically renew for 12 additional months unless either party notifies the other in writing of its intent to terminate this agreement at least 90 (Ninety) days prior to the final date of expiration. Upon termination of this agreement, each party agrees to satisfy any and all of its outstanding obligations arising under this agreement.

15. This is the entire agreement between the parties; there are no oral arrangements of any kind; any future modifications to this agreement shall be in writing and signed by both parties.

IN WITNESS WHEREOF, CSG and Customer have executed this Agreement as of the date and year first set forth below.

Correct Solutions, LLC
182 Bastille Lane
Ruston, LA 71270

Washington County Sheriffs Office
1155 West Clydesdale Drive
Fayetteville, AR 72701

By: _Patrick W. Temple_

Name: ___Patrick H Temple___

Title: ___Managing Member___

Date: ___9/25___, 2014

By: _Marily Edwards_

Name: __Honorable Judge Marilyn Edwards__

Title: __Washington County Judge__

Date: __9/25/2014__, 2014

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

# EXHIBIT B

### *to Plaintiff's First Request for Admissions to Defendant*

## CONTRACT AND AGREEMENT

This inmate telephone and services "Shared Revenue" Agreement is entered into, by and between Sebastian County Sheriff's Office located at 800 South A Street, Fort Smith, AR 72901, herein known as "Customer" and Correct Solutions, LLC, located at 182 Bastille Lane, Ruston, Louisiana 71720, herein known as "CSG".

WHEREAS, CSG is engaged in the business of providing certain telecommunications equipment and related service and financial equipment and systems and charge-for-call telephone services, and providing automated-operator assisted station-to-station or person-to-person collect, pre-pay and debit telephone calls (Equipment), and;

WHEREAS, Customer has full operating and management responsibility for the detention facility, jail or prison, herein collectively known as the "Facility", and with respect to those premises so noted, wishes to establish an inmate communications services agreement as described herein:

NOW, THEREFORE, the parties hereto, in consideration of the mutual covenants and agreements contained herein and other good and valuable considerations, do hereby agree as follows:

1. **TERM.** This Agreement is effective on the latest signature date ("Effective Date"), and shall continue in effect for a period of two (2) years ("Initial Term") from the Effective Date. Upon completion of the Initial Term, Facility will have the option to renew this Agreement with annual extensions for up to four (4) additional years. Each renewal will be based on a yearly review of services provided by CSG.

2. **SCOPE OF AGREEMENT**

   2.1 In consideration of compensation provided herein, Facility grants to CSG exclusive rights to install and maintain telephones and/or inmate telephone systems within its building or on its private property ("Location") during the term of this Agreement. CSG and Facility have agreed upon specific rates for inmate collect, debit and advance pay calls as described in Attachment A of this Agreement.

   2.2 This Agreement includes all other premises, whether now existing (if a competing provider has a contract and equipment at such premises, this clause applies at the earliest termination opportunity) or subsequently acquired, under the control of Facility. Facility will notify CSG, in writing, of newly opened, acquired, or available premises, promptly, so CSG can evaluate installation of its Equipment at these premises.

   2.3 CSG shall the exclusive right to obtain usage and billing information, order, connect or disconnect inmate telephone services, select carriers, purchase available public utility

equipment, handle all billing and payments. CSG shall be responsible for the payment of all charges in connection the Equipment and will be responsible for any bad debt and associated unbillable.

2.4 CSG shall install and maintain Equipment in good working order. CSG will agree to have Technicians dispatched on an agreed upon scheduled basis to keep all Equipment in good working order.

2.5 CSG agrees to provide Equipment as indicated in Attachment B for the Term of this Agreement.

2.6 CSG shall be responsible for the managing of all call detail records for Equipment, including but not limited to: the rating of each record in accord with rates, terms and conditions, for providing local, intraLATA, interLATA, and interstate telecommunications services as filed with the Public Utilities Commission, for the blocking and unblocking of user billing numbers, and preparation and processing of qualifying message records for billing and collection of revenue. All call detail records and recordings will be maintained for Facility by CSG for the duration of the term of this Agreement, plus an additional 2 years after the term.

2.5 Facility agrees to provide adequate space for Equipment and easy accessibility for use during the normal operating hours of Facility. CSG will install and maintain all necessary infrastructure equipment at no cost to Sebastian County.

2.7 Facility agrees to maintain the area around Equipment and ensure safe and ready access to the users of Equipment to CSG.

2.8 Facility agrees to allow CSG to perform maintenance during the established hours of accessibility jointly agreed to by Facility and CSG, except when access must be denied to ensure the safety of CSG service personnel and/or maintain institutional control.

2.9 Facility agrees to allow CSG access to and use of house cable and inside wire at no cost where available in order to install and provide inmate telephone service.

2.10 Any relocation, expansion, addition, or deletion of Equipment for reasons other than safety, resulting in extraordinary expense and expected to be paid by CSG, must be agreed to by CSG in advance of the cost being occurred or alternatively, the cost paid by Facility.

2.11 Facility warrants that it has the authority to enter into this Agreement with CSG. Facility further warrants that the Equipment mentioned in Attachment A, attached hereto and incorporated herein by this reference, are on property owned by Facility or if Facility is not the owner of the premises, Facility has obtained permission from the building owner or owner's agent to enter into this Agreement.

2.12 CSG shall provide Facility with value-added features as listed in Attachment C.

2.13 In consideration for this Agreement, CSG shall pay Facility a monthly commission fee as listed in Attachment D.

3.  **OWNERSHIP.** Facility agrees that legal title to all Equipment shall remain vested with CSG. Facility shall not remove or relocate Equipment without CSG's express consent. Relocation at Facility's request shall be at Facility's expense. CSG is to accept no liability for holes in walls, floors, or other surfaces that result from the installation or removal of Equipment. Upon termination of this Agreement, CSG shall be responsible only for the removal of Equipment. Facility shall restore the premises to their original condition. CSG shall not be responsible for damage to the premises that occur due to vandalism. CSG shall indemnify, defend and hold Facility harmless from liability in connection with the placement, maintenance, or usage of Equipment.

4.  **LEGAL ENFORCEMENT.** If legal enforcement of the terms of this Agreement is necessary, the prevailing party shall be entitled to reasonable attorney's fees and costs. CSG and Facility mutually agree to cooperate to the fullest extent possible and the best of each party's ability to facilitate the provisioning of the terms described herein.

5.  **LAWFULNESS OF AGREEMENT.** The parties acknowledge that this Agreement is subject to applicable federal, state, and local laws, rules, regulations, court orders, and governmental or agency orders governing the provision of Equipment.

6.  **NONWAIVER.** The failure of either party to enforce strict performance of any provision of this Agreement shall not be construed as a waiver of its right to assert or rely upon such provision or any other provision of this Agreement.

7.  **GOVERNING LAW.** This Agreement shall be interpreted, construed and enforced in all aspects in accordance with the laws of the State in which the Equipment is provided.

8.  **SUCCESSORS AND ASSIGNS.** This Agreement shall be fully binding upon, inure to the benefit of and be enforceable by each party, their successors and assigns. No assignment of any right or interest in this Agreement (whether by contract, operation of law or otherwise) shall release or relieve either party of any of its obligations or liabilities under this Agreement.

9.  **AMENDMENTS AND MODIFICATIONS.** Amendments and modifications to this Agreement, except for additions or deletions of Equipment as described in Attachment B must be in writing and signed by an authorized representative of each party.

10. **SEVERABILITY.** In the event that a court, governmental agency, or regulatory body with proper jurisdiction determines that this Agreement or a provision of this Agreement is unlawful, this Agreement, or that provision of this Agreement to the extent it is unlawful, shall terminate. If a provision of this Agreement is terminated but the parties can legally, commercially and practicably continue without the terminated provision, the remainder of this Agreement shall continue in effect.

11. **LIMITATION OF LIABILITY.** In the event of a service interruption caused by CSG, CSG liability shall be limited to the use of reasonable diligence under the circumstances, for restoration of service. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR INCIDENTAL, SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES, INCLUDING LOST REVENUE, LOSS OF PROFITS OR OTHER COMMERCIAL OR ECONOMIC LOSS ARISING OUT OF THE PERFORMANCE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION NEGLIGENT PERFORMANCE OR FAILURE TO PERFORM.

12. **DEFAULT.** If either party fails to perform its obligations under this Agreement, failure shall constitute default and, in such event, written notice shall be given to provide an opportunity to remedy such default. Should the defaulting party fail to remedy such default within ten (10) working days from date of such notice, the non-defaulting party shall have the right, in addition to all other rights and remedies available at law or in equity, to terminate this Agreement in whole or in part.

13. **REGULATORY.** The parties acknowledge that underlying telecommunications Equipment may be provided by regulated providers and where applicable, provider tariffs, catalogs and price lists may apply.

14. **AMENDMENTS AND MODIFICATIONS.** Amendments and modifications to this Agreement, except for additions or deletions of telephones as described in Attachment B, must be in writing and signed by an authorized representative from each Party.

15. **NOTICES.** Any notices or other communications to be given under this Agreement shall be sent to the following persons:

**FOR CUSTOMER**

Attn: Honorable David Hudson

Address:
800 South A Street
Fort Smith, AR 72901

**FOR CSG**

Attn: Patrick Temple

Address:
182 Bastille Lane
Ruston, LA 71270

16. **ENTIRE AGREEMENT.** This Agreement including all schedules, amendments and exhibits, constitutes the entire Agreement between the parties and supersedes all prior agreements and oral or written representations with respect to the subject matter hereto.

For Sebastian County Sheriff's Office

_____  Signature

Sebastian County Judge

David Hudson County Judge

Bill Hollenbeck _____ Print

3/27/17 _____ Date

For Correct Solutions Group

_____ Signature

Patrick M. Temple _____ Print

4/24/17 _____ Date

## ATTACHMENT A

## RATE SCHEDULE

Rates for calls within the Inmate Call Control Platform will be programmed per the table below:

| Rates - Sebastian County, AR | |
|---|---|
| **PREPAID CALLS** | Minute |
| LOCAL | $0.40 |
| IntraLATA Toll | $0.40 |
| InterLATA | $0.40 |
| InterSTATE | $0.21 |
| International | $1.00 |
| | |
| **PIN DEBIT CALLS** | Minute |
| LOCAL | $0.40 |
| IntraLATA Toll | $0.40 |
| InterLATA | $0.40 |
| InterSTATE | $0.21 |
| International | $1.00 |
| | |
| **PREPAID CARDS** | Minute |
| LOCAL | $0.40 |
| IntraLATA Toll | $0.40 |
| InterLATA | $0.40 |
| InterSTATE | $0.21 |

Simple two fee structure for account funding:
$5.95 for Account Funding utilizing live operator
$3.00 for Account Funding utilizing IVR, Web, Kiosk

Correct Solutions 00043

## ATTACHMENT B

## PROVIDED EQUIPMENT

**Inmate Call Control Platform.** The CSG provided Platform will be installed to accommodate the 31 inmate telephones or more as needed and portable telephones as listed in the Sebastian County RFP. Platform will be programmed per the requirements of the County to reflect times of operation. This includes all existing facilities, future expansions or locations.

Inmate call platform, servers, routers and switches are the property of CSG and will be provided at no cost to Customer.

**Video Visitation Platform** – The CSG provided Video Visitation Platform equipment will consist of fifteen (15) inmate side video visitation terminals, seven (7) public side video visitation terminals, one (1) cart video visitation terminal, one (1) Lobby Scheduling Monitor and one (1) Lobby Registration and Scheduling Terminal.

The Video Visitation Platform will be installed by CSG. All equipment will remain the property of CSG and will be provided at no cost to Customer for the duration of Initial Term and Annual Renewals. The following table is demonstrates Customers obligation in the event that this Agreement is not renewed or cancelled for any reason prior to the Initial Term and Annual renewals not being met.

In the event that Agreement is not extended, cancelled or otherwise made to be not in effect, Customer agrees to the following schedule, based on six (6) years, as a payment for equipment and services. Customer agrees that, should the aforementioned actions negating the original Agreement take place within the given year listed below, the scheduled amount shown would be paid to CSG in full.

  a. Year 1 – beginning with installation and lasting one (1) year, Customer agrees to pay $129,000 to CSG.
  b. Year 2 – beginning with the second year following installation, Customer agrees to pay $107,436 to CSG.
  c. Year 3 – beginning with the third year following installation, Customer agrees to pay $85,872 to CSG.
  d. Year 4 – beginning with the fourth year following installation, Customer agrees to pay $64,308 to CSG.
  e. Year 5 – beginning with the fifth year following installation, Customer agrees to pay $42,744 to CSG.
  f. Year 6 – beginning with the sixth year following installation, Customer agrees to pay $21,180 to CSG.

Customer agrees to pay CSG monthly maintenance and support cost per the following table. Monthly maintenance and support costs will be deducted from inmate telephone commission payments from CSG to Customer.

a. Year 1 – There will be no monthly maintenance and support cost charged to Customer during the first year of this Agreement.
b. Year 2-6 – A monthly maintenance and support cost of $1,290.00 per month will be deducted from inmate telephone commission payable to Customer by CSG.
c. After Year 6, the maintenance and support cost paid by Customer to CSG ceases. Any support arrangements from this time period going forward will be negotiated between Customer and CSG at that time.

Provided Equipment and Value-Added Equipment will be installed and implemented per the timeline listed below:



## ATTACHMENT C

## VALUE-ADDED FEATURES

CSG will provide the CELLMATE Platform to Customer. The Cellmate platform provides tablets to inmates for daily use.

Features included are:
- Talk – inmates will be able to place inmate phone calls, which adhere to all security measures, from the tablets.
- Text – inmates will be able to text numbers and receive text from numbers. All security measures apply and all text will be available to investigators. Family members must have an account established with CSG in order to receive or send texts.
- Games – inmates will be provided with games.
- Books – CSG utilizes a public domain repository of books that the inmate can choose and read on the tablet.

The tablet is manufactured with a clear back cover for security purposes.

No access to outside internet will be available for inmates utilizing tablets.

Charging stations for tablets will be provided by CSG as needed by Customer.

An initial 500 tablets will be provided to Customer. Initial inventory will be enough to supply each inmate with a tablet and provide Customer a spares inventory.

Tablets will not be repaired and should only be replaced. Once spares inventory is depleted, Customer and CSG will negotiate replacement program.

KIOSKS – CSG will provide, at no charge to the Customer, three (3) kiosks. Two (2) kiosks will be placed in the unsecured area of the facility and will be accessible to family and friends for deposit of funds onto inmate accounts. One (1) kiosk will be placed on the secured side of the facility within the booking area. This kiosk will be utilized for inmate fund acquisition at the time of booking and will be equipped to accept coins and cash and must be interfaced with appropriate Customer software to maintain accounting. All kiosks will accept U.S. currency only.

## ATTACHMENT D

## FINANCIAL SCHEDULE

In consideration for this exclusive Contract and Agreement, CSG shall pay Customer a Commission Fee of 74% (Seventy-Four Percent) of the Total Gross Revenue for completed inmate telephone calls regardless of call type, with exception to Interstate Calls due to FCC ruling.

CSG shall provide Customer with a monthly commission report that details all call types, call volumes and call rates. All rates and charges under this Agreement shall conform to the Public Service Commission regulations of Arkansas.

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

# EXHIBIT C

*to Plaintiff's First Request for Admissions to Defendant*



## CONTRACT AND AGREEMENT

This inmate telephone and services "Shared Revenue" Agreement is entered into, by and between **Wayne County Sheriff's Office** located at 266 East Walnut Street, Jesup, GA 31546 herein known as "Customer" and Correct Solutions, LLC, located at 182 Bastille Lane, Ruston, Louisiana 71720, herein known as "CSG".

WHEREAS, CSG is engaged in the business of providing certain telecommunications equipment and related service and financial equipment and systems and charge-for-call telephone services, and providing automated-operator assisted station-to-station or person-to-person collect, pre-pay and debit telephone calls (Equipment), and;

WHEREAS, Customer has full operating and management responsibility for the detention facility, jail or prison, herein collectively known as the "Facility", and with respect to those premises so noted, wishes to establish an inmate communications services agreement as described herein:

NOW, THEREFORE, the parties hereto, in consideration of the mutual covenants and agreements contained herein and other good and valuable considerations, do hereby agree as follows:

1. **TERM.** This Agreement is effective upon the date of installation of equipment ("Effective Date"), and shall continue in effect for a period of 1 year ("Initial Term") from the Effective Date. Upon completion of the Initial Term, Facility will have the option to renew this Agreement for a period of 4 (four) successive one year periods. Each renewal will be based on a yearly review of services provided by CSG. This Agreement will automatically renew under the terms described as Initial Term unless either party notifies the other in writing of its intent to terminate this Agreement at least 90 days prior to the final date of expiration. Upon termination of this Agreement, each party agrees to satisfy any and all of its outstanding obligations arising under this Agreement.

2. **SCOPE OF AGREEMENT**

   2.1 In consideration of compensation provided herein, Facility grants to CSG exclusive rights to install and maintain telephones and/or inmate telephone systems and /or inmate video visitation within its building or on its private property ("Location") during the term of this Agreement.

2.2  This Agreement includes all other premises, whether now existing or subsequently acquired, under the control of Facility.  Facility will notify CSG, in writing, of newly opened, acquired, or available premises, promptly, so CSG can evaluate installation of its Equipment at these premises.

2.3  CSG shall the exclusive right to obtain usage and billing information, order, connect or disconnect inmate telephone services, select carriers, purchase available public utility equipment, handle all billing and payments.  CSG shall be responsible for the payment of all charges in connection the Equipment and will be responsible for any bad debt and associated unbillables.

2.4  CSG shall install and maintain Equipment in good working order.  CSG will agree to have Technicians dispatched on an agreed upon scheduled basis to keep all Equipment in good working order.

2.5  CSG agrees to provide Equipment as indicated in Attachment A for the Term of this Agreement.

2.6  CSG shall be responsible for the managing of all call detail records for Equipment, including but not limited to: the rating of each record in accord with rates, terms and conditions, for providing local, intraLATA, interLATA, and interstate telecommunications services as filed with the Public Utilities Commission, for the blocking and unblocking of user billing numbers, and preparation and processing of qualifying message records for billing and collection of revenue.  All call detail records and recordings will be maintained for Facility by CSG for the duration of the term of this Agreement, plus an additional 2 years after the term.

2.7  Facility agrees to provide adequate space for Equipment and easy accessibility for use during the normal operating hours of Facility.  In the event Facility is not the owner of the premises, Facility shall, where necessary, obtain permission from building owner or owner's agent for the placement of CSG's Equipment, and shall be responsible for any fees for use of required riser cable and electric power.

2.8  Facility agrees to maintain the area around Equipment and ensure safe and ready access to the users of Equipment to CSG.

2.9  Facility agrees to all CSG to perform maintenance during the established hours of accessibility jointly agreed to by Facility and CSG, except when access must be denied to ensure the safety of CSG service personnel and/or maintain institutional control.

2.10  Facility agrees to allow CSG access to and use of house cable and inside wire at no cost, in order to install and provide inmate telephone service.  Any new house cable or inside wire pertaining to the commnications services expected to be paid by CSG, must be mutually agreed upon in advance of the cost being occurred or alternatively, the cost paid by Facility.

2.11  Any relocation, expansion, addition, or deletion of Equipment for reasons other than safety, resulting in extraordinary expense and expected to be paid by CSG, must be mutually agreed upon in advance of the cost being occurred or alternatively, the cost paid by Facility.

2.12  Facility warrants that it has the authority to enter into this Agreement with CSG. Facility further warrants that the Equipment mentioned in Attachment A, attached hereto and incorporated herein by this reference, are on property owned by Facility or if Facility is not the owner of the premises, Facility has obtained permission from the building owner or owner's agent to enter into this Agreement.

2.13  CSG shall provide Facility with value-added features as listed in Attachment A.

2.14  In consideration for this Agreement, CSG shall pay Facility a monthly commission fee as listed in Attachment B.

3.  **OWNERSHIP.**  Facility agrees that legal title to all Equipment shall remain vested with CSG. Facility shall not remove or relocate Equipment without CSG's express consent. Relocation at Facility's request shall be at Facility's expense. CSG is to accept no liability for holes in walls, floors, or other surfaces that result from the installation or removal of Equipment. Upon termination of this Agreement, CSG shall be responsible only for the removal of Equipment. Facility shall restore the premises to their original condition. CSG shall not be responsible for damage to the premises that occur due to vandalism. CSG shall indemnify, defend and hold Facility harmless from liability in connection with the placement, maintenance, or usage of Equipment.

4.  **LEGAL ENFORCEMENT.**  If legal enforcement of the terms of this Agreement is necessary, the prevailing party shall be entitled to reasonable attorney's fees and costs. CSG and Facility mutually agree to cooperate to the fullest extent possible and the best of each party's ability to facilitate the provisioning of the terms described herein.

5.  **LAWFULNESS OF AGREEMENT.**  The parties acknowledge that this Agreement is subject to applicable federal, state, and local laws, rules, regulations, court orders, and governmental or agency orders governing the provision of Equipment.

6.  **NONWAIVER.**  The failure of either party to enforce strict performance of any provision of this Agreement shall not be construed as a waiver of its right to assert or rely upon such provision or any other provision of this Agreement.

7.  **GOVERNING LAW.**  This Agreement shall be interpreted, construed and enforced in all aspects in accordance with the laws of the State of Georgia.

8. **SUCCESSORS AND ASSIGNS.** This Agreement shall be fully binding upon, inure to the benefit of and be enforceable by each party, their successors and assigns. No assignment of any right or interest in this Agreement (whether by contract, operation of law or otherwise) shall release or relieve either party of any of its obligations or liabilities under this Agreement.

9. **AMENDMENTS AND MODIFICATIONS.** Amendments and modifications to this Agreement, except for additions or deletions of Equipment as described in Attachment A must be in writing and signed by an authorized representative of each party.

10. **SEVERABILITY.** In the event that a court, governmental agency, or regulatory body with proper jurisdiction determines that this Agreement or a provision of this Agreement is unlawful, this Agreement, or that provision of this Agreement to the extent it is unlawful, shall terminate. If a provision of this Agreement is terminated but the parties can legally, commercially and practicably continue without the terminated provision, the remainder of this Agreement shall continue in effect.

11. **LIMITATION OF LIABILITY.** In the event of a service interruption caused by CSG, CSG liability shall be limited to the use of reasonable diligence under the circumstances, for restoration of service. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR INCIDENTAL, SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES, INCLUDING LOST REVENUE, LOSS OF PROFITS OR OTHER COMMERCIAL OR ECONOMIC LOSS ARISING OUT OF THE PERFORMANCE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION NEGLIGENT PERFORMANCE OR FAILURE TO PERFORM.

12. **DEFAULT.** If either party fails to perform its obligations under this Agreement, failure shall constitute default and, in such event, written notice shall be given to provide an opportunity to remedy such default. Should the defaulting party fail to remedy usch default within ten (10) working days from date of such notice, the non-defaulting party shall have the right, in addition to all other rights and remedies available at law or in equity, to terminate this Agreement in whole or in part.

13. **REGULATORY.** The parties acknowledge that underlying telecommunications Equipment may be provided by regulated providers and where applicable, provider tariffs, catalogs and price lists may apply.

14. **NOTICES.** Any notices or other communications to be given under this Agreement shall be sent to the following persons:

**FOR CUSTOMER**                    **FOR CSG**

Attn:      John Carter, Sheriff        Attn:       Patrick Temple

Address:   266 East Walnut Street      Address:    182 Bastille Lane
           Jesup, GA 31546                         Ruston, LA 71270

15. **ENTIRE AGREEMENT.** This Agreement including all schedules, amendments and exhibits, constitutes the entire Agreement between the parties and supersedes all prior agreements and oral or written representations with respect to the subject matter hereto.

**Signatures:  The persons signing below signify that they have the authority from their respective business entities to execute this Agreement.**

Wayne County Sheriff's Office

_____
Signature

John G. Carter
Printed Name

Sheriff
Title

2/6/2018
Date

CSG

_____
Signature

Roddy L. McLemore      Patrick M. Temple
Printed Name

SAlES CONSUlTANT      Manager
Title

2/6/2018      2/6/18
Date

MArch 15, 2018 - LAST DAY for PAYTEl CONTRACT

Correct Solutions 00061

## ATTACHMENT A

## PROVIDED EQUIPMENT

Telephone/Video Communication Service-Related Equipment/Systems

Correct Solutions ITS Call Processing, including:

- Inmate Telephones
- Cart Phones
- TDD/TTY units
- Inmate Visitation Phones
- Offender & Public Video Visitation Kiosks (Law Library, Requests\Grievances, etc)
- Unlimited ITS User Licenses
- Unlimted SMART User Licenses
- Interface to JMS Platform
  - o Automated Inmate ID\PIN\Voice Recognition
  - o Automated Offender access JMS information via Kiosk (Court Date, Bond Amount, Charges, etc.)
- Interface to Commissary Platform
  - o Automated Debit Calling
  - o Kiosk Commissary Ordering
- Inmate Voice Mail
  - o Messages priced at $.50 per Message with 60% Revenue Share

## ATTACHMENT B

## FINANCIAL COMPENSATION

| ALL CALLING RATES | | |
|---|---|---|
| Call Type | Per Call Charge | Per Minute Charge |
| Local | $0.00 | $0.18 |
| Intrastate/Intralata | $0.00 | $0.31 |
| Intrastate/Interlata | $0.00 | $0.31 |
| Interstate | $0.00 | $0.25 |

Compensation

Correct Solutions shall pay County a commission of 60% of the gross call revenue for all call types with the exception of interstate calls due to FCC ruling. Correct Solutions will also pay County 60% for any service fees collected for inmate voicemail.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

     Plaintiff,

v.                            Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

     Defendant.

_____/

## DEFENDANT'S THIRD REQUEST FOR ADMISSIONS

Pursuant to Florida Rule of Civil Procedure 1.370, Defendant, Correct Solutions, LLC, a/k/a Correct Solutions Group, LLC (herein "Correct Solutions"), requests Plaintiff, Smart Communications Holding, Inc. (herein "Smart Communications"), to admit the following:

1.     That the term "Party" contained in the last sentence of paragraph 6 of the Master Services Agreement references Correct Solutions, LLC and Smart Communications Holding, Inc.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Esquire, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com;

dhayes@bajocuva.com;    kturkel@bajocuva.com;    tdeleo@bajocuva.com    on

November **27**, 2019.

HARLLEE & BALD, P.A.

By: _____

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4813-9128-6446, v. 1

Case 8:20-cv-01469-WFJ-TGW   Document 1-4   Filed 06/26/20   Page 266 of 321 PageID 702

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS HOLDING, INC.

              Case No: 19-CA-008089

  Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

  Defendant.

_____/

### MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

  Plaintiff, Smart Communications Holding, Inc. ("Smart"), by counsel and pursuant to Florida Rule of Civil Procedure 1.190, files this Motion for Leave to File Amended Complaint and states as follows:

  1. On August 2, 2019, Smart filed this lawsuit after Defendant, Correct Solutions, LLC ("CSG") attempted to terminate the contractual and business relationship between the parties.

  2. Since Smart filed the Complaint, CSG has sent Smart additional notices, including a Notice to Cure and three Notices of Non-Renewal, with the continued intent of terminating the relationship of the parties.

  3. Smart has obtained some documents from non-parties and CSG has produced a partial document production in response to discovery requests from Smart, a number of which Smart has relied on to support the additional claims included in the proposed Amended Complaint. *See, e.g.,* Exhibit F – I and M - W of (Proposed) Amended Complaint.

  4. Upon receiving CSG's first Notice of Non-Renewal, counsel for Smart informed counsel for CSG that Smart did not agree with CSG's position on non-renewal and that Smart

would pursue filing an amended complaint to address the notices and a motion to prohibit CSG from acting in furtherance of the notices of non-renewal. Smart also requested documents to support the allegations made in the notices of non-renewal and CSG never provided any such documents. Smart has also repeatedly requested a corporate representative deposition on the non-renewal issue and CSG stated it would not produce a witness until Smart amended its complaint to frame the issue by the pleadings.

5.      On November 25, 2019, counsel Smart provided counsel for CSG with a copy of Smart's proposed Amended Complaint and asked CSG to consent to Smart filing the Amended Complaint consistent with earlier discussions.

6.      Pursuant to Rule 1.190(a), a party may amend a pleading with written consent of the adverse party or with leave of court.  However, CSG would not consent to the filing on the stated basis that it disagreed with Smart's position on the non-renewal issue. Smart then suggested that CSG could argue the merits of the claim later, but CSG's disagreement on the merits did not serve as grounds to oppose the amendment. Nevertheless, CSG refused to consent to the amendment. As a result, Smart now seeks leave of court.

7.      Rule 1.190(a) provides that leave of court shall be given freely when justice so requires.

8.      "The failure to permit amendment constitutes an abuse of discretion unless it clearly appears the amendment would prejudice the opposing party, the privilege to amend has been abused, or amendment would be futile." *EAC USA v. Kawa*, 805 So.2d 1, 5 (Fla. 2d DCA 2001).

9.      Here, the amendment would not prejudice CSG.  The case is in its infancy—there is no trial date and no depositions have occurred and only a limited amount of discovery has been taken.

10.     Smart has not abused the privilege to amend, as the proposed pleading would be the first Amended Complaint.

11.     Further, the amendment would not be futile because it adequately states a cause of action based on record evidence in this case. Specifically, the proposed Amended Complaint states a cause of action for declaratory relief on the non-renewal term of the Master Services Agreements between the parties.  *Meadows Community Ass'n, Inc. v. Russell-Tutty, App*. 928 So.2d 1276 (Fla. 2d DCA 2006) ("The test for the sufficiency of a complaint for declaratory judgment is not whether the plaintiff will succeed in obtaining the decree he seeks favoring his position, but whether he is entitled to a declaration of rights at all").

WHEREFORE, Plaintiff, Smart Communications Holding, Inc., respectfully requests that the Court grant leave for Smart to file the attached Amended Complaint and for such further relief as the Court deems just and proper.

## Good Faith Conference Certification

The undersigned certify that they conferred with counsel for CSG about the issues raised in this Motion and that CSG opposes the relief requested and has also opposed Smart's request to consent to the filing of the Amended Complaint.

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of November, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
          JEL@harlleebald.com
          DDF@harlleebald.com
          CL@harlleebald.com

*/s/ Brad F. Barrios*_____
Attorney

*Smart Communications Holding, Inc. v. Correct Solutions, LLC and Rick Ferguson*
Case No.  19-CA-008089

# ATTACHMENT

### *to Motion for Leave to File Amended Complaint*

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS HOLDING, INC.

                                                   Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,
and RICK FERGUSON,

      Defendants.
_____/

## AMENDED COMPLAINT

      Plaintiff, Smart Communications Holding, Inc. ("Smart") files this Amended Complaint against Defendants, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC ("CSG") and Rick Ferguson, and alleges as follows:

### Introduction

      1.     This is a case where one party to a series of contracts is so covetous of the other party's financial success under the contracts that it will stop at nothing to acquire a portion of those benefits for itself.

      2.     Smart and CSG both provide inmate communications services to correctional facilities. The parties have mutually benefitted from a successful business arrangement for the last two years in which Smart is the exclusive provider of certain services to the parties' joint customers. However, having found another source for Smart's services that is apparently more financially lucrative, CSG concocted and engaged in a series of duplicitous, bad faith efforts to deprive Smart of its significant investment in the exclusive relationship and its ability to realize the benefits of the parties' bargain.

3.      In furtherance of its plot to wrongfully push Smart out of all the parties' joint customer facilities, CSG smeared Smart's name and reputation and solicited exaggerated complaints about Smart's products and services. CSG expanded its attack beyond stealing Smart's business from the parties' joint customers and additionally targeted Smart's own direct customers. CSG's stated goal was to replace Smart and deprive it of its exclusive relationships and significant revenue. On information and belief, CSG has systematically broadened its attack on Smart throughout the marketplace and has maligned Smart's reputation at every opportunity, especially when competing for the same business.

4.      Smart was forced to file this lawsuit when CSG recently attempted to terminate the parties' relationship and thereby remove Smart as the exclusive provider of certain services to the parties' several joint customers. However, as described below, CSG's stated grounds for termination have no merit and, in any event, do not qualify as grounds for termination under the exclusive agreements between the parties.

5.      With its first termination attempt halted, CSG continued to manufacture reasons to remove Smart and shift Smart's revenues to its own coffers. While doing so, CSG has repeatedly ignored its primary obligation under the parties' agreements—to provide exclusive access to the joint customers to allow Smart to provide its services and earn revenue. Worse yet, after realizing its termination attempts had no merit, CSG has begun sending non-renewal notices that run afoul of the understanding and agreements between the parties.

6.      Smart seeks a declaration and injunctive relief order prohibiting CSG from causing Smart continuing and irreparable harm throughout the inmate communications industry by improperly terminating or non-renewing the agreements between Smart and CSG relating to specific correctional facilities described below and enjoining CSG from continuing to tarnish

Smart's reputation to the parties' joint customers and throughout the industry. Smart also seeks damages for the harm CSG has caused.

**Parties, Jurisdiction, and Venue**

7.     Smart is a Florida corporation with its principal place of business in Pinellas County, Florida. Smart provides various services to correctional facilities throughout the country, including in the state of Florida.

8.     CSG is a foreign limited liability company registered to do business in Florida. Its principal place of business is in Lincoln Parish, Louisiana. This Court has jurisdiction over CSG: (a) pursuant to section 48.193(1)(a)(1), Florida Statutes, because it has a registered agent in Florida at 1200 South Pine Island Road, Plantation, Florida 33324; (b) pursuant to section 48.193(1)(a)(7), Florida Statutes, because it has breached a contract in this state by failing to perform acts required by the contract to be performed in this state; and (c) pursuant to section 48.193(2) because it is engaged in substantial and not isolated activity within Florida.

9.     The Florida Public Service Commission has granted CSG a certificate to provide pay telephone services in Florida. CSG solicits business from Florida institutions and has obtained contracts to provide services to Florida governmental entities. For example, CSG provides inmate telephone communications services in Florida pursuant to a contract with the Nassau County Sheriff's Office and the Monroe County Sheriff's Office. Accordingly, CSG is engaged in substantial business activity in Florida, such that it should anticipate being haled into court in Florida.

10.     Ferguson is an individual employee of CSG. Upon information and belief, Ferguson resides in Louisiana. Upon information and belief, Ferguson travels to Florida on a regular basis to service CSG's Florida-based customers. Further, as described below, Ferguson

made defamatory comments about Smart, a Florida citizen, which he sent into Florida and which have caused harm to Smart in Florida.

11.    Venue is proper in Hillsborough County pursuant to Section 47.011, Florida Statutes because the cause of action accrued in Hillsborough County and because the contracts upon which this action is based both include mandatory forum selection clauses identifying Hillsborough County as the exclusive venue for litigation arising under the contracts.

<div align="center">**Background of the Parties' Relationship**</div>

12.    CSG provides an inmate telephone platform through which it installs telecommunications equipment at correctional facilities and charges inmates or their contacts on a per-call basis. CSG derives revenue from its platform, a portion of which it agrees to share with the correctional facilities pursuant to a commission arrangement.

13.    CSG's contracts and communications with correctional facilities, including CSG's commission structure with each facility, are publicly-available documents. In particular, CSG's contracts and communications with correctional facilities and their corresponding governmental entities are subject to public disclosure under applicable state statutes.

14.    Historically, CSG has provided products and services focused on telephone communications. CSG did not offer alternative methods of communication, such as electronic mail or text messaging, to be deployed for the benefit of inmates at its customers' correctional facilities. As a result, CSG was unable to fully service its customers who desired a broader spectrum of communications options and services for their inmates.

15.    Historically, Smart has provided a suite of services available to inmates through kiosks and tablets, including electronic messaging, grievance and medical forms, video visitation, a law library, entertainment, and educational content. Smart has also provided correctional

facilities with the ability to monitor and control inmate communications through a proprietary and trade secret technology package and with patented mail scanning services to eliminate or control the flow of physical postal mail into facilities. Until early 2019, Smart did not provide telephone communication services.

16.     To meet the needs of their existing customers and remain competitive in the inmate communications industry, CSG approached Smart in 2017 about an arrangement whereby CSG's customers could obtain the benefits of Smart's state-of-the-art electronic communications system. CSG pursued Smart for many reasons. First, correctional facilities desired to provide inmates with communication options other than telephone calls, such as electronic messaging. Second, facilities sought a system that was easy to use and provided inmates with direct access to necessary forms, entertainment, and educational content. Third, facility staff desired more investigative features to easily monitor and track their inmates' routine, non-legal communications with the outside world. CSG could not meet these needs and knew that Smart had pioneered inmate messaging with a system, developed and refined over time, which presented an unmatched collection of features and functions. To be associated with Smart in the eyes of their customers was to be connected with innovation and quality and only served to increase CSG's ability to continue their customer relationships through contract renewals.

17.     Ultimately, due to its partnership arrangement with Smart, CSG was able to satisfy its existing customers and was also able to obtain new customers.

18.     The intent of the proposed business relationship was that CSG and Smart would each provide their respective services directly to a pool of customers. As opposed to CSG incorporating Smart's platform into its own system, the products and services of the parties remained separate and distinct. Neither an inmate nor a facility staff member had to access CSG's

telephone system in order to access Smart's messaging system. Smart trained and interfaced with facility staff on all issues related to Smart's services. Smart collected revenue in its ordinary course when facility inmates exchanged messages with outside contacts, without involvement of CSG. The facility customers, some of which were existing CSG customers, became Joint Customers of both parties by virtue of the services being directly provided by each party.[1]

19.     In contemplation of this potential business arrangement, on June 15, 2017, Smart and CSG entered into a Mutual Confidentiality and Nondisclosure Agreement (the "NDA"). A true, complete, and authentic copy of the NDA is attached as **Exhibit A**.

20.     Pursuant to the NDA, the parties excluded from the definition of Confidential Information "any materials or information…generally known…by the public…", among other exclusions.

21.     Upon execution of the NDA, CSG did not disclose any Confidential Information to Smart.

22.     In the Fall of 2017, Smart demonstrated its products and services, including its correctional grade tablets, to CSG at CSG's headquarters in Louisiana. All of CSG's company executives, sales representatives, IT personnel, and field services representatives were in attendance.

23.     During the demonstration, CSG's employees handled and operated Smart's tablets and could see and feel the construction of the tablets. CSG's employees expressed to Smart that they were very impressed and satisfied with all of Smart products, including the tablets.

---

[1] The group of facility customers that obtained the services of both CSG and Smart shall be hereinafter referred to as the Joint Customers, more specifically identified in Paragraph 32.

## The Parties' Exclusive Dealing Contracts

24.    In August, 2017, Smart and CSG negotiated the terms of the parties' exclusive dealing contracts relating to the Joint Customers. The parties agreed that each contract would include a master services agreement, which included the general terms of the relationship between CSG and Smart and which attached and incorporated the contract between CSG and the Joint Customer, an amendment to the contract between CSG and the Joint Customer, which added Smart's services to the contract, and a Schedule, which defined the particular services that Smart was going to provide to the Joint Customer.

25.    Due to the significant financial investment Smart was going to undertake in installing its equipment and services and necessary infrastructure into each Joint Customer facility, Smart originally requested a seven year term for each exclusive dealing contract to ensure it had adequate time to recoup and obtain a return on its investment. However, given that CSG had existing agreements with some of the Joint Customers, all of which included favorable renewal terms, Smart and CSG instead agreed that the term of each master services agreement between Smart and CSG would be "co-terminous" with each contract between CSG and the Joint Customer. That is, Smart and CSG agreed that, as long as CSG provided services to a Joint Customer pursuant to the original or any subsequent renewal term of a CSG/Joint Customer contract, then Smart would exclusively provide the services identified in the Schedule to the Joint Customer.

26.    The first contract executed by Smart and CSG related to Avoyelles Parish, Louisiana, which was an existing CSG customer by virtue of the Proposal Contract and Agreement between CSG and Avoyelles (the "CSG/Avoyelles Contract").

27.     In late August, 2017, CSG sent Smart a copy of the CSG/Avoyelles Contract, a draft amendment which added the services to be provided by Smart, and a master services agreement for the Avoyelles project.

28.     On August 14, 2017 and August 22, 2017, Avoyelles and CSG, respectively, executed the First Amendment to Contract and Agreement (the "Amendment").

29.     On August 31, 2017, Smart executed the Master Services Agreement and Schedule for the Avoyelles project. As described above, although each agreement between Smart and CSG was to include a master services agreement, the master services agreement was the same in each case, as it described the general terms of the parties' relationship. Accordingly, the Master Services Agreement shall be referred to hereinafter as the "MSA" because its terms are the same whether it is the MSA for the Avoyelles agreement or the MSA for any other Joint Customer agreement.

30.     On September 13, 2017, CSG executed the MSA and Schedule for the Avoyelles project, completing the Avoyelles contract. A true, complete, and authentic copy of the CSG/Avoyelles Contract, Amendment, MSA, and Schedule (collectively, the "Avoyelles Agreement") is attached as **Exhibit B**.

31.     Smart and CSG subsequently executed Schedules for other Joint Customers, some of which were existing CSG customers and some of which CSG and Smart pitched and obtained as part of a collective effort. Rather than execute a new MSA for each Joint Customer, Smart and CSG agreed to use the same MSA as part of each Joint Customer agreement. Further, CSG did not continue to obtain amendments with the Joint Customers as it had done with Avoyelles. However, consistent with the expressed intent of the parties, each Joint Customer agreement included the MSA, the CSG/Joint Customer contract, and the Smart Schedule (collectively, a "Joint Customer Agreement").

32.     Smart and CSG executed a Schedule for the following Joint Customers:

      a.      City of St. Louis, Missouri
      b.      Sebastian County, Arkansas Sheriff's Office
      c.      Washington County, Arkansas
      d.      Bowie County, Texas
      e.      Wayne County, Georgia
      f.      Avoyelles Parish, Louisiana
      g.      Lamar County, Mississippi
      h.      Moore County, Tennessee

True, complete, and authentic copies of the Schedules for the remaining Joint Customers are attached as **Composite Exhibit C**.

33.     The term of the MSA for each Joint Customer Agreement was "co-terminous" with the term of the Joint Customer's contract with CSG, including any ongoing renewal periods between CSG and the Joint Customer. Specifically, Paragraph 6 of the MSA provides:

> Term. This Agreement shall commence on the "Effective Date" and shall be co-terminous with Customer's Agreement with Facility as defined by Facility Address in attached Schedule. For purposes of this Agreement the "Effective Date" is defined as the date of the last signature on this Agreement. After the original term, this Agreement shall automatically renew in accordance with the Customer's Agreement with facility, listed as Attachment A, unless either Party notifies the other Party with written notice of non-renewal at least ninety (90) days prior to the expiration of the then current term.

34.     Accordingly, the **only way** that the contract between CSG and Washington County does not renew is if either party provides the other party with written notice of non-renewal at least 90 days prior to the date of expiration.

35.     Each contract between the Joint Customers and CSG includes an initial term and subsequent optional renewal terms. In most instances, the renewal terms begin automatically if one of the parties does not notify the other party of its intention to not renew the agreement.

36.     Accordingly, if CSG and a Joint Customer renew the term of their contract, then the MSA between Smart and CSG for that Joint Customer also renews because Smart's term is "co-terminous."

37.     If, and only if, either CSG or a Joint Customer elects not to renew their contract, then CSG may provide notice to Smart of non-renewal of the MSA with respect to that Joint Customer pursuant to Paragraph 6 of the MSA, because in that instance there would be no ongoing term between CSG and the Joint Customer for Smart to be "co-terminous" with.

38.     Pursuant to the MSA, Smart obtained the **exclusive right** to install, provide, and derive revenue from its inmate communications systems and various other services identified on Schedules for each Joint Customer. In exchange, CSG was able to maintain its relationships with the Joint Customers by providing for them the additional high-quality inmate communications services they desired.

39.     Pursuant to the MSA, Smart retains all revenue it generates from inmates using its messaging system through the Smart kiosks and tablets. In other words, CSG does not share in any revenue derived from messaging services at the Joint Customer facilities.

40.     The MSA for each Joint Customer does not include a termination without cause or termination on convenience clause.

41.     Paragraph 9 of the Agreement provides the only grounds for termination, as follows:

> Default and Termination.   If either party defaults **in the performance of any obligation** under this agreement, then the non-defaulting Party must give written notice to the defaulting Party specifically describing the nature of default. The defaulting Party shall have thirty (30) days after receipt of notice of default to cure. If it is not reasonable to cure the default within 30 days, then the right to cure period shall be extended to a reasonable cure period as long as the defaulting Party is has [sic] made good faith attempts to

cure the default. Upon termination of this Agreement, Provider shall remove all hardware and software Systems except for the cabling and conduit which shall become the property of the Customer. Provider shall have the right to immediately terminate this Agreement if Customer breaches the Confidentiality or Non-Disclosure provisions of this Agreement.
(emphasis added).

42.     Accordingly, pursuant to the MSA, only Smart, as the Provider, may terminate an MSA for a particular Joint Customer if CSG breaches the confidentiality or non-disclosure provisions of that MSA with respect to that Joint Customer.  This term (or a substantially similar term) exists in all of Smart's service contracts so that it can protect its intellectual property and confidential information.  The MSA was created from Smart's standard service contract.

43.     Indeed, CSG has no right to terminate an MSA during the term of any of the Joint Customer Agreements other than by identifying a legitimate default in Smart's performance of the service obligations of the MSA, which are set forth in more detail in the Schedules, and then providing a reasonable opportunity to cure the default.

**CSG's Attempts to Seize Smart's Revenue and Market Share**

44.     By early 2018, the Joint Customers were satisfied with Smart's services and Smart was earning significant revenue due to the popularity of its messaging platform with inmates. Under the terms of its agreements with CSG, Smart was not obligated to share any of its messaging revenue with either CSG or the Joint Customers.

45.     As a result, CSG became determined to obtain a more profitable arrangement to acquire some of the business, revenue, and/or market share that it had promised to Smart on an exclusive basis. Knowing that it had no basis or ability to terminate the MSA for any of the Joint Customers, CSG first tried lawful means.

46.     In March 2018, CSG attempted to purchase Smart; however, Smart was not interested in any such acquisition. CSG then attempted to hire multiple key employees of Smart. Presumably, CSG sought to obtain valuable business information or relationships with customers; however, the Smart employees were not interested in working for CSG and rejected its offers.

47.     CSG also asked Smart to voluntarily relinquish its exclusive rights with respect to some Joint Customers, which Smart was not interested in doing.

48.     In or around January 2019, Smart expanded its portfolio to offer telephone communication services to correctional facilities. CSG had knowledge of Smart's intent to provide telephone services even before Smart obtained the ability to do so. CSG and Smart executives discussed Smart's new capabilities and CSG represented that it had no problem with Smart offering telephone services.

49.     Apparently, however, CSG was either not pleased with Smart's entry into the telephone business or believed it could leverage this fact in its quest to generate revenue from inmate messaging vendor partners. Within the next two months, CSG had already put a plan in motion to remove Smart from the Joint Customer facilities and replace it with a new partner who would share its revenue with CSG.

50.     In order to replace Smart's services, and in furtherance of its goal to derive substantial revenue from the replacement provider, CSG developed a relationship with Tech Friends, a competitor of Smart's which provides inmate communications, entertainment, and educational services through tablets.

51.     By April 1, 2019, CSG had already pitched the Tech Friends tablets to at least one Joint Customer—Sebastian County. On April 1, 2019, Captain William Dumas thanked CSG for dinner and lunch the prior week and indicated that he had permission from the Sheriff to move

forward with the Tech Friends tablets. Ferguson forwarded the email to Mark Turner, one of CSG's senior leaders and a main point of contact to Smart, and Turner responded: "We have to get Smart out first though don't we?" A true, complete, and authentic copy of the April 1, 2019 email exchange is attached as **Exhibit D**.

52.     By this time upon information and belief, CSG and Tech Friends had negotiated or were in the process of negotiating a revenue sharing deal whereby CSG would retain Tech Friends as the inmate messaging subcontractor in facilities where CSG provided telephone services, including the Joint Customer facilities. CSG's motivation to replace Smart with Tech Friends was simple—Tech Friends promised to share up to 50% of its messaging revenue with CSG. If CSG could "get Smart out," then CSG stood to gain significant revenue from a sharing mechanism that was not part of its agreements with Smart.

<u>CSG's Response to Smart's Marketing Email</u>

53.     On or about April 8, 2019, Smart sent a mass marketing email to its customers. The email was a general advertisement—it was not tailored toward or directed at any particular customer. A true, complete, and authentic copy of the marketing email is attached as **Exhibit E**.

54.     CSG was already hatching a plan to "get Smart out" in the months prior, and it decided to use this email advertisement as a pretextual springboard for its unlawful termination, in in accordance with that plan.

55.     But first, CSG began tarnishing Smart's reputation and soliciting exaggerated complaints from the Joint Customers about Smart's services in an effort to generate support and additional pretext for its efforts to remove Smart.

56.     On April 22, 2019, Ferguson emailed Captain Dumas of Sebastian County and asked him to "forward me bullet points on smart issues…" Captain Dumas responded the same

day with a list, saying, "If you need more I'm sure we can think of it." A true, complete, and authentic copy of Ferguson's and Dumas's April 22, 2019 email exchange is attached as **Exhibit F.**

57.     Dumas's complaints can be categorized in three groups: (a) items that are not included in the Schedule for Sebastian County, *i.e.*, items Smart has no contractual obligation to provide ("Failed to install books, games" and "Failed to move to new platform for better performance"); (b) vague and unsubstantiated product and service issues ("Constant tablet failures and issues" and "Poor service, unstable product"); and (c) a blatant attempt to re-trade a deal to acquire a new source of revenue ("No increase on credits for revenue sharing").

58.     Ferguson did not forward Dumas's email to Smart to provide Smart with an opportunity to respond, including to clarify the services that Smart was contractually obligated to provide.  On information and belief, Ferguson made no effort to clarify or explain Smart's contractual obligations and instead continually reinforced the false notion that Smart was not meeting its service obligations.

59.     On May 17, 2019, at 3:28 p.m., Ferguson forwarded Dumas's email to Mark Turner and asked him to draft a 30 day cure letter to Smart. Mark Turner and Ferguson obviously did not think the issues identified in Dumas's April 22, 2019 email were urgent enough to address at that time. Instead, CSG only later decided to use these issues as grounds to threaten termination of the MSA by issuing a 30-day notice to cure approximately five months later, in September 2019.

60.     On May 17, 2019, at 3:32 p.m., Ferguson sent an email to one of the Joint Customers, Washington County, and stated:

> Hey Alan
> I hope you made it back safe. I hobbled home yesterday afternoon.☺
> I'm getting a lot of calls from my SMART customers complaining about product, service, and overall performance. To the point where I might be replacing them…Soon. **I have not heard from you** but I wanted to follow up and see how you were being serviced by them.

**I appreciate ya brother**.

A true, complete, and authentic copy of Ferguson's May 17, 2019 email is attached as **Exhibit G.**

61.     Ferguson's email admits that he had not heard from Washington County with any complaints about Smart. Yet, Ferguson went out of his way to tell his "brother" Alan Johnson about other customers supposedly complaining about Smart and his plans to terminate Smart.  The clear implication was: "Brother, can you please help me out by providing me with any complaints and issues you can think of that I can use to replace Smart."

62.     Upon information and belief, Ferguson sent similar emails to other Joint Customers soliciting complaints about Smart and implicitly, if not expressly, maligning Smart's reputation as a service provider. Upon information and belief, Ferguson also encouraged the Joint Customers to discuss such "complaints" and issues with each other, so that they could share ideas that may prove helpful in Ferguson's efforts to compile a list of complaints and to further spread his false narratives about Smart and harm Smart's reputation.

## CSG's First Improper Termination Attempt

63.     On June 21, 2019, CSG's leadership team discussed using Smart's advertisement as grounds for "pulling the plug on all Smart devices on a set day." Turner indicated that "we have TF [Tech Friends] lined up to come in…" Ferguson agreed that CSG should have "a very strategic plan with Tech Friends…in place and brief the customer before the blade fall, because when it does, the only panic taking place should be in Smart's conference room." A true, complete, and authentic copy of the June 21-22, 2019 CSG email exchange is attached as **Exhibit H.**

64.     On July 10, 2019, CSG and Tech Friends executed the Master Services and Supply Agreement, which was effective June 1, 2019 (the "CSG/Tech Friends Agreement"). A true, complete, and authentic copy of the CSG/Tech Friends Agreement is attached as **Exhibit I.**

65.     The CSG/Tech Friends Agreement provides that Tech Friends shall pay CSG "50% of the Net Revenue generated by Web Pack shipping fees" for the Legacy Accounts, which include four Joint Customers—Bowie County, Moore County, Sebastian County, and St. Louis County.

66.     The CSG/Tech Friends Agreement further provides that Tech Friends shall pay CSG "50% of the Net Revenue generated by user fees paid for debit movement, electronic mail, video visitation, and Tablet rentals."

67.     With the favorable CSG/Tech Friends Agreement in place, which provided a substantial source of revenue for CSG where it previously had none, it could now accelerate its efforts to "get Smart out."  Importantly, the revenue sharing arrangement between Tech Friends and CSG was made possible at least in part because Smart had already installed the necessary infrastructure (e.g., networking and power distribution) for its equipment at the Joint Customer facilities, which was a significant upfront expense Tech Friends could avoid.

68.     By way of a letter dated July 17, 2019, CSG informed Smart that it purportedly violated the NDA and breached the MSA.[2] The letter also purports to terminate all Joint Customer Agreements. A true, complete, and authentic copy of CSG's letter dated July 17, 2019 is attached as **Exhibit J.**

69.     Despite the fact that Ferguson had been attempting to solicit performance complaints about Smart for the last few months, the letter does not raise any performance-related issues. Nor does the letter ask Smart to cure any service-related deficiencies. Instead, the letter sets forth the untenable position that, because Smart sent a mass email advertising that it pays 100% commission on telephone revenue, it must have stolen and used CSG's confidential information.

---

[2] Because it was sent only by way of certified mail, it was not actually received by Smart Communications until a week later, on July 24, 2019.

70.     CSG believed that if it could characterize this general advertisement as some sort of breach of the MSA, then it could eliminate Smart's exclusivity and abscond with the Joint Customers' messaging revenue via the CSG/Tech Friends Agreement.

71.     But CSG did not even identify the Confidential Information that Smart supposedly used. The sum of the factual predicate for CSG's accusations is as follows:

> Specifically, Smart employee Jennifer Tongate has made contact with current CSG customer, city of St. Louis facility, offering greater commission to the facility than CSG pays to the customer. Smart employee Jennifer Tongate had no prior relationship with the St. Louis facility and had never met the contact at the St. Louis facility before being introduced by CSG as a result of the contractual relationship between Smart and CSG.

72.     By stating that Smart's employee had "no prior relationship," CSG appears to take the position that the identity or contact information of the person at the City of St. Louis to whom the email was sent is somehow "confidential."

73.     Pursuant to Section 8 of the Agreement, "Confidential Information" does not include, among other things: "(a) Information which now is in the public domain or publicly known at the time of disclosure or hereafter comes into the public domain or generally known through no fault of the Receiving Party….or (e) Information that is disclosed to the Receiving Party by a third party not under or in violation of, as the case may be, any confidentiality undertaking to the Disclosing Party."

74.     In order to obtain the benefit of Smart's services, including regular direct communications on repair and maintenance issues, the City of St. Louis voluntarily identified and provided the contact information of Frank Turner as Smart's point of contact. Further, Frank Turner is a publicly-known government employee. His information is simply not "confidential,"

especially when he voluntarily communicated with Smart on a regular basis. As described below, Frank Turner later confirmed the public nature of his email address to CSG and its outside counsel.

75.     Nor does Smart's entry into the telephone market provide a basis to terminate the MSA. Neither the NDA nor the Agreement prohibits either party from offering services in competition with the other party. If such a prohibition existed, then CSG would have violated the provision when it began marketing or selling its iMate E-Device or similar services from Tech Friends.

76.     The motivation behind the letter is clear: CSG had a more profitable arrangement in place for the business it expressly and exclusively promised to Smart.

77.     Accordingly, CSG's claims that Smart violated the NDA and breached the MSA are based on accusations that have no merit as a matter of law.

78.     Relying on only these meritless allegations, CSG purports to terminate the MSA and all Schedules for all Joint Customer Agreements, effective immediately.

79.     CSG also demands, without any legal basis whatsoever, that Smart cease "all contact with CSG's customers either in person, by phone, text, email or direct mail." Constitutional concerns aside, Smart has ongoing business relationships with the Joint Customers and provides essential services for the inmates at the Joint Customers' facilities, such that Smart cannot simply stop communicating with them.

80.     Finally, CSG demands that Smart exit all Joint Customer facilities and remove all Smart systems from the facilities.

81.     On July 26, 2019, just two days after Smart received CSG's July 17, 2019 letter, Smart sent a response letter. A true, complete, and authentic copy of the July 26, 2019 response letter is attached as **Exhibit K.**

82.     In its letter, Smart informed CSG that CSG may not terminate the MSA or Schedules for a breach of a confidentiality or non-disclosure provision of the MSA or NDA.

83.     Later on July 26, 2019, CSG responded by its counsel's email to Smart and stated that "Correct Solutions has not slandered Smart, or spoken ill of Smart to any Smart customers or potential customers." However, CSG's response did not substantively address to Smart's letter.

84.     Moreover, CSG's counsel's statement was demonstrably false. As described above, just a couple of months earlier, Ferguson had not only slandered and spoken ill of Smart, he had solicited complaints about Smart from the Joint Customers.

## CSG's Continued Attack on Smart

85.     After Smart informed CSG of the futility of its termination attempt, CSG ramped up its concerted effort to turn Joint Customers against Smart, including by secretly informing them that CSG and Smart no longer have a business relationship.  Upon information and belief, CSG notified the Joint Customers that it terminated Smart's contract after its counsel sent the July 17, 2019 letter.

86.      CSG did not limit its misinformation and smear campaign to the Joint Customers. By way of example, CSG informed Smart's own direct customer, Miller County, that the parties did not have a relationship. In particular, upon information and belief, Ferguson claimed CSG terminated Smart as a business partner servicing the many different Joint Customer facilities due to all the complaints CSG received about Smart's poor service—complaints that Ferguson himself had solicited, encouraged, and amplified. But these statements and representations were false because, as described above, CSG had not effectively terminated any of the MSAs or Schedules. CSG and Smart, quite clearly, still had a business relationship. As a direct result of these false statements and bad faith conduct, Miller County has accused Smart of being "misleading" and "not

truthful." A true, complete, and authentic copy of the July 29, 2017 email from Miller County is attached as **Exhibit L.**

87.    CSG's false statements are causing harm to Smart's reputation and good will throughout the industry. Upon information and belief, CSG and/or Ferguson has systematically attacked and maligned Smart's reputation at every turn, and has wielded this false and contrived narrative to its advantage against Smart in attempting to gain new business, including, for example, at Greene County, Arkansas.

88.    In addition, Ferguson's previous solicitation email and further efforts to smear Smart prompted Washington County to join the attack on Smart. On July 31, 2019, Ferguson's "brother" Alan Johnson emailed complaining about supposed service issues and advising Smart that Washington County will be "actively looking for a new vendor to replace Smart Communications." Johnson immediately forwarded the email to Ferguson. A true, complete, and authentic copy of the July 31, 2019 email string is attached as **Exhibit M.**

89.    Prior to Ferguson's solicitations, Washington County did not have any significant issues with Smart's services. Any minor issues had been addressed or were in the process of being addressed when Washington County abruptly changed its position and informed Smart of its decision to seek a new vendor.

90.    On August 6, 2019, Smart filed a Motion for Temporary Injunction, seeking to prohibit CSG from terminating the MSA or Schedules. Shortly thereafter, counsel for Smart and CSG began discussing a stipulation to maintain the status quo in lieu of attending a hearing on the motion.

91.     On August 13, 2019, counsel for CSG confirmed that CSG would not disconnect Smart's services or inform the Joint Customers that Smart has been terminated *or otherwise disavow the relationship between CSG and Smart*.

92.     On August 15, 2019, two days after CSG's promise not to disavow its relationship with Smart to the Joint Customers, Ferguson emailed his "Team," which was some combination of the Joint Customers and CSG, and formally organized the conspiracy to terminate Smart based on contrived grounds:

> Team
> In order to move **our plight** quickly along please note the following **instruction**:
> Send all your Smart needs for repairs, questions, complaints (and **don't hold back** other than 4 letter words or graphic sentences) etc to:
> arsupport@correctsolutionsgroup.com
> please **do not send to Smart**
> **CSG will now put them on the clock each time a ticket is opened** and forwarded. Feel free to use a spread sheet or direct sentences. Also, be very specific in your request when necessary, ie, cell, issue, wiring…etc. If it's a generic fix just use your usual correspondence. Please **call me if you have questions** or need additional information. I sincerely apologize for **this most disappointing service provider but we are on the downhill run and I want to keep up the momentum**
> **I really appreciate your assistance**.
> See y'all soon.
> Rick

A true, complete, and authentic copy of Ferguson's August 15, 2019 email is attached as **Exhibit N**. [3]

---

[3] Washington County produced this email in response to a public records request. CSG did not produce this email in response to Smart's Notice to Produce Documents at September 20, 2019 Evidentiary Hearing, which sought "All Documents sent by Correct to any Joint Customer(s) from August 1, 2019 to September 17, 2019 that request or instruct the Joint Customer(s) to send complaints about Smart or Smart's services directly to Correct and/or not to Smart," or to additional requests to which this email is directly responsive.

93.     The attached version of Ferguson's email does not identify the recipients of the email. However, Ferguson's "brother" Alan Johnson's reply to the email copies numerous employees of Sebastian County, including Captain Dumas.

94.     Ferguson sent a similar email on the same day to another Joint Customer, Bowie County. In the email, Ferguson again referred to "our plight," solicited complaints about Smart from Bowie County, and directed Bowie to abstain from direct communication with Smart. A true, complete, and authentic copy of Ferguson's August 15, 2019 email is attached as **Exhibit O**.

95.     Also on August 15, 2019, Rick Pruitt with CSG sent an internal email to CSG's Sales team and Field Service Managers instructing them in detail on how to solicit, report, follow-up with, and document Joint Customer complaints about Smart. Pruitt concluded his email with: "This will be long enough for either Smart to comply with their service obligations or for their equipment to be removed/turned off by the customers due to frustrations." A true, complete, and authentic copy of Pruitt's August 15, 2019 email is attached as **Exhibit P**.

96.     Accordingly, contrary to the parties' course of dealing for the previous two years, CSG was now controlling the communication between the Joint Customers and Smart.

97.     It became immediately apparent that CSG was now coaching the Joint Customers on how to complain about Smart in a way that might help CSG with its "plight," For example, the following day, Ferguson's "brother" Alan Johnson forwarded an email Smart had sent to Washington County about some service upgrades, along with Washington County's draft response to Smart. Johnson stated that Washington had not sent the response and asked: "What do you advise? Do you want us to send the response or do you want to handle it?" A true, complete, and authentic copy of the August 16, 2019 email string is attached as **Exhibit Q.**

98.     While coaching Joint Customers on how to document complaints, CSG internally acknowledged that Smart was promptly responding to service issues and inquiries from Joint Customers. On August 22, 2019, Pruitt emailed the CSG leadership team that Smart had responded within 24 hours to tickets submitted by Avoyelles and Washington County. In other words, to the public, Smart was inept, but, behind closed doors, Smart was responsive and efficient. Ironically, and perhaps because he could not bear to recognize Smart's capabilities, Pruitt infers that Smart's prompt response time must be due to Smart copying CSG's filed support and ticketing system. A true, complete, and authentic copy of Pruitt's August 22, 2019 email is attached as **Exhibit R**.

99.     On August 23, 2019, "Team" member Sebastian County emailed Smart and requested "23 tablets and a single battery back in to be repaired or replaced." Smart immediately responded and tried to clarify Sebastian's request by questioning "What do you mean by battery back? The battery's [sic] in the tablets are not removable." Sebastian County's response was elusive: "I am not understanding…the battery's [sic] are removable. I have several broken tablets with battery's [sic] hanging and a batter that is no longer in a tablet." Sebastian attached a photograph described as "a picture of a broken tablet and a battery from another tablet."

100.    Smart promptly sent Sebastian County 24 new tablets.

101.    Sebastian County forwarded this email exchange to CSG. Ferguson then sent the Sebastian County email exchange to his co-workers Mark Turner and Rick Pruitt with the phrase "Busted!!!  lol" So, rather than showing concern about an issue at a Joint Customer facility, Ferguson laughed out loud and relished in the apparent destruction of Smart's property. A true, complete, and authentic copy of the August 23, 2019 email string between Sebastian County and Smart, along with the related CSG email, is attached as **Exhibit S**.

102.    On August 27, 2019, Dumas emailed Ferguson about Smart. Dumas mistakenly declared that Smart "claimed that their product is inmate proof." The Schedule between Smart and CSG does not claim that Smart's tablets are inmate proof. The Schedule describes the tablets as "ruggedized" and "corrections grade." Obviously, no tablet or similar electronic device is indestructible, particularly one placed in a corrections environment. Dumas also mistakenly claimed that Smart "has not fulfilled their agreement with Sebastian County to provide books and games on the tablets." The Schedule describes the services Smart is obligated to provide to Sebastian County, which do not include entertainment content on tablets.

103.    Ferguson did not forward Dumas's email to Smart to provide Smart with an opportunity to respond, including to clarify the services that Smart was contractually obligated to provide. Nor did CSG check the veracity of Sebastian County's claims and Smart's obligations under the MSA and Schedule. Instead, two weeks later, Ferguson used these issues as grounds to again threaten termination of the MSA by issuing a 30-day notice to cure, as he knew he would when he declared Smart was "busted."

104.    On August 27, 2019, Ferguson again instructed Bowie County to send complaints about Smart to CSG. Ferguson revealed his motivation for the instruction when he stated that "[w]e need to keep track of everything." Accordingly, Ferguson and CSG did not want the Joint Customers to send service issues or requests to CSG because CSG believed that procedure to be more efficient or effective. Rather, CSG wanted to "keep track of everything," so CSG could repeatedly "put Smart on the clock," in hopes of contriving or soliciting enough complaints to eventually terminate the relationship between Smart and CSG. Moreover, by inserting itself as a "gatekeeper" to filter through all complaints before Smart ever received them, CSG could

artificially add to the delay in response time and blame it on Smart's poor service.  A true, complete, and authentic copy of Ferguson's August 27, 2019 email is attached as **Exhibit T**.

105.    Ferguson and CSG also set out to overburden Smart and make unreasonable service demands. For example, in his August 27, 2019 email, Ferguson specifically instructed Bowie County: "Don't hesitate to **request an onsite tech for issues regardless of what they are**." Upon information and belief, Ferguson gave a similar instruction to every Joint Customer.

106.    On August 29, 2019, outside counsel for CSG, Mark Turner of CSG, and Frank Turner of City of St. Louis participated in a telephone conference. CSG's attorneys asked Frank Turner if Smart was responsive to St. Louis's needs and Turner responded, "yes, they've always been quick to respond to my emails or phone calls." Further, on the call, Frank Turner confirmed that St. Louis City employee email addresses can be publicly obtained.

107.    On August 30, 2019, CSG and Smart finalized and entered into a Stipulation to Preserve the Status Quo Pending Final Hearing on the Merits (the "Stipulation"). As part of the Stipulation, CSG agreed that is shall not induce or solicit complaints about Smart from any of the Joint Customers or Miller County. The Court entered the Stipulation on September 10, 2019.

108.    On September 3, 2019, just five days after Frank Turner confirmed to CSG and its counsel that Smart was always responsive to St. Louis's service communications, CSG initiated a service ticket to Smart stating that St. Louis "is requesting a technician on site to perform a walk through to repair numerous issues with charging stations…"

109.    On September 11, 2019, Smart emailed each of the Joint Customers to check in regarding Smart's services and the recent lack of communication from the Joint Customers. Smart offered to send a representative to each facility to discuss Smart's systems.

110.    The Joint Customers' responses, especially those of "Team" members Washington County and Sebastian County, demonstrate that CSG's "instruction" and plan to put Smart "on the clock" remained, even in light of the Stipulation.

111.    Ferguson's "brother" Alan Johnson immediately forwarded Smart's email to Ferguson and asked, "What do you want me to say to this?" A true, complete, and authentic copy of Johnson's September 11, 2019 email is attached as **Exhibit U**.

112.    Apparently upon Ferguson's instruction, Johnson responded to Smart's September 11, 2019 email with one question: "What do you expect to accomplish from this meeting?" Smart responded and then Washington ignored the response. A true, complete, and authentic copy of the email string between Washington and Smart is attached as **Exhibit V**.

113.    On September 13, 2019, "Team" member Sebastian County responded to Smart's email and stated, "I am going to have to pass on meeting with your representative." A true, complete, and authentic copy of Sebastian County's response email is attached as **Exhibit W**.

114.    Other Joint Customers, including the City of St. Louis, for example, also declined Smart's offers to engage in a productive dialogue about Smart's services and systems at the customers' facilities. City of St. Louis told Smart that they "have limited our communications to Correct Solutions…Any issues we may have will be directed to them."

115.    Incredibly, on the same day that Sebastian County declined a meeting with Smart's representative, September 13, 2019, CSG sent Smart a Notice to Cure pursuant to the MSA (the "Notice to Cure"). CSG demanded that Smart provide "tamper-proof" tablets and electronic entertainment content to Sebastian County. The MSA and Sebastian Schedule do not obligate Smart to comply with either of those demands. A true, complete, and authentic copy of the September 13, 2019 Notice to Cure is attached as **Exhibit X**.

116.    In response to the Notice to Cure, Smart filed an emergency motion to enjoin termination based on the Notice to Cure. At the hearing, Captain Dumas appeared to testify for CSG in opposition to Smart's motion.[4]

117.    Following CSG's second failed attempt to terminate the MSA through legal maneuvering, it has continued to engage in other bad-faith, coercive conduct, with the assistance of its "Team" members, calculated to force Smart out of Joint Customer facilities, including by fatiguing Smart with repeated service tickets (regardless of how minor), requests for on-site visits (which require travel and significant time and expense), and worse, by harming Smart's economic interests through disabling its services and source of income.

118.    For example, on or about September 19, 2019, Smart discovered that Sebastian County had disabled Smart's messaging system in numerous housing units within its facility. CSG either predicted this event the prior month (see Rick Pruitt's August 15, 2019 email foreshadowing that customers will "turn[] off" their equipment due to "frustrations"), or encouraged Sebastian County to take this approach. Yet, Sebastian County continued to use the other operational features of Smart's system, such as medical and grievance forms, intra-facility communication, and educational content, and continued to obtain the benefit of Smart providing its MailGuard Postal Mail Elimination® services free of charge. CSG and Sebastian understand that Smart can only provide these services because it generates revenue from its messaging services. Moreover, CSG and Sebastian understand that Smart incurred significant out of pocket expenses to make its systems and services accessible to Sebastian County in reliance on obtaining exclusivity on the revenue-generating messaging function.

---

[4] At the hearing, the Court did not permit a termination based on the Notice to Cure and fashioned a procedure, agreed to by CSG, by which it could not terminate the MSA without further Court order.

119.     Further, like laughing out loud at the destruction of Smart's tablets in Sebastian County, CSG stood by while inmates severely damaged and destroyed Smart's kiosks at Avoyelles. Despite its contractual obligation to prevent third parties from modifying and disassembling Smart's hardware, CSG failed to prevent third-party inmates from destroying Smart's kiosks. CSG even blamed Smart for its own contractual defaults and for Avoyelles' failure to supervise the destructive conduct of its inmates.

### CSG's Notices of Non-Renewal

120.     On October 4, CSG sent Smart a Notice of Non-Renewal of Master Services Agreement with respect to Washington County ("Notice of Non-Renewal"). A true, complete, and authentic copy of the Notice of Non-Renewal is attached as **Exhibit Y**.

121.     The Notice of Non-Renewal attaches a Correctional Communications Service Agreement between CSG and Washington County (the "Washington Agreement"). Both parties signed the Washington Agreement on September 25, 2014.

122.     Section 14 of the Washington Agreement provides:

> The Term of this agreement shall be for 12 calendar months starting when CSG platform is installed and first call is successful. **This agreement will automatically renew for 12 additional months unless either party notifies the other in writing of its intent to terminate this agreement at least 90 (Ninety) days prior to the final date of expiration.** Upon termination of this agreement, each party agrees to satisfy any and all of its outstanding obligations arising under this agreement.

123.     Accordingly, unless either CSG or Washington County notified the other party in writing of its intent to terminate the Washington Agreement at least 90 days prior to its expiration, the Washington Agreement renewed for an additional 12 months.

124.    The Notice of Non-Renewal asserts that the first successful call under the Washington Agreement was placed on January 4, 2015, which is thus the start date of the Washington Agreement.

125.    Upon receipt of the Notice of Non-Renewal, Smart requested proof of the first successful call and the start date of the Washington Agreement. CSG never responded.

126.    Moreover, CSG does not claim in the Notice of Non-Renewal, or attach proof thereof, that either CSG or Washington County provided the other with timely written notice of its intent to terminate the Washington Agreement. Assuming the accuracy of CSG's statement that the Washington Agreement started on January 4, 2015, such written notice would have been due by October 4, 2019 in order for the Washington Agreement to not automatically review. Based on CSG's failure to include written notice of intent to terminate from either CSG or Washington County, neither CSG nor Washington County terminated the Washington Agreement. Thus, the Washington Agreement renewed for another year, at least until January 4, 2021.

127.    As described above, each MSA is co-terminous with CSG's agreements with the Joint Customers. Because the Washington Agreement was not terminated and automatically renewed, the MSA automatically renewed in accordance with the Washington Agreement.

128.    The renewal of the MSA with respect to Washington County is consistent with the understanding of CSG and Smart when they executed the MSA. Due to Smart's significant investment in the Joint Customer facilities, CSG and Smart understood and intended Smart to maintain its exclusive rights as long as CSG renewed any Joint Customer agreement.

129.    On November 21, 2019, CSG sent Smart Notices of Non-Renewal of the Sebastian County and Wayne County agreements. True, complete, and authentic copies of the Notices are attached as **Exhibit Z** and **Exhibit AA**.

130.    The Notices of Non-Renewal for Sebastian and Wayne County also fail because CSG has not terminated its contracts with either of those counties. As a result, the "co-terminous" agreement with Smart remains in effect.

### Breaches of Smart's Exclusivity Agreements

131.    Pursuant to the CSG/Tech Friends Agreement, and notwithstanding its obligations to Smart under the MSAs, CSG has apparently begun dismantling Smart's exclusivity rights in some of the Joint Customer facilities.

132.    Within one month of the Smart marketing email, on April 19, 2019, Ferguson emailed Commissioner Dale Glass of Joint Customer City of St. Louis about scheduling a presentation of Tech Friends' products. The presentation occurred at the City of St. Louis facility on April 23, 2019.

133.    On May 24, 2019, CSG set up a webinar between City of St. Louis and Tech Friends. On June 21, 2019, Ferguson emailed St. Louis to set up another meeting about the Tech Friends presentations, which took place on June 24, 2019.

134.    As described above, on July 10, 2019, CSG and Tech Friends executed the CSG/Tech Friends Agreement.

135.    On August 23, 2019, Tech Friends emailed Bowie County, one of the Legacy Accounts identified in the CSG/Tech Friends Agreement, regarding a Tablet/Kiosk Installation and stated:

> The current plan is to arrive onsite with hardware on 9/16 to install tablets and kiosks. If possible we would like to install our wall mounted tablets in the same place as the smart tablets so as to avoid unnecessary work with running electric and network cables. Do you know if by chance the previous vendor will come onsite to uninstall their tables?

A true, complete, and authentic copy of the August 23, 2019 Tech Friends email is attached as **Exhibit BB**.

136.    It is not yet clear how many Joint Customers have met with Tech Friends or planned Tech Friends product installations. However, at least one Joint Customer, Washington County, is listed as a "participating facility" on the Tech Friends web portal. This means that third parties can communicate with inmates at Washington County via the inmates' use of Tech Friends messaging products, *e.g.,* tablets. Further, CSG may be collecting up to 50% of the revenue generated by these messages through its revenue-sharing agreement with Tech Friends.

137.    CSG's failure to provide Smart with exclusivity on the services set forth in the Schedules, including revenue-generating messaging services, is a breach of the Washington MSA and potentially other MSAs.

138.    The conduct of the Joint Customers in the immediate aftermath of CSG's attack on Smart's reputation, solicitation of complaints, and termination attempts demonstrates that CSG has breached the MSA, which obligates CSG to grant Smart the exclusive right to maintain and derive revenue from messaging services in the Joint Customers' facilities, as long as the Joint Customers are contractually obligated to CSG.

139.    At all material times, Smart has performed all of its duties and obligations pursuant to the NDA and each MSA and Schedule and remains ready, willing, and able to continue to perform such duties and obligations.

140.    All conditions precedent to the bringing and maintenance of this lawsuit have been met, have occurred, or have been waived.

141.    Plaintiff has retained the law firm of Bajo | Cuva | Cohen | Turkel to prosecute this action and is obligated to pay the firms' fees and costs for their services.

**COUNT I**
**DECLARATORY RELIEF**
Mutual Confidentiality and Nondisclosure Agreement
(Smart v. CSG)

142.    Smart realleges paragraphs 1 through 141.

143.    This is an action for declaratory relief under Chapter 86 of the Florida Statutes.

144.    In its July 17, 2019 letter, CSG alleged that Smart violated the terms of the NDA by using Confidential Information obtained through Smart's contractual relationship with CSG.

145.    The NDA was executed on June 15, 2017, in contemplation that the parties may enter other agreements with each other.

146.    Subsequently, the parties entered into the various Joint Customer agreements, each of which includes an MSA. Like the NDA, the MSA includes a Confidential Information and Non-Disclosure provision.

147.    The MSA provides that it supersedes the NDA and that it is the complete agreement, together with the Schedules, between the parties with respect to the subject matter of each MSA.

148.    Further, each MSA is part of a separate contract between Smart, CSG, and a Joint Customer. CSG may not terminate every Joint Customer Agreement due to an alleged breach of the NDA as it relates to one of the Joint Customer Agreements.

149.    However, CSG has accused Smart of violating the NDA and has used the alleged violation, at least in part, as a predicate to purportedly terminate every MSA.

150.    Therefore, Smart is in doubt concerning its rights under the NDA and attendant Florida law, and a justiciable, bona fide, and present controversy exists between Smart and CSG concerning the proper interpretation of the NDA.

151.   Smart is entitled to have its uncertainty removed with respect to its rights and obligations under the NDA.

152.   The parties have an actual, present, or adverse and antagonistic interest regarding the NDA.

153.   All interested parties and potential adverse interests are before this Court.

154.   The relief sought by Smart in this action is not merely to seek legal advice or to obtain answers to questions propounded out of curiosity.

155.   Pursuant to sections 86.011 and 86.021, Florida Statutes, Smart may obtain a declaration of rights under the NDA.

WHEREFORE, Plaintiff, Smart Communications Holding, Inc., respectfully requests this Court to enter an Order (a) declaring that each MSA superseded the NDA regarding each Joint Customer agreement, such that neither Smart nor CSG can be in violation of the NDA; (b) declaring that CSG may not rely on a violation of the NDA as a predicate to terminate any MSA and that the termination was ineffective; (c) prohibiting CSG from terminating any MSA; (d) prohibiting CSG from taking steps in furtherance of terminating any MSA, including, disconnecting or removing Smart's equipment or services from any Joint Customer during the term of the Joint Customer's agreement with CSG, informing any Joint Customer that Smart and CSG do not have a contractual relationship, or otherwise disavowing Smart's status as the exclusive provider of messaging and related services for the Joint Customers; (e) declaring that each MSA is part of a separate contract between Smart, CSG, and a Joint Customer, such that a termination of one cannot serve as a basis for a termination of any other contract; (f) awarding Smart its attorneys' fees and costs pursuant to Section 13 of the NDA; and (G) for such further relief as the Court deems just and proper.

**COUNT II**
**DECLARATORY RELIEF**
Master Services Agreement
(Smart v. CSG)

156.     Smart realleges Paragraphs 1 through 141.

157.     This is an action for declaratory relief under Chapter 86 of the Florida Statutes.

158.     In its July 17, 2019 letter, CSG alleged that Smart violated the terms of the MSA by using Confidential Information obtained through Smart's contractual relationship with CSG.

159.     The information CSG accuses Smart of using is not confidential as a matter of law.

160.     Even if Smart used CSG's Confidential Information, CSG may not terminate the MSA for such a violation.

161.     Further, each MSA is part of a separate contract between Smart, CSG, and a Joint Customer. CSG may not terminate every Joint Customer Agreement due to an alleged breach of one of the Joint Customer Agreements.

162.     However, CSG has accused Smart of violating the MSA and has used the alleged violation, at least in part, as a predicate to purportedly terminate every MSA.

163.     Therefore, Smart is in doubt concerning its rights under the MSA and attendant Florida law, and a justiciable, bona fide, and present controversy exists between Smart and CSC concerning the proper interpretation of the Agreement.

164.     Smart is entitled to have its uncertainty removed with respect to its rights and obligations under the MSA.

165.     The parties have an actual, present, or adverse and antagonistic interest regarding the Agreement.

166.     All interested parties and potential adverse interests are before this Court.

167.     The relief sought by Smart in this action is not merely to seek legal advice or to obtain answers to questions propounded out of curiosity.

168.     Pursuant to sections 86.011 and 86.021, Florida Statutes, Smart may obtain a declaration of rights under the MSA.

WHEREFORE, Plaintiff, Smart Communications Holding, Inc., respectfully requests this Court to enter an Order (a) declaring that CSG may not rely on a violation of the Confidential Information and Non-Disclosure provision of the MSA as a predicate to terminate any MSA and that the termination was ineffective; (b) prohibiting CSG from terminating any MSA; (c) prohibiting CSG from taking steps in furtherance of terminating any MSA, including, disconnecting or removing Smart's equipment or services from any Joint Customer during the term of the Joint Customer's agreement with CSG, informing any Joint Customer that Smart and CSG do not have a contractual relationship, or otherwise disavowing Smart's status as the exclusive provider of messaging and related services for the Joint Customers; (d) declaring that each MSA is part of a separate contract between Smart, CSG, and a Joint Customer, such that a termination of one cannot serve as a basis for a termination of any other contract; (e) awarding Smart its costs; and (f) for such further relief as the Court deems just and proper.

## COUNT III
## BREACH OF CONTRACT
Master Services Agreement – Injunctive Relief
(Smart v. CSG)

169.     Smart realleges Paragraphs 1 through 141.

170.     CSG improperly attempted to terminate the MSA and has been falsely representing to Joint Customers that Smart has no relationship with CSG and, as a result, no right to provide services to Joint Customers.

171.     CSG improperly sent Smart a Notice to Cure and demanded that Smart provide products and services not required by the MSA or Sebastian Schedule.

172.     CSG improperly sent Smart Notices of Non-Renewal regarding Washington County, Sebastian County, and Wayne County and demanded that Smart remove its equipment and services even though CSG renewed or failed to terminate its contracts with these Joint Customers and, thus, the MSAs and Schedules for these Joint Customers.

173.     CSG has instructed Joint Customers to refrain from communicating with Smart and has failed to provide Smart with meaningful access to the Joint Customers.

174.     CSG has used other vendors to provide the services which are exclusive to Smart under the MSAs.

175.     As a result of CSG's breaches, Smart has suffered irreparable harm for which it has no adequate remedy at law and will continue to suffer irreparable harm if the harmful conduct is not enjoined. Smart bargained for and received exclusive relationships with the Joint Customers throughout the terms of CSG's agreements with the Joint Customers. Smart has no ability to measure the losses it will incur if CSG is not enjoined from improperly terminating the MSAs and disavowing Smart's exclusive rights. In addition to lost profits, Smart will incur immeasurable losses in goodwill and reputation if its equipment is removed from the facilities of Joint Customers or if Joint Customers continue to be informed that Smart has been terminated or has no relationship with CSG. Further, Smart will not be able to realize or recoup the substantial investment it has made in its exclusive relationship with CSG and in installing and providing services to the Joint Customers. Smart will also lose market share, the ability to sell additional services to customers, and the ability to fairly compete for future contracts.

176.    CSG's conduct will continue to cause irreparable harm to Smart unless restrained, restricted, and enjoined by this Court.

177.    Entry of an injunction will serve the public interest, prevent further and continuing breach of the Agreement, and maintain the *status quo* of services being provided to Joint Customers.

WHEREFORE, Plaintiff, Smart Communications Holding, Inc., respectfully requests this Court to enter an Order prohibiting Defendant, Correct Solutions, LLC from (a) terminating any MSA; (b) taking steps in furtherance of terminating any MSA, including, disconnecting or removing Smart's equipment or services from any Joint Customer during the term of the Joint Customer's agreement with CSG, informing any Joint Customer that Smart and CSG do not have a contractual relationship, or otherwise disavowing Smart's status as the exclusive provider of messaging and related services for the Joint Customers; (c) non-renewing the MSAs and Schedules with respect to Washington County, Sebastian County, Wayne County, and any other Joint Customer with which CSG has renewed or failed to terminate its contract; (d) contracting with or allowing any other vendor to provide the services which are exclusive to Smart under the MSAs and Schedules; and (e) for such further relief as the Court deems just and proper.

## COUNT IV
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### Master Services Agreement – Injunctive Relief
### (Smart v. CSG)

178.    Smart realleges Paragraphs 1 through 141.

179.    In every contract, including the MSAs, an implied covenant of good faith and fair dealing exists.

180.    CSG agreed that Smart had the exclusive right to provide messaging and related services to the Joint Customers during the terms of its agreements with the Joint Customers.

181.    CSG also agreed that it would not terminate the MSAs without cause related to the performance of the MSA at a particular facility and without following the proper procedures, including a reasonable cure period.

182.    CSG also agreed that the MSAs would be "co-terminous" with CSG's contracts with a Joint Customer.

183.    CSG breached the covenant of good faith and fair dealing implied in the exclusivity, termination, and renewal provisions of the MSAs by manufacturing improper grounds to purportedly terminate the MSAs and notice defaults under the MSAs and by sending nonrenewal notices regarding Washington County, Sebastian County, and Wayne County despite CSG's continued contractual relationship with those Joint Customers.

184.    CSG breached the covenant of good faith and fair dealing implied in the MSAs by disparaging Smart's reputation, soliciting complaints about Smart, controlling the communications from Joint Customers, and enlisting the Joint Customers in its "plight" to terminate Smart.

185.    CSG breached the covenant of good faith and fair dealing by using other vendors to provide the services which are exclusive to Smart under the MSAs and Schedules.

186.    As a result of CSG's breaches, Smart has suffered irreparable harm for which it has no adequate remedy at law and will continue to suffer irreparable harm if the harmful conduct is not enjoined. Smart bargained for and received exclusive relationships with the Joint Customers throughout the terms of CSG's agreements with the Joint Customers. Smart has no ability to measure the losses it will incur if CSG is not enjoined from improperly terminating the MSAs and disavowing Smart's exclusive rights. In addition to lost profits, Smart will incur immeasurable losses in goodwill and reputation if its equipment is removed from the facilities of Joint Customers or if Joint Customers continue to be informed that Smart has been terminated or has no relationship

with CSG. Further, Smart will not be able to realize or recoup the substantial investment it has made in its exclusive relationship with CSG and in installing and providing services to the Joint Customers. Smart will also lose market share, the ability to sell additional services to customers, and the ability to fairly compete for future contracts.

187.    CSG's conduct will continue to cause irreparable harm to Smart unless restrained, restricted, and enjoined by this Court.

188.    Entry of an injunction will serve the public interest, prevent further and continuing breach of the Agreement, and maintain the *status quo* of services being provided to Joint Customers.

WHEREFORE, Plaintiff, Smart Communications Holding, Inc., respectfully requests this Court to enter an Order prohibiting Defendant, Correct Solutions, LLC from (a) terminating any Agreement; (b) taking steps in furtherance of terminating any MSAs, including, disconnecting or removing Smart's equipment or services from any Joint Customer during the term of the Joint Customer's agreement with CSG, informing any Joint Customer that Smart and CSG do not have a contractual relationship, or otherwise disavowing Smart's status as the exclusive provider of messaging and related services for the Joint Customers; (c) non-renewing the MSAs and Schedules with respect to Washington County, Sebastian County, Wayne County, and any other Joint Customer with which CSG has renewed or failed to terminate its contract; (d) contracting with or allowing any other vendor to provide the services which are exclusive to Smart under the MSAs and Schedules; and (e) for such further relief as the Court deems just and proper.

### COUNT V
### BREACH OF CONTRACT
### Master Services Agreement – Damages
### (Smart v. CSG)

189.    Smart realleges Paragraphs 1 through 141.

190.     CSG improperly attempted to terminate the MSAs and has been falsely representing to Joint Customers that Smart has no relationship with CSG and, as a result, no right to provide services to Joint Customers.

191.     CSG improperly sent Smart a Notice to Cure and demanded Smart to provide products and services not required by the Sebastian MSA or Sebastian Schedule.

192.     CSG improperly sent Smart Notices of Non-Renewal regarding Washington County, Sebastian County, and Wayne County and demanded that Smart remove its equipment and services even though CSG renewed or did not terminate its contracts with these Joint Customers and, thus, the MSAs and Schedules for these Joint Customers.

193.     CSG has instructed Joint Customers to refrain from communicating with Smart and has failed to provide Smart with meaningful access to the Joint Customers.

194.     CSG has used other vendors to provide the services which are exclusive to Smart under the MSAs and Schedules.

195.     CSG entered into the CSG/Tech Friends contract and agreed to provide exclusive rights to Tech Friends that belong to Smart.

196.     As a result of CSG's breaches, Smart has been damaged.

WHEREFORE, Plaintiff, Smart Communications Holding, Inc., demands judgment against Defendant, Correct Solutions, LLC, for damages, special damages, lost profits, disgorgement of CSG's profits, interest, costs, and for such further relief as the Court deems just and proper.

## COUNT VI
## BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING
### Master Services Agreement – Damages
### (Smart v. CSG)

197.     Smart realleges Paragraphs 1 through 141.

198.     In every contract, including the MSA, an implied covenant of good faith and fair dealing exists.

199.     CSG agreed that Smart had the exclusive right to provide messaging and related services to the Joint Customers during the terms of its agreements with the Joint Customers.

200.     CSG also agreed that it would not terminate the MSAs without cause related to the performance of the MSA at a particular facility and without following the proper procedures, including a cure period.

201.     CSG also agreed that each MSA would be "co-terminous" with CSG's corresponding contract with a Joint Customer.

202.     CSG breached the covenant of good faith and fair dealing implied in the exclusivity and termination provisions of the MSAs by manufacturing improper grounds to purportedly terminate the MSAs and notice defaults under the MSAs.

203.     CSG breached the covenant of good faith and fair dealing implied in the MSAs by disparaging Smart's reputation, soliciting complaints about Smart, controlling the communications from Joint Customers, and enlisting the Joint Customers in its "plight" to terminate Smart.

204.     CSG breached the covenant of good faith and fair dealing by using other vendors to provide the services which are exclusive to Smart under the MSAs and Schedules and by entering into the CSG/Tech Friends Agreement.

205.     As a result of CSG's breaches, Smart has been damaged.

WHEREFORE, Plaintiff, Plaintiff, Smart Communications Holding, Inc., demands judgment against Defendant, Correct Solutions, LLC, for damages, special damages, lost profits, disgorgement of CSG's profits, interest, costs, and for such further relief as the Court deems just and proper.

## COUNT VII
## DEFAMATION
### (Smart v. CSG and Ferguson)

206.    Smart realleges Paragraphs 1 through 141.

207.    CSG and Ferguson have made false statements about Smart, as described above.

208.    CSG's and Ferguson's false statements were published to third parties, including, but not limited to, Miller County, Washington County, Sebastian County, and Bowie County.

209.    CSG's and Ferguson's statements were explicitly false or impliedly false by carrying an insinuation that was false. In addition, CSG's and Ferguson's statements created a false impression by omitting facts that would tend to negate an implied defamatory meaning, including CSG and Ferguson omitting the facts that it had only sent a notice of termination to Smart, which was both legally and factually improper, and that CSG has solicited the complaints (if any) it had received about Smart in an effort to contrive a termination of the parties' relationship.

210.    CSG's and Ferguson's statements were made with express malice and in an effort to improperly terminate its relationship with Smart in order to pursue a more favorable and profitable relationship with Tech Friends.

211.    CSG and Ferguson knew or reasonably should have known that their statements were likely to result in inducing others, including for example the Joint Customers and Miller County, not to deal with Smart.

212.    CSG's and Ferguson's false statements played a material and substantial part in inducing others not to deal with Smart.

213.    As a direct and proximate cause of CSG's and Ferguson's false and defamatory statements, Smart has been damaged in the form of reputational harm and lost profits.

WHEREAS, Plaintiff, Smart Communications Holding, Inc., demands judgment against Defendants, Correct Solutions, LLC and Rick Ferguson, for damages, special damages, lost profits, interest, costs, an injunction prohibiting further publication of the false and defamatory statements, and for such further relief as the Court deems just and proper.

<div align="center">

**COUNT IX**
**DECLARATORY RELIEF**
**Washington, Sebastian, and Wayne County Agreements**
**(Smart v. CSG)**

</div>

214.    Smart realleges Paragraphs 1 through 141.

215.    CSG's Notices of Non-Renewal assert that CSG will not renew the MSAs and Schedules with respect to Washington County, Sebastian County.

216.    However, upon information and belief, neither CSG nor Washington County notified the other in writing of its intent to terminate the CSG/Washington County contract at least 90 days prior to the date of expiration of the then-current term. As a result, CSG and Washington County renewed their contract for an additional twelve calendar months, which includes Smart's services.

217.    Upon information and belief, neither CSG nor Sebastian County has terminated the CSG/Sebastian contract. As a result, Smart's services have not been terminated and remain in effect.

218.    Upon information and belief, neither CSG nor Wayne County notified the other in writing of its intent to terminate the CSG/Wayne County contract at least 90 days prior to the date of expiration of the then-current term. As a result, CSG and Wayne County renewed their contract for an additional twelve calendar months, which includes Smart's services.

219.    With the renewals and/or continuation of CSG's agreements with these Joint Customers, Smart's exclusive rights to provide services to Washington County, Sebastian County,

and Wayne County renewed and/or continue as well in accordance with the MSAs, Schedules, and CSG/Joint Customer contracts.

WHEREFORE, Plaintiff, Smart Communications Holding, Inc., respectfully requests this Court to enter an Order declaring that (a) CSG may not non-renew the MSAs and Schedules with respect to Washington County, Sebastian County, or Wayne County given the renewals or continuations of CSG's contracts with these Joint Customers; (b) Smart is entitled to be the exclusive provider of its services in Washington County, Sebastian County, and Wayne County during each initial and renewal term of the contracts between CSG and Washington County, Sebastian County, and Wayne County; and (c) for such further relief as the Court deems just and proper.

## COUNT X
## UNFAIR COMPETITION
### (Smart v. CSG and Ferguson)

220.    Smart realleges Paragraphs 1 through 141.

221.    Aside from partnering on providing services for the Joint Customers, Smart and CSG are competitors for purposes of marketing and selling their products—they compete for a common pool of customers.

222.    In the event that a Joint Customer either terminates CSG or does not renew CSG's services (which currently incorporate Smart's services), then CSG and Smart will be competitors with respect to the Joint Customers as well.

223.    CSG has and continues to engage in the conduct described above, including soliciting complaints about Smart, making false claims about Smart, disparaging Smart's reputation, improperly attempting to terminate Smart's relationships with CSG and the Joint Customers, and conveying exclusive rights that belong to Smart to other competitors.

224.    As the direct and proximate result of the CSG's unfair competition, Smart has suffered damages, including, but not limited to, loss of goodwill and loss of sales.

WHEREFORE, Plaintiff, Smart Communications Holding, Inc., demands judgment against Defendant, Correct Solutions, LLC, for damages, special damages, lost profits, disgorgement of CSG's profits, interest, costs, and for such further relief as the Court deems just and proper.

## JURY TRIAL DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

Dated this ___ day of _____, 2019.

/s/ Brad F. Barrios
Kenneth G. Turkel
Florida Bar No. 867233
E-mail: kturkel@bajocuva.com
Brad F. Barrios
Florida Bar No. 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes
Florida Bar No. 96657
E-mail: dhayes@bajocuva.com
**BAJO | CUVA | COHEN | TURKEL**
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

*Smart Communications Holding, Inc. v. Correct Solutions, LLC and Rick Ferguson*
Case No.  19-CA-008089

# EXHIBIT A

### *to Amended Complaint*



## MUTUAL CONFIDENTIALITY AND NONDISCLOSURE AGREEMENT

This Mutual Confidentiality and Nondisclosure Agreement (this "Agreement") is entered this _15th_ day of June 2017 between Smart Communications Holding, Inc. ("SCH"), a Florida corporation, located at 4522 West North B Street, Tampa, Florida 33609 and Correct Solutions Group, ("COMPANY"), a Louisiana corporation, located at 192 Bastille Lane, #200, Ruston, Louisiana 71270. SCH and COMPANY are sometimes hereinafter referred to in this Agreement as a "Party" or, collectively, as the "Parties."

### RECITALS:

A.     The Parties contemplate certain discussions with the potential that they may enter other agreements with each other.

B.     To facilitate such discussions certain confidential and/or proprietary information that is the property of, or used by, SCH or COMPANY may be disclosed to or discovered by the Other party. The Parties acknowledge that the disclosing party will not disclose such information unless the receiving party agrees to maintain such in strict confidence and in accordance with this Agreement.

NOW THEREFORE, the Parties agree as follows:

1.     "Confidential Information" shall mean any and all information relating to the business and operations of the disclosing party owned, licensed or controlled by the disclosing party, including, but not limited to, any or all of the following: know how, products, product ideas, properties, data, technologies, methods, procedures, plans, business plans, forecasts, financial and other business information, including without limitation pricing, fees and programming fees offered to the receiving party or other customers or potential customers by the disclosing party; identities of actual customers, investors or other individuals and entities having a current business relationship with the disclosing party; trade secrets, consisting of confidential and proprietary information not generally known to the public including without limitation software (e.g., source, object and executable code in hard copy and electronic format) and hardware relating to implementation of any of the technology of the disclosing party; technical specifications; manuals, diagrams, charts and other descriptive materials relating to the technology of the disclosing party; and any and all patentable or non-patentable inventions or ideas; and all copyrightable or non-copyrightable subject matter and derivative works thereof. Confidential Information also includes information that derives independent economic value, actual or potential, from being not generally known to the public or to other persons who can obtain economic value from its disclosure or use, and which is the subject of reasonable efforts to maintain its non-disclosure. Confidential Information includes documents, drawings, reports and other records in any media that incorporate, reference or are based upon any "Confidential Information" provided by the disclosing party, including, without limitation, any such documents, drawings, reports or records that are generated because of or as a part of the Parties discussing and considering a business relationship between each other. It is agreed that these definitions shall be construed together where applicable, and separately where necessary, in whatever manner is the most inclusive and best protects any information which may be considered by the disclosing party to be Confidential Information.

1

2.     "Confidential Information" shall not include any materials or information of the type specified in paragraph above to the extent that such materials or information: (a) are now or later become generally known and utilized by the public through means which do not constitute a breach of the receiving party's obligations pursuant to this Agreement; (b) are received by or are in the possession of the receiving party, prior to receipt of such information from the disclosing party, and were not so received or acquired through breach of any of the obligations of the receiving party pursuant to this Agreement; (c) are received from a third party under no obligation of confidentiality of the receiving party pursuant to this Agreement, and which third party was under no obligation of confidentiality to the disclosing party or (d) are required to be disclosed by the receiving party pursuant to judicial order or other compulsion of law; provided that the receiving party will provide to the disclosing party prompt notice of such order, cooperate with the disclosing party to maintain the confidentiality of the Confidential Information, and comply with any protective order imposed on disclosure of the Confidential Information.

3.     The receiving party shall hold all Confidential Information in trust and confidence always and shall not sell, transfer, publish, disclose, display, reveal, divulge or otherwise make available any Confidential Information, directly or indirectly, intentionally or negligently, to any third party, person, company or other entity, for any purpose or reason, without the express written consent from the disclosing party. The receiving party agrees to maintain all Confidential Information in strict confidence and to secure and protect that Confidential Information in the same manner as the receiving party protects its own most sensitive information or trade secrets, but in no event with less than reasonable care.

4.     The receiving party shall not use the Confidential Information for any purpose except the purpose of this Agreement as specified above, and shall restrict the disclosure of Confidential Information to persons within its own organization who: (a) have responsibility for or are directly concerned with such purpose of this Agreement; (b) are subject to non-disclosure or confidentiality obligations with the receiving party (the Confidential Information constituting protected information for purposes of such obligations); and (c) have been informed and are fully aware of the receiving party's obligations under this Agreement.

5.     The receiving party shall return all Confidential Information disclosed or supplied to it by the disclosing party, in whatever form or format so supplied or disclosed, including any documents containing any Confidential Information and all copies thereof or extracts or notes thereon, to the disclosing party immediately upon request of the disclosing party.

6.     About the purpose of this Agreement and the disclosure of Confidential Information, certain personnel, representatives or agents of the receiving party, as are authorized by the disclosing party, may be granted access to the facilities of the disclosing party at times and in numbers and identity as agreeable to the disclosing party. All such persons granted such access shall be subject to and comply with all requests and regulations of the disclosing party relating to safety, the taking of photographs and other special regulations as may be considered appropriate by the disclosing party for the security of Confidential Information or other technology or to avoid interference with the operation and administration of the facilities. .

2

7.     Without the prior written consent of the disclosing party, the receiving party will not, and the receiving party will direct all of its partners, officers, employees, agents and representatives not to, disclose to any person or entity either the fact that discussions or negotiations are taking place in connection with the purpose of this Agreement or any other potential transactions between the Parties, or any of the terms, conditions or other facts with respect to any such purpose or potential transactions, including the status thereof.

8.     The receiving party acknowledges and agrees that any breach of this Agreement would cause immediate and irreparable injury to the disclosing party and monetary damages would be difficult if not impossible to ascertain. The receiving party agrees that should the receiving party violate any of the terms and conditions of this Agreement, the disclosing party shall be entitled to seek and obtain immediate, preliminary and permanent injunctive relief to enjoin further and future violations of this Agreement without a requirement to post a security bond. Nothing contained in this Agreement shall affect the right of the disclosing party to seek and obtain monetary damages in addition to such equitable relief.

9.     This Agreement shall inure to the benefit of and be binding upon the heirs, personal representatives, successors and assigns of the Parties and shall be construed as if written jointly by both Parties and pursuant to the laws of the State of Florida. The Parties acknowledge that a substantial portion of the negotiations, anticipated performance and execution of this Agreement occurred or shall occur in Hillsborough County, Florida. Any civil action or legal proceeding arising out of or relating to this Agreement shall be brought in the courts of record of the State of Florida in Hillsborough County or the United States District Court, Middle District of Florida. The Parties consent to the jurisdiction of such Florida court in any such civil action or legal proceeding and waives any objection to the laying of venue of any such civil action or legal proceeding in such Florida court.

10.     The provisions of this Agreement are severable, and if any provision is held to be invalid, unenforceable or void, the remaining provisions shall not be invalidated thereby.

11.     The terms of this Agreement shall remain in full force notwithstanding the completion of the evaluations contemplated by the Parties or the achievement or abandonment of the purpose of this Agreement, the termination of relationships between the Parties or the return of all written materials containing Confidential Information to the Parties.

12.     The terms of this Agreement shall survive for five (5) years after the date of this Agreement; provided, however, that non-disclosure and non-use obligations shall not terminate for any trade secret until such trade secret is no longer a trade secret.

13.     If any civil action, arbitration or other legal proceeding is brought for the enforcement of this Agreement, or because of an alleged dispute, breach, default or misrepresentation in connection with any provision of this Agreement, the successful or prevailing party or parties shall be entitled to recover reasonable attorneys' fees, sales and use taxes, court costs and all expenses even if not taxable as court costs (including, without limitation, all such fees, taxes, costs and expenses incident to arbitration, appellate, bankruptcy

3

and post judgment proceedings), incurred in that civil action, arbitration or legal proceeding, in addition to any other relief to which such party or parties may be entitled. Attorneys' fees shall include, without limitation, paralegal fees, investigative fees, administrative costs, sales and use taxes and all other charges billed by the attorney to the prevailing party.

14.     If the disclosing party ever fails to require, or delays requiring, the receiving party's performance of any provision of this Agreement, even if known, such failure or delay shall not affect the disclosing party's right to require performance of that provision, or to exercise any of its rights, powers or remedies pursuant to this Agreement. Any waiver by the disclosing party of any breach of any provision of this Agreement shall not be construed as a waiver of any continuing or succeeding breach of such provision, a waiver of the provision itself, or a waiver of any right, power or remedy under this Agreement.

15.     Except as otherwise expressly provided in this Agreement, no remedy conferred upon the disclosing party pursuant to this Agreement is intended to be exclusive of any other remedy, and each such remedy shall be cumulative and shall be in addition to every other remedy given pursuant to this Agreement or now or hereafter existing at law or in equity or by statute or otherwise. No single or partial exercise by any party of any right, power or remedy pursuant to this Agreement shall preclude any other or further exercise thereof.

16.     This Agreement shall not be construed more strongly against SCH despite SCH's responsibility for its preparation.

17.     This Agreement represents the entire understanding and agreement between the Parties with respect to its subject matter and supersedes all other negotiations, understandings and representations (if any) made by and between the Parties regarding the same.

ACCEPTED AND AGREED:

**Smart Communications Holding**

By: _____

Name -Title: James Logan, President

Date: 6 - 15 - 17

LaSalle Management Correct Solutions, LLC

By: _____

Name-Title: Manager

Date: 8/21/17

4

*Smart Communications Holding, Inc. v. Correct Solutions, LLC and Rick Ferguson*
Case No.  19-CA-008089

# EXHIBIT B

### *to Amended Complaint*