IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

     Plaintiff,

v.                            Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

     Defendant.

_____/

**DEFENDANT'S RESPONSE TO PLAINTIFF'S NOTICE
TO PRODUCE DOCUMENTS AT THE DECEMBER 19, 2019
EMERGENCY EVIDENTIARY HEARING**

Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC (Correct

Solutions), by and through its undersigned counsel, responds to Plaintiff's Notice to

Defendant, Correct Solutions, LLC, to Produce Documents at December 19, 2019

Emergency Evidentiary Hearing as follows:

     1.     Correct Solutions has produced all responsive documents in its possession,

custody, or control.

     2.     Correct Solutions objects to this request on the grounds that it is overbroad

and unduly burdensome. Subject to this objection and without waiving its objection, any

responsible documents in the possession, custody, or control of Correct Solutions, has

been produced.

     3.     Correct Solutions has produced all responsive documents in its possession,

custody, or control.

     4.     Correct Solutions has produced all responsive documents in its possession,

custody, or control.

5.      Correct Solutions has produced all responsive documents in its possession, custody, or control.

6.      Correct Solutions objects to this request on the grounds that it is overbroad, not relevant to the December 19, 2019 hearing, not reasonably calculated to lead to the discovery of admissible evidence, and seeks confidential, proprietary, and trade secret information.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL  33602; bbarrios@bajocuva.com; dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on the 19th day of December, 2019.

HARLLEE & BALD, P.A.


By: s/James E. Lynch
    KIMBERLY A. BALD
    Florida Bar No. 0434190
    JAMES E. LYNCH
    Florida Bar No. 046219
    202 Old Main Street
    Bradenton, FL 34205
    Telephone: 941-744-5537
    Facsimile: 941-744-5547
    KAB@harlleebald.com
    JEL@harlleebald.com
    DDF@harlleebald.com
    CL@harlleebald.com

    and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4815-3627-9727, v. 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

        Plaintiff,

v.                                                                                      Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

        Defendant.

_____/

## RESPONSE TO PLAINTIFF/COUNTER-DEFENDANT'S
## FIRST REQUEST FOR ADMISSIONS

Defendant/Counter-Plaintiff, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC ("CSG"), hereby responds to the First Request for Admissions by Plaintiff/Counter-Defendant, Smart Communications Holding, Inc. ("Smart"), and states:

1.     Admitted.

2.     Admitted.

3.     Admitted.

4.     Denied. Sebastian County Sheriff's Office notified CSG on several occasions that if the schedule between Smart Communications and CSG pertaining to Sebastian County renewed, Sebastian County Sheriff's Office would terminate or non-renew the contract and agreement attached as Exhibit B as Sebastian County Sheriff's Office was unwilling to use Smart Communications for any equipment or services after the contract between Correct Solutions and Sebastian County renewed.

5.     Admitted.

6.     Admitted.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts

E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A.

Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa

Street, Suite 1900, Tampa, FL  33602; bbarrios@bajocuva.com; dhayes@bajocuva.com;

kturkel@bajocuva.com; tdeleo@bajocuva.com on 20ᵗʰ day of December, 2019.

HARLLEE & BALD, P.A.

By:  _____
    KIMBERLY A. BALD
    Florida Bar No. 0434190
    JAMES E. LYNCH
    Florida Bar No. 046219
    202 Old Main Street
    Bradenton, FL 34205
    Telephone: 941-744-5537
    Facsimile: 941-744-5547
    KAB@harlleebald.com
    JEL@harlleebald.com
    DDF@harlleebald.com
    CL@harlleebald.com

    and

    LUKE F. PIONTEK
    Roedel, Parsons, Kock, Blache,
    Balhoff & McCollister
    Louisiana Bar No. 19979
    8440 Jefferson Highway, Suite 301
    Baton Rouge, LA. 70809
    Telephone Number 225/929-7033
    Facsimile Number 225/928-4925
    LPiontek@roedelpartons.com

    Attorneys for Correct Solutions, LLC

2

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                 Case No: 19-CA-008089

       Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

       Defendant.

_____/

## NOTICE OF CONTINUATION OF EVIDENTIARY HEARING

       PLEASE TAKE NOTICE that the above styled cause will be brought on for continuation of evidentiary hearing upon (1) Plaintiff's Emergency Amended Motion for Leave to File Amended Complaint, (2) Plaintiff's Emergency Motion for Temporary Injunction, and (3) Defendant's Objection to Notice of Intent to Serve Subpoenas for Documents in Another State, before the Honorable Rex M. Barbas, George Edgecomb Courthouse, 800 E. Twiggs Street, Hearing Room 514, Tampa, FL 33602 on **December 27, 2019 at 9:30 a.m.**, or as soon thereafter as counsel can be heard.

       Time scheduled:     2 hours

       Court Reporter:      U.S. Legal Support

**PLEASE GOVERN YOURSELVES ACCORDINGLY.**

{BC00272689:1}

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 23rd day of December, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

{BC00272689:1}

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

       Plaintiff,

v.                              Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

       Defendant.

_____/

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### THIRD REQUEST FOR PRODUCTION

Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group, LLC ("CSG"),

hereby serves its Response to Plaintiff, Smart Communications Holding, Inc.'s ("Smart")

Third Request for Production, and says as follows:

### General Objections

Correct Solutions objects to the Definitions and Instructions contained in the Third

Request for Production served by Plaintiff to the extent the Definitions and Instructions

exceed what is authorized by the Florida Rules of Civil Procedure, or Florida law, or

require Correct Solutions to create documents which do not currently exist.

Correct Solutions objects to the Third Request for Production served by Plaintiff to

the extent it seeks the production of documents protected by the attorney-client privilege,

the work product doctrine, or any other applicable privilege.

Correct Solutions objects to each request for production that requires "all

documents" be produced as Correct Solutions cannot guarantee that the documents in its

possession constitute all documents that would fall within the category.

Correct Solutions objects to producing the documents at the office of counsel for Plaintiff as the documents are being accumulated by Correct Solutions counsel located in Bradenton, Florida.

Subject to, and without waiving the foregoing General Objections, Correct Solutions responds to Plaintiff's Third Request for Production served by Plaintiff as follows and will produce the responsive documents on a mutually agreeable date, time, and location.

## RESPONSES TO DOCUMENTS REQUESTED

1.    The responsive documents shall be produced to the extent that they have not already been produced by CSG.

2.    CSG objects to Smart's continued reference to CSG's customers as "joint customers" as there are no joint customers between Smart and CSG. CSG additionally objects to this request as the term "structure of the relationship" is vague and ambiguous and a response would potentially be unduly burdensome.  Finally, CSG objects to producing documents pertaining to Miller County, Arkansas and Greene County, Arkansas as requests pertaining to those facilities are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and are seeking the disclosure of confidential, proprietary, or trade secret information. Subject to these objections, any responsive documents shall be produced to the extent that they have not already been produced by CSG.

3.    CSG objects to Smart's continued reference to CSG's customers as "joint customers" as there are no joint customers between Smart and CSG. Subject to this objection, any responsive documents shall be produced to the extent that they have not

already been produced by CSG.

4.      Any responsive documents shall be produced to the extent that they have not already been produced by CSG.

5.      CSG objects to producing documents pertaining to Miller County, Arkansas and Greene County, Arkansas as requests pertaining to those facilities are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and are seeking the disclosure of confidential, proprietary, or trade secret information.  Subject to this objection, any responsive documents shall be produced to the extent that they have not already been produced by CSG.

6.      CSG objects to producing documents pertaining to Miller County, Arkansas and Greene County, Arkansas as requests pertaining to those facilities are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and are seeking the disclosure of confidential, proprietary, or trade secret information.  Subject to this objection, any responsive documents shall be produced to the extent that they have not already been produced by CSG.

7.      CSG objects to Smart's continued reference to CSG's customers as "joint customers" as there are no joint customers between Smart and CSG and this request is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and is seeking the disclosure of confidential, proprietary, or trade secret information.

8.      CSG objects to producing documents pertaining to Miller County, Arkansas and Greene County, Arkansas as requests pertaining to those facilities are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and are seeking the disclosure of confidential, proprietary, or trade secret information.  CSG objects to producing documents pertaining to any entity who will be providing services for

3

customers of CSG after the Schedules with Smart expire. Subject to these objections, any responsive documents shall be produced to the extent that they have not already been produced by CSG.

9.   CSG objects to producing documents pertaining to Miller County, Arkansas and Greene County, Arkansas as requests pertaining to those facilities are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and are seeking the disclosure of confidential, proprietary, or trade secret information. CSG objects to producing documents pertaining to any entity who will be providing services for customers of CSG after the Schedules with Smart expire. Subject to these objections, any responsive documents shall be produced to the extent that they have not already been produced by CSG.

10.   CSG objects to producing documents pertaining to Miller County, Arkansas and Greene County, Arkansas as requests pertaining to those facilities are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and are seeking the disclosure of confidential, proprietary, or trade secret information. CSG objects to producing documents pertaining to any entity who will be providing services for customers of CSG after the Schedules with Smart expire. Subject to these objections, any responsive documents shall be produced to the extent that they have not already been produced by CSG.

11.   CSG objects to producing documents pertaining to Miller County, Arkansas and Greene County, Arkansas as requests pertaining to those facilities are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and are seeking the disclosure of confidential, proprietary, or trade secret information. CSG objects to producing documents pertaining to any entity who will be providing services for

customers of CSG after the Schedules with Smart expire.  Subject to these objections, any responsive documents shall be produced to the extent that they have not already been produced by CSG.

12.    CSG objects to producing documents pertaining to Miller County, Arkansas and Greene County, Arkansas as requests pertaining to those facilities are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and are seeking the disclosure of confidential, proprietary, or trade secret information.  Moreover, this request is irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and is seeking the disclosure of confidential, proprietary, or trade secret information.  CSG further objects to producing documents pertaining to any entity who will be providing services for customers of CSG after the Schedules with Smart expire.

13.    CSG objects to producing documents pertaining to Miller County, Arkansas and Greene County, Arkansas as requests pertaining to those facilities are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and are seeking the disclosure of confidential, proprietary, or trade secret information.  Subject to that objection, any responsive documents shall be produced to the extent that they have not already been produced by CSG.

14.    CSG objects to producing documents pertaining to Miller County, Arkansas and Greene County, Arkansas as requests pertaining to those facilities are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence and are seeking the disclosure of confidential, proprietary, or trade secret information.  Subject to these objections, any responsive documents shall be produced to the extent that they have not already been produced by CSG.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on 23rd day of December, 2019.

HARLLEE & BALD, P.A.

By: _____

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4833-0724-4462, v. 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                Case No: 19-CA-008089

  Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

  Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S**
**THIRD REQUESTS FOR ADMISSION**

    Plaintiff, Smart Communications Holding, Inc. ("Smart"), responds to Defendant, Correct

Solutions, LLC's, Third Requests for Admission as follows:

**GENERAL OBJECTIONS**

    A.    Smart objects to these Requests for Admission to the extent they seek disclosure

of information protected from discovery by the attorney-client privilege and/or the work-product

doctrine, or any other applicable privilege or exemption.  Inadvertent disclosure of privileged or

protected information shall not waive any applicable privilege or work-product protection.

    B.    Smart objects to these Request for Admission to the extent that they purport to,

or in fact, alter or enlarge their obligations pursuant to the Florida Rules of Civil Procedure and/or

Florida case law.

    C.    To the extent that these Request for Admissions seek information involving

topics other than those addressed by the pleadings, Smart objects to the Requests for Admission

as irrelevant to the subject matter of the pending litigation and not reasonably calculated to lead to the discovery of admissible evidence.

D. All responses are made without waiving any objections as to relevance, privilege or admissibility. These general objections shall be deemed continuing as to each interrogatory and are neither waived nor limited in any way by the following responses.

## **RESPONSES AND OBJECTIONS**

1. That the term "Party" contained in the last sentence of paragraph 6 of the Master Services Agreement references Correct Solutions, LLC and Smart Communications Holding, Inc.

 **Response:** **Denied.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 27th day of December, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
            JEL@harlleebald.com
            DDF@harlleebald.com
            CL@harlleebald.com

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

      Plaintiff,

v.                              Case No: 2019 CA 008089

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## CLOSING ARGUMENT OF CORRECT SOLUTIONS, LLC

The issue before this Court is the proper legal interpretation of the non-renewal provision in Paragraph 6 of the MSA between Smart and Correct. Based on the MSA and evidence, Correct properly exercised its right to non-renew the MSA.

Contract interpretation is a legal issue. *Bold,* Tab 3. Under Paragraph 6, if Correct's contract with a facility renews and neither Correct nor Smart provides notice of non-renewal, the MSA renews. If Correct's contract with a facility is non-renewed, the MSA automatically ends without notice to Smart. If either Correct or Smart provides written notice of non-renewal at least 90 days before Correct's contract with a facility renews, the MSA as to that facility ends. Any construction otherwise requires this Court to ignore the renewal right of both Parties and rewrite the contract which Florida law prohibits.

Smart's Robert Deglman prepared the initial MSA draft and included a 7-year term which automatically renewed unless either Party provided written notice of non-renewal. Turner shortened the 7-year term by making the MSA and Schedules between Correct and Smart co-terminous with Correct's contract with each facility and retained Smart's non-

renewal provision. Correct is contractually obligated to provide correctional-grade tablets and related services ("tablets/services") to the facilities. Smart has no contract with the facilities and Correct's facility contracts are not incorporated into any contracts with Smart. As this Court stated, Smart is Correct's subcontractor.

Turner explained that Correct engaged Smart because it thought Smart had the capability to provide the tablets/services. Correct agreed to Smart's non-renewal provision so that, if Correct was not happy with Smart's tablets/services, Correct could non-renew. Turner would not have signed an MSA without the non-renewal provision.

Logan stated Smart's nonsensical position. Logan testified that co-terminous only applies when Correct's contract with its facility renews and refused to acknowledge that co-terminous also applies when a facility non-renews with Correct. Logan asserted that unless Correct provided a non-renewal notice, the MSA continued and "Correct may be responsible for owing us for a term because we were not issued a proper notice of nonrenewal." Logan also changes who are "Parties" under Paragraph 6 to achieve his desired result.

Contrary to Logan, co-terminous applies both ways and the "Parties" in the MSA are only Correct and Smart. If the facility renews and no non-renewal notice is sent by Correct or Smart, the MSA automatically renews. If the facility non-renews, the MSA automatically ends with no notice required by Correct. A non-renewal notice is only required if either Smart or Correct desires to sever the co-terminous term and end the MSA before a facility's contract with Correct renews.

### Failure to Show Irreparable Injury

Smart has no relationship with Washington to market. Captain Johnson described Smart's defective tablets and performance and testified Smart will no longer service

Washington in January. Logan admitted that non-renewal is only part of the cumulative score for an RFP. Turner testified that non-renewal is common in this industry and has never impacted Correct's ability to get business.

## No Evidence of Inadequate Remedy

Smart offered no evidence of substantial monetary damages as alleged in its Motion or an inadequate remedy at law. Irreparable injury will not be found when money damages are available. *Jacksonville Electric,* Tab 8. Loss of business to a competitor is not irreparable injury. *AHCA* and *BGH,* Tabs 1 and 2. The evidence only showed harm to Correct as Captain Johnson will recommend Correct's contract be cancelled if this Court requires Smart remain. Balancing the equities renders an injunction improper. *Ortega,* Tab 9.

## No Showing of Likelihood of Prevailing on the Merits

"Merits" for purposes of this injunction is the legal interpretation of Paragraph 6 of the MSA. Smart's only evidence was Logan's testimony which requires this Court to rewrite or completely ignore Smart's renewal provisions agreed to by both Parties. The universal rule is that courts are not authorized to rewrite contracts. *Home Development; Steiner;* and *Twenty Four,* Tabs 6, 11 and 13. Trial courts cannot use injunctions to extend contract terms after their termination. *Vela* and *Sanz,* Tabs 14 and 10. The limited exception does not apply as the Parties are not negotiating any extensions. *Florida Power,* Tabs 4, 5 and 12. Smart requests this Court violate these longstanding legal principles and commit reversible error.

Smart's "sham" arguments are directed towards Correct's July 2019 pre-suit termination notice; not the construction of Paragraph 6. Smart did not deny its tablets are non-correctional grade and its services are poor as established by Turner, Captain

Johnson, the Notice to Cure introduced into evidence by Smart and numerous e-mails from facilities complaining to Smart. Although Smart's breaches, which are continuing, caused Correct to consider replacement with Tech Friends, Turner "shut it down" after the Stipulation.

The Parties' right to non-renew was preserved in the Stipulation. Smart's argument regarding the Sebastian Notice to Cure under Paragraph 9 is irrelevant to the legal interpretation of Paragraph 6. Despite failure to cure, Correct didn't terminate the MSA as to Sebastian under Paragraph 9. Instead, Correct non-renewed under Paragraph 6 which requires no cause.

### The Public Interest Would Be Disserved

Per Captain Johnson, regardless of this lawsuit, Washington won't continue using Smart. Forcing a government facility to continue using a vendor who provides poor service and non-correctional grade tablets or forcing that facility to terminate Correct in order to remove Smart serves no public interest and causes Correct the very irreparable harm Smart failed to establish for itself.

The public interest is served by enforcing agreed contractual terms. The Florida Supreme Court held in *Home Development*, courts may not "interfere with the freedom of contract or substitute their judgment for that of the parties thereto in order to relieve one of the parties from the apparent hardship of an improvident bargain." While both may have anticipated a longer relationship, Smart and Correct signed the MSA which allowed either Party to non-renew.

Smart is seeking injunctive relief to avoid its own breach of contract which was established during the hearing. Smart may not ask a court of equity to "avoid the legal offset occasioned by its own breach." *Betts*, Tab 7.

4

Correct asks that this Court deny the Motion.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on 30th day of December, 2019.

HARLLEE & BALD, P.A.

By: _____

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                          Case No: 19-CA-008089

     Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

     Defendant.
_____/

**<u>CLOSING ARGUMENT OF SMART COMMUNICATIONS HOLDING, INC.</u>**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 30th day of December, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
          JEL@harlleebald.com
          DDF@harlleebald.com
          CL@harlleebald.com

                              /s/ Brad F. Barrios
                              Kenneth G. Turkel – FBN 867233
                              E-mail:  kturkel@bajocuva.com
                              Brad F. Barrios – FBN 35293
                              E-mail:  bbarrios@bajocuva.com
                              David A. Hayes – FBN  96657
                              E-mail:  dhayes@bajocuva.com
                              BAJO | CUVA | COHEN | TURKEL
                              100 North Tampa Street, Suite 1900
                              Tampa, Florida 33602
                              (813) 443-2199 (telephone)
                              (813) 443-2193 (facsimile)
                              *Counsel for Plaintiff*

**Introduction**

CSG ignored its contractual obligation to provide notice and opportunity to cure performance defaults and, instead, sent "non-renewal" notices to Smart during the terms of CSG's contracts with Joint Customers.[1] For Washington County, Smart received the notice approximately fifteen months after investing substantial resources to install its messaging system. The non-renewal is an obvious ruse. The MSA between Smart and CSG is coterminous with the renewed CSG/Washington Contract. (2:10).[2] CSG cannot renew its facility contracts while replacing Smart with another vendor.

**Likelihood of Success**

The parties' dispute centers around the "Term" paragraph of the MSA and, specifically, the sentence:

> After the original term, this Agreement shall automatically renew in accordance with the Customer's Agreement with facility, listed as Attachment A, unless either Party notifies the other Party with written notice of non-renewal at least ninety (90) days prior to the expiration of the then current term.

The Court indicated the sentence is "not really a clear sentence…" (1:35), and, accordingly, heard parol evidence about the intent of the parties. Jon Logan testified this sentence means that either CSG or the facility may elect not to renew their agreement (1:102), and CSG may then notify Smart of that non-renewal (1:100). CSG did not refute the fact that Smart had "already spent the money" after an installation and would thus have no reason to notify CSG that it would not renew its services. (1:101). And Smart has no right not to renew a contract between CSG and a facility (2:9), meaning the non-renewal provision has no application to Smart. Nor can the non-renewal

---

[1] Capitalized terms shall have the same meaning as those in the Motion.
[2] Citations are to the rough transcript, a copy of which has been sent to the Court. The first number in the citation is the Volume, either Volume 1 or 2, and the second is the Page number.

provision refer to the MSA, as opposed to the CSG/Joint Customer Contracts, because the MSA has no "original term"—the only term in the MSA is a coterminous length with CSG's facility agreements. (2:9).

Turner admitted coterminous means "as long as we were there, they were there, things were going great." (1:167). He also agreed "there would be no initial term for Smart on these facilities...if they came in midway whenever the contract would renew, they would be part of it then." (1:64-65). CSG told Smart it "had great relationships and our contracts always got renewed." (1:169). Indeed, CSG would use Smart "to extend the life of the contract, where possible, with the counties." (1:176).

CSG relies on the fact that Smart included a 90-day non-renewal notice period when it originally offered a seven-year term. However, the meaning of the provision changed when the parties (a) defined the term by tying it to the facility terms rather than using a certain number of years; and (b) referenced and attached CSG's facility agreements to the MSA. Now, the only potential non-renewal is between CSG and a Joint Customer—the only contracts that include "original" and "current" terms.

CSG's only stated justification for sending non-renewal notices to Smart was Smart's performance. But CSG had a contractual mechanism to address unsatisfactory services and did not follow that procedure. CSG never sent a notice of performance default for Washington County. (2:47). The attempted non-renewal based on performance without an opportunity to cure is simply termination without cause, which is not permitted by the MSA. (2:16).

In truth, CSG secured a financially lucrative deal with Tech Friends and solicited complaints about Smart to "get Smart out." (2:32). When CSG received a copy of Smart's mass advertisement (after it met with Tech Friends), it tried to manufacture a termination based on the

NDA because it would not require a cure period. (2:48). CSG is now using non-renewal notices for the same purpose—removing Smart without cause and without an opportunity to cure purported issues—contrary to the parties' agreements. The evidence is abundant that CSG tried whatever it could to remove Smart from the same facilities where it is now under contract with Tech Friends without providing Smart its rights under the MSA.

Smart's proposed Amended Complaint includes claims for declaratory relief and breach of contract. As described above, CSG must include Smart's services during the entire duration of its Joint Customer contracts. Smart is likely to succeed on the merits.

**Irreparable Harm and No Adequate Remedy at Law**

Smart entered three exemplary RFPs into evidence which require disclosure of non-renewed contracts. (1:73-75). CSG agreed that such expirations must be disclosed. (1:179). Further, Logan provided unrefuted testimony that Smart's reputation will be harmed if CSG's termination attempt is not enjoined. (1:73). Other facilities may assume the non-renewal related to performance, when, in reality, CSG never noticed a performance default. Moreover, because Smart's term is coterminous, it would be impossible to calculate Smart's damages absent injunctive relief.[3]

**Bond**

The amount of the bond should reflect the Court's determination of foreseeable damages for a wrongful injunction.[4] Turner testified he could not be sure whether Washington, Sebastian, or Wayne would actually terminate their agreements with CSG if Smart's services remained.

---

[3] *Nat'l Auto Lenders, Inc. v. SysLOCATE, Inc.*, 753 F. Supp. 2d 1233, 1236-37 (S.D. Fla. 2010)
[4] *Lotenfoe v. Pahk,* 747 So.2d 422, 425 (Fla. 2d DCA 1999)

(2:76). Even so, CSG gives 73%, 74%, and 60% of its revenue back as commission (Exhibits V, W, X, respectively) so any bond should be limited to approximately $300,000.

## **Conclusion**

Because CSG and Washington renewed their contract, and because Smart's services are coterminous with CSG's services, Smart is included in the renewal term. CSG's Notice is an attempt to terminate Smart for performance-based reasons without providing Smart its contracted-for opportunity to cure. This Court has already directed CSG to follow the notice-and-cure provision of the MSA and to file a motion to terminate if necessary. The Court should now enjoin CSG from subverting that ruling through the non-renewal notices that are the subject of this motion and any future similar notices.

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                    Case No: 19-CA-008089

     Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

     Defendant.

_____/

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
THIRD REQUEST FOR PRODUCTION OF DOCUMENTS**

Plaintiff, Smart Communications Holding, Inc. ("Smart"), pursuant to Rule 1.350, Florida

Rules of Civil Procedure, responds to Defendant, Correct Solutions, LLC's, Third Request for

Production of Documents (the "Requests") as follows:

**GENERAL OBJECTIONS**

A.     Smart objects to these Requests to the extent that they seek the disclosure of

information protected from discovery by the attorney-client privilege, the work product doctrine,

or any other applicable privilege or exemption.  Inadvertent disclosure of privileged or protected

information shall not waive any applicable privilege or work product protection.

B.     To the extent that these Requests seek documents or information involving topics

other than those addressed by the operative pleadings, Smart objects to the requests for production

of documents as irrelevant to the subject matter of the pending litigation and not reasonably

calculated to lead to the discovery of admissible evidence.

{BC00271925:1}

C.      Smart objects to these Requests to the extent they purport to impose duties or responsibilities greater than those imposed by the Florida Rules of Civil Procedure.

D.      Smart objects to these Requests to the extent they seek confidential or proprietary information or trade secrets.

E.      Smart objects to these Requests to the extent they seek documents that do not exist or are not in Smart's possession, custody, or control, or that are equally available to Defendant.

F.      Smart objects to these Requests to the extent they seek documents from a time period that is unduly burdensome, unnecessarily broad, and not reasonably calculated to lead to the discovery of admissible evidence.

G.      Smart objects to these Requests to the extent they use words and phrases that are not defined in an understandable manner.  To the extent feasible Smart will interpret terms and phrases used in the Requests as understood by Smart.

H.      Smart objects to the requests related to the allegations of the proposed Amended Complaint as being premature. Smart specifically preserves and retains all other potential objections to such requests in the event the proposed Amended Complaint is filed.

These general objections shall be deemed continuing as to each request for production of documents, and are neither waived nor limited in any way by the following responses.

## **RESPONSE TO REQUESTS FOR PRODUCTION**

1.      Any documents pertaining to your allegations that the business arrangement between Smart and CSG was a successful business arrangement for the last 2 years as alleged in paragraph 2 of the Amended Complaint.

     **Response:      Smart objects to this request as premature, as the Amended Complaint has not been filed and is not an operative pleading.  Smart specifically preserves and retains all other potential objections in the event the proposed Amended Complaint is filed.**

2.     Any documents pertaining to CSG's targeting of Smart's own direct customers as alleged in paragraph 3 of the Amended Complaint.

**Response:**     **Smart objects to this request as premature, as the Amended Complaint has not been filed and is not an operative pleading. Smart specifically preserves and retains all other potential objections in the event the proposed Amended Complaint is filed.**

3.     Any documents pertaining to defamatory comments allegedly made by Ferguson about Smart as set forth in paragraph 10 of the Amended Complaint.

**Response:**     **Smart objects to this request as premature, as the Amended Complaint has not been filed and is not an operative pleading. Smart specifically preserves and retains all other potential objections in the event the proposed Amended Complaint is filed.**

4.     Any documents pertaining to the demonstration by Smart of its products and services as alleged in paragraph 22 of the Amended Complaint.

**Response:**     **Smart objects to this request as premature, as the Amended Complaint has not been filed and is not an operative pleading. Smart specifically preserves and retains all other potential objections in the event the proposed Amended Complaint is filed.**

5.     Any documents pertaining to the negotiation of the terms of the parties' Schedules which are at issue in this action.

**Response:**     **Smart has made a good faith effort to produce all non-privileged responsive documents. In the event Smart discovers additional responsive documents, it will produce them.**

6.     Any documents pertaining to the significant financial investment Smart made for each of the eight correctional facilities as described in paragraph 25 of the Amended Complaint.

**Response:**     **Smart objects to this request as premature, as the Amended Complaint has not been filed and is not an operative pleading. Smart specifically preserves and retains all other potential objections in the event the proposed Amended Complaint is filed.**

7.     Any documents supporting your allegation in paragraph 25 of the Amended Complaint that Smart and CSG agreed that as long as CSG provided services to a joint customer pursuant to the original or any subsequent renewal term of a CSG/joint customer contract, then Smart would exclusively provide the services identified in the schedule to the joint customer.

**Response:      Smart objects to this request as premature, as the Amended Complaint has not been filed and is not an operative pleading.  Smart specifically preserves and retains all other potential objections in the event the proposed Amended Complaint is filed.**

8.     Any documents pertaining to the negotiation and meaning of the 90-day non-renewal provision set forth in Paragraph 6 of the Master Services Agreement.

**Response:      Smart has made a good faith effort to produce all non-privileged responsive documents. In the event Smart discovers additional responsive documents, it will produce them.**

9.     Any documents pertaining to the meaning of "co-terminous" as described in paragraph 33 of the Amended Complaint and Paragraph 6 of the Master Services Agreement.

**Response:      Smart has made a good faith effort to produce all non-privileged responsive documents. In the event Smart discovers additional responsive documents, it will produce them.**

10.     Any documents pertaining to how either Smart or CSG could terminate the "co-terminous" nature of the Master Services Agreement.

**Response:      Smart has made a good faith effort to produce all non-privileged responsive documents. In the event Smart discovers additional responsive documents, it will produce them.**

11.     Any documents pertaining to how Smart may exercise the non-renewal provision of the Master Services Agreement.

**Response:      Smart has made a good faith effort to produce all non-privileged responsive documents. In the event Smart discovers additional responsive documents, it will produce them.**

12.    Any documents that support your allegation that Smart provided high quality inmate communication services as alleged in paragraph 38 of the Amended Complaint.

**Response:**    **Smart objects to this request as premature, as the Amended Complaint has not been filed and is not an operative pleading.  Smart specifically preserves and retains all other potential objections in the event the proposed Amended Complaint is filed.**

13.    Any documents pertaining to the allegations in paragraph 44 of the Amended Complaint that customers of CSG were satisfied with Smart's services by early 2018.

**Response:**    **Smart objects to this request as premature, as the Amended Complaint has not been filed and is not an operative pleading.  Smart specifically preserves and retains all other potential objections in the event the proposed Amended Complaint is filed.**

14.    Any communications received by Smart from January 1, 2019 forward regarding any issues Sebastian County was encountering with Smart's equipment or services.

**Response:**    **Smart has produced non-privileged responsive documents. Smart will produce additional non-privileged responsive documents at a mutually convenient time and place.**

15.    Any documents pertaining to your allegations that CSG engaged in a "misinformation and smear campaign" as described in paragraph 85 of the Amended Complaint.

**Response:**    **Smart objects to this request as premature, as the Amended Complaint has not been filed and is not an operative pleading.  Smart specifically preserves and retains all other potential objections in the event the proposed Amended Complaint is filed.**

16.    Any documents pertaining to any efforts or actions taken by Smart to remedy any of the complaints raised by Sebastian County in the meeting subsequent to the September 20, 2019 hearing on Smart's emergency motion held before the Honorable Rex M. Barbas.

**Response:**    **Smart has produced non-privileged responsive documents. Smart will produce additional non-privileged responsive documents at a mutually convenient time and place.**

17. Any documents reflecting any efforts or actions by Smart to address the items identified in the Notice to Cure dated September 30, 2019 pertaining to Sebastian County.

**<u>Response</u>: Smart has produced non-privileged responsive documents. Smart will produce additional non-privileged responsive documents at a mutually convenient time and place.**

18. Any documents provided by CSG establishing the date of the first successful call in paragraphs 124 and 125 of the Amended Complaint.

**<u>Response</u>: Smart objects to this request as premature, as the Amended Complaint has not been filed and is not an operative pleading. Smart specifically preserves and retains all other potential objections in the event the proposed Amended Complaint is filed.**

19. Any documents pertaining to the allegation in paragraph 127 of the Amended Complaint that "because the Washington Agreement was not terminated and automatically renewed, the MSA automatically renewed in accordance with the Washington Agreement."

**<u>Response</u>: Smart objects to this request as premature, as the Amended Complaint has not been filed and is not an operative pleading. Smart specifically preserves and retains all other potential objections in the event the proposed Amended Complaint is filed.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 13th day of January, 2019, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
        JEL@harlleebald.com
        DDF@harlleebald.com
        CL@harlleebald.com

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail:  bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail:  dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

        Case No: 19-CA-008089

    Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

    Defendant.

_____/

**PLAINTIFF'S MOTION FOR RECONSIDERATION OF ORDER
<u>DENYING PLAINTIFF'S EMERGENCY MOTION FOR TEMPORARY INJUNCTION</u>**

    Plaintiff, Smart Communications Holding, Inc. ("Smart"), by counsel and pursuant to the Court's inherent authority, files its Motion for Reconsideration of Order Denying Plaintiff's Emergency Motion for Temporary Injunction and, in support, states as follows:

<u>**Introduction**</u>

    1.    Leading up to and throughout the course of this dispute, Defendant, Correct Solutions, LLC ("CSG") has repeatedly attempted to terminate a Master Services Agreement ("MSA") between Smart and CSG relating to eight correctional facilities[1] in various different manners.[2]

    2.    On October 4, 2019, CSG sent Smart a Notice of Non-Renewal with respect to one Joint Customer: the Washington County Sheriff's Office (the "Notice"). The Notice states that the

---

[1] In its pleadings and motions, Smart has defined the eight facilities as the "Joint Customers."

[2] CSG sent Smart a July 17, 2019 termination letter premised on Smart's alleged use of confidential information, which was addressed in a stipulation, a September 13, 2019 notice to cure letter, which was addressed at a hearing and which CSG has not re-raised, an October 4, 2019 notice of non-renewal for Washington County, notices of non-renewal related to Sebastian County and Wayne County, and notices related to a contract between Washington County and Summit (described below).

contract between CSG and Washington County expires January 3, 2020 at midnight and that Smart should contact CSG to make arrangements to remove its systems by then. *See* Plaintiff's Exhibit V, Hearing on Emergency Motion for Temporary Injunction.

3.      As described below, after CSG sent the Notice, both CSG and Washington identified several inconsistent dates on which they demanded that Smart cease providing its communication services and retrieve its equipment. Then, before those dates passed, Washington County unilaterally disabled Smart's services without having a substitute service in place to take over Smart's role.

4.      The effectuation of the Notice has resulted in Smart being publicly decried as a villain who deprived inmates of the ability to communicate with loved ones. The backlash has been significant—Smart has received numerous complaints and threats of lawsuits by inmates and the public. Washington County ran to the press to publicly blame Smart for its loss of communication services. Washington County personnel have even promised to ruin Smart's reputation amongst the other correctional facilities throughout Arkansas, virtually guaranteeing that Smart will never obtain new work in the state again.

5.      These instances of irreparable harm could have been prevented if the Court had enjoined CSG from acting in furtherance of its unlawful Notice. Similar harms can still be avoided if the Court reconsiders its order on Smart's Emergency Motion for Temporary Injunction and grants the requested relief for the remaining Joint Customer contracts. Smart submits supporting Declarations and is prepared to provide additional evidence at a hearing.

## Legal Standard for Reconsideration

6.      "In contrast to final judgments, interlocutory orders are subject to judges' reconsideration *sua sponte*, even to the point of withdrawing them completely or reversing the

initial ruling." *Silvestrone v. Edell*, 721 So.2d 1173, 1175 (Fla. 1998) (recognizing inherent authority of trial judges to reconsider interlocutory orders); *LoBello v. State Farm Fla. Ins. Co.*, 152 So.3d 595, 560 (Fla. 2d DCA 2014) (quoting *Oliver v. Stone*, 940 So.2d 526, 529 (Fla. 2d DCA 2006) ("It is well established that a trial court may reconsider and modify interlocutory orders at any time until final judgment is entered.")

7.     The discovery or submission of new evidence may provide grounds for reconsideration. *See generally Panama City Gen. Partnership v. Godfrey Panama City Inv., LLC*, 109 So.3d 291, 293 (Fla. 1st DCA 2013) (reversing the denial of a motion for reconsideration which attached new evidence, and instructing the trial court to hold an evidentiary hearing in light of new evidence).

## Background

8.     On December 4, 2019, Smart filed an Emergency Motion for Temporary Injunction (the "Motion") based on the fact that CSG had renewed its contract with Washington County, which was co-terminous with the MSA between Smart and CSG. Smart argued that its services should be included in CSG's renewal and that the Notice was yet another improper attempt to terminate Smart.

9.     On December 13, 2019, CSG sent Smart a letter enclosing a December 11, 2019 letter from Washington County. The letters relate to Washington County's supposed discovery of a contract with another vendor, Summit, which purportedly granted exclusive messaging rights to Summit. *See* Fourth Declaration of Jon Logan (Logan Declaration).[3]

---

[3] As the Court may recall, the Summit contract is a commissary contract that includes non-exclusive, non-mandatory language about inmate email: "Contractor will offer secure inmate email when County agrees to make it available to the inmates." *See* Hearing Exhibit CC.

10.     CSG's letter summarizes Washington County's demand for Smart to remove its email services from the Washington County Detention Center ("WCDC") within 15 days (or, by December 26, 2019) and then provides:  "That said, however, Correct Solutions has no choice but to request that Smart immediately cease and desist providing email services to the inmates at the Washington County Facility."

11.     Washington County's letter provides:

> Now that we have been formally advised of this breech [sic], we have an obligation to fix the issue. Smart Communication will have to remove their email services from our facility, within the next 15 days. I have no idea how this will affect the mail scanning services they are currently providing, but based on our contract with Summit Food Service, we can no longer allow Smart Communication to provide email service within our facility. If Smart Communications has to remove their mail scanning services as a result of this change, we completely understand and will work with them to make that happen, as well.

12.     On December 19, 2019, this Court held the first part of an evidentiary hearing on Smart's Motion. Smart introduced evidence of irreparable harm and a lack of an adequate remedy at law through its CEO, Jon Logan. Among other things, Smart demonstrated that: (a) its investment in Washington County was significant but difficult to quantify because of the amount of time Smart spent installing its system and training County employees to use the system; (b) Smart's reputation would be harmed if it was wrongfully removed from the customer facility through the purported non-renewal; (c) Smart may be required to disclose the non-renewal in responses to future requests for proposals; and (d) Smart had no way of precisely measuring the damages it would sustain by losing an unknown number of renewal periods.

13.     On December 23, 2019, Washington County emailed Smart and stated:

> Due to the holiday season and the time it takes to a transition such as this [sic], Summit Foods has agreed to give us and Smart Communication until Monday, February 3, 2020, to fix the breach

of contract issue.  This oversight in our contract with Summit is unfortunate, but as a business man, I think you will agree, we must honor the contract that we agreed to with Summit Foods.  Please have someone in your company give us some dates when they will be at our facility to start removing any of your equipment.  We will need to coordinate the dates with our IT manager, Jak Kimball so he will be able to work with your personnel in removing items.

*See* Logan Declaration.

14.     On December 27, 2019, the Court held the second part of the evidentiary hearing on Smart's Motion.

15.     On January 3, 2020, the Court's judicial assistant contacted counsel for the parties and advised that the Court would not be granting Smart's Motion due to the law set forth in three cases. The judicial assistant advised that a written order would be subsequently entered; however, the Court has not yet entered a written order.

16.     The three cases the judicial assistant identified are:

    a.     *State Agency for Health Care Admin. V. Continental Car Services, Inc.,* 650 So.2d 173 (Fla. 2d DCA 1995) (reversing grant of temporary injunction). The court found appellees failed to establish irreparable harm, which is not demonstrated by a mere loss of business to a competitor, and no adequate remedy at law, when records demonstrated exact amount of money available as damages.

    b.     *B.G.H. Insurance Syndicate, Inc. v. Presidential Fire & Casualty Co., et al.,* 549 So.2d 197 (Fla. 3d DCA 1989) (reversing grant of injunction). The court found that "appellees' ability to obtain a money judgment against BGH should a breach of contract be proven, is an adequate remedy at law," precluding injunctive relief.

    c.     *Jacksonville Elec. Authority v. Beemik Builders & Constructors, Inc.,* 487 So.2d 372 (Fla. 1st DCA 1986) (reversing grant of temporary injunction). The court found that only evidence of irreparable harm presented at hearing was speculative and that appellees' alleged injury could be remedied by an action for damages.

17.     These cases only address two of the elements of injunctive relief: irreparable harm and adequate remedy at law. The events that have taken place since the judicial assistant conveyed the Court's oral ruling, however, demonstrate that Smart has been and is continually being irreparably harmed by the non-renewal process employed by CSG and Washington County, which cannot be remedied by an action for damages.

### New Evidence of Irreparable Harm and No Adequate Remedy at Law

18.     On January 10, 2020, CSG sent Smart a letter asking when Smart would be removing its system from WCDC. *See* Logan Declaration. Notably, CSG's two prior conveyed deadlines—December 13, 2019 and January 3, 2020—had both since passed. The letter states: "Please ensure that Smart's system has been removed no later than Wednesday, January 29, 2020." CSG's new deadline to remove Smart's services was also inconsistent with the February 3, 2020 deadline provided by Washington County in its December 23, 2019 email.

19.     Notwithstanding these demands, Smart had no contractual obligation to remove its equipment at any particular time or upon CSG's demand after a non-renewal. The only reference in the MSA to Smart's removal of its hardware is in section 9 of the MSA governing termination— a section CSG has consistently argued is inapplicable to a non-renewal situation. Even so, Smart removed its hardware from WCDC on January 28, 2019—before CSG's conveyed deadline. *Id*. Smart's hardware only provides a means by which inmates and staff can access Smart's system, which is an internet-based software platform. At any time, either Smart or a customer facility like Washington County can completely disable Smart's software platform at the push of a button. In that event, access to Smart's services would no longer be available and its hardware would serve no function at all. *Id.*

20.     Moreover, CSG and Washington County never demanded—nor could they—that Smart keep its system on and accessible until Tech Friends was ready to assume the communication duties. Indeed, CSG had previously demanded that Smart do the opposite—that it cease providing its services immediately.

21.     Instead of disabling Smart's services with a succession plan in place or waiting until the passage of one of the arbitrary deadlines previously communicated, on January 21, 2020, without any warning or notice to Smart, Washington County disabled Smart's system, rendering it completely inaccessible to inmates. *Id.* After receiving numerous complaints, Smart investigated and determined that Washington had severely restricted access to Smart's system such that the system was currently unavailable and would only be available for short periods of time on two days a week going forward. *Id.* The restriction set up by Washington County was scheduled to make Smart's system completely inaccessible to inmates for at least January 21, 2020 and January 22, 2020. *Id.*

22.     Washington County and CSG obviously did not have Tech Friends ready to take over and apparently did not inform the inmates or their friends and families that Washington County would be disabling Smart's services, including Smart's postal mail processing services.

23.     Almost immediately after Washington County disabled the system, Smart began receiving a flood of complaints and threats from inmates and their families and friends. *Id.* The communications that Smart received—all after the access had been cut by Washington County on January 21, 2020—include the following examples:

     a.     I missed a visit today due to the kiosk reporting that the system is
            unavailable..my finance walks four hours from Bethel Heights to
            Fayetteville for these visits, and had to immediately turn around due
            to the kiosk being unavailable… (12:20 pm)

b. This is a federal offense by keeping our letters from us our mail and our family's. This is against the law and I am notifying my attorney and am filing the law suite [sic] in response to the kios[k] changes. We don't get mail on Sunday and on top of that we are limited to only receiving mail Thursday, Friday that's it…You will be hearing from my attorney. (1:54 pm)

c. Isn't it against the federal guidelines for being incarcerated and not being able to get our mail… (1:56 pm)

d. How can you take away [our] visits, and postal mail? Without even a notice. Yeah we're in jail but we still have rights, and we have rights to [our] postal mail… (2:13 pm)

e. We are being lied to about this by the staff they are saying its you guys and that they are firing you and hiring another company. They also said we can't ask anymore questions or they will throw us in the hole! (2:48 pm)

f. …us inmates have talk[ed] to the guards and they stated that it isn't them who is doing this with the scheduling thing that it is smart communications doing all of this to us. (2:57 pm)

g. what is going to happen with credits left over after the system has been changed to a new provider? and how is it that WCDC says it is the providers fault, and this system message is saying that WCDC has asked for the change in schedule activity? (4:04 pm)

*See* Logan Declaration, Composite Exhibit D.

24. Accordingly, inmates were missing visits with their families, members of the public were purchasing messaging credits that could not be used, and Smart was receiving an onslaught of complaints and legal threats.  Worse yet, according to a number of complaints from inmates (via the maintenance reporting interface which was not disabled), Washington County officials were blaming Smart for the disruption. This series of events left Smart with no choice but to disable the entire system to prevent the inmates' and public from continuing to make purchases of services at WCDC that could not be used (just as CSG had previously demanded). *Id.*

25.     In an attempt to mitigate or avoid further repercussions, Smart posted the following

notice of the home screen of all tablets and kiosks at WCDC:

> We have received several kiosk support tickets notifying us that no
> one can log into the Smart Jail Mail system. We apologize for the
> inconvenience, however, the system is in working order. The kiosk
> and tablet schedule has been changed by WCDC Staff and are now
> offline Monday, Tuesday and Wednesday.

*Id.*

26.     At approximately 4:30 pm on January 21, 2020, in order to prevent further harm to

the public and to Smart's reputation, Smart completely disabled its services, making them no

longer available for use at WCDC. Members of the public who used Smart's system to interact

with WCDC inmates were sent the following message:

> Attention [Public User], Smart Communications regretfully informs
> you that the Washington County Sheriff's office has terminated our
> services without proper notice as of 1/21/2020. All services (inmate
> email, photos, visitation, and postal mail services) have been
> terminated. To avoid any further injury to the public, the inmates,
> and to Smart Communications all visits scheduled have been
> canceled and no more service credit purchases can be made. We
> apologize for this willful action of Washington County and the
> problems or loss of communications and money this may have
> caused for all involved.
> Please direct all comments, concerns, request for return of funds to
> Washington County Sheriff's office. We are very disappointed and
> our heartfelt apologies go out to all involved and affected by this
> action.
> We have appreciated your business and wish your family well.
> Sincerely,
> Smart Communications

*Id.*

27.     Even after Smart fully disabled its system, Smart continued to receive complaints

from inmates and members of the public, including the following examples:

> a.      Please provide my refund.  I did not send money to Sheriff's Office.
> I will be contacting Better Business Bureau if you don't provide
> refund. (5:00 pm, from a member of the public)

b.      Where is my money (5:04 pm, from a member of the public)

c.      i had an hours worth of visits today and the system is apparently down you are blaming it on the wcdc staff and they are saying it is yall guys i dont really give a f*** either way i just want my visits and to know what yall are going to do about the credits my family bought and also what is going to happen with our mail (6:19 pm, from an inmate)

d.      The jail has informed us that it is smartjail's fault we cant us the system. that the system was supposed to be down next week Monday,tuesday,& and wed not this week. just because the jail is switching service providers doesnt mean we should have to suffer not talking to our family's. so it would be nice if you turn the system back on until they officaly switch. thank you (7:53 pm, from an inmate).

*See* Logan Declaration, Composite Exhibit G.

28.      Moreover, due to the rampant complaints from the public (or perhaps a tip from Washington County officials), news reporters immediately picked up on the story and ran it—with Washington County's version of events.  For example, on January 22, 2020, KNWA News, the local NBC affiliate for Northwest Arkansas, published an article reporting that "the jail's IT worker accidentally shut off the system when trying to restrict future visitations, knowing the sheriff's office would have a new system in place." *Id.*

29.      On or about January 22, 2020, Washington County posted a prepared statement to its Facebook page which includes multiple inaccuracies and over-the-top rhetoric that are certain to damage Smart's reputation, including the examples below.  In particular, Washington County misrepresented this Court's oral order on Smart's Motion and claimed that it reflected a win for CSG "on all counts."  Given that a written order has yet to be issued from the Court, one can only assume that Washington County received its misinformation from CSG—an assumption that is

consistent with CSG's many previous smear attempts that are the subject of Smart's Amended Complaint.

    a.    On January 3, 2020, the Washington County Sheriff's Office was made aware the court had ruled in Correct Solutions Group's favor on all counts and Correct Solutions Group did not have to renew their contract with Smart Communications Holding, Inc.

    b.    Without notice, on January 21, 2020, Smart Communications Holding, Inc. shut off their services to the Washington County Sheriff's Office.

    c.    The Washington County Sheriff's Office has no control over Smart Communications Holding, Inc.'s flagrant disregard for the detainees and citizens.  This type of action is just one of many reasons changes had to be made to provide proper services to detainees.

    d.    In an attempt to compensate the detainees and citizens for the shortcomings of Smart Communications Holding, Inc., Tech Friends, Inc. and Summit Food Service have volunteered to provide free unlimited emails (both incoming and outgoing) for a short period of time.

30.    Washington County's statement also provides that its inmates have always had access to email services provided by Tech Friends. Accordingly, Washington County not only admits that Smart did not receive the exclusivity that it bargained for when contracting with CSG, but it publicizes the fact that Smart did not have an exclusive relationship with Washington County for electronic communications. Exclusivity is an intangible asset that is part of a company's reputation. *Douglas Dynamics, LLC v. Buyers Products Co.,* 717 F.3d 1336, 1344-45 (Fed. Cir. 2013). When Washington County publicized that Tech Friends "has always been in place and working for detainee communication," it further damaged the reputation Smart had as an exclusive provider.

31.    On January 22, 2020, Smart's Quality Assurance Manager, Jerry Lipsey, had numerous conversations with Washington County's IT Director, Jak Kimball, who blamed Smart

for not cooperating with the termination of Smart's services at WCDC and who told Lipsey that Washington County would be informing other correctional facilities throughout the state of Arkansas that Smart is unprofessional and that the facilities should never hire Smart as a vendor in the future. *See* Declaration of J. Lipsey.

32.     On January 23, 2020, the Northwest Arkansas Democrat-Gazette published an article with the following statements, which were provided by Washington County and/or included in Washington County's prepared statement:

    a.      The company providing the communication service shut it down Tuesday, according to the sheriff's office.

    b.      Without notice, on Jan. 21, 2020, Smart Communications Holding, Inc. shut off their services to Washington County Sheriff's Office.

    c.      Smart Communications Holding, Inc., sent out numerous emails and posts indicating we had terminated their service without proper notice. This is not true.

    d.      Tech Friends, a subcontractor for Summit Food Service, which provides commissary services at the jail, had an email system available to the inmates and would provide the full range of electronic communication services going forward.

    e.      Jay Cantrell said the inmates hadn't lodged any complaints about the Smart Communications system shutdown. "It's been down about as much as it's been up," Cantrell said. "Nobody made a fuss about it so I guess they just figured it was down again.

33.     These statements, which are available online for all of Smart's customers, potential customers, and the general public to see, no doubt damage Smart's reputation as an accomplished and honorable service provider. *See* Logan Declaration.

34.     With WCDC, Washington County has one of the largest correctional facilities in the state of Arkansas. Because smaller agencies and facilities tend to follow the suggestions and the lead of the larger agencies, if CSG is not prohibited from acting in furtherance of all other

notices of non-renewal related to the Joint Customers, then the negative press, complaints, and threats Smart is receiving, along with Washington County's statements about Smart described in Jerry Lipsey's Declaration, will be given credence and will negatively impact Smart's ability to ever have a relationship with each of the Joint Customers or any other corrections facility in Arkansas again. *Id.*

35.     On January 28, 2020, Smart sent employees to retrieve all Smart equipment from WCDC, in compliance with the January 29, 2020 deadline given by CSG. *Id.*

36.     In order to mitigate the damage to Smart's reputation and the harm to the public caused by the effectuation of CSG's Notice of Non-Renewal, Smart has also agreed to refund the cost of any unused credits to the friends and family members of the inmates at WCDC who request a refund. *Id.*

37.     The foregoing is clear and convincing evidence of the exact type of irreparable harm that Smart argued would be inflicted due to CSG's improper non-renewal in Washington County. Money damages cannot remedy this type of harm. Given that the Court's ruling appeared to rely solely on an adequate remedy at law and/or a lack of irreparable harm, the Court should reconsider its findings on these elements. Accordingly, the Court should reconsider its denial of Smart's Motion so that these events are not repeated for the remaining seven Joint Customers. Alternatively, the Court should schedule an evidentiary hearing to revisit the elements of irreparable harm and no adequate remedy at law in light of this recent evidence.

WHEREFORE, Plaintiff, Smart Communications Holding, Inc., respectfully request that this Court reconsider its previous order and grant Smart's Emergency Motion for Temporary Injunction and for such further relief as the Court deems just and proper.

Respectfully submitted,

/s/ Brad F. Barrios
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
Counsel for Plaintiff

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 31st day of January, 2020, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
          JEL@harlleebald.com
          DDF@harlleebald.com
          CL@harlleebald.com

/s/ Brad F. Barrios
Attorney

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                         Case No: 19-CA-008089

        Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

        Defendant.

_____/

## **<u>DECLARATION OF JERRY LIPSEY</u>**

I, Jerry Lipsey, declare under penalty of perjury as follows:

1.      I am over the age of 18 years and competent to testify to the matters set forth in this Declaration.

2.      I am currently a Quality Assurance Manager at Smart Communications Holding, Inc. ("Smart").  I make this Declaration based on my personal knowledge and my review of the business records of Smart.

3.      On January 21, 2020, Washington County Detention Center (WCDC) disabled its inmates' access to Smart's electronic messaging system, including access for inmates to send messages to members of the public, to retrieve and review their postal mail, and to schedule and participate in scheduled video visitations.

4.      Later on January 21, 2020, after Smart discovered what WCDC had done and completely and permanently disabled the remainder of its services there to prevent further damage to the public, I received numerous telephone calls from Captain Kenny Yates in Special Services

at WCDC. Captain Yates informed me that WCDC was blaming Smart for the chaos that resulted from their disabling Smart's system and from WCDC's failure to have a succession plan in place. Captain Yates further informed me that WCDC officials would be telling officials from the other correctional facilities in Arkansas that Smart is unprofessional and that those facilities should never work with Smart in the future. In particular, it was made clear that the WCDC sheriff would be spreading the word at the upcoming Arkansas Sheriffs' Association Winter Conference that Smart was a bad vendor and should not be used.

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true. Executed January 28, 2020.

Jerry Lipsey

{BC00275852:1}

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

             Case No: 19-CA-008089

  Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

  Defendant.

_____/

## FOURTH DECLARATION OF JON LOGAN

  I, Jon Logan, declare under penalty of perjury as follows:

  1.  I am over the age of 18 years and competent to testify to the matters set forth in this Declaration.

  2.  I am currently the CEO of Smart Communications Holding, Inc. ("Smart"). I make this Declaration based on my personal knowledge and my review of the business records of Smart, which include the attached screenshot from Smart's inmate messaging system, which I personally collected and saved from the system on Smart's server, and which has been maintained in the ordinary course of Smart's business.

  3.  In my Third Declaration, filed on December 5, 2019, I testified as follows:

> If Smart's services and equipment are removed from these Joint Customer facilities, there will be considerable downtime and loss of communications between inmates at those facilities and their friends and families, including loss of access to prior photographs and emails that are stored on Smart's system, resulting in harm for inmates and their respective communities. [T]he inmates at the Joint Customers' facilities will not have access to the communications services that Smart currently provides, including electronic

messaging, until a substitute provider's systems and equipment are installed.

Being required to remove our services and equipment from the facilities of these Joint Customers will negatively impact Smart's ability to ever have a relationship with each of these Joint Customers again. Our other customers, prospective customers, and competitors will hear about our removal from these facilities and see it as being indicative of poor service. In an environment as competitive as the corrections communication industry, concerns and questions about a company's reliability, integrity, or ability to perform have disastrous effects on the company's reputation and goodwill. It is impossible to determine how many prospective customers or potential partnerships with other providers Smart may lose as a result of the effective terminations by way of CSG's improper Notices of Non-Renewal.

4.       On December 13, 2019, I received a letter from Correct Solutions Group, LLC ("CSG") demanding that Smart immediately cease and desist providing email services to the inmates at the Washington County Facility." A true, complete, and authentic copy of the December 13, 2019 letter from CSG is attached as **Exhibit A**.

5.       CSG's letter enclosed a December 11, 2019 letter from Washington County demanding that Smart remove its email services from the Washington County Detention Center ("WCDC") within 15 days (or by December 26, 2019).

6.       On December 23, 2019, after the first part of the hearing on Smart's Emergency Motion for Temporary Injunction, but before the conclusion of the hearing, I received an email from Washington County indicating that Smart needed to remove its services by February 3, 2020. A true, complete, and authentic copy of the December 23, 2019 email is attached as **Exhibit B**.

7.       On January 10, 2020, I received a second letter from CSG asking Smart to "ensure that Smart's system has been removed no later than Wednesday, January 29, 2020." A true, complete, and authentic copy of the January 10, 2020 letter from CSG is attached as **Exhibit C**.

8.      On January 21, 2020, I learned that Washington County, without warning or notice to Smart, unilaterally disabled inmates' access to Smart's communication system. This means that inmates at WCDC could not access their electronic account in order to send or receive messages, to view their incoming postal mail that Smart was processing, or to schedule, accept or participate in scheduled video visitations.

9.      I learned of this information when Smart began receiving a flood of complaints and threats (by way of the system's trouble reporting feature on inmate terminals) on the morning of January 21, which continued as the day progressed.  The system's trouble reporting feature remains available even if other services are not accessible.  Exemplary complaints include the following:

a.      I missed a visit today due to the kiosk reporting that the system is unavailable..my finance walks four hours from Bethel Heights to Fayetteville for these visits, and had to immediately turn around due to the kiosk being unavailable… (12:20 pm)

b.      This is a federal offense by keeping our letters from us our mail and our family's. This is against the law and I am notifying my attorney and am filing the law suite [sic] in response to the kios[k] changes. We don't get mail on Sunday and on top of that we are limited to only receiving mail Thursday, Friday that's it…You will be hearing from my attorney. (1:54 pm)

c.      Isn't it against the federal guidelines for being incarcerated and not being able to get our mail… (1:56 pm)

d.      How can you take away [our] visits, and postal mail? Without even a notice. Yeah we're in jail but we still have rights, and we have rights to [our] postal mail… (2:13 pm)

e.      We are being lied to about this by the staff they are saying its you guys and that they are firing you and hiring another company. They also said we can't ask anymore questions or they will throw us in the hole! (2:48 pm)

f.      …us inmates have talk[ed] to the guards and they stated that it isn't them who is doing this with the scheduling thing that it is smart communications doing all of this to us. (2:57 pm)

g.     what is going to happen with credits left over after the system has
been changed to a new provider? and how is it that WCDC says it is
the providers fault, and this system message is saying that WCDC
has asked for the change in schedule activity? (4:04 pm)

A true, complete, and authentic copy of these exemplary complaints is attached as

**Composite Exhibit D**.

10.     Upon our receipt of the initial wave of complaints, I checked the scheduling portion
of Smart's system and discovered that Smart's services had indeed been disabled and would not
be available for the next few days. I saved a screenshot of the system demonstrating the new,
restricted schedule that had been implemented. A true, complete, and authentic copy of the
screenshot of Smart's system, taken January 21, 2020, is attached as **Exhibit E**.

11.     Further, because Smart's system was still accessible to the public (even though the
restricted schedule would not allow inmates to access the system), members of the public could
still purchase messaging credits or schedule video visitations. Based on the disabled state of the
system at the time, messaging credits could not be used and video visitations could not take place,
even though they could be purchased by the public.

12.     Smart then faced a difficult choice of allowing members of the public to spend
money on services that had been disabled and continuing to receive complaints and threats of
lawsuits, or shutting down the system in its entirety (which is what CSG had previously
demanded).

13.     In an attempt to mitigate or avoid further repercussions, Smart posted the following
notice on the home screen of all tablets and kiosks at WCDC:

We have received several kiosk support tickets notifying us that no
one can log into the Smart Jail Mail system. We apologize for the
inconvenience, however, the system is in working order. The kiosk
and tablet schedule has been changed by WCDC Staff and are now
offline Monday, Tuesday and Wednesday.

14.     On January 21, 2020 at approximately 4:30 pm, Smart completely disabled its

services, making them no longer available for use at WCDC. Members of the public who used

Smart's system to interact with WCDC inmates were sent the following message:

> Attention [Public User], Smart Communications regretfully informs
> you that the Washington County Sheriff's office has terminated our
> services without proper notice as of 1/21/2020. All services (inmate
> email, photos, visitation, and postal mail services) have been
> terminated. To avoid any further injury to the public, the inmates,
> and to Smart Communications all visits scheduled have been
> canceled and no more service credit purchases can be made. We
> apologize for this willful action of Washington County and the
> problems or loss of communications and money this may have
> caused for all involved.
> Please direct all comments, concerns, request for return of funds to
> Washington County Sheriff's office. We are very disappointed and
> our heartfelt apologies go out to all involved and affected by this
> action.
> We have appreciated your business and wish your family well.
> Sincerely,
> Smart Communications

15.     Smart also sent CSG a letter about the situation, a copy of which is attached as

**Exhibit F**.

16.     Even after Smart fully disabled its system, Smart continued to receive complaints

from inmates and members of the public, including the following examples:

    a.      Please provide my refund.  I did not send money to Sheriff's Office.
            I will be contacting Better Business Bureau if you don't provide
            refund. (5:00 pm, from a member of the public)

    b.      Where is my money (5:04 pm, from a member of the public)

    c.      i had an hours worth of visits today and the system is apparently
            down you are blaming it on the wcdc staff and they are saying it is
            yall guys i dont really give a f*** either way i just want my visits
            and to know what yall are going to do about the credits my family
            bought and also what is going to happen with our mail (6:19 pm,
            from an inmate)

    d.    The jail has informed us that it is smartjail's [Smart's] fault we cant us[e] the system. that the system was supposed to be down next week Monday,tuesday,& and wed not this week. just because the jail is switching service providers doesnt mean we should have to suffer not talking to our family's. so it would be nice if you turn the system back on until they officaly switch. thank you (7:53 pm, from an inmate).

A true, complete, and authentic copy of these exemplary complaints is attached as

**Composite Exhibit G**.

17.    On January 22, 2020, KNWA News, the local NBC affiliate for Northwest Arkansas, published an article reporting that "the jail's IT worker accidentally shut off the system when trying to restrict future visitations, knowing the sheriff's office would have a new system in place." A true, complete, and authentic copy of the article is attached as **Exhibit H**.

18.    On January 22, 2020, a reporter from the Northwest Arkansas Democrat-Gazette contacted Smart and sent a copy of a statement prepared by Washington County. The statement refers to the February 3, 2020 deadline Washington previously conveyed and provides that, "since no one from Smart [] made any attempt to schedule the removal of their equipment and terminate their services, the Washington County Sheriff's Office had scheduled the transition to take place starting on Monday, January 27, 2020." The statement is also available on Washington County's Facebook page. Neither Washington County nor CSG had ever requested that Smart keep its services in place until January 27, 2020 or informed Smart of any transition procedure.

19.    Washington County's prepared statement includes multiple inaccuracies and over-the-top rhetoric that are certain to damage Smart's reputation, including the following:

    a.    On January 3, 2020, the Washington County Sheriff's Office was made aware the court had ruled in Correct Solutions Group's favor on all counts and Correct Solutions Group did not have to renew their contract with Smart Communications Holding, Inc.

      b.     Without notice, on January 21, 2020, Smart Communications Holding, Inc. shut off their services to the Washington County Sheriff's Office.

      c.     The Washington County Sheriff's Office has no control over Smart Communications Holding, Inc.'s flagrant disregard for the detainees and citizens.  This type of action is just one of many reasons changes had to be made to provide proper services to detainees.

      d.     In an attempt to compensate the detainees and citizens for the shortcomings of Smart Communications Holding, Inc., Tech Friends, Inc. and Summit Food Service have volunteered to provide free unlimited emails (both incoming and outgoing) for a short period of time.

A true, complete, and authentic copy of Washington County's statement is attached as

**Exhibit I**.

20.   Washington County's statement also provides that its inmates have always had access to email services provided by Tech Friends. Accordingly, Washington not only admits that Smart did not receive the exclusivity that it bargained for when contracting with CSG, but it publicizes the fact that Smart did not have an exclusive relationship with Washington County for electronic communications. When Washington County publicized that Tech Friends "has always been in place and working for detainee communication," it signaled to the corrections community that Smart was never an exclusive provider in Washington County and further damaged the reputation Smart previously enjoyed as an exclusive provider.

21.   On January 23, 2020, the Gazette published an article with the following statements, which were provided by Washington County and/or included in the prepared statement:

      a.     The company providing the communication service shut it down Tuesday, according to the sheriff's office.

      b.     Without notice, on Jan. 21, 2020, Smart Communications Holding, Inc. shut off their services to Washington County Sheriff's Office.

    c.       Smart Communications Holding, Inc., sent out numerous emails and posts indicating we had terminated their service without proper notice. This is not true.

    d.       Tech Friends, a subcontractor for Summit Food Service, which provides commissary services at the jail, had an email system available to the inmates and would provide the full range of electronic communication services going forward.

    e.       Jay Cantrell said the inmates hadn't lodged any complaints about the Smart Communications system shutdown. "It's been down about as much as it's been up," Cantrell said. "Nobody made a fuss about it so I guess they just figured it was down again.

A true, complete, and authentic copy of the article is attached as **Exhibit J**.

22.     These statements were included in the published articles and the public statement of Washington County, which are both available online for all of Smart's customers, potential customers, and users of its products to see, and no doubt damage Smart's reputation as an accomplished and honorable service provider both in that region and throughout the country.

23.     Washington County has one of the largest correctional facilities in the state of Arkansas. Based on my experience in the industry, smaller agencies and facilities tend to follow the suggestions or the lead of the larger agencies. If CSG is not prohibited from acting in furtherance of all other notices of non-renewal related to the Joint Customers, then the negative press, complaints, and threats we are receiving, along with Washington County's statements about Smart described in Jerry Lipsey's Declaration, will be given credence and will negatively impact Smart's ability to ever have a relationship with each of the Joint Customers or any other corrections facility in Arkansas again.

24.     On January 28, 2020, Smart sent employees to retrieve all Smart equipment from Washington County, in compliance with the January 29, 2020 deadline given by CSG.[1]

25.     In order to mitigate the damage to Smart's reputation and the harm to the public caused by the effectuation of CSG's Notice of Non-Renewal, Smart has also agreed to refund the cost of any unused credits to the friends and family members of the inmates at WCDC who request a refund.

Under penalties of perjury, I declare that I have read the foregoing and that the facts stated in it are true.  Executed January 29, 2020.

Jon Logan
CEO, Smart Communications

---

[1] Smart's hardware only provides a means by which inmates and staff can access Smart's system, which is an internet-based software platform. At any time, either Smart or a customer facility like Washington County can completely disable Smart's software platform at the push of a button. In that event, access to Smart's services would no longer be available and its hardware would serve no function at all.

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

# EXHIBIT A

**to Fourth Declaration of Jon Logan**



182 Bastille Lane • Ruston, Louisiana 71270

December 13, 2019

**VIA CERTIFIED MAIL RECEIPT #** _____
**AND EMAIL:** ██████@smartcommunications.us
Smart Communications Holding, Inc.
10491 72nd Street
Seminole, Florida 33777

Attention: James P. Logan

RE:   Cease and Desist Notice
      (Correct Solutions, LLC's customer: Washington County, AR)

Dear Mr. Logan:

Please be advised that Correct Solutions, LLC ("Correct Solutions") has received notice from its customer, the Washington County Sheriff's Office ("Washington County"), which owns and operates the Washington County, Arkansas Facility ("Washington County Facility"), that Smart Communications Holding, Inc. ("Smart") must cease providing email services to inmates at the Washington County Facility immediately. *See* the attached December 11, 2019 letter from Washington County. Washington County has informed Correct Solutions that it had previously entered a contract with a third-party vendor, Summit Food Services ("Summit"), for commissary goods and services at the Washington County Facility that provides Summit the exclusive right to provide email services to the inmates at the facility. Washington County has been put on notice by Summit that it is in breach of its contract with Summit as a result of Smart's provision of email services to the inmates at the Washington County Facility. *See* the attached December 11, 2019 letter from Summit to Washington County. Washington County's December 11, 2019 letter states that, "Smart Communication will have to remove their email services from our facility, within the next 15 days." *See* attached December 11, 2019 letter from Washington County.

Correct Solutions was unaware of the contract between Washington County and Summit for commissary goods and services at the Washington County Facility, much less the provision contained in the contract that provides Summit the exclusive right to provide email services to the inmates at the facility at the time it entered the Master Services Agreement ("MSA") with Smart and Schedule 1 – Washington County, Arkansas to the MSA. Washington County did not make Correct Solutions aware of any conflict with other vendors as it moved forward with Smart for the provisions of services to the Washington County Facility. That said, however, Correct Solutions has no choice but to request that Smart immediately cease and desist providing email services to the inmates at the Washington County Facility. The December 11, 2019 letter from Washington County provides a contact at the facility – Jak Kimball – with whom Smart is to coordinate.

Phone: 318-232-1525   •   Fax: 318-255-8575   •   www.correctsolutionsgroup.com

Further, the section of the contract between Washington County and Summit referenced in Summit's December 11, 2019 letter only provides that Summit has the exclusive right to provide "secure inmate email". It does not appear to cover other services that Smart currently provides at the Washington County Facility, such as tablets, mail scanning services, and so on. From a reading of the December 11, 2019 letter from Washington County, it seems as though Washington County would like Smart to continue providing mail scanning services, if possible, at the facility -- at least until the dispute regarding Correct Solutions' Notice of Non-Renewal to Smart concerning the MSA between Correct Solutions and Smart and the terms of Schedule 1 -- Washington County, Arkansas to the MSA, is resolved.

Upon receipt of this letter, please contact Jak Kimball at the Washington County Facility promptly to make arrangements to cease and desist providing email services to the inmates at the Washington County Facility.

Sincerely,

Mark Turner

*Director of Sales for Correct Solutions, LLC*

CC:   David L. Gann (via email only)
      General Counsel
      Smart Communications Holding, Inc.
      ██████@smartjailmail.com

      Kenneth Turkel (via email only)
      Brad Barrios (via email only)
      Bajo Cuva Cohen & Turkel
      100 North Tampa Street, Suite 1900
      Tampa, FL 33602
      kturkel@bajocuva.com
      bbarrios@bajocuva.com

 

**Tim Helder**
Sheriff

# Washington County Sheriff's Office

December 11, 2019

To whom it may concern:

We have been made aware that we are in breach of contract with Summit Food Service in relation to email services. We have been in a contract with Summit (formerly CBM) since 2017 and by contract, Summit Food Service has exclusive rights to provide email services at the Washington County Detention Center. It appears we put ourselves in this breech when we allowed Smart Communications to provide email services, with their mail scanning services. Now that we have been formally advised of this breech, we have an obligation to fix the issue. Smart Communication will have to remove their email services from our facility, within the next 15 days. I have no idea how this will affect the mail scanning services they are currently providing, but based on our contract with Summit Food Service, we can no longer allow Smart Communication to provide email service within our facility. If Smart Communications has to remove their mail scanning services as a result of this change, we completely understand and will work with them to make that happen, as well. Since the Washington County Detention Center does not have a contract with Smart Communication, we would like Correct Solutions to notify Smart Communications and inform them of this situation. Representatives from Smart Communications will need to contact our IT Manager, Jak Kimball and make arrangements to get the email services they are currently providing removed from our facility. We apologize for this unfortunate oversite in our contract with Summit Food Service, however the Washington County Sheriff's Office must do the right thing and terminate the email services provided by Smart Communications as specified in the attached letter from Summit Food Service. We have always valued our partnership with Correct Solutions and will continue to do so.

Thank you in advance for your prompt attention to this matter.

Sincerely,

*Capt. KYat*

Captain Kenny Yates

Washington County Sheriff's Office

(479) ███



500 East 52nd Street
Sioux Falls, SD 57104
Office: 605-335-0825
**www.summitfoodservice.com**

December 11, 2019

Washington County Arkansas
280 N College Avenue
Suite 500
Fayetteville, AR 72712

Re:    Notice Breach of Contract – Exhibit A

Dear Sheriff Helder:

Please be advised that the Washington County is in breach of contract with CBM n/k/a Summit Food Services, LLC.. Exhibit A of the agreement dated June 22, 2017, attached hereto, gives Summit *exclusive* rights to provide commissary goods and services, including email services to inmates.

### EXHIBIT A
### COMMISSARY

1. **GRANT:** The County hereby grants Contractor exclusive rights to provide commissary goods and services for the County's adult inmates of Washington County Jail.

2. **OPERATIONAL RESPONSIBILITIES:**

   A. **Grant:**  Contractor shall provide a selection of food products, snacks, candy and gum, clothing, personal hygiene items, health and drug items, and general merchandise (collectively, the "Products"), all of which shall be subject to the approval of the Sheriff.

   Contractor shall provide CBM Caring Packs offered to the inmate's family or friends through the CBM Cares program for delivery to the inmate.

   Contractor shall provide a snack cart that will be offered to the inmates.

   Contractor will offer secure inmate email when County agrees to make it available to the inmates.

   B. **Distribution:**  The Contractor shall deliver commissary items, care packs, and snack

It has been brought to Summit's attention that a company named Smart Communications has now been authorized to provide email services at Washington County. This is in direct conflict with Summit's current contract with Washington County.

Small enough to care . . . Big enough to make a difference.

Per the agreement, the County of Washington has 15 days (or a reasonable amount of time) to rectify any breach. Please immediately cease use of Smart Communications for email services to avoid further action by Summit Food Services, LLC.

Please contact Matt DeRoche, with any questions regarding this Notice of Breach:

Matt DeRoche – Director of Corrections Services
███████e@summitfoodservice.com
(605) ████████

Best regards,

*Mandy Mickus*

Mandy Mickus
Contract and Legal Specialist
Elior North America
███████s@elior-na.com
651-████████

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

# EXHIBIT B

*to Fourth Declaration of Jon Logan*

**From:** Kenneth Yates <███████@co.washington.ar.us>
**Date:** December 23, 2019 at 2:01:36 PM EST
**To:** "jon.███████@smartjailmail.com" <jon.███████@smartjailmail.com>
**Cc:** Alan Johnson <███████@co.washington.ar.us>, Randall Denzer
<███████@co.washington.ar.us>, Jak Kimball <███████@co.washington.ar.us>, Rick
Ferguson <███████@lasallecorrections.com>
**Subject: Breach of Contract**


Mr. Logan,


I am sure you are aware of the email and notice that I sent to Correct Solutions informing them
that we were in breach of contract with Summit Foods by allowing your company to provide
email services to our facility.  I asked that Correct Solutions send the notice to your company
since our contract is with them and not Smart Communications.  The notice we received from
Summit Foods allowed 15 days for Smart Communications to remove their services from our
facility, which would be January 2, 2020 if my calculations are correct.  I have spoken with
Summit Foods and they, as well as us, want this transition to be as smooth as possible.  Due to
the holiday season and the time it takes to a transition such as this, Summit Foods has agreed to
give us and Smart Communication until Monday, February 3, 2020, to fix the breach of contract

issue.  This oversight in our contract with Summit is unfortunate, but as a business man, I think you will agree, we must honor the contract that we agreed to with Summit Foods.

Please have someone in your company give us some dates when they will be at our facility to start removing any of your equipment.  We will need to coordinate the dates with our IT manager, Jak Kimball so he will be able to work with your personnel in removing items.

Thank you in advance for your prompt attention to this matter,

Captain Kenny Yates

Washington County Sheriff's Office

(479) ███

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

# EXHIBIT C

### *to Fourth Declaration of Jon Logan*



**182 Bastille Lane • Ruston, Louisiana 71270**

January 10, 2020

*Via e-mail*

Mr. Jonathan D. Logan
Mr. James P. Logan
Smart Communications Holding, Inc.
10491 72nd Street
Seminole, Florida 33777
███████@smartjailmail.com
███████@smartjailmail.com

Re:   Correct Solutions, LLC's Customer: Washington County

Dear Messrs. Logan:

In accordance with the Notice of Non-Renewal dated October 4, 2019, please notify Rick Pruitt of Correct Solutions at (501)████████, ███████@correctsolutionsgroup.com, the date Smart will be removing all of Smart's system, except for the cabling and conduit, from the Washington County facility.  I have copied Mr. Pruitt and Captain Alan Johnson at Washington County with this letter in the event the removal will require any assistance from Correct Solutions or Washington County. Please ensure that Smart's system has been removed no later than Wednesday, January 29, 2020.

Thank you for your prompt attention.

Sincerely,

*Patrick Temple*
Patrick Temple
*Managing Director for Correct Solutions, LLC*

cc.   Mr. Rick Pruitt, Director of Field Services
Captain Alan Johnson, Washington County

4813-4121-2337, v. 1

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

**COMPOSITE**
# EXHIBIT D
***to Fourth Declaration of Jon Logan***

From: <██████@smartjailmail.com>
Date: Tue, Jan 21, 2020 at 12:20 PM
Subject: Kiosk Maintenance Request - Kiosk 4274
To: <█████@smartjailmail.com>
Cc: <████████████@smartcommunications.us>

my name is █████████████.. i missed a visit today due to the kiosk reporting that the system is
unavailable.. my fiancee walks four hours from Bethel Heights to Fayetteville for these visits, and had to
immediatly turn around due to the kiosk being unavailable.. the kiosk location is washington county detenton
center, WR1. Kiosk 4247, Computer TC-40787.. thank you for your assistance..

| Location: | Washington County Detention Center |
|-----------|------------------------------------|

| Housing: | WR1 |
|----------|-----|
| Kiosk ID: | 4274 - Manage |
| Computer: | TC-40787 |

From: <████ @smartjailmail.com>
Date: Tue, Jan 21, 2020 at 1:54 PM
Subject: Kiosk Maintenance Request - Kiosk 4141
To: <████ @smartjailmail.com>
Cc: ████ @smartcommunications.us>


THIS IS A FEDRAL OFFENSE BY KEEPING OUR LETTERS FROM US OUR MAIL AND OUR
FAMILY'S THIS IS AGAINST THE LAW AND I AM NOTIFING MY ATTORNEY AND AM FILING THE
LAW SUITE IN RESPONSE TO THE KIOS CHANGES WE DONT GET MAIL ON SUNDAY AND ON
TOP OF THAT WE ARE LIMITED TO ONLY RECIEVING MAIL THURSDAY,FRIDAY THAT'S IT
JONATHAN JOSEPH TERRY JACKET NUMBER 125639 YOU WILL BE HEARING FROM MY
ATTORNEY AND THIS IS OUR WE RECIEVE OUR VISITS ALSO

████ JACKET NUMBER#### ████

1

| Location: | Washington County Detention Center |
|---|---|
| Housing: | E |
| Kiosk ID: | 4141 - Manage |
| Computer: | TC-41657 |

From: <████ @smartjailmail.com>
Date: Tue, Jan 21, 2020 at 1:56 PM
Subject: Kiosk Maintenance Request - Kiosk 4249
To: <████ @smartjailmail.com>
Cc: <██████████ @smartcommunications.us>

does this mean that washington county is not allowing for us to recieve our mail on a daily basis i need to know if this is temporary or is it a continual schedule for not having access monday tuesday and wednesday? isnt it against the federal guidelines for being incarcerated and not being able to get our mail

| Location: | Washington County Detention Center |
|-----------|-------------------------------------|
| Housing:  | Y                                   |

| Kiosk ID: | 4249 - Manage |
|-----------|---------------|
| Computer: | TC-41646 |

From: <████ @smartjailmail.com>
Date: Tue, Jan 21, 2020 at 2:13 PM
Subject: Kiosk Maintenance Request - Kiosk 4265
To: <████ @smartjailmail.com>
Cc: <████ ████ @smartcommunications.us>

HOW CAN YOU TAKE AWAY ARE VISITS, AND POSTAL MAIL? WITHOUT EVEN A NOTICE. YEAH WERE IN JAIL BUT WE STILL HAVE RIGHTS, AND WE HAVE RIGHTS TO ARE POSTAL MAIL. THIS IS UNFAIR. WE ARE ALREADY BEING PUNSH FOR BEING IN JAIL NOW, THIS. CAN YOU GIVE AN EXPLANATION ON HOW WE ARE SUPPUSE TO GO ABOUT ARE VISITS FOR THOSE DAYS AND MAIL, I SPEAK FOR ALL OF WCDC.

████████ #██ D-BLOCK

| | |
|---|---|
| Location: | Washington County Detention Center |
| Housing: | D |
| Kiosk ID: | 4265 - Manage |
| Computer: | TC-41649 |

From: <██████@smartjailmail.com>
Date: Tue, Jan 21, 2020 at 2:48 PM
Subject: Kiosk Maintenance Request - Kiosk 4263
To: <█████@smartjailmail.com>
Cc: <████████████@smartcommunications.us>

we aere being lied to about this by the staff they are saying its you guys and that they are fireing you and hireing another company . They also said we cant ask anymore questions or they will throw usin the hole! PLEASE PLEASE GET WORD OUT TO THE PROPER ATHORITYS ON THIS MATTER WE HAVE NO WAY TO KNOW WHATS REALLY GOING ON . OTHER THAN YOU !

| Location: | Washington County Detention Center |
|-----------|-----------------------------------|

1

| | |
|---|---|
| Housing: | A |
| Kiosk ID: | 4263 - Manage |
| Computer: | TC-41648 |

From: <███████@smartjailmail.com>
Date: Tue, Jan 21, 2020 at 2:57 PM
Subject: Kiosk Maintenance Request - Kiosk 4256
To: <███████@smartjailmail.com>
Cc: ████████████████@smartcommunications.us>


████████

we have read the message that you guy put on the kiosk about the system being on a new schedual, we also adn by we i mean that us inmates have talk to the guards and they stated that it isnt them who is doing this with the schedualing thing that it is smart communications that is doing all of this to us. we are confused about what is going on with us not being able to speak with our families or get our mail can someone pleas put something on here for us to be able to get a better understanding about whats going on with our mail

| Location: | Washington County Detention Center |
| Housing: | N |
| Kiosk ID: | 4256 - Manage |
| Computer: | TC-41451 |

From: <███@smartjailmail.com>
Date: Tue, Jan 21, 2020 at 4:04 PM
Subject: Kiosk Maintenance Request - Kiosk 4279
To: <███@smartjailmail.com>
Cc: <██████@smartcommunications.us>


what is going to happen with credits left over after the system has been changed to a new provider? and how is it that WCDC says it is the proviers fault, and this system message is saying that WCDC has asked for the change in schedule activity? - ██ V #███ CST -6 Computer tc-41628


| Location: | Washington County Detention Center |
|-----------|-------------------------------------|

1

| Housing:  | S         |
|-----------|-----------|
| Kiosk ID: | 4279 - [Manage](Manage) |
| Computer: | TC-41628  |

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

# EXHIBIT E

### *to Fourth Declaration of Jon Logan*



*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

# EXHIBIT F

### *to Fourth Declaration of Jon Logan*



January 21, 2020

***Via FedEx and E-mail:  KAB@harlleebald.com***

Kimberly A. Bald
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205

   Re: *Smart Communications Holding, Inc. v. Correct Solutions, LLC*

Dear Ms. Bald,

  Smart Communications Holding, Inc. ("Smart") and Correct Solutions Group, LLC ("CSG") are parties to a contract whereby Smart is obligated to provide certain inmate communications services and whereby CSG is obligated to provide Smart with exclusive access to customer facilities, including the facility operated by the Washington County, Arkansas Sheriff's Office ("Washington"). As you know, CSG and Washington renewed their Correctional Communications Service Agreement and CSG has asserted that Smart's services were not part of the renewal. Smart disagrees and, accordingly, has continued to provide its services well into the renewal period of the CSG/Washington Agreement.

  However, we have just become aware that CSG and Washington have restricted Smart's services such that the Washington inmates may only access Smart's system, including electronic messaging, during a very limited timeframe. This is a material breach of the agreement between Smart and CSG. Enclosed for your convenience is a screenshot of the Schedules portion of Smart's system, which demonstrates that Smart's services have been almost entirely disabled.

  CSG's position that Smart is required to remove its equipment from Washington has always been wrong. However, CSG should have at least provided Smart with the opportunity to retrieve its equipment and ensure an orderly transition away from Smart's services in Washington (as both CSG and Washington previously represented would occur). CSG's decision to permit the immediate termination of Smart's services has further damaged Smart's reputation as an inmate communications service provider and has placed Smart's equipment at risk of being destroyed by angry inmates. Smart has already received numerous complaints and threats from inmates, some of which are enclosed, about its services being unavailable. Many of the inmates indicate they have been told by Washington that Smart is responsible for the lack of services. Such statements are obviously untrue. Smart has never suspended or restricted any of its services in Washington. Yet, Smart is being blamed for depriving inmates of constitutional rights to receive mail.

{BC00275046:1}

Kimberly A. Bald
Page 2
January 21, 2020

Because CSG and Washington have elected to disable Smart's services in this manner, Smart has no choice but to remove the remainder of its services and equipment. Smart cannot be in the position of having its severely disabled services available to inmates and the public, which reflects poorly on Smart and is eminently unfair to all affected third-parties. Smart considers CSG's conduct a material breach of its agreement and is taking these steps to mitigate the damage being done to its reputation, to hopefully salvage its hardware and equipment, and to minimize losses to the public.

Effective immediately, Smart has disabled the remainder of its services, meaning that inmates and staff will not be able to access the system through either kiosks or tablets. Smart will also no longer be processing postal mail. All mail for Washington inmates that Smart has in its possession or receives will be set aside and stored at Smart's facility in Florida. CSG may pick up the mail at any time during regular business hours, with reasonable advanced notice to Smart.

Smart reserves all rights and remedies available under the law, including, but not limited to, an action for breach of contract to recover damages against CSG.

Sincerely,

BAJO | CUVA | COHEN | TURKEL

Brad F. Barrios

Enclosures
cc:     David Gann, Esq. (via email)
        Luke Piontek, Esq. (via email)
        Capt. Alan Johnson (via email)

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

**COMPOSITE**
# EXHIBIT G

***to Fourth Declaration of Jon Logan***

**From:** ██████████████████████
**Date:** January 21, 2020 at 5:00:43 PM EST
**To:** ██████@smartjailmail.com
**Subject: Re:  SmartJailMail discontinued at Washington County Detention Center**

Please provide my refund.  I did not send money to Sheriff's Office. I will be contacting Better
Business Bureau if you don't provide refund.

████████████

1

**From:** ███████████████████████████
**Date:** January 21, 2020 at 5:04:18 PM EST
**To:** ████@smartjailmail.com
**Subject: Re:  SmartJailMail discontinued at Washington County Detention Center**


Where is my money

████████████

**From:** ████@smartjailmail.com
**Date:** January 21, 2020 at 6:19:40 PM EST
**To:** ███@smartjailmail.com
**Cc:** ██████████@smartcommunications.us
**Subject: Kiosk Maintenance Request - Kiosk 4277**

i had an hours worth of visits today and the system is apparently down you are blaming it on the wcdc staff and they are saying it is yall guys i dont really give a f*** either way i just want my visits and to know what yall are going to do about the credits my family bought and also what is going to happen with our mail

| | |
|---|---|
| Location: | Washington County Detention Center |
| Housing: | L |
| Kiosk ID: | 4277 - Manage |
| Computer: | TC-41630 |

**From:** ▮▮▮▮ @smartjailmail.com
**Date:** January 21, 2020 at 7:53:30 PM EST
**To:** ▮▮▮▮ @smartjailmail.com
**Cc:** ▮▮▮▮▮▮ @smartcommunications.us
**Subject: Kiosk Maintenance Request - Kiosk 4279**

The jail has informed us that it is smartjail's fault we cant us the system. that the system was supposed to be down next week Monday,tuesday,& and wed not this week. just because the jail is switching service providers doesnt mean we should have to suffer not talking to our family's. so it would be nice if you turn the system back on until they officaly switch. thank you

S kiosk 4279 TC-41628 A-pod S-Block jacket #9307681

| Location: | Washington County Detention Center |
|---|---|
| Housing: | S |
| Kiosk ID: | 4279 - Manage |
| Computer: | TC-41628 |

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

# EXHIBIT H

### *to Fourth Declaration of Jon Logan*




NEWS ⌄    WEATHER ⌄    PIG TRAIL NATION ⌄    CONTESTS ⌄    COMMUNITY ⌄    GOOD DAY NWA ⌄    ADVICE NETWORK ⌄    ABOUT US ⌄    🔍

WEATHER ALERTS / Winter Weather Advisory: Adair, Delaware                    ‹ 1/3 ›

Incontinence care you can trust
Walgreens Certainty™ is the No. 1 selling incontinence brand at Walgreens!

Walgreens
Certainty™

KNWA

# Washington County jail communications system temporarily down





Washington County jail communications system temporarily down (KNWA)

1 minute left

JAIL COMM. SYSTEM GOES DOWN
SHERIFF BLAMES COMPANY

RUTLEDGE SIGNS LETTER URGING THE SENATE TO REJECT IMPEACHMENT.    LOCAL

by: Andrew Epperson

Posted: Jan 22, 2020 / 07:03 PM CST / Updated: Jan 22, 2020 / 07:03 PM CST

FAYETTEVILLE, Ark. (KNWA) — The Washington County Jail's communication system is temporarily down, forcing administrators to look for other options so inmates can still speak to the outside world.

On Tuesday afternoon, people who frequently visit jail inmates received an email from Smart Communications, which was subcontracted to provide communication services.

"The Washington County Sheriff's office has terminated our services without proper notice as of 1/21/2020," said the email, which was forwarded to KNWA. "All services (inmate email, photos, visitation, and postal mail services) have been terminated. Please direct all comments, concerns, request for return of funds to the Washington County Sheriff's office."

Many jailed inmates are awaiting trial and haven't been convicted to this point. Clint Schnekloth is the pastor of Good Shepherd Lutheran Church in Fayetteville. He said there are inmates he needs to visit but is unable to while there's no communications system in place.

"I'm worried about them, and I'm especially worried about all the people that're affected," Schnekloth said. "There are some people for whom this was just like their way of talking to their parent or their



ALL-NEW SILVERADO

OFFERING A
6.2L
WITH BEST-IN-CLASS
V8 HORSEPOWER*

CHEVROLET

Build & Price

Locate A Vehicle

*important info

TRENDING STORIES

1  Weather

2  Arkansas Adds Four-Star Running Back to Class

3  Pig Trail Nation

4  Two Fayetteville schools tell district they want to be off continuous schedules

5  Arkansas Dept. of Health monitoring coronavirus outbreak



KNWA

Get the mobile app!

is unable to while there's no communications system in place.

"I'm worried about them, and I'm especially worried about all the people that're affected," Schnekloth said. "There are some people for whom this was just like their way of talking to their parent or their spouse."

In a press release sent Wednesday, the sheriff's office refuted Smart Communications' claims. The office said contract disputes unrelated to the jail affected Smart Communications, though administrators were informed the jail would still have service until February.

"We were kind of caught in the middle of this situation, but we weren't saddened by it because we weren't getting good service from the company we had," said Sheriff Tim Helder. "Our staff was cooperating with Smart Communications to formulate an exit strategy. We didn't want to pull the rug out from them. We wanted to give them time to get their ducks in a row."

The jail's IT worker accidentally shut off the system when trying to restrict future visitations, knowing the sheriff's office would have a new system in place. When he tried to turn it back on, he learned Smart Communications had blocked the office from doing so, Helder said. The company did not communicate this to the jail.

"Smart Communications said, 'we're pulling the plug,' basically," Helder said. "We found ourselves in a catch-22, where the public wanted to know why we had done this without proper planning, when in fact we had done all the planning. The company took this route to not communicate with us."

Helder refuted Smart Communications claims that those looking to be reimbursed for SmartMail and other services needed to contact the sheriff's office. That money goes directly to the vendor, Helder said.

"It's not that I don't want to reimburse people, it's just that we've never received money," Helder said.

The jail will offer free-of-charge email services until Jan. 27 when a new system will be implemented, according to the press release.

Copyright 2020 Nexstar Broadcasting, Inc. All rights reserved. This material may not be published, broadcast, rewritten, or redistributed.

SHARE THIS STORY ►        

—

## LATEST VIDEO


**Freezing cat saved in Fort Smith (KNWA)**


**Pet of the Week: Dino and Carston (KNWA)**


**Operation Sock Drive #413 KNWA**







**DON'T MISS**



### Big Game Charity Kickoff Challenge

Don't Miss / 1 week ago

**FOX24 Watch & Win**

Contests / 3 weeks ago

**Win Allen's Food Market New Year shopping spree**

Don't Miss / 1 month ago

**Nominate a Remarkable Woman in Your Life**

Contests / 1 month ago

More Don't Miss →



Document title: Washington County jail communications system temporarily down
Capture URL: https://www.nwahomepage.com/news/knwa/washington-county-jail-communications-system-temporarily-down/
Capture timestamp (UTC): Fri, 24 Jan 2020 14:22:13 GMT
Page 2 of 6

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

# EXHIBIT I

*to Fourth Declaration of Jon Logan*

 

**Tim Helder**
**Sheriff**

# Washington County Sheriff's Office

January 22, 2020

It has been brought to our attention Smart Communications Holding, Inc. has sent out a statement to all public users stating Washington County has canceled their contract with Smart Communications without notice. First, the Washington County Sheriff's Office does not have a contract with Smart Communications Holding, Inc. The Washington County Sheriff's Office has a contract with Correct Solutions Group, who subcontracted with Smart Communications Holding, Inc. Correct Solutions Group did not renew their contract with Smart Communications Holding, Inc., which was communicated to them in writing on October 4, 2019.

While in discussions with Correct Solutions Group, the Washington County Sheriff's Office became aware of a provision in our contract with current provider Summit Food Service, stating Summit Food Service has exclusive rights to all electronic messaging services for detainees incarcerated in the Washington County Detention Center. On December 11, 2019, the Washington County Sheriff's Office received a letter from Summit Food Service formally advising of the provision in the contract and informing us we had 15 days, or a reasonable amount of time (which would have been January 1, 2020), to rectify it.  That same day, a copy of that letter, as well as a letter of explanation, was sent to Correct Solutions Group informing them of the steps which had to take place within the allowed time period.

On December 19, 2019 Washington County Sheriff's Office staff testified at a court hearing in Tampa, Florida. Testimony was provided in reference to the contract, as well as Smart Communications Holding, Inc. not fulfilling their obligations to the Washington County Sheriff's Office and the detainees incarcerated in the Washington County Detention Center.

On December 23, 2019, we were contacted by staff from Summit Food Service in reference to the letter we had received on December 11, 2019.  Summit staff informed us, due to the holiday season and the inconvenience it would place on the Washington

County Detention Center and Smart Communications Holding, Inc., Summit Food Service would extend the deadline for Smart Communications Holding, Inc. to February 3, 2020. Summit Foods and the Washington County Sheriff's Office wanted Smart Communications Holding, Inc.'s exit from the facility to be as convenient and straightforward as possible, which was the basis for the extension. On that same day, we sent an email to Jon Logan, the CEO of Smart Communications Holding, Inc. and Correct Solutions Group informing them of the extension. Mr. Logan was asked to contact us, so we could formulate a plan for their exit. To this day, we have never been contacted.

On January 3, 2020, the Washington County Sheriff's Office was made aware the court had ruled in Correct Solutions Group's favor on all counts and Correct Solutions Group did not have to renew their contract with Smart Communications Holding, Inc.

On January 9, 2020 the Washington County Sheriff's Office staff communicated with Smart Communications Holding, Inc.'s representative, Jerry Lipsey, by phone, of our intentions to remove Smart Communications Holding, Inc. from the Detention Center and to transition services to the current provider Summit Food Service and Tech Friends, Inc. It was explained to Mr. Lipsey our reasons for discontinuing services with Smart Communications Holding, Inc. Mr. Lipsey said he would help make our transition as smooth as possible and he would contact us with the details and a plan. This did not happen.

On January 10, 2020, The Washington County Sheriff's Office received a copy of a letter addressed to Jonathan Logan at Smart Communications Holding, Inc., from Correct Solutions Group. This letter informed Smart Communications Holding, Inc., as their subcontractor, that Correct Solutions Group did not re-new their contract and asked Smart Communications Holding, Inc. to remove their equipment no later than January 29, 2020. Mr. Logan was asked to contact Correct Solutions Group and the Washington County Sheriff's Office to schedule the removal of their equipment. To this day no one from Smart Communication has contacted us.

Since no one from Smart Communications Holding, Inc. made any attempt to schedule the removal of their equipment and terminate their services, the Washington County Sheriff's Office had scheduled the transition to take place starting on Monday, January 27, 2020.

Without notice, on January 21, 2020, Smart Communications Holding, Inc. shut off their services to the Washington County Sheriff's Office. Smart Communications

Holding, Inc. sent out numerous emails and posts indicating we had terminated their service without proper notice.  This statement is not true.  Smart Communications Holding, Inc. also told citizens to direct all comments, concerns and requests for return of funds to the Washington County Sheriff's Office, which is not the correct way to handle this issue.  No funds have ever been sent to the Washington County Sheriff's Office for Smart Communications Holding, Inc. services.  The money went directly to them from citizens and they are responsible for the refunds.  We have no way of refunding funds, which were never sent to us.  The Washington County Sheriff's Office has no control over Smart Communications Holding, Inc.'s flagrant disregard for the detainees and citizens.  This type of action is just one of many reasons changes had to be made to provide proper services to detainees.

The Washington County Sheriff's Office is committed to providing the best services to the citizens of Washington County and the detainees incarcerated in the Washington County Detention Center. We are working with our current providers, who will be on-site today, to begin the transition to get our service back up and running, which we hope will be by the end of this week. We apologize for any inconveniences and are working diligently to correct the problem.

The detainees have never been without email services to stay in contact with their families and loved ones. The email provided by Tech Friends, Inc. (an Arkansas company) has always been in place and working for detainee communication.  Tech Friends, Inc., who is a subcontractor for Summit Food Service will now be the sole provider of email services for the Washington County Detention Center.  In an attempt to compensate the detainees and citizens for the shortcomings of Smart Communications Holding, Inc., Tech Friends, Inc. and Summit Food Service have volunteered to provide free unlimited emails (both incoming and outgoing) for a short period of time.  The unlimited emails will be free of charge from now until Monday, January 27, 2020 at 8:00 am.  Normal charges for email will resume at that point.

The Washington County Sheriff's Office will continue to do the right things, for the right reasons, without exception, which was done in this unfortunate incident created by Smart Communications Holding, Inc.

Filing # 102560505 E-Filed 01/31/2020 12:34:03 PM

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
Case No.  19-CA-008089

# EXHIBIT J

*to Fourth Declaration of Jon Logan*

≡ Sections     🔍                Arkansas Democrat 🌲 Gazette                Sign in   Subscribe

🏛 Today's Paper   Search   Latest   Core values   App   Traffic   #Gazette200   Listen   Story ideas   iPad FAQ   Weather   Newsletters   Obits   Puzzles   Archive

ADVERTISEMENT

What Mortgage Amount Do You Need?    $225,000        lendingtree

[Calculate Payment]



# Dispute hinders inmates' services

## Sheriff says mail system shut down

by **Tom Sissom** | Today at 3:19 a.m.

f  ✉  🐦  0

[Follow]



NWA Democrat-Gazette FILE PHOTO The exterior of the Washington County jail.

FAYETTEVILLE -- The electronic communication service for Washington County jail inmates was interrupted Tuesday by a disagreement between the sheriff's office and the company providing the service.

The sheriff's office announced Jan. 14 that it was planning to change the vendor providing mail service for detainees. A date for the change hadn't yet been decided.

**Daily Email Newsletters**

Stay connected and informed with ArkansasOnline.com news updates delivered straight to your inbox.

Email Address

[Sign Up]

**Detainee mail**

The Washington County Detention Center began using an electronic communications system for detainees in 2018, according to the Sheriff's Office. Jay Cantrell, chief deputy, said electronic mail and visitation services are more efficient, requiring fewer employees to monitor detainees during visitations, and also safer, reducing the risk of contraband getting into the jail.

Source: Staff report

ADVERTISEMENT


Our oats. Your creation.
QUAKER   [Buy Now]

**Recommended For You**

MAPS: Election zones for Little Rock School District get attention; panel set to hear of 3 options today

Blue Cake Co. buys Honey Pies, sets west Little Rock space as new prime location; Heights bakery to serve as satellite spot

At state Capitol, policy to set access-card restrictions

Woman beaten, robbed outside Walgreens in Little Rock, police say

Little Rock police find man, 21, dead in vehicle

ADVERTISEMENT

Select Loan Amount



$225,000



ADVERTISING


Julie Walker
Listening

Document title: Dispute hinders inmates&#39; services
Capture URL: https://www.arkansasonline.com/news/2020/jan/23/contract-dispute-interrupts-email-at-wa-1/
Capture timestamp (UTC): Thu, 23 Jan 2020 18:18:33 GMT

Page 1 of 5

ESCAPE

AD   $0.00 / $0.00

Sponsored by Connatix

ADVERTISEMENT

Today's
Mortgage Rate

# 3.07%

APR 15 Year Fixed

Select Loan Amount

$

$225,000

Calculate Payment ▸


lendingtree

Terms & Conditions Apply NMLS#1139

The service included email and digitized copies of traditional mail, which has been a security concern at the jail, according to Chief Deputy Jay Cantrell. Cantrell said there have been instances of people soaking letters in diluted methamphetamine and drying the paper before sending it through the mail. The inmates would eat the paper.

The company providing the communication service shut it down Tuesday, according to the sheriff's office.

The service was set up so that inmates could have money deposited into accounts in their names so they could use the features of the system. The service charges a penny per minute to stream movies and video games from a tablet inmates would check out, Kelly Cantrell, spokeswoman for the sheriff's office said. That feature rarely worked, she said.

Remote visitation, where inmates spoke with friends, family members and others who were using phones and computers, cost 50 cents per minute. Email, both outgoing and incoming, also cost 50 cents. Inmates could have visitors at no charge at the jail using electronic monitors.

"Without notice, on Jan. 21, 2020, Smart Communications Holding, Inc. shut off their services to the Washington County Sheriff's Office," a statement from the sheriff's office said. "Smart Communications Holding, Inc., sent out numerous emails and posts indicating we had terminated their service without proper notice. This is not true."

David Gann, an attorney for Smart Communications, disagreed with the sheriff's office characterization of the dispute and said Wednesday that he was preparing a detailed response. The response wasn't available by press time Wednesday.

The company said the sheriff's office "has terminated our services without proper notice" in a message sent to registered users of the system. The company said all services had been terminated and told users to direct comments, concerns and requests for refunds to the sheriff's office.

The sheriff's office said the company has known since October that its contract wasn't being renewed. Two employees of the sheriff's office were called to testify in December in a court case involving Correct Solutions Group and that company's decision to stop using Smart Communications as a subcontractor.

ARTICLE CONTINUES BELOW

ADVERTISEMENT


Your creation.

QUAKER
OATS

QUAKER

More related headlines

Sheriff's deputy arrested in Northwest Arkansas

The sheriff's office contracts directly with Correct Solutions Group.

"No funds have ever been sent to the Washington County Sheriff's Office for Smart Communications Holding," according to a statement from the sheriff's office. "The money went directly to them from citizens and they are responsible for the refunds."

The sheriff's office said inmates had email service. TechFriends, a subcontractor for Summit Food Service, which provides commissary services at the jail, had an email system available to inmates and would provide the full range of electronic communication services going forward.

To make up for the interruption, Tech Friends and Summit Foods are offering free unlimited meals for inmates until Monday.

Jay Cantrell said the inmates hadn't lodged any complaints about the Smart Communications system shutdown.

"It's been down about as much as it's been up," Cantrell said. "Nobody made a fuss about it so I guess they just figured it was down again."

Clint Schnekloth, lead pastor at Good Shepherd Lutheran Church, said he used the electronic communications

Jay Cantrell said the inmates hadn't lodged any complaints about the Smart Communications system shutdown.

"It's been down about as much as it's been up," Cantrell said. "Nobody made a fuss about it so I guess they just figured it was down again."

Clint Schnekloth, lead pastor at Good Shepherd Lutheran Church, said he used the electronic communications system with mixed results. He said the sound and video quality were poor and often interrupted and the cameras used on the inmate side often lost focus.

Schnekloth said he would prefer the sheriff's office take over the process and stop charging inmates, their families and others to communicate.

"The problem is they're still outsourcing it to a for-profit industry," Schnekloth said. "There's still going to be a cost to inmates or families for visitation. It's financially extractive. I think it's really inhumane to be separating people who are pretrial detainees from their families and congregations."

*Metro on 01/23/2020*

*Print Headline: Dispute hinders inmates' services*

## Topics

Washington county, Jay Cantrell, Detention Center

## Related Articles



**Sheriff's deputy arrested in Northwest Arkansas**



**Arkansas sheriff's office searching for inmate who walked away from jail**



**Inmate found dead at jail is identified**

## Sponsor Content

## Recommended For You



**Landers exec dies at age 35 of heart attack**



**Arkansas sheriff's office searching for inmate who walked away from jail**



**Appear in Arkansas court, explain, judge orders Hunter Biden**

### SPONSOR CONTENT



**Do You Know Which Car Brand Won the Most Sought-After Award in Auto Industry For the Second Year?**

*By Mazda Latino*

This is the second straight Best Compact SUV honor for the Mazda CX-5, and third consecutive Best Mid-Size SUV crowning for the Mazda CX-9.

## Comments

Join the conversation  |  Sign in   Register

Welcome to our new commenting experience. Please sign in above using your site login credentials to begin sharing your thoughts and opinion. If you're already logged into the site, the sign in form will update your information automatically.

Our comment area is provided to give users an opportunity to express their opinions and share their ideas and information in a civil manner. So please:

ADVERTISEMENT

Today's
Mortgage Rate

## 3.07%

APR 15 Year Fixed

Select Loan Amount



## $225,000

**Calculate Payment ▸**



Terms & Conditions Apply NMLS#1133

Filing # 102642576 E-Filed 02/05/2020 01:57:46 PM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                                       Case No: 19-CA-008089

         Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

         Defendant.

_____/

## <u>NOTICE OF HEARING</u>

PLEASE TAKE NOTICE that the undersigned will call up for hearing before the Honorable Rex M. Barbas, George Edgecomb Courthouse, 800 E. Twiggs Street, Hearing Room 514, Tampa, FL  33602, on **March 13, 2020, at 10:00 a.m.**, or as soon thereafter as counsel can be heard the following:  (1) Plaintiff's Emergency Amended Motion for Leave to File Amended Complaint (filed 12/4/19) and (2) Defendants' Objection to Notice of Intent to Serve Subpoenas for Documents in Another State (filed 11/18/19).

         Time Reserved:              30 minutes

         Court Reporter:             U.S. Legal Support

         JAWS Confirmation No.:    12J- 34969017483

**PLEASE GOVERN YOURSELVES ACCORDINGLY.**

{BC00276360:1}

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this 3rd day of February, 2020, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
          JEL@harlleebald.com
          DDF@harlleebald.com
          CL@harlleebald.com

*/s/ Brad F. Barrios*
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293
E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

Filing # 102901604 E-Filed 02/06/2020 05:47:41 PM

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                             Case No: 19-CA-008089

      Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

      Defendant.

_____/

## NOTICE OF INTENT TO SERVE
## SUBPOENA FOR DOCUMENTS IN ANOTHER STATE

PLEASE TAKE NOTICE that, pursuant to Rule 1.410 of the Florida Rules of Civil

Procedure, Plaintiff, Smart Communications Holding, Inc., intends, after 10 days, and if no

objections are received from any party, to present the attached Subpoena directed to **Greene**

**County Sheriff's Office** a non-party to this action residing in Arkansas, to an authority

competent to issue an Arkansas subpoena with identical terms.  That Arkansas subpoena shall

then be promptly served on Greene County Sheriff's Department.

DATED:  February 6, 2020.

                                    */s/ Brad F. Barrios*_____
                                    Kenneth G. Turkel – FBN 867233
                                    E-mail:  kturkel@bajocuva.com
                                    Brad F. Barrios – FBN 35293
                                    E-mail: bbarrios@bajocuva.com
                                    David A. Hayes – FBN  96657
                                    E-mail: dhayes@bajocuva.com
                                    BAJO | CUVA | COHEN | TURKEL
                                    100 North Tampa Street, Suite 1900
                                    Tampa, Florida 33602

{BC00276559:1}

(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

     I HEREBY CERTIFY that on this 6th day of February, 2020, I caused a true and correct copy of the foregoing to be served via the Florida Court's E-Filing Portal upon the following counsel of record:

Luke F. Piontek
E-mail:  lpiontek@roedelparsons.com
Roedel, Parsons, Koch, Blache, Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA  70809

Kimberly A. Bald
James E. Lynch
Harllee & Bald, P.A.
202 Old Main Street
Bradenton, FL  34205
E-mails:  KAB@harlleebald.com
         JEL@harlleebald.com
         DDF@harlleebald.com
         CL@harlleebald.com


                                   */s/ Brad F. Barrios*
                                     Attorney

Case 8:20-cv-01469-WFJ-TGW   Document 1-11   Filed 06/26/20   Page 112 of 150 PageID 1614

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

                                           Case No: 19-CA-008089

       Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a      **SUBPOENA DUCES TECUM**
CORRECT SOLUTIONS GROUP, LLC,   (pursuant to the Uniform Interstate Deposition
                                     and Discovery Act and Rule 45.1, Arkansas
       Defendant.                  Rules of Civil Procedure)

_____/

**SUBPOENA DUCES TECUM WITHOUT DEPOSITION**
**PURSUANT TO THE UNIFORM INTERSTATE DEPOSITION AND DISCOVERY ACT**

THE STATE OF FLORIDA:

      Greene County Sheriff's Office
      Greene County Jail
      1809 North Rockingchair Rd.
      Paragould, AR 72450

YOU ARE COMMANDED to appear at Posey Express Process Service, 2318 Redbud Dr.,
Jonesboro, AR  72401, on **Wednesday, April 1, 2020, at 10:00 a.m.** and to have with you at
that time and place the following:

**SEE EXHIBIT "A"**

      It is the intent of this subpoena that each and every document and thing in your care,
custody, or control, or available to you, no matter how insignificant that item may appear to the
party to whom this subpoena is directed, be produced.

      This subpoena encompasses all documents and things, regardless of how old, including
anything that might be on microfilm/micro-fiche or kept at another location.

      To comply with the subpoena, you are to produce each and every document or thing
which has ever been a part of your file.  If any document or thing is not produced, you are to
identify that document or thing by date, title, author, and recipient; and identify the person,

pursuant to whose instruction the documents or things were not produced, by name, address and employer.

These items will be inspected and may be copied at that time.  You will not be required to surrender the original items.

**YOU MAY COMPLY WITH THIS SUBPOENA BY PROVIDING LEGIBLE COPIES OF THE ITEMS TO BE PRODUCED TO BAJO | CUVA | COHEN | TURKEL, ATTN: BRAD F. BARRIOS, 100 N. TAMPA STREET, SUITE 1900, TAMPA, FL  33602 ON OR BEFORE THE SCHEDULED DATE OF PRODUCTION.**

You may condition the preparation of the copies upon the payment in advance of the reasonable cost of preparation.

**You may mail, e-mail or deliver the copies to Brad F. Barrios, Bajo | Cuva | Cohen | Turkel, 100 N. Tampa Street, Suite 1900, Tampa, FL  33602 (BBarrios@Bajocuva.com) and thereby eliminate your appearance at the time and place specified above.**

You have the right to object to the production pursuant to this subpoena at any time before production by giving written notice to the attorney whose name appears on this subpoena.

**THIS WILL NOT BE A DEPOSITION.  NO TESTIMONY WILL BE TAKEN.**

If you fail to:

(1) appear as specified; or
(2) furnish the records instead of appearing as provided above; or
(3) object to this subpoena

You may be in contempt of court.  You are subpoenaed to appear by the following attorney, and unless excused from this subpoena by this attorney or the court, you shall respond to this subpoena as directed.

**\*\*RECORDS CUSTODIAN – PLEASE COMPLETE ATTACHED AFFIDAVIT\*\***

**PLEASE GOVERN YOURSELF ACCORDINGLY.**

DATED on February ___, 2020.

For the Court

_____
Kenneth G. Turkel – FBN 867233
E-mail:  kturkel@bajocuva.com
Brad F. Barrios – FBN 35293

2

E-mail: bbarrios@bajocuva.com
David A. Hayes – FBN  96657
E-mail: dhayes@bajocuva.com
BAJO | CUVA | COHEN | TURKEL
100 North Tampa Street, Suite 1900
Tampa, Florida 33602
(813) 443-2199 (telephone)
(813) 443-2193 (facsimile)
*Counsel for Plaintiff*


   **If you are a person with a disability who needs any accommodation in order to participate in this proceeding, you are entitled, at no cost to you, to the provision of certain assistance.  Please contact [identify applicable court personnel by name, address, and telephone number] at least 7 days before your scheduled court appearance, or immediately upon receiving this notification if the time before the scheduled appearance is less than 7 days; if you are hearing or voice impaired, call 711.**

## ATTACHMENT "A" TO SUBPOENA DUCES TECUM
## ISSUED TO GREENE COUNTY SHERIFF'S DEPARTMENT

### INSTRUCTIONS

As used in this Exhibit:

1.  **"Document"** as used herein shall include without limitation, every written, printed, typed, reported, magnetically or electrically impulse, or graphic record or material including every draft and/or non-identical copy thereof of every type and description that is in the actual or constructive possession, control, or custody of you, or any agent or attorney of you, including, but not limited to, all correspondence, letters, memoranda, notes, contracts, proposed contracts or agreements, whether or not actually consummated, leases, assignments, reports, logs, studies, summaries, opinions, certificates, agendas, bulletins, newsletters, articles, notices, announcements, instructions, charges, manuals, models, publications, books, minutes, computer printouts, schedules, film, microfilm, microfiche, videotape, tape, or other voice and/or picture recordings, simulations, intra and inter-company memoranda, articles of newspapers, magazines and other publications, telegrams, purchase orders, offers, inquiries, lists, proposals, invoices, plans, specifications, addenda, statements, canceled checks, confirmation slips, receipts, evidence of payments, bills, accountings, diaries, calendars, bills of lading, pamphlets, brochures, communications, agreements, listings, accounts, financial statement, records of account, ledgers, ledger sheets, canceled checks, vouchers, audits, questionnaires, recordings, transcriptions, floppy discs, CD's, flash drives, e-mail, writings, drawings, graphs, charts, photographs, or any other data compilation, or written material of any kind or character.  The term includes all Electronically Stored Information in its native format including, without limitation, emails and all documents attached to such e-mails.

2.   "**Communications**" means any correspondence, contact, discussion or exchange between any two or more persons.  Without limiting the foregoing, "Communication(s)" includes all documents, telephone conversations or face to face conversations, meetings and conferences.

3.  **"Correct Solutions"** means Correct Solutions, LLC a/k/a Correct Solutions Group, LLC and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

4.  **"Smart Communications"** means Smart Communications Holding, Inc. and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

5.  **"Tech Friends"** means Tech Friends, Inc. and any of its parent companies, affiliates, subsidiaries, officers, agents, or any other persons purporting to act on its behalf.

6.  **"Greene"** means Greene County Sheriff's Department or any related entity which operates or contracts for a correctional facility in Greene County, AR.

7.     In the event any request herein calls for information or for the identification of a document which you deem to be privileged, in whole or in part, the information should be given

or the document identified to the fullest extent possible consistent with such claim of privilege, and you should state the nature of the privilege claimed and specify the grounds relied upon for the claim of privilege.

8.     A separate answer shall be furnished for each request.

## **REQUESTS**

1) All communications and documents, whether internal to Greene County or external with parties other than Smart Communications, relating to the potential termination or replacement of Smart Communications' services, systems, or equipment at Greene County, from January 1, 2019 to the present.

2) All existing contracts and agreements, including all addenda and schedules, between Greene County and Correct Solutions.

3) All communications between Greene County and Correct Solutions relating to Smart Communications, including its services, systems, or equipment, from January 1, 2019 to the present.

4) All existing contracts and agreements, including all addenda and schedules, between Greene County and Tech Friends.

5) All communications between Greene County and Tech Friends relating to Smart Communications, including its services, systems, or equipment, from January 1, 2019 to the present.

## RECORDS CUSTODIAN CERTIFICATION
## OF BUSINESS RECORDS

RECORDS PROVIDER:

Greene County Sheriff's Department
1809 North Rockingchair Rd.
Paragould, AR 72450

DATE: March ___, 2020

TO:    Brad F. Barrios
       BAJO | CUVA | COHEN | TURKEL
       101 E. Kennedy Blvd., Suite 1900
       Tampa, FL  33602

**RE:  BUSINESS RECORDS OF GREENE COUNTY SHERIFF'S DEPARTMENT**

        I, _____, as custodian of the business records of the above named person, hereby certify that the enclosed records regarding the above named person, consisting of   _____  photocopied pages, are correct copies of the records maintained in a designated record set that were made at or near the time of the occurrence by a person with knowledge of the matters therein, and that the records were kept in the course of regularly conducted business activity and made as a regular practice in the course of the regularly conducted business activity.


                        _____
                        **Signature of Records Custodian**


                        _____
                        **Company**

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.

      Plaintiff,

v.                                                      Case No: 19-CA-008089

CORRECT SOLUTIONS, LLC a/k/a
CORRECT SOLUTIONS GROUP, LLC,

_____Defendant._____/

### OBJECTION TO NOTICE OF INTENT TO SERVE SUBPOENA FOR DOCUMENTS IN ANOTHER STATE

Defendant, Correct Solutions, LLC, in accordance with Rule 1.351(b), Florida Rules of Civil Procedure, objects to the Notice of Intent to Serve Subpoena for Documents in Another State served by Plaintiff, Smart Communications Holding, Inc. and proposed subpoena directed to Greene County Sheriff's Office. Correct Solutions, LLC states that neither the Greene County Sheriff's Office nor any of its contractual relationships have any relevance or relationship to any of the issues in the pending litigation, the operative Compliant, Smart Communications' emergency motions or its proposed Amended Complaint. Rather, discovery into other sheriff's offices and jails is a fishing expedition by Smart Communications which will not lead to any relevant or discovery evidence. It constitutes harassment of unrelated third parties and is yet another attempt by Smart Communications Holding, Inc. to harass customers and potential customers of its competitors including but not limited to those of Correct Solutions, LLC's.

## CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL   33602; bbarrios@bajocuva.com; dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on February 11, 2020.

HARLLEE & BALD, P.A.

By: _____

KIMBERLY A. BALD
Florida Bar No. 0434190
JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

4847-0429-3556, v. 1

IN THE CIRCUIT COURT OF THE THIRTEENTH JUDICIAL CIRCUIT
IN AND FOR HILLSBOROUGH COUNTY, FLORIDA
CIVIL DIVISION

SMART COMMUNICATIONS
HOLDING, INC.,

  Plaintiff,

vs.

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

  Defendant.

_____/

Case No. 19-CA-008089

### CORRECT SOLUTIONS, LLC'S MOTION TO COMPEL
### AND FOR SANCTIONS

Defendant, Correct Solutions, LLC ("Correct Solutions"), pursuant to Rule 1.380,

Florida Rules of Civil Procedure and this Court's inherent authority, respectfully moves

this Court for an Order compelling Plaintiff, Smart Communications Holding, Inc.

("Smart Communications") to produce the documents which are responsive to the

Requests for Production of Documents served by Correct Solutions, overruling the

meritless objections of Smart Communications, and sanctioning Smart Communications

for its failure to produce responsive documents that refute evidence and testimony

presented at multiple hearings to this Court.  In support, Correct Solutions states:

### Factual and Procedural Background

1. Correct Solutions provides a telecommunication platform to its correctional

facility customers and charges correctional facility inmates or their contacts for telephone

calls on a per-call basis.  The revenue received by Correct Solutions for the inmate

telephone calls is shared with its correctional facility customers.

2.     Correct Solutions separately contracted with Smart Communications under a Master Services Agreement ("MSA") and incorporated Schedules to have Smart Communications provide as a subcontractor other communication services and equipment to certain of the Correct Solutions' correctional facility customers, such as electronic mail and tablets.

3.     Prior to entering into the MSA, Correct Solutions and Smart Communications entered into a Mutual Confidentiality and Non-Disclosure Agreement ("NDA") to protect the confidential and proprietary information to be shared between the parties during their business relationship.

4.     This action was commenced by Smart Communications to prevent Correct Solutions from terminating the MSA based on Smart Communications' disclosure and use of confidential information provided by Correct Solutions under the NDA to solicit the City of St. Louis, Missouri correctional facility for inmate telephone services. The City of St. Louis, Missouri was an existing customer of Correct Solutions for inmate telephone services at the time of the solicitation by Smart Communications.

5.     Correct Solutions filed its Answer and Affirmative Defenses alleging that Smart Communications breached the MSA by failing to provide services thereunder to the Correct Solutions' correctional facility customers and by failing to correct deficiencies with those services and equipment as reported by the Correct Solutions' correctional facility customers directly to Smart Communications. Correct Solutions alleged that these breaches by Smart Communications were affecting the relationship between Correct Solutions and its correctional facility customers.

6.     Correct Solutions also filed a Counterclaim asserting a breach of the NDA and the MSA by Smart Communications for its disclosure and use of Correct Solutions'

confidential information to directly solicit and attempt to steal the City of St. Louis, Missouri correctional facility as an inmate telephone customer of Correct Solutions.

7.      During the pendency of this action, Smart Communications filed two Emergency Motions. The first Emergency Motion pertained to the Sebastian County, Arkansas correctional facility customer of Correct Solutions and a Notice to Cure sent by Correct Solutions to Smart Communications under the MSA regarding the non-correctional grade tablets provided by Smart Communications to Sebastian County which its inmates were disassembling and using the tablet batteries as an unauthorized power source and fashioning the tablet backing into weapons. This occurred despite Smart Communications reporting to Sebastian County that "the batteries [sic] in the tablets are not removable."

8.      The most recent Emergency Motion filed by Smart Communications sought an injunction preventing Correct Solutions from exercising a non-renewal provision in the MSA with Smart Communications as to the Washington County, Arkansas, Sebastian County, Arkansas, and Wayne County, Georgia correctional facility customers of Correct Solutions. This Court conducted two (2) one-half day evidentiary hearings on the second Emergency Motion in December 2019 wherein the CEO of Smart Communications, Jon Logan, testified steadfastly under oath that the non-renewal provision in Paragraph 6 of the MSA between Correct Solutions and Smart Communications did not apply to the parties to the MSA and instead applied to Correct Solutions and its correctional facility customers. Mr. Logan's testimony remained consistent despite the fact that the MSA was initially drafted by Smart Communications and contained the identical non-renewal language, and as of the initial draft there was no intent on the part of Smart

3

Communications to make the MSA and Schedules "co-terminous" with the correctional facility customers of Correct Solutions.

9.  The second Emergency Motion filed by Smart Communications was denied by this Court in early January 2020.

### Newly Uncovered Evidence: Sebastian County Solicitation Letter

10.  Correct Solutions was recently made aware of a November 26, 2019 solicitation letter and supporting proposal materials provided by Smart Communications to Captain Dumas of Sebastian County, Arkansas. A true and correct copy of the November 26, 2019 solicitation letter with supporting proposal materials is attached as Exhibit "A" to this Motion.

11.  Sebastian County was the subject of the first Emergency Motion filed by Smart Communications and Captain Dumas attended the September 2019 hearing on the Emergency Motion to provide testimony to this Court. Sebastian County was also one of the three counties that were the subject of the second Emergency Motion filed by Smart Communications and for which this Court conducted two (2) half-day evidentiary hearings in December 2019.

12.  The November 26, 2019 solicitation from Smart Communications sought to convince Sebastian County to switch all of their inmate communication services to Smart Communications – both the inmate telephone service being provided under contract by Correct Solutions as well as entering into a "direct contract" with Smart Communications for the other inmate communications and technology, such as email and tablets. There are several critical party admissions by Smart Communications contained in the November 26, 2019 solicitation letter that are directly relevant to the allegations pled in this case and the testimony presented directly to this Court.

4

13.     First off, the timing of November 26, 2019 solicitation letter is important. On November 21, 2019, Correct Solutions sent Smart Communications a Notice of Non-Renewal as to Sebastian County both by electronic mail and certified mail.  A true and correct copy of the November 21, 2019 Notice of Non-Renewal served by Correct Solutions on Smart Communications as to Sebastian County is attached as Exhibit "B" to this Motion.

14.     Therefore, Smart Communications was advised as of November 21, 2019 that Correct Solutions was exercising the non-renewal provision contained in paragraph 6 of the MSA as to Sebastian County and that the MSA and Schedule applicable to Sebastian County would be expiring on April 23, 2020.

15.     More importantly for this action, in the November 26, 2019 solicitation letter sent five (5) days after Smart Communications' receipt of the Notice of Non-Renewal, it states the following on page 2:

> "We would have been glad to provide Sebastian County with options for upgrading to our newest tablet system long ago, especially in light of the issues your facility communicated to us, **but the contract we are bound by, through Correct Solutions, does not provide for or even contemplate such an upgrade. However, because we understand that the term of this contract is set to expire in April 2020**, we can enter into a new, direct contract with Sebastian County that includes our upgraded tablet system, to start once the current contract expires in April. Although our new contract would not start until then, we would be happy to move forward with providing our new tablet system immediately, once the contract is signed." (bolded emphasis added).

16.     Accordingly, as of November 2019, Smart Communications was acknowledging publicly, including to customers of Correct Solutions, that the MSA was set to expire in April 2020 due to the Notice of Non-Renewal served by Correct Solutions.

17.     Despite the November 26, 2019 solicitation letter, Jon Logan as CEO of Smart Communications testified to this Court that the MSA and Schedule between

5

Correct Solutions and Smart Communications pertaining to Sebastian County was not expiring and in fact had been renewed for another year.

18.    Additionally, the November 26, 2019 solicitation letter acknowledges that Sebastian County was communicating issues to Smart Communications related to the tablets and Smart Communications was not offering Sebastian County its "newest tablet system." In fact, Smart Communications only offered Sebastian County the "newest tablet system" if Sebastian County decided to enter into a direct contract with Smart Communications to begin in April 2020.

19.    The November 26, 2019 solicitation letter is directly relevant to claims and defenses asserted in this action and the testimony and substance of the December 2019 evidentiary hearings before the Court.  Moreover, the November 26, 2019 solicitation letter was clearly responsive to numerous requests contained in Correct Solutions' Second Request for Production of Documents served October 18, 2019 and responded to by Smart Communications on November 18, 2019 and the Request to Produce at Evidentiary Hearing served prior to the December 19, 2019 hearing before this Court.  It was crucial that Correct Solutions receive this document prior to the December 2019 evidentiary hearings and Smart Communications has still not produced this document as of the date of this Motion to Compel and for Sanctions.

**Correct Solutions' Requests for Production**

20.    To show this Court the lack of merit of the claims asserted and relief sought by Smart Communications in its Verified Complaint, proposed unverified Amended Complaint and two Emergency Motions, Correct Solutions served three Requests for Production of Documents to Smart Communications and a Notice to Produce at the December 19, 2019 Hearing.  The three Requests for Production and the Notice to

6

Produce sought responsive documents which are in the possession, custody and control of Smart Communications.

21.     Despite the fact that Smart Communications made similar requests and obtained similar documents from Correct Solutions, many of which this Court will recall were used as exhibits at the evidentiary hearings held in December 2019, Smart Communications has produced minimal responsive documents, has asserted meritless objections, has failed to provide a privilege log and has engaged in a pattern of conduct designed to avoid disclosing its records and evidence which refute its allegations, affidavits submitted to this Court, and testimony – all while requesting this Court provide relief on an emergency basis.

22.     For instance, Correct Solutions has produced over 2,500 pages of documents in response to the Requests for Production served by Smart Communications, including extensive internal communications. Alternatively, Smart Communications has produced less than 350 pages of its own responsive documents and very minimal internal communications – improperly electing instead to produce communications received by Smart Communications in response to public records requests to five of the eight correctional facility customers of Correct Solutions. The responses to the public records requests are not valid substitutes for, and will obviously not contain the same responsive documents as, the internal records and communications of Smart Communications.

23.     In addition to the 350 pages referred to above, Smart Communications has only produced in response to Correct Solutions' Requests for Production and Notice to Produce the exhibits to certain declarations filed in this action (which were originally attached to Court filing) and three (3) requests for proposals from correctional facilities unaffiliated with this action.

7

24.     Smart Communications objected to all 51 requests in the Second Request to Produce. The objections included unduly burdensome, ambiguous and not relevant, the documents constitute confidential proprietary information or are trade secrets and the documents are protected under the attorney client privilege or constitute work product. Smart Communications agreed to produce documents only to three of the requests. Correct Solutions agreed that Smart Communications did not have to produce any documents pertaining to Lattice, Inc. based on the status of the counterclaim which are requested in paragraphs 1 through 10 but has attempted with no success to obtain Smart Communications' documents which are responsive to the remaining requests which are directly related to the claims it has asserted in the Complaint, the Emergency Motions and the affidavits it has submitted.

25.     On December 13, 2019, Correct Solutions served a Third Request to Produce directly to the allegations in Smart Communications' proposed Amended Complaint. On January 13, 2020, Smart Communications objected to producing any responsive documents as to 11 of the 19 paragraphs and asserted that the Request was premature because the Amended Complaint had not yet been filed. However, on December 4, 2019 Smart Communications filed its second Emergency Motion which incorporated much of the factual allegations and sought the same relief as was contained in the proposed Amended Complaint. These factual allegations and relief were the subject of the emergency hearings held before this Court in December 2019. Once again, despite these documents being clearly at issue in its Emergency Motion heard by this Court in December, Smart Communications has refused to produce any documents responsive to 11 of the 19 requests to produce. Moreover, while Smart Communications claimed that it made a good faith effort to produce the responsive documents to the other 8 paragraphs,

8

other than producing the documents it obtained from the facilities through its public records requests, Smart Communications has not made any good faith effort to produce documents in its own files.

26.    Correct Solutions is entitled to an order compelling the production because the documents requested have been placed clearly at issue by Smart Communications, are discoverable based on the allegations in the Complaint and the Emergency Motions, cannot be protected under the attorney client privilege or constitute work product unless Smart Communications intended from the beginning of the contractual relationship to sue Correct Solutions, and are needed by Correct Solutions to refute the claims of Smart Communications and the factual statements of its officers.

27.    As an example, Jon Logan as CEO of Smart Communications submitted to this Court his sworn testimony that no facility had ever provided notice to Smart Communications regarding the construction of their tablets. That testimony was shown to be false by the documents received from the Sebastian County and Washington County facilities which showed that the facilities were reporting substantial problems with Smart Communications' tablets and services directly to Smart Communications and that the problems were not being adequately addressed or corrected. Communications from Washington County to Smart Communications were received into evidence during the December 2019 hearings.  Moreover, the November 26, 2019 solicitation letter attached as Exhibit "A" to this Motion, which has never been produced by Smart Communications, is an admission by Smart Communications that Sebastian County has communicated issues about the tablets directly to Smart Communications.

28.    Smart Communications has failed to produce the following requested documents and categories:

9

A.     Documents regarding its allegations set forth in Paragraph 12 of the Verified Complaint that Correct would have lost customers and ultimately obtained new customers because of Smart. (First Request for Production of Documents, Item No. 4.)

B.     Documents regarding its allegations in Paragraph 13 of the Verified Complaint that facility customers became joint customers of Correct Solutions and Smart Communications including the contracts between Correct Solutions and facilities it claimed to have to support the allegation.  (First Request to Produce, Item 5.)

C.     Documents regarding its allegations in Paragraph 27 of the Verified Complaint that Correct Solutions attempted to purchase Smart Communications or hire Smart Communications' employees and that such offers were rejected. (First Request to Produce, Item 6.)

D.     Documents regarding its allegations in Paragraph 28 of the Verified Complaint that Correct Solutions had knowledge of Smart Communications' intent to provide telephone services.  (First Request to Produce, Item 7.)

E.     Document supporting Paragraph 29 of its Verified Complaint that Correct Solutions has introduced new technology at correctional facilities referred to as iMate E-Device. (First Request for Production, Item 8.)

F.     Other than 13 pages, any other documents between Smart Communications and the City of St. Louis regarding the mailing described in Paragraph 31 of the Verified Complaint and its internal communications regarding the mailing. (First Request to Produce, Item 9.)

10

G.      Documents regarding its acquisition of the e-mail address of Frank Turner with the City of St. Louis.  (First Request to Produce, Item 10.)

H.      Documents, videos or communications regarding the demonstration provided by Smart Communications to Correct Solutions as referenced in Paragraph 22 of the Second Declaration of John Logan.  (Second Request to Produce, Item 32.)

I.      Documents or communications including calendars related to the "tech" that was sent to Avoyelles Parrish as stated in Exhibit "H" to the Second Declaration of John Logan.  (Second Request to Produce, Item 37.)

J.      Documents or communications pertaining to any work, repairs or maintenance provided by the "tech" referenced in Exhibit "H" to the Second Declaration of John Logan.  (Second Request to Produce, Item 38.)

K.      Documents regarding the allegation that the facility customers are "Joint Customers."  (First Request to Produce, Item 5)

L.      All documents or communications sent by Smart Communications, Jon Logan, or James Logan to the facilities, as evidenced by the failure to produce the November 26, 2019 solicitation letter.  (Second Request to Produce, Item 11 and 29.)

29.      The documents sought in the Third Request to Produce are subject to discovery over Smart Communications' objections because the factual allegations and relief sought in the proposed Amended Complaint were incorporated by Smart Communications in its Emergency Motion heard by this Court in December 2019 and which Smart Communications is now seeking a rehearing.  In the Emergency Motion for

Injunction and in its Memorandum of Law in Support of the Emergency Motion, Smart Communications has asserted:

      A.     That "Smart will suffer reputational damages and lose goodwill and market share" and "lose the ability to promote relationships with the 'non-renewed' customers." However, Smart Communications has failed and refused to produce any documents and/or communications from Jon Logan to any facility requesting meetings to build relationships and communications as requested in the Second Request for Production #39. Smart Communications has failed and refused to produce any its internal documents or communications reflecting any trouble tickets or other notifications of issues or problems with any hardware, software, or systems reported to, or received by, Smart Communications from the facilities as requested in the Second Request for Production #12. Smart Communications has failed and refused to produce any documentation and/or communications reflecting any responses, repairs, maintenance or corrections provided by Smart Communications to the facilities in response to any trouble tickets or notifications as requested in the Second Request for Production #13. Smart Communications has further failed and refused to produce any reports of issues or problems received by Smart through its "real-time" asset management system or monitoring system referred to in the "Maintenance and Support Plan" section of the Schedules to the MSA as requested in the Second Request for Production #14. These requested documents are directly related to Smart Communications' allegations pertaining to reputation, goodwill and relationships.

      B.     That the Emergency Motion focuses "on the relevant Washington County agreements." However, Smart Communications has failed and refused to

produce any documents or communications sent by Jon Logan or James Logan to the facilities, including Washington County, as requested in the Second Request for Production #29.

C.      That Smart "will be unable to market its ongoing contractual relationship with Washington County." However, Smart has failed and refused to produce documents and/or communications concerning the marketing of tablets to the eight (8) facilities, including Washington County, as requested in the Second Request for Production #16. Smart further failed to produce any documents or communications sent by Jon Logan or James Logan to the facilities, including Washington County, as requested in the Second Request for Production #29.

D.      That "one of the most valuable tools is the ability to use other ongoing relationships." However, Smart has failed and refused to produce any documents which show the status of the relationship with any of the facilities, complaints from facilities which have been shown to exist and/or communications from Jon Logan to any facility requesting meetings to build relationships and communications as requested in the Second Request for Production #39.

E.      That there will be damage to "Smart's record and reputation in the industry." However, Smart has failed and refused to produce any documents which show Smart's reputation in any facility or in the industry or and/or communications from Jon Logan to any facility requesting meetings to build relationships and communications as requested in the Second Request for Production #39. Smart has failed and refused to produce any documents or communications reflecting any trouble tickets or other notifications of issues or problems with any hardware, software, or systems reported to, or received by

13

Smart from the facilities as requested in the Second Request for Production #12. Smart has failed and refused to produce any documentation and/or communications reflecting any responses, repairs, maintenance or corrections provided by Smart to the facilities in response to any trouble tickets or notifications as requested in the Second Request for Production #13. Smart has further failed and refused to produce any reports of issues or problems received by Smart through its "real-time" asset management system or monitoring system referred to in the "Maintenance and Support Plan" section of the Schedules to the MSA as requested in the Second Request for Production #14. Smart has failed and refused to produce documents and/or communications concerning the marketing of tablets to facilities other than the subject eight (8) facilities as requested in the Second Request for Production #17. The requested documents are directly related to Smart's record and reputation in the industry.

F.     That the non-renewal will "impact Smart's ability to sell additional services to certain customers." However, Smart has failed and refused to produce documents and/or communications concerning the marketing of tablets to facilities other than the subject eight (8) facilities as requested in the Second Request for Production #17.

G.     That "Smart has invested approximately $650,000 to install its equipment and services at each of the facilities." However, Smart has failed and refused to produce documents and/or communications with the facilities regarding the hardware, software, or systems provided as requested in the Second Request for Production #11 or any information concerning the investment made into each of the subject facilities.

14

H.     That "Smart has invested hundreds of hours training staff on how to operate its systems, developing personal relationships with Joint Customers, providing customer service, marketing, and updating its products and service for the Joint Customers." However, Smart has failed and refused to produce documents and/or communications with facilities regarding the hardware, software, or systems provided as requested in the Second Request for Production #11. Smart further failed and refused to provide any documents or communications, including but not limited to calendars or expense reports, reflecting dates when a Smart employee was physically on site at any of the facilities as requested the Second Request for Production #15. Smart has failed and refused to produce any documents or communications reflecting any trouble tickets or other notifications of issues or problems with any hardware, software, or systems reported to, or received by Smart from the facilities as requested in the Second Request for Production #12. Smart has further failed and refused to produce any documentation and/or communications reflecting any responses, repairs, maintenance or corrections provide by Smart to the facilities in response to any trouble tickets or notifications as requested in the Second Request for Production #13. Smart has failed and refused to produce any reports of issues or problems received by Smart through its "real-time" asset management system or monitoring system referred to in the "Maintenance and Support Plan" section of the Schedules to the MSA as requested in the Second Request for Production #14. Each of these requests deal directly with Smart's investment and customer service.

WHEREFORE, Defendant, Correct Solutions, respectfully requests this Court enter an Order (1) compelling Smart Communications to produce all responsive documents that it has withheld from production; (2) overruling the objections of Smart Communications to the Requests for Production of Documents served by Correct Solutions; (3) sanctioning Smart Communications for its failure to produce responsive documents that refute evidence and testimony presented at multiple hearings to this Court, including an award to Correct Solutions of its attorney's fees and costs; and (4) granting such other and further relief as the Court deems just and proper under the circumstances.

### Certificate of Good Faith Conference

The undersigned hereby certifies that they have conferred with counsel for Smart Communications, including by telephone conference, in an effort to resolve the issues raised in this motion and that the undersigned have been unable to resolve those issues with opposing counsel.

### CERTIFICATE OF SERVICE

I hereby certify that this document has been filed through the Florida Courts E-filing Portal for service via automatic e-mail to Brad F. Barrios, Esquire, David A. Hayes, Esquire, and Kenneth G. Turkel, Bajo Cuva Cohen & Turkel, 100 North Tampa Street, Suite 1900, Tampa, FL 33602; bbarrios@bajocuva.com; dhayes@bajocuva.com; kturkel@bajocuva.com; tdeleo@bajocuva.com on 7th day of February 2020.

HARLLEE & BALD, P.A.

By: _____
KIMBERLY A. BALD
Florida Bar No. 0434190

16

JAMES E. LYNCH
Florida Bar No. 046219
202 Old Main Street
Bradenton, FL 34205
Telephone: 941-744-5537
Facsimile: 941-744-5547
KAB@harlleebald.com
JEL@harlleebald.com
DDF@harlleebald.com
CL@harlleebald.com

and

LUKE F. PIONTEK
Roedel, Parsons, Kock, Blache,
Balhoff & McCollister
Louisiana Bar No. 19979
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone Number 225/929-7033
Facsimile Number 225/928-4925
LPiontek@roedelpartons.com

Attorneys for Correct Solutions, LLC

17

*Smart Communications Holding, Inc. v. Correct Solutions, LLC*
*Case No: 19-CA-008089*

**EXHIBIT A**

*Correct Solutions' Motion to Compel and for Sanctions*



PROPOSAL

# 100% PHONE COMMISSION

## THE NEW LEADER IN INMATE COMMUNICATIONS

### CORRECTIONS SIMPLIFIED

PHONES

TABLETS

KIOSKS

MAILGUARD®

VIDEO VISITATION

EDUCATION



PHONES    TABLETS    KIOSKS    MAILGUARD®    VIDEO VISITATION    EDUCATION          Smart

Nov 26, 2019                                        Jerry Lipsey | Quality Assurance Mgr
                                                                Smart Communications
                                                                       229.507.0577

Capt. Dumas,

We are pleased to present you with this proposal for our upgraded tablet system at Sebastian
County.  As a company that prides itself on innovation and in delivering cutting-edge
communications technology in the corrections field, we continually strive to provide our
customers with options for the "latest and greatest" products and services as they are
developed by our team.  Because we provide our products and services free of charge to
facilities, which is often at a significant expense, we rely on the duration of our contract to
ensure that we can recoup and make a reasonable return on the investment.  For example, as
you may know, we earn the revenue to reimburse the cost of our tablet systems and associated
infrastructure through individual transactions priced at just $0.50 cents each.  The upgraded
tablet system we are offering Sebastian will be a significant expense for Smart Communications,
and we will additionally incur the expense of providing and installing new charging stations to
accommodate the new style of tablets.  However, because we can reuse a large portion of the
infrastructure we have already installed at Sebastian, we will be able to offer the new more
expensive tablets at no cost to Sebastian and still share revenue from the services provided.

We would have been glad to provide Sebastian County with options for upgrading to our
newest tablet system long ago, especially in light of the issues your facility communicated to us,
but the contract we are bound by, through Correct Solutions, does not provide for or even
contemplate such an upgrade.  However, because we understand that the term of this contract
is set to expire in April 2020, we can enter into a new, direct contract with Sebastian County
that includes our upgraded tablet system, to start once the current contract expires in April.
Although our new contract would not start until then, we would be happy to move forward
with providing our new tablet system immediately, once the contract is signed.

As part of our proposal, as promised, we would like to offer revenue sharing.  While we are
typically not in a position to provide commissions from messaging revenue (given our
significant upfront investment that we have to recoup), we would like to do so for your facility
as a gesture of goodwill and show of good faith to demonstrate our commitment to building a
successful partnership.  We are willing to offer 25% commissions on our messaging revenue, to
begin at the start of our new contract in April 2020, in exchange for a five-year term.

In addition to messaging, we are able to offer more revenue sources based on our other
services and technology.   If Sebastian is interested, we also have video visitation on the tablets
and streaming entertainment readily available as part of our platform.  And to the extent
Sebastian would like to fully maximize its revenue, we are pleased to offer our phone services
at an industry-leading 100% commission and a technology Grant. By way of comparison, we
believe this will provide Sebastian County with **One Million dollars (1,000,000.) more revenue,**
than it would receive if it continued with its current vendor during the same length of time.

PHONES     TABLETS     KIOSKS     MAILGUARD®     VIDEO VISITATION     EDUCATION          Smart

We can also guarantee that switching to our fully integrated phone, video and tablet platform would not cause any inconvenience or interruption in your facility's phone services. Smart Communications acquired the last available domestic license of the phone platform, in addition to hiring all the employees and software engineers that have designed and supported the phone system your current vendor is licensing and your agency is currently using. If Sebastian-is open to implementing our full suite of services, we have a much greater ability with no middleman reseller in between us, to be able to provide substantially more revenue, including additional increases in commissions across-the-board.

Finally, in addition to revenue sharing via commissions, we would like present Sebastian County with a large Technology Grant as a further gesture of goodwill and to solidify our partnership.  If Sebastian County agrees to a five (5) year contract for our messaging services, we will provide an up-front, immediate Tech Grant payment in the amount of **twenty-five thousand dollars ($25,000) on the day of the contract term beginning**. If your facility elects to move forward with our full suite of services, including our integrated phone platform, we would provide an additional Tech Grant payment in the amount of **seventy-five thousand dollars ($75,000) Totaling ($100,000. Immediate Tech Grant)**. Again, the terms of each of these services and Tech Grants, would be set forth in a contract between Smart and Sebastian County that would begin in April 2020 after the expiration of your current phone contract.

In addition, as a valued partner of ours, we would like to extend our formal invitation to include you, your Major, your Sheriff and your spouses to **Smart Communications technology Summit Cruise**! This is an RSVP all-inclusive free event in March where Smart Communications will fly your team to our technology center in Tampa Florida. Take you on a tour of our Patented MailGuard® processing center, meet our staff and get a demonstration of up and coming technology. The next day your team will join our other partnering agencies from all across the country and hop aboard our chartered cruise ship out of Port of Tampa for a 3-day Technology Summit cruise to Mexico. There will be workshops on the cruise, keynote speakers and hot new products. It is a great time enjoying the music and sun with our partners while learning from each other for the benefit of all.

We are excited about the possibilities and mutual benefits from directly partnering with your facility and I look forward to discussing this proposal with you in more detail.



Respectfully,

Jerry Lipsey

PHONES   TABLETS   KIOSKS   MAILGUARD®   VIDEO VISITATION   EDUCATION        Smart

# The Smart Communications Difference

As the pioneer of electronic inmate communication, most of the technology being requested for today's inmate communications was invented by Smart Communications. We are the innovative tech company the billion-dollar companies are constantly trying to copy and keep up with. Multifunctional communication kiosk and tablet technology has been our expertise for over a decade. Smart Communications created Corrections first electronic messaging system, the first electronic request, grievance, medical form module, the first law library provided facility-wide, and corrections' first, and now **Patented MailGuard®** postal mail elimination system. This type of electronic communication technology is still being experimented with or yet to be developed by other vendors. Smart Communications has over a decade of experience in bringing entire correctional agencies completely automated and paperless, all at zero cost.

The growth of Smart Communications has not come from purchasing competing companies like traditional ITS providers. Instead, every single agency we serve has come from building on one account after another by word of mouth and products that deliver. Smart Communications is built on a client base that was earned with a performance history of innovation and integrity.

Smart Communications is privately-owned (not hedge fund-owned) and is not looking to cut costs to squeeze profits. Instead, our owners created this technology and are actively engaged with our agencies on a daily basis. We're dedicated to growing the business by outperforming our competition with better technology, better customer service and more value to end users.

In addition to innovating electronic communications in corrections, Smart Communications has acquired the last available domestic license of the correction industry's first VOIP inmate calling platform, the Nexus Phone Platform. In addition to acquiring the phone platform, Smart Communications has also hired the Nexus executive staff and platform engineers, to create a team of corrections innovators under one company that is unmatched by any other team in Corrections. Our Nexus phone platform has 30 years of field experience and deployments in correctional agencies both domestically and outside the United States. Smart Communications and Nexus platforms are currently utilized in Sebastian County by your current vendor. Our systems are also directly contracted in over 450 correctional facilities including over 20 in the state of Arkansas, entire State of Pennsylvania DOC with 50,000 inmates, the largest correctional agency in the world, the Federal Bureau of Prisons with 180,000 inmates and in multiple countries, United States, Canada, United Kingdom, Japan, Gibraltar, Caribbean and Singapore.

Our mission at Smart Communications is to simplify corrections with innovation and better technology. Our tablet and kiosk technology outperform other vendors, giving us an advantage in the industry. It is our mission to use that advantage to lower costs, automate correctional agencies, increase revenue back to the facilities with 100% phone commission, help inmates and families rebuild with better communication, and to continue to build a successful business that supports many families throughout the country.

PHONES    TABLETS    KIOSKS    MAILGUARD®    VIDEO VISITATION    EDUCATION        Smart

# PROPOSAL FOR SEBASTIAN COUNTY

### Commission – 100%

Smart Communications pays the highest facility commissions in the industry and will pay Sebastian County **100% commission** on gross commissionable phone revenue, with the inclusion of the completely integrated technology package. Your current vendor pays 74% on paper, however they pay zero percent on interstate calls. In reality your current vender is only paying around 60% commission. Smart Communications will nearly double your current revenue.

### Free Communication – $96,000.00

Smart Communications will also donate two (2) free messaging credits every week to each inmate, totaling **$85,800.00 in free communication** during the contract term. With our system no one is left behind, and every inmate will be able to communicate for free with their friends and family regardless of their financial situation.

### Immediate Tech Grant – $100,000.00

Immediate Tech Grant will be paid on term start date to Sebastian County with executed agreement of a fully integrated technology package.

### 3 VIP Tickets to Technology Summit Cruise – $35,000.00

Three (3) full access all-inclusive VIP tickets to the Smart Communications Technology Summit Cruise out of Tampa Florida in March 2020. Each ticket includes a plus (1) spouse or guest. Tickets for this exclusive Smart Communications partner summit, include airfare, VIP airport shuttle service, lodging, Smart Communications headquarters tour of the state of the art Patented MailGuard® facility and staff meet and greet, 3 plus day all-inclusive cruise aboard a chartered cruise ship, technology workshops, technology demonstrations, keynote speakers, food, drinks, raffles and more. Valued at over $35,000.

### Postal Mail Elimination – Free

Smart Communications will provide Sebastian County with the Patented solution that finally eliminates one of corrections' longest running problems and security loopholes every agency has — contraband and secret communications in inmate postal mail. Patented MailGuard® postal elimination system keeps staff and inmate population safe by providing a remote, virtual mailroom and processing your inmate postal mail at zero cost to your inmates or your agency.

### Zero Cost System

Smart Communications provides a completely integrated communications platform at zero cost. All technology and services include installation, maintenance, support, and training.

**Total revenue during the term of the Sebastian County contract:**

| | |
|---|---|
| *Estimated Five-Year phone Commission –* | *$2,405,000.00* |
| *Free Messaging Credits –* | *$96,000.00* |
| *Immediate Technology Grant –* | *$100,000.00* |
| *3 VIP Technology Summit Cruise tickets –* | *$35,000.00* |
| **TOTAL REVENUE:** | **$2,636,000.00** |

5

PHONES    TABLETS    KIOSKS    MAILGUARD®    VIDEO VISITATION    EDUCATION        Smart

**Smart Communications' total transparency promise to Sebastian County**
No deductions for additional services, no fine print, no hidden clauses;
**100% commission guaranteed**, and that's our promise to you.

*The below graphs represent projected revenue based on the actual current phone providers commission when interstate calls are subtracted from commissions per current contract, leaving only 60% for Sebastian County's ADP of 370 inmates, compared to Smart Communications' 100% phone commission of $481,000.00. annually.*







PHONES     TABLETS     KIOSKS     MAILGUARD®     VIDEO VISITATION     EDUCATION          Smart

| TECHNOLOGY AND SERVICES | COST |
|---|---|
| NEXUS INMATE TELEPHONE SYSTEM INCLUDING:<br>· INMATE PHONES<br>· VISITATION PHONES<br>· RECORDING AND STORAGE FOR BOTH INMATE AND VISITATION CALLS<br>· LIVE MONITORING AND CALL WATCH INVESTIGATIVE TOOLS<br>· WEB-BASED INVESTIGATE INTERFACE<br>· FRAUD DETECTION AND PREVENTION TOOLS<br>· IN-DEPTH REPORTING CAPABILITIES<br>· VMX VOICEMAIL EXCHANGE OPTION<br>· INTOUCH INMATE HOTLINE<br>· SOFTWARE UPDATES AND UPGRADES<br>· VOICE BIOMETRICS | INCLUDED/ $0 |
| AUTOMATED INFORMATION SERVICES | INCLUDED/ $0 |
| SMARTKIOSK™ & SMARTTABLET™<br>· FULLY INTEGRATED KIOSK PLATFORM | INCLUDED/ $0 |
| SMARTINMATE™<br>· ELECTRONIC MESSAGING SYSTEM | INCLUDED/ $0 |
| MAILGUARD®<br>· PATENT PENDING POSTAL ELIMINATION SYSTEM | INCLUDED/ $0 |
| SMARTVISIT™<br>· VIDEO VISITATION SYSTEM | INCLUDED/ $0 |
| SMARTREQUEST™<br>· DIGITAL REQUEST, GRIEVANCE, AND MEDICAL FORMS | INCLUDED/ $0 |
| SMARTED™<br>· INMATE EDUCATION<br>· REHABILITATION & REENTRY | INCLUDED/ $0 |
| LAW LIBRARY | INCLUDED/ $0 |
| COMMISSARY HOSTING | INCLUDED/ $0 |
| IN-HOUSE QUALITY CUSTOMER CARE CALL CENTER | INCLUDED/ $0 |
| IN-HOUSE NETWORK OPERATIONS CENTER | INCLUDED/ $0 |
| INSTALLATION, MAINTENANCE, AND SUPPORT FOR ALL SMART COMMUNICATIONS TECHNOLOGY | INCLUDED/ $0 |

PHONES    TABLETS    KIOSKS    MAILGUARD®    VIDEO VISITATION    EDUCATION    Smart

## 100% Phone Commission to Sebastian County

### 100% phone commission? How do we do it?

Simply put, we do not need your phone revenue to operate. Other ITS providers, with lesser technology platforms, or vendors who subcontract services, do need your phone revenue.

This goes back to being a true technology innovator in corrections. They all say it however, we show it and put our money where our mouth is, literally. With our 10 years of expertise in electronic inmate communication, our technology is not just good, it is great. The results: our usage is higher, and the maintenance is lower, creating a self-supporting electronic platform that is unmatched by any other vendor in corrections. This means Smart Communications can guarantee 100% of phone revenue to Sebastian County, skyrocketing agency phone revenues.

### Why do we do it?

We are not greedy, and we are not owned by a hedge fund. Smart Communications sticks with our mission, to simplify corrections with innovation and better technology. Our tablet and kiosk technology outperform other vendor solutions, giving us an advantage in the industry. It is our mission to use that advantage to lower costs, automate correctional agencies, increase revenue back to correctional agencies, help inmates and families rebuild with better communication and to continue to build a successful business that supports many families throughout the country.

### The combined results?

Better technology, 100% phone revenue and zero cost to Sebastian County. The days of smoke and mirrors and commission tricks are over; Smart Communications is pulling back the curtain on the traditional ITS providers, cutting the nonsense and raising the bar.



PHONES     TABLETS     KIOSKS     MAILGUARD®     VIDEO VISITATION     EDUCATION          Smart

### Free Messages to Inmates Every Week

Since 2009, Smart Communications has donated over 36,000,000 free messages to inmates and their families.

Keeping inmates and families connected is the core of our business and that's why every week, Smart Communications distributes two (2) free message credits into every inmate's account. With our system, no one is left behind. Every inmate will be able to have free weekly communication with their friends and family regardless of their financial situation. This is the root of our cause and we've stayed true to this since day-one.

Smart Communications will donate two (2) free messages every week, totaling over $4.00 monthly provided to every inmate in Sebastian County. That is **$19,200.00** annually in free communication donated to inmates and their families in the Sebastian County community, based on current ADP. For the duration of your contract with Smart Communications, Sebastian County inmates and their families will receive over **$96,00.00** in free communication.

**With Smart Communications, no one is left behind.**



Welcome Jack Pietrantone - **Home   Terms of Service   FAQ   Kiosk Maintenance**

SMART JAILMAIL.COM      // **My Messages** // **My Account** // **Log Out**
                         welcome            account settings    exit now

Credit Balance: **4,968**

## missin my babies...

From: JENNIFER CARTER

Date: Wednesday, April 19, 2017 11:11 PM

🔁 Reply    ✖ Delete    ✉ Return to My Messages

hey sister. hope u feel better soon. thank u so much for goin to court with me. i feel a little better knowin someone will b there with me. ericky started another job last week and he had some money and put it on here. but not before i chewed him out for not doin nothing for me. lol. gosh i miss u so much. ur sence of humor and crazy self. lol i miss u maken me laugh and ur words of encorragement. i still haven talked to savannah since u asked her to let me know they was ok. guess they just real busy lately. i'm still tryin to get on trustee. they not callin me for some reason. i been writen and writen like sometimes 2 times a day and nothin. mayb i can get over there soon. was hopen to b there by the time i made it to court. but if not oh well. guess i wasnt posed to b there. i been prayin hard for county jail time and make trustee and get 4 for 1 and b out in 3 months, 3 weeks. i cant wait to go home. my lil china man has been sending money to me faithfully. and so has roosevelt. roosevelt keeps tellin me if i get out and can prove i can b straight he wants to b with me and he says he loves me and is bein faithful to me. but i'm not there so i dont know i just have to believe him, right? ei dont want to keep u forever. things good with u and mr. stacey? u aint had to whip up on him have ya? lmao..... i love u girl. get better soon. take care of urself. talk to u soon

🔁 Reply    ✖ Delete    ✉ Return to My Messages

**Home   Terms of Service   FAQ   Kiosk Maintenance**

WWW.SMARTCOMMUNICATIONS.US | 888-253-5178 | 10491 72ND ST. LARGO, FL 33777

PHONES    TABLETS    KIOSKS    MAILGUARD®    VIDEO VISITATION    EDUCATION          Smart 

# OUR PRODUCTS AND SOLUTIONS



# Inmate Telephone System

This complete calling solution is the most proven inmate calling system in corrections and includes an industry first, 100% revenue back to agency.

With calling platform deployments for decades, both domestically and internationally, the Smart Communications calling platform has the longest running track record in corrections. The innovative platform offers secure inmate account management, call connection, monitoring, recording, and customer service/technical support and call center.

Important features include:

- Flexible inmate account management
- Advanced investigative tools
- Calls made on inmate tablets
- Voice biometrics
- Industry-leading support
- VMX™ voice exchange - voicemail service
- PrePaid Collect (PPC)
- PIN Debit

PHONES    TABLETS    KIOSKS    MAILGUARD®    VIDEO VISITATION    EDUCATION    Smart

## Inmate Telephone System

Domestically and internationally, the Smart Communications Nexus calling platform has the longest running track record in corrections. Secure inmate account management, call connection, monitoring, recording, and customer service/technical support and call center.

Smart Communications Nexus Inmate Telephone System (ITS) is an in-house system that is engineered, designed, and supported by Smart Communications engineering and technical support teams. It is a self-contained call-processing unit that is user-friendly and feature-rich. All components for placing calls, monitoring calls, and data collection are contained within a single unit. The Nexus ITS package consists of call control configuration, database management, system security, and additional processes for monitoring and reporting.

Smart Communications will provide a complete Nexus ITS system that features all-new equipment, utilizing a VOIP connection. The system includes the following:

- **Live Monitoring and Call Watch Investigative Tools:** Facility staff and investigators can receive calls and alerts when an inmate dials a specific number. This includes full-time monitoring capability from anywhere there is an Internet connection.
- **Web-Based Investigate Interface:** Allows facility personnel to save call recordings and various documentation into digital "case" folders for Investigators to access during investigations.
- **Fraud Detection and Prevention Tools:** These tools include our patented three-way call detection solution.
- **In-Depth Reporting Capabilities**
- **VMX™ Voicemail Exchange Option:** Inmates can receive messages from friends and family and for the facility to use for administrative purposes.
- **InTouch™ Inmate Hotline:** Inmates can dial *511 from any inmate phone and reach a live customer service representative at our quality customer care call center to assist inmates with issues regarding placing a call or a phone in need of repair. The hotline will provide significant value to Sebastian County as it will completely remove the headaches and burden off Sebastian County staff in dealing with inmate issues related to call connection or equipment.
- **Installation** of completely integrated communications platform/
- **Option to request free and unrecorded Public Defender calls**
- **Real-time access** to all inmate recordings for the duration of the contract and a provision to allow access of up to one year at the end of any contract in case of a contract change initiated by Sebastian County.
- **Software Updates, Upgrades and Maintenance:** Automatic updates to the software and system upgrades, with minimal system downtime, and maintenance provided at no cost to Sebastian County.
- **A Single-Source Provider:** Smart Communications does not subcontract any portion of the technology and services offered. We custom-design and engineer all our own software and technology, which is why we can offer you superior value in technology, service and support.

The basic network design includes Smart Communications inmate call processing technology at the Sebastian County. The Smart Communications platform will be installed in a Virtual Private Network (VPN) configuration utilizing broadband facility to connect between the Smart Communications platform and the Smart Communications Network Operations Center. This secure VPN connection will be utilized for accessing the site's database, network monitoring, network management and trouble resolution.  We will monitor the Sebastian County's system 24/7 to ensure continuous system uptime and to diagnose and troubleshoot any problems that may arise.

There are many benefits to the Sebastian County in utilizing a fully integrated network design for administrative control and ease of investigative reporting.  A centralized database server provides instantaneous access to call detail reports and many other customized, user-accessible features. Jail staff and investigators will have the capability (given proper authorization and password assignment) to monitor calls in progress, run reports, and control lines within or outside of the facility.

## Investigative Tools

The Nexus ITS includes a variety of highly valuable investigative tools that are designed, engineered and managed in-house by Smart Communications employees. All our investigative solutions are fully integrated into our Nexus ITS and leverage the real-time system communications infrastructure to make live operation of all applications possible.  There is no need to export or transfer data between systems. Following is an overview of the Nexus ITS investigative tools:

### Call Recordings

Call recordings are essential for investigative purposes.  Smart Communications has never lost any call recordings.  All call recordings and data storage are backed-up offsite, at two independent data centers with redundant server storage.  Recordings are stored throughout the life of the contract and can be maintained beyond the contract expiration date if required by Sebastian County.

### Live Monitoring

**Key Features:**
- Send and stream live calls to investigators' mobile phones and devices
- Monitor real-time call activity
- View active calls in progress
- View calls made on your system
- Monitor potential fraudulent calls through watches
- Create watches based on criteria that you determine
- Receive e-mail, audio, and visual notification of triggered call watches
- View call information when not listening
- Retrieve reports of past call alerts