**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

SMART COMMUNICATIONS HOLDING, INC.,

               Plaintiff,

v.                                CASE NO. 8:20-cv-01469-T-30JSS

CORRECT SOLUTIONS, LLC, a/k/a
CORRECT SOLUTIONS GROUP, LLC,

               Defendants.

_____/

## CORRECT SOLUTIONS' ANSWER AND AFFIRMATIVE DEFENSES TO SECOND AMENDED COMPLAINT AND AMENDED COUNTERCLAIM

Defendant, Correct Solutions, LLC a/k/a Correct Solutions Group ("Correct Solutions")[1] hereby serves its Answer and Affirmative Defenses to the Second Amended Complaint and its Amended Counterclaim and states:

### Answer

1.     Admitted that this paragraph describes Plaintiff, Smart Communications Holding, Inc. ("Smart Communications") and its covetous conduct. The remaining allegations are denied.

2.     Admitted that Correct Solutions provides inmate communication services to correctional facilities throughout the country pursuant to contracts between Correct Solutions and the correctional facility customer ("customer" or "customer facility"). Denied that Smart Communications has a written contractual relationship with Correct Solutions' customers or that any of those customers constitute "Joint Customers." Denied

---

[1] Correct Solutions is Correct Solutions, LLC, a Louisiana limited liability company and does business as Correct Solutions Group. "Second Amended Complaint" is the Second Amended Complaint at DE 26. Plaintiff incorrectly included "LLC" after Correct Solutions Group.

that Correct Solutions benefitted from its contractual relationship with Smart Communications. The remaining allegations are denied.

3.    Denied.

4.    Admitted that Correct Solutions via letter dated July 17, 2019 notified Smart Communications that the Master Services Agreement ("MSA") together with all Schedules thereto between the parties was terminated due to Smart Communications' breach of the MSA and misuse of Correct Solutions' confidential and proprietary information in violation of the parties' Mutual Confidentiality and Nondisclosure Agreement ("NDA"), as well as Smart Communications' brazen attempts to solicit the inmate telecommunications business at Correct Solutions' current customers for whom Correct Solutions had engaged Smart Communications to provide services other than inmate telecommunications services, such as electronic messaging, kiosks, tablets, and video visitation. The remaining allegations are denied.

5.    Denied.

6.    Denied.

7.    The allegations in paragraph 7 do not require a response from Correct Solutions; however, to the extent a response is required, those allegations are denied.

8.    Admitted that Smart Communications is a Florida corporation with its principal place of business in Pinellas County, Florida. Correct Solutions is without knowledge as to the remaining allegations.

9.    Admitted that Correct Solutions is a Louisiana limited liability company registered to do business in Florida with its principal place of business in Lincoln Parish, Louisiana. Correct Solutions admits that this Court has jurisdiction over Correct Solutions

but the remaining allegations are denied.

10.    Admitted that Correct Solutions has a certificate from the Florida Public Service Commission. Admitted that Nassau County Sheriff's Office is a customer of Correct Solutions for telecommunications services. The remaining allegations are denied.

11.    Admitted that the NDA and MSA between Smart Communications and Correct Solutions provide that venue lies in Hillsborough County, Florida but the remaining allegations are denied.

12.    Admitted.

13.    Admitted that Correct Solutions' contracts with its customer facilities are publicly available. Denied that all of Correct Solutions' communications with its customer facilities are publicly available, as that is a matter of the laws of the state in which each such customer facility is located. Admitted that Correct Solutions' customer facilities are generally subject to public disclosure under applicable state law, but the remaining allegations are denied in that such state law governs the extent to which and the types of documents and information that is subject to such disclosure.

14.    Admitted that Correct Solutions has provided and continues to provide telecommunications products and services pursuant to contracts with its customers. The remaining allegations are denied.

15.    Admitted that Smart Communications has provided certain services to inmates which include a number of the items described in paragraph 15. Correct Solutions is without knowledge as to the remaining allegations and therefore they are denied.

16.    Admitted that Smart Communications sought the assistance of Correct Solutions for Smart Communications to break into the correctional facility market for its

tablets, kiosks and related services and that Correct Solutions and Smart Communications commenced discussions about the possibility of providing certain services, such as electronic messaging, to some of Correct Solutions' customer facilities. The remaining allegations are denied.

17.    Denied.

18.    Admitted that Correct Solutions contracted directly with its customers to provide the services requested by the facility, that Smart Communications was permitted to provide its services directly to the inmates residing in the customer facilities as a subcontractor of Correct Solutions and that the products and services of Smart Communications and Correct Solutions remained separate and distinct. Correct Solutions denies that Smart Communications provided the services, equipment and training required under the MSA and Schedules, that Correct Solutions' customers constitute "Joint Customers" or that any "Joint Customers" exist. The remaining allegations are denied.

19.    Admitted that Exhibit A is a true and accurate copy of the NDA but the remaining allegations are denied.

20.    Denied on the basis that the NDA speaks for itself.

21.    Admitted that in the summer of 2017, Smart Communications made a presentation of some of its products and services to Correct Solutions at Correct Solutions' office in Louisiana. Denied that Smart Communications' tablets are correctional grade tablets. The remaining allegations are denied.

22.    Denied.

23.    Admitted that Smart Communications, through Rob Deglman, and Correct

Solutions, through Mark Turner, negotiated the terms of the MSA and Schedules to be executed between the parties. Denied that Correct Solutions' customers are "Joint Customers." The remaining allegations are denied.

24.     Denied as written.

25.     Admitted that Smart Communications initially requested a seven (7) year term for the MSA which was rejected by Correct Solutions as being too long. Admitted that the parties agreed for the term of the MSA to be coterminous with the terms of the contracts between Correct Solutions and its customers and that both Correct Solutions and Smart Communications had the right to non-renew the MSA and Schedules regardless of whether Correct Solutions' customers renewed their contract with Correct Solutions. The remaining allegations are denied.

26.     Denied.

27.     Denied.

28.     Denied as written.

29.     Admitted.

30.     Admitted that Correct Solutions sent Smart Communications a copy of the existing contract between Avoyelles Parish, Louisiana and Correct Solutions a draft amendment to be signed by Avoyelles Parish and Correct Solutions and the MSA. The remaining allegations are denied.

31.     Admitted.

32.     Admitted that Smart Communications executed the MSA, which was not specific to any one facility, and the Schedule for the Avoyelles Parish, Louisiana customer facility.  The remaining allegations are denied.

33.     Admitted that Correct Solutions executed the MSA, which was not specific to any one facility, and the Schedule for the Avoyelles Parish, Louisiana customer facility. Admitted that Exhibit B is a copy of the Contract and Amendment between Avoyelles Parish and Correct Solutions and the Schedule between Correct Solutions and Smart Communications for Avoyelles Parish. The remaining allegations are denied.

34.     Denied.

35.     Admitted that Correct Solutions executed Schedules with Smart Communications for the eight Correct Solutions' customers listed in paragraph 37 and that only one MSA was executed between Smart Communications and Correct Solutions. The remaining allegations are denied.

36.     Admitted that some of the contracts between Correct Solutions and its eight customers did not reference any equipment or services of Smart Communications. The remaining allegations are denied.

37.     Admitted that Correct Solutions executed Schedules with Smart Communications for the eight customers of Correct Solutions listed in paragraph 37. Denied that the customers are "Joint Customers."

38.     Denied as the MSA speaks for itself.

39.     Denied.

40.     Denied as the MSA speaks for itself.

41.     Admitted that Smart Communications does not share any revenue with Correct Solutions but the remaining allegations are denied as the MSA speaks for itself.

42.     Denied as the MSA speaks for itself.

43.     Denied as the MSA speaks for itself.

44.  Denied.

45.  Denied.

46.  Admitted that Smart Communications does not share any revenue with Correct Solutions.  Denied that Correct Solutions' customers were satisfied with the equipment and services provided by Smart Communications. The remaining allegations are denied.

47.  Denied.

48.  Denied.

49.  Denied.

50.  Admitted that Smart Communications and/or Smart Communications Collier, Inc. ("Smart Collier") acquired the licensing rights and related management from Lattice, Inc. and hired its employees in early 2019 so that Smart Communications and/or Smart Collier could expand into the inmate telecommunications services business. Admitted that Correct Solutions has never had any problem with proper and fair competition among competitors. Admitted that Smart Communications' subsequent conduct, which is at issue in this matter, consisted of deliberate and illicit attempts to steal Correct Solutions' telecommunications business from the very customers Correct Solutions had arranged for Smart Communications to provide equipment and other services during the term of the MSA and NDA, in part, through Smart Communications' misuse of Correct Solutions' confidential and proprietary information and unfair and deceptive conduct. The remaining allegations are denied.

51.  Denied.

52.  Denied.

53.    Admitted that as a direct result of Smart Communications' defective equipment and poor service to Correct Solutions' facility customers, its failure to perform under the MSA and Schedules and Correct Solutions' customers' displeasure with Smart Communications, in April/May 2019, Correct Solutions began researching options to provide proper functioning equipment and related, reliable services for certain of its customers. Admitted that Exhibit C is an April 1, 2017 email exchange. The remaining allegations are denied.

54.    Admitted that since May 2018, Tech Friends and Correct Solutions have had a business relationship and in July 2019, they executed a contract with an effective date of June 1, 2019. Denied that Correct Solutions would be entitled to receive any revenue from any equipment or services provided by Tech Friends should it subsequently become a provider of tablets or related services for any of the eight customers identified in paragraph 37. The remaining allegations are denied.

55.    Admitted that Smart Communications sent marketing materials to Correct Solutions' customer the City of St. Louis using confidential and proprietary information disclosed by Correct Solutions in an attempt to interfere with Correct Solutions' contract with the City of St. Louis and to steal the City of St. Louis facility's inmate telecommunications business for Smart Communications' own benefit. Admitted that Smart Communications followed the marketing materials with another direct solicitation by Smart Communications' salesperson, Jennifer Tongate, to try to secure the City of St. Louis as a customer for Smart Communications telecommunications services while the City of St. Louis was under contract for those same services with Correct Solutions. Admitted that Exhibit D is the marketing materials sent by Smart Communications to

Correct Solutions' customer, the City of St. Louis facility. The remaining allegations are denied.

56.    Denied.

57.    Denied.

58.    Admitted that Captain William Dumas of Sebastian County provided Correct Solutions with a list of problems Sebastian County had been encountering since Smart Communications began providing equipment and services because of Smart Communications' defective equipment, poor service and failure to address the issues at the facility. Correct Solutions admits that Exhibit E are email communications exchanged. The remaining allegations are denied.

59.    Denied.

60.    Denied.

61.    Admitted that Rick Ferguson provided Captain William Dumas' email to Mark Turner on May 17, 2019.  The remaining allegations are denied.

62.    Admitted that Ferguson sent the email attached as Exhibit F. The remaining allegations are denied.

63.    Denied.

64.    Denied.

65.    Admitted that Exhibit G is true copy of an email exchange. The remaining allegations are denied.

66.    Admitted that Correct Solutions terminated the MSA and NDA based on Smart Communications' misuse of the Confidential Information in violation of the MSA and NDA in order to directly solicit Correct Solutions' customer and that the termination

was not based on the defective equipment and poor services Smart Communications had been and was continuing to provide. The remaining allegations are denied.

67.   Admitted.

68.   Denied.

69.   Denied.

70.   Denied.

71.   Admitted.

72.   Denied as the July 17, 2019 letter speaks for itself.

73.   Denied as the July 17, 2019 letter speaks for itself.

74.   Denied.

75.   Denied as the NDA and MSA speak for themselves.

76.   Denied.

77.   Denied.

78.   Denied.

79.   Admitted.

80.   Denied as the July 26, 2019 letter speaks for itself.

81.   Admitted that Correct Solutions has not slandered Smart Communications or stated any false or untrue statements and that counsel for Correct Solutions sent a written response on July 26, 2019.  The remaining allegations are denied.

82.   Denied.

83.   Denied.

84.   Denied.

85.   Denied.

86.    Admitted that Captain Alan Johnson of Washington County complained to Correct Solutions about Smart Communications' defective equipment, poor service and failure to address the numerous complaints raised by Washington County and that based on Smart Communications' refusal to address its poor equipment and services, Washington County began to provide those complaints to both Correct Solutions and Smart Communications. Admitted that Exhibit L is an email string. The remaining allegations are denied.

87.    Denied.

88.    Admitted.

89.    Denied as written as Smart Communications omits that the confirmation was for the very limited period of time that was needed by all counsel to work out the terms of the stipulation referenced in paragraph 88.

90.    Admitted that Ferguson sent the August 15, 2019 email attached as Exhibit M because of the failure of Smart Communications to address the issues several of the facilities were continuing to experience and the lawsuit filed by Smart Communications twelve days earlier. The remaining allegations are denied.

91.    Admitted that Ferguson sent the August 15, 2019 email attached as Exhibit N. The remaining allegations are denied.

92.    Admitted that Correct Solutions had internal communications about the defective equipment being provided by Smart Communications to Correct Solutions' customers, Smart Communications' lack of response and poor service to Correct Solutions' customers and the facilities' numerous complaints to Correct Solutions about Smart Communications' failure to perform. Admitted that Rick Pruitt sent the August 15,

2019 email attached as Exhibit O.  The remaining allegations are denied.

93.    Denied.

94.    Admitted that Correct Solutions' customers were unhappy with the defective equipment and poor services which Smart Communications was providing. Admitted that Captain Alan Johnson with the Washington County correctional facility sent the August 16, 2019 email attached as Exhibit P as a result of the defective equipment, poor response time, lack of service and failure to perform by Smart Communications at the Washington County facility. The remaining allegations are denied.

95.    Admitted that Rick Pruitt sent the email attached as Exhibit Q. The remaining allegations are denied.

96.    Admitted that Sebastian County notified Smart Communications that its tablets were not correctional grade, that they were easily broken by inmates and turned into shanks and that the batteries could be removed.  Admitted that Sebastian County requested that Smart Communications provide the facility with proper tablets, repair the tablets and provide timely and adequate service. Admitted that Sebastian County provided photographs of removed batteries and weapons constructed by inmates using Smart Communications' defective tablets. Admitted that instead of addressing the problems Sebastian County was experiencing, Smart Communications sent emails to Sebastian County disputing its representations about the defective tables and battery removal.  The remaining allegations are denied.

97.    Denied.

98.    Admitted that the August 23, 2019 email string attached as Exhibit R is a correct copy.  The remaining allegations are denied.

99.    Admitted that Captain Dumas of Sebastian County complained to Correct Solutions about Smart Communications' defective tablets which were not suitable for correctional facilities. Denied that Smart Communications was not obligated to provide the books and games on its tablets as it expressly represented to Sebastian County that if Sebastian County agreed for Smart Communications to serve as Correct Solutions' subcontractor at that facility, Smart Communications would include the books and games. The remaining allegations are denied.

100.    Denied.

101.    Admitted that Bowie County was provided defective equipment and poor services by Smart Communications and that it provided its complaints to Smart Communications and Correct Solutions. Admitted that as a result of Smart Communications' failure to address the problems, the facility began to send its complaints to Correct Solutions. Admitted that Exhibit S is a true copy of the August 27, 2019 email. The remaining allegations are denied.

102.    Denied.

103.    Admitted that Correct Solutions' counsel and Mark Turner of Correct Solutions spoke by telephone to Frank Turner of the City of St. Louis but denied that the City of St. Louis was happy with the equipment or services provided by Smart Communications to the City of St. Louis. The remaining allegations are denied.

104.    Admitted that the parties executed a Stipulation. The remaining allegations are denied as the Stipulation speaks for itself.

105.    Denied.

106.    Admitted that Jon Logan, CEO of Smart Communications, tried to schedule

a meeting for a sales representative of Smart Communications to meet with several of Correct Solutions' customers in order to solicit Correct Solutions' business for Smart Communications. Denied that Smart Communications' email was an offer to send an employee of Smart Communications to address and resolve Smart Communications' defective equipment or poor service at the facilities.

107.    Admitted that despite the Stipulation, Correct Solutions' customers continued to receive defective equipment and poor service from Smart Communications and that they sought the assistance from Correct Solutions to receive the proper equipment and services required under the MSA and Schedules. The remaining allegations are denied.

108.    Admitted that Exhibit T is a copy of Captain Johnson's email.  The remaining allegations are denied.

109.    Admitted that Exhibit U is a copy of an email communication between Washington County and Smart Communications.  The remaining allegations are denied.

110.    Admitted that Exhibit V is a true copy of Sebastian County's response email to Smart Communications.  The remaining allegations are denied.

111.    Denied.

112.    Denied.

113.    Admitted that Exhibit W is a true copy of the September 13, 2019 Notice to Cure. Admitted that Correct Solutions attempted to compel Smart Communication to comply with its contractual obligations and its direct representations to Sebastian County including providing the ruggedized, correctional grade tablets as required under the MSA and Schedule. The remaining allegations are denied.

114.    Admitted that Smart Communications filed an Emergency Motion and that Captain William Dumas traveled from Arkansas to Tampa to testify at the emergency hearing scheduled by Smart Communications about the defective equipment and poor service provided by Smart Communications to Sebastian County. The remaining allegations, including footnote 2, are denied.

115.    Denied.

116.    Without knowledge as to whether Sebastian County disabled any systems of Smart Communications on September 19, 2019. Denied that any actions by Sebastian County were caused by or the result of any actions of Correct Solutions. The remaining allegations are denied.

117.    Denied.

118.    Admitted.

119.    Admitted.

120.    Denied on the basis that the document speaks for itself.

121.    Denied

122.    Denied.

123.    Denied.

124.    Admitted that the eight customers described in paragraph 37 were the customers of Correct Solutions. Denied that the eight customers listed in paragraph 37 were "Joint Customers" or were customers of Smart Communications. The remaining allegations are denied.

125.    Admitted that the eight customers described in paragraph 37 were the customers of Correct Solutions. Denied that the eight customers listed in paragraph 37

are "Joint Customers." The remaining allegations are denied**.**

126.   Admitted.

127.   Denied.

128.   Denied.

129.   Admitted that as a result of Smart Communications' defective equipment, poor service and failure to perform under the MSA and Schedules, Correct Solutions' customers became unhappy with Smart Communications. To address the complaints of its customers, in April/May 2019 Correct Solutions began researching options to provide appropriate functioning equipment and related, reliable services at those facilities. Denied that the eight customers listed in paragraph 37 are "Joint Customers." The remaining allegations are denied.

130.   Admitted that as a result of Smart Communications' defective equipment, poor service and failure to perform under the MSA and Schedules, Correct Solutions' customers became unhappy with Smart Communications.  To address the complaints of its customers, in April/May 2019 Correct Solutions began researching options to provide proper, functioning equipment and related, reliable services at those facilities. The remaining allegations are denied.

131.   Admitted.

132.   Admitted that Exhibit AA is a true copy of an August 23, 2019 email.  The remaining allegations are denied.

133.   Denied that any of the eight customers listed in paragraph 37 are "Joint Customers." Correct Solutions is without knowledge as to services provided by Tech Friends to Washington County as any services by Tech Friends were provided pursuant

to a contract between Washington County and Summit Food Service which is unrelated to Correct Solutions.  The remaining allegations are denied.

134.    Denied on the basis that the order speaks for itself, the order is a nonfinal order, is not the law of the case and, as the state court judge advised the parties prior to his ruling, would not be binding on the trier of fact.

135.    Denied.

136.    Admitted.

137.    Denied as Sebastian County sent out a request for proposals and Smart Communications chose not to submit a proposal other than for all services sought by Sebastian County including the telephone services which Correct Solutions has been providing.  The remaining allegations are denied.

138.    Denied as Sebastian County sought separate proposals for the telecommunication services and for tablets and related services. Correct Solutions submitted a bid to provide only telecommunications services which bid was recently awarded at reduced revenue for Correct Solutions.  Any tablets or related services will be pursuant to a separate contract between that vendor and Sebastian County which contract is unrelated to Correct Solutions. The remaining allegations are denied.

139.    Admitted that Avoyelles Parish advised Correct Solutions that it was not exercising it right to renew its contract with Correct Solutions.

140.    Admitted that the contract between Correct Solutions and Avoyelles Parish contained an expiration date of October 1, 2020, that it expired on June 30, 2020 and that Avoyelles Parish elected not to renew its contract with Correct Solutions.  The remaining allegations are denied.

141.   Denied.

142.   Denied. Avoyelles Parish did not renew its contract with Correct Solutions and did not accept Correct Solutions' bid to provide for telecommunication services only. The remaining allegations are denied.

143.   Denied as Smart Communications breached the NDA, the MSA and Schedules by failing to provide the facilities with ruggedized, correctional grade tablets and/or kiosks, to remedy its defective tablets and kiosks, to provide timely, reliable and competent services, by conditioning the delivery of ruggedized, correctional grade tablets for Sebastian County on Sebastian County's agreement to terminate its contract with Correct Solutions and to enter into a direct contract with Smart Communications to include telecommunications services, by its improper disclosure and use of Correct Solutions' confidential and proprietary information, and by its direct solicitation for the telephone services at the facilities listed in paragraph 37 of its Second Amended Complaint during the existence of the MSA, the NDA and the Schedules. Smart Communications further elected not to submit bids in response to requests for proposals from several of the facilities.

144.   Denied as Smart Communications failed to perform under the MSA or the Schedules, violated the NDA and is in breach of the MSA, the Schedules and the NDA.

145.   Correct Solutions is without knowledge and therefore denied.

**Count I**
**Declaratory Relief**
**(Mutual Confidentiality and Nondisclosure Agreement)**

146.   Correct Solutions realleges its responses to paragraphs 1 through 145 in response to paragraph 146.

147.    Admitted for jurisdictional purposes only.

148.    Admitted.

149.    Admitted that the NDA was executed on June 15, 2017. The remaining allegations are denied.

150.    Admitted that the NDA and the MSA include Confidential Information and Non-Disclosure provisions.  Denied that any of the eight facilities listed in paragraph 37 are "Joint Customers." The remaining allegations are denied.

151.    Denied as the document speaks for itself.

152.    Denied that any of the eight facilities listed in paragraph 37 are "Joint Customers."  The remaining allegations are denied.

153.    Admitted that Smart Communications violated the NDA and that, as a result, Correct Solutions is entitled to terminate all agreements between Correct Solutions and Smart Communications.  The remaining allegations are denied.

154.    Denied.

155.    Denied.

156.    Denied.

157.    Admitted.

158.    Denied.

159.    Denied.

**Count II**
**Declaratory Relief**
**(Master Services Agreement)**

160.    Correct Solutions realleges its responses to paragraphs 1 through 145 in response to paragraph 160.

161.    Admitted for jurisdictional purposes only.

162.    Admitted.

163.    Denied.

164.    Denied.

165.    Denied that any of the eight facilities listed in paragraph 37 are "Joint Customers." The remaining allegations are denied.

166.    Admitted that Smart Communications violated the MSA and, as a result, Correct Solutions is entitled to terminate all agreements between Correct Solutions and Smart Communications.  The remaining allegations are denied.

167.    Admitted that Correct Solutions sent notices of non-renewal to Smart Communications in accordance with the MSA.  The remaining allegations are denied.

168.    Denied.

169.    Denied.

170.    Denied.

171.    Admitted.

172.    Denied.

173.    Denied.

### Count III
### Breach of Contract
### (Washington County)

174.    Correct Solutions realleges its responses to paragraphs 1 through 145 in response to paragraph 174.

175.    Admitted that Correct Solutions executed a contract with Smart Communications to provide certain equipment and services to Washington County and that Composite Exhibit CC includes a copy of the Correctional Communication Service

Agreement between Washington County and Correct Solutions and the Schedule 1 between Correct Solutions and Smart Communications for Washington County.  The remaining allegations are denied.

176.    Denied.

177.    Denied.

178.    Denied as the agreement speaks for itself.  The remaining allegations are denied.

179.    Denied.

180.    Correct Solutions admits that it has continued to provide telecommunications services but the remaining allegations are denied.

181.    Correct Solutions admits that it sent a Notice of Non-Renewal for Washington County to Smart Communications but the remaining allegations are denied.

182.    Denied.

183.    Denied.

## Count IV
## Breach of Implied Covenant of Good Faith and Fair Dealing
### (Washington County)

184.    Correct Solutions realleges its responses to paragraphs 1 through 145 in response to paragraph 184.

185.    Admitted.

186.    Denied.

187.    Denied as the Agreement speaks for itself.

188.    Denied as the Agreement speaks for itself.

189.    Denied.

190.    Denied.

191.    Denied.

192.    Denied.

## Count V
## Tortious Interference with Advantageous Business Relationship
### (Washington County)

193.    Correct Solutions realleges its responses to paragraph 1 through 145 in response to paragraph 193.

194.    Denied.

195.    Denied.

196.    Denied.

197.    Denied.

198.    Denied.

199.    Denied.

## Count VI
## Breach of Contract
### (Sebastian County)

200.    Correct Solutions realleges its responses to paragraphs 1 through 145 in response to paragraph 200.

201.    Admitted that Correct Solutions executed a contract with Smart Communications to provide certain equipment and services to Sebastian County and that Composite Exhibit DD includes a copy of the Contract and Agreement between Sebastian County and Correct Solutions and the Schedule 1 between Correct Solutions and Smart Communications for Sebastian County.  The remaining allegations are denied.

202.    Denied.

203.    Denied.

204.    Denied.

205. Denied.

## Count VII
## Breach of Implied Covenant of Good Faith and Fair Dealing
## (Sebastian County)

206. Correct Solutions realleges its responses to paragraphs 1 through 145 in response to paragraph 206.

207. Admitted.

208. Denied as the Agreement speaks for itself.

209. Denied as the Agreement speaks for itself.

210. Denied as the Agreement speaks for itself.

211. Denied.

212. Denied.

213. Denied.

214. Denied.

215. Denied.

## Count VIII
## Tortious Interferences with Advantageous Business Relationship
## (Sebastian County)

216. Correct Solutions realleges it responses to paragraphs 1 through 145 in response to paragraph 216.

217. Denied.

218. Denied.

219. Denied.

220. Denied.

221. Denied.

222. Denied.

223.    Denied.

224.    Denied.

**Count IX**
**Breach of Contract**
**(Avoyelles Parish)**

225.    Correct Solutions realleges its responses to paragraphs 1 through 145 in response to paragraph 225.

226.    Admitted that Correct Solutions executed a contract with Smart Communications to provide certain equipment and services to Avoyelles Parish and that Composite Exhibit B contains copies of the MSA between Correct Solutions and Smart Communications, the Proposal Contract and Agreements and First Amendment to Contract and Agreement between Avoyelles Parish and Correct Solutions and Schedule 1 between Correct Solutions and Smart Communications for Avoyelles Parish. The remaining allegations are denied

227.    Denied.

228.    Denied.

229.    Denied.

230.    Denied.

231.    Denied.

**Count X**
**Breach of Implied Covenant Faith and Fair Dealing**
**(Avoyelles Parish)**

232.    Correct Solutions realleges its responses to paragraphs 1 through 145 in response to paragraph 232.

233.    Admitted.

234.    Denied as the Agreement speaks for itself.

235.    Denied as the Agreement speaks for itself.

236.    Denied as the Agreement speaks for itself.

237.    Denied.

238.    Denied.

239.    Denied.

## Count XI
## Tortious Interference with Advantageous Business Relationship
### (Avoyelles Parish)

240.    Correct Solutions realleges its responses to paragraphs 1 thought 145 in response to paragraph 240.

241.    Denied.

242.    Denied.

243.    Denied.

244.    Denied.

245.    Denied.

246.    Denied.

## Count XII
## Fraud

247.    Correct Solutions realleges its responses to paragraphs 1 through 145 in response to paragraph 247.

248.    Denied inclusive of subparts a. through e.

249.    Denied.

250.    Denied.

251.    Denied.

**Count XIII**
**Tortious Interference with Advantageous Business Relationship**
**(Greene County Sheriff's Office)**

252.    Correct Solutions realleges its response to paragraphs 1 through 145 and paragraphs 275 through 281 in response to paragraph 252.

253.    Denied including the allegations set forth in footnote 3.

254.    Denied.

255.    Denied.

256.    Denied.

257.    Denied.

258.    Denied.

259.    Admitted that Correct Solutions and the Greene County Sheriff's Office executed a Contract and Agreement dated July 24, 2019.  The remaining allegations are denied as the contract speaks for itself.

260.    Admitted that Exhibit FF is a copy of a Contract and Agreement dated July 24, 2019. Denied that the Contract is the entire agreement between Greene County and Correct Solutions. The remaining allegations are denied.

261.    Denied.

262.    Denied.

263.    Without knowledge and therefore denied.

264.    Without knowledge as to communications between Greene County and Tech Friends. Denied that the Stipulation applied to Greene County. The remaining allegations are denied.

265.    Without knowledge and therefore denied.

266.   Without knowledge and therefore denied.

267.   Denied.

268.   Admitted that Exhibit GG is a true and accurate copy of the Amendment executed by Correct Solutions and Greene County. The remaining allegations are denied as the contract speaks for itself.

269.   Denied.

270.   Admitted that Exhibit HH is an email from Rick Ferguson and that the selection of vendors was made by Greene County and not Correct Solutions. The remaining allegations are denied.

271.   Denied.

272.   Denied.

273.   Denied.

**Count XIV**
**Tortious Interference with Advantageous Business Relationship**
**(Pope County Sheriff's Office)**

274.   Correct Solutions realleges its responses to paragraphs 1 through 145 and 253 thorough 272 in response to paragraph 274.

275.   Admitted that Exhibit II is a copy of the agreement between Pope County and Smart Communications but deny that Smart Communications continued to have an advantageous business relationship as Smart Communications Collier, Inc. and Pope County are parties to an action pending in state court in Pope County, Arkansas styled *Ben Cross, in his official capacity as County Judge of Pope County, Arkansas, Plaintiff vs. Smart Communications Collier, Inc.*, Defendant, No. 58 CV-20-181, pending in the Circuit Court for Pope County, Division 3 wherein Judge Cross is seeking declaratory

judgment declaring that the amendment to the contract is invalid or, alternatively that the contract with Smart Communications Collier Inc. was properly terminated by Pope County.  Smart Communications Collier Inc. and Pope County were also parties to that action entitled, *Smart Communications Collier, Inc. v. Pope county, Arkansas, Sheriff's Office; and Sheriff Shane Jones*, bearing Civil Action No. 4:20-cv-368-DPM, on the docket of the United States District Court, Eastern District of Arkansas, Central Division. Smart Communications has appealed the dismissal of its complaint by the federal court in that action.

276.    Denied.

277.    Denied.

278.    Denied.

279.    Denied.

280.    Without knowledge and therefore denied.

281.    Correct Solutions admits that it has a contractual relationship with Pope County and that Pope County is one of its customers. The remaining allegations are denied.

282.    Denied.

**Count XV**
**<u>Unfair Competition</u>**

283.    Correct Solutions realleges its responses to paragraphs 1 through 145 in  in response to paragraph 283.

284.    Admitted that Smart Communications and Correct Solutions are competitors for certain services. The remaining allegations are denied.

285.    Denied as written.

286.   Denied.

287.   Denied.

### First Affirmative Defense

Smart Communications has unclean hands and is not entitled to any of the relief sought in Counts I and II of its Amended Complaint. The NDA required the parties to "hold all Confidential Information in trust and confidence" received by the opposing party. Likewise, the MSA provides, in part, that the parties shall "not disclose in any manner, directly or indirectly, to any third party any portion of the Confidential Information." The NDA and MSA included safeguard provisions that prohibit Smart Communications and its employees from misusing the information disclosed by Correct Solutions without the prior written consent of Correct Solutions, other than in furtherance of its business agreement and to perform its duties under the NDA. Without the knowledge or consent of Correct Solutions, Smart Communications used the Confidential Information disclosed by Correct Solutions to directly solicit a customer of Correct Solutions in an effort to steal the customer of Correct Solutions.

### Second Affirmative Defense

Smart Communications breached the NDA and the MSA by improperly using confidential/proprietary information disclosed by Correct Solutions to Smart Communications pursuant to the NDA and the MSA. The NDA and the MSA prohibit Smart Communications from using the Confidential Information in any fashion except to perform its duties under the NDA and the MSA or with Correct Solutions' express prior written consent. Without the knowledge or consent of Correct Solutions, Smart Communications utilized the Confidential Information disclosed by Correct Solutions to

directly solicit a customer of Correct Solutions in an effort to steal the customer of Correct Solutions. As a result of the breach, Correct Solutions was entitled to terminate the MSA.

### Third Affirmative Defense

Smart Communications tortiously interfered with Correct Solutions' contractual agreement with its customer, the City of St. Louis, which entitled Correct Solutions to terminate the MSA. The NDA and the MSA prohibit Smart Communications from using the Confidential Information in any fashion except to perform its duties under the NDA and the MSA or with Correct Solutions' express prior written consent. Without the knowledge or consent of Correct Solutions, Smart Communications utilized the Confidential Information disclosed by Correct Solutions to directly solicit a customer of Correct Solutions in an effort to steal the customer from Correct Solutions. Florida law permits Correct Solutions to protect its own business interests and contractual agreements with its customers. Thus, Correct Solutions was entitled to terminate the MSA to protect its interests and prevent further interference by Smart Communications.

### Fourth Affirmative Defense

Smart Communications breached its implied duty of good faith and fair dealing by improperly using Confidential Information as well as proprietary information disclosed by Correct Solutions to Smart Communications pursuant to the NDA and the MSA. The NDA and the MSA prohibit Smart Communications from using the Confidential Information in any fashion except to perform its duties under the NDA and the MSA or with Correct Solutions' express prior written consent. Without the knowledge or consent of Correct Solutions, Smart Communications utilized the Confidential Information disclosed by Correct Solutions to directly solicit a customer of Correct Solutions in an

effort to steal the customer of Correct Solutions. As a result, Correct Solutions was entitled to terminate the MSA.

### Fifth Affirmative Defense

Smart Communications' requests for Declaratory Judgment in Counts I and II are moot as to Washington County, Sebastian County, Avoyelles Parish and the City of St. Louis because of the expiration or non-renewal of the contracts between Correct Solutions and these facilities.

### Sixth Affirmative Defense

Smart Communications breached the MSA and each of the eight Schedules by failing to provide the equipment and perform the services required under the MSA and the Schedules and by failing to correct the deficiencies disclosed by several facilities.  As a result, several of Correct Solution's customers no longer wanted Smart Communications to provide any equipment or services for their facility and they therefore nonrenewed their contracts and business relationship with Correct Solutions causing monetary damages to Correct Solutions.

### Seventh Affirmative Defense

Smart Communications' claims are based on its assertion that the customers of Correct Solutions were "Joint Customers," which is negated by the agreements between the parties. Correct Solutions is the "customer" of Smart Communications as defined in the MSA and the facilities are the "customers" of Correct Solutions. The MSA granted Smart Communications the exclusive right to install and maintain its systems "located in the Customer facilities and contractually obligated Customer facilities identified on the Schedules." Under the MSA, Correct Solutions and Smart Communications agreed that

Smart Communications is "an independent contractor and nothing in this Agreement is intended nor shall be construed to create an agency relationship, and [sic; an] employer/employee relationship, a joint venture relationship or any other relationship allowing Customer to exercise control or discretion over the manner by which [Smart Communications] performs hereunder." Further, there is no contractual relationship between Smart Communications and any of Correct Solutions' customers.

## Eighth Affirmative Defense

Smart Communications is not entitled to the injunctive relief sought in Count I and II of the Amended Complaint as the remedy for the causes of action plead is monetary damages.

## Ninth Affirmative Defense

Smart Communications has failed to allege a cause of action for Breach of Contract in Counts III, VI, and IX as it failed to identify any contractual provision breached by Correct Solutions.

## Tenth Affirmative Defense

Smart Communications failed to allege a cause of action for Breach of Implied Covenant of Good Faith and Fair Dealing in Counts IV, VII, and X as it failed to identify any contractual provision which Correct Solutions breached or failed to perform.

## Eleventh Affirmative Defense

Smart Communications is barred from asserting any claims as to Washington County because Smart Communications breached the MSA with Correct Solutions and the Schedule for Washington County by failing to provide the equipment required under the Schedule, by failing to provide the services required under the contracts and by failing

to timely or competently address the numerous deficiencies and problems Washington County was reporting to Smart Communications.

<strong>Twelfth Affirmative Defense</strong>

The written contract between Correct Solutions and Washington County expired according to its terms. Therefore, any contractual rights or business relationship of Smart Communications expired as a matter of law.

<strong>Thirteenth Affirmative Defense</strong>

Smart Communications received the benefit of its bargain at Washington County as it had no expectation to provide any equipment or services to Washington County beyond the 24 month period which was the term of the contract between Correct Solutions and Washington County.

<strong>Fourteenth Affirmative Defense</strong>

Any damages to Smart Communications' reputation was caused by its own conduct including during the terms of the MSA with Correct Solutions and Schedule for each of the facilities, by its abrupt termination of all services and removal of its equipment and services at Washington County with no notice to the inmates and employees at Washington County or Correct Solutions, its social postings, its abusive conduct towards the facilities, its threats of lawsuits against facilities and its lawsuits against certain facilities and the facilities' Sheriff and/or administrators.

<strong>Fifteenth Affirmative Defense</strong>

Any damages suffered by Smart Communications at Washington County were caused by its own conduct. On January 21, 2020, Jak Kimball, the Technology Director for Washington County attempted to disable the Smart Jail Mail for the limited purpose

of preventing inmates from scheduling visits for the following week after Smart Communications' equipment was removed. This, however, inadvertently disabled the system immediately. Smart Communications kicked Jak Kimball off the system when Mr. Kimball attempted to correct his error. Smart Communications immediately shut down its system with no notice to Washington County or the inmates who were using the services and equipment, terminated the entire system and removed its equipment. Smart Communications also posted a public notice criticizing Washington County which further destroyed the relationship between Smart Communications and Washington County.

### Sixteenth Affirmative Defense

Smart Communications caused the termination of its services at Sebastian County, the non-renewal of Correct Solutions' contract with Sebastian County and monetary damages to Correct Solutions because Smart Communications breached the MSA with Correct Solutions and the Schedule for Sebastian County by failing to provide ruggedized, correctional grade tablets and by failing to provide timely and competent services or address the numerous problems Sebastian County reported to Smart Communications.

### Seventeenth Affirmative Defense

Smart Communications caused the termination of its services at Sebastian County, the non-renewal of Correct Solutions' contract with Sebastian County and monetary damages to Correct Solutions by Smart Communications' failure or refusal to cure the defective equipment and services at Sebastian County after receiving the Notice to Cure from Correct Solutions.

### Eighteenth Affirmative Defense

Smart Communications caused the termination of its services by Sebastian County,

the non-renewal of Correct Solutions' contract with Sebastian County and monetary damages to Correct Solutions because Smart Communications directly threatened and insulted representatives of Sebastian County, refused to provide ruggedized, correctional grade tablets unless Sebastian County replaced Correct Solutions with Smart Communications as its telecommunications provider and signed a new contract with Smart Communications which included the telecommunications services being provided at the time by Correct Solutions, harassed Sebastian County through multiple duplicative public records requests and insulted Sebastian County with an offer of a monetary bribe and free cruise to Mexico for the Major, the Sheriff and their spouses.

### Nineteenth Affirmative Defense

Smart Communications has suffered no damages under Counts VI and VII because Sebastian County non-renewed its contract with Correct Solutions. Thus, the MSA and Schedule between Smart Communications and Correct Solutions expired thereby terminating any right or expectation of Smart Communications to provide equipment and services or receive any future revenues as a matter of law.

### Twentieth Affirmative Defense

Smart Communications waived its right to claim any damages and/or failed to mitigate its damages under Counts VI and VII by its failure or refusal to submit any proposals to Sebastian County in response to Sebastian County's request for separate proposals for telephone services and for tablets and related services.

### Twenty-First Affirmative Defense

Smart Communications caused the termination of its services at Avoyelles Parish and the non-renewal of Correct Solutions' contract with Avoyelles Parish because it

breached the MSA with Correct Solutions and the Schedule for Avoyelles Parish by failing to provide the equipment and services required under the contracts, by failing to repair or replace the defective equipment and by failing to provide timely and competent services or address the numerous problems Avoyelles Parish reported to Smart Communications.

### Twenty-Second Affirmative Defense

Smart Communications has suffered no damages under Counts IX and X as it has continued to provide services to Avoyelles Parish subsequent to the expiration of the contract between Correct Solutions and Avoyelles Parish.

### Twenty-Third Affirmative Defense

Avoyelles Parish exercised its right to non-renew its contract with Correct Solutions. As a result, the MSA and Schedule between Smart Communications and Correct Solutions expired on June 30, 2020 thereby terminating Smart Communications' entitlement or legal expectation to provide equipment and services, to continue any business relationship or receive any future revenues as a matter of law.

### Twenty-Fourth Affirmative Defense

Smart Communications waived any claim for damages and/or failed to mitigate its damages by its failure to submit any proposal to Avoyelles Parish in response to the request for proposals issued by Avoyelles Parish.

### Twenty-Fifth Affirmative Defense

Smart Communications' has failed to state a cause of action for tortious interference as to Washington County, Sebastian County and Avoyelles Parish as Correct Solutions cannot tortiously interfere with a business relationship or contract to which it

is a party.

### Twenty-Sixth Affirmative Defense

Smart Communications' has failed to state a cause of action for tortious interference as to Washington County, Sebastian County and Avoyelles Parish as any actions by Correct Solutions were undertaken to safeguard its own financial, economic and/or contractual obligations and are privileged.

### Twenty-Seventh Affirmative Defense

Smart Communications has failed to state a cause of action for tortious interference as to Washington County, Sebastian County or Avoyelles Parish as it has no business relationship with the entities and the MSA and Schedules which gave it the right to provide equipment and services to the facilities expired as a result of the expiration or non-renewal of the contracts between the facilities and Correct Solutions.

### Twenty-Eighth Affirmative Defense

Smart Communications has not suffered any damages at Sebastian County and Avoyelles Parish as it continues to provide services to those facilities.

### Twenty-Ninth Affirmative Defense

Smart Communications has failed to state a cause of action for Breach of Implied Covenant of Good Faith and Fair Dealing under Counts IV, VII and X as it failed to allege any breach of contract by Correct Solutions.

### Thirtieth Affirmative Defense

Smart Communications has failed to state a cause of action for fraud as its claim is based on the same damages it is seeking under its claims for breach of contract, it has failed to allege a tort that is independent of any breach of contract claim and its claims

are based on matters already covered in the NDA, MSA and Schedules between Smart Communications and Correct Solutions.

### Thirty-First Affirmative Defense

Smart Communications has failed to state a cause of action for fraud as the statements upon which it relies for its claim are not actionable; rather they constitute statements of opinion or conjecture including about the future conduct of third parties.

### Thirty-Second Affirmative Defense

Any claims based on oral representations are barred pursuant to the terms of the MSA and the Schedules.

### Thirty-Third Affirmative Defense

Smart Communications lacks standing to sue for tortious interference as to Pope County or Greene County as it is not the party under contract with said entities and has not plead any other business relationship.

### Thirty-Fourth Affirmative Defense

Smart Communications has no claim for tortious interference as to Pope County or Greene County as there has been no breach by Pope County or Greene County nor did any actions by Correct Solutions cause the termination or non-renewal of any contracts or the termination of Smart Communications' delivery of equipment and services to those facilities.

### Thirty-Fifth Affirmative Defense

Smart Communications has no claim for tortious interference as to Pope County as Smart Communications Collier, Inc. and Pope County are parties to an action pending in state court in Pope County, Arkansas styled *Ben Cross, in his official capacity as*

*County Judge of Pope County, Arkansas, Plaintiff vs. Smart Communications Collier, Inc., Defendant*, No. 58 CV-20-181, pending in the Circuit Court for Pope County, Division 3 wherein Judge Cross is seeking declaratory judgment declaring that the amendment to the contract is invalid or, alternatively that the contract with Smart Communications Collier Inc. was properly terminated by Pope County. Until the Pope County Circuit Court enters the declaratory judgment, Smart Communications Collier Inc. continues to provide services and equipment to Pope County and receive revenue therefrom.

### Thirty-Sixth Affirmative Defense

Smart Communications has no claim for tortious interference as to Pope County as the contract between Pope County and Smart Communications Collier, Inc. terminated, expired or is invalid as a matter of Arkansas law.

### Thirty-Seventh Affirmative Defense

Smart Communications has no claim for tortious interference at Pope County as Pope County terminated its contract with Smart Communications based on Smart Communications' breach of the contract during its duration. As set forth in paragraph 25 through 29 of the complaint filed by Ben Cross, in his official capacity as County Judge of Pope County, Arkansas, during the course of the contractual term between Smart Communications and Pope County, Smart Communications' electronic messaging system failed to function on numerous occasions, Pope County was required to rely on its own agents to manually reset the equipment due to Smart Communications' failure to rectify the malfunction and Smart Communication failed to provide a fully functioning electronic messaging system or maintain the system. As a result of the conduct of Smart Communications, Pope County sent its notice of termination.

### Thirty-Eighth Affirmative Defense

Smart Communications has no cause of action for tortious interference with Pope County or Greene County as any damages suffered as a result of the expiration or termination of the contracts with the two facilities was based on the conduct of Smart Communications, the failure by Smart Communications Collier to provide the equipment and services required under the contracts with the two facilities and, as to Pope County, the verbal threats by Smart Communications that it will sue Pope County and cause the county to spend $300,000 in attorneys fees and by its litigation with Pope County.

### Thirty-Ninth Affirmative Defense

Smart Communications has no claim for unfair competition as there was no deceptive or fraudulent conduct by Correct Solutions and no likelihood of consumer confusion.

### Fortieth Affirmative Defense

Pursuant to the MSA and Schedules, Smart Communications has no right to seek reputation damages or special damages.

### Forty-First Affirmative Defense

Smart Communications' claims that are based on the substitution of Tech Friends are negated by the exhibits to its Second Amended Complaint. Pursuant to the contract between Correct Solutions and Tech Friends, should Correct Solutions place Tech Friends with any of the eight customer facilities, they are exempted from the shared compensation formula in the agreement and Correct Solutions is not entitled to receive any sums. Further, Tech Friends has not been placed in any of the eight facilities which are the subject of the MSA.

## Demand for Attorney's Fees and Costs

Correct Solutions has retained the law firms of Harllee & Bald, P. A. and Roedel, Parsons, Koch, Blache, Balhoff & McCollister to represent its interests in this matter and pursuant to paragraph 13 of the NDA and applicable Florida law, Correct Solutions is entitled to recover its attorney's fees and costs against Smart Communications.

## AMENDED COUNTERCLAIM AND DEMAND FOR JURY TRIAL

Counterclaim Plaintiff, Correct Solutions, LLC a/k/a Correct Solutions Group[2] hereby sues Counterclaim Defendant, Smart Communications Holding, Inc., and Smart Communications Collier, Inc. and says as follows:

## Governing Principle of the Amended Counterclaim

1.      Occam's razor posits that, among various available explanations, usually the simplest explanation is the correct one.[3]

2.      Applying Occam's razor to the situation at hand, the simplest explanation is that it is more likely the numerous complaints received from, and problems being experienced by, the subject facilities concerning Smart Communications' equipment, responsiveness, performance, and service – as extensively detailed in Smart Communications' Second Amended Complaint – were the reason these facilities non-renewed their contracts with Correct Solutions, thus leading to Smart Communications' removal from such facilities, than it is that Correct Solutions somehow duped, cajoled, or coerced multiple correctional facilities, including the Sheriffs, Deputies, Captains and other administrators responsible for their operations, to engage in fraudulent conduct

---

[2] Plaintiff incorrectly included "LLC" after Correct Solutions Group.

[3] Also spelled Ockham's razor, and also referred to as the "law of economy", Occam's razor is a principle stated by the philosopher William of Ockham (1285–1347/49) that *pluralitas non est ponenda sine necessitate*, "plurality should not be posited without necessity."

and/or join in a conspiracy with Correct Solutions designed to illegally oust Smart Communications from such facilities, as alleged by Smart Communications.

3.     Similarly, the simplest explanation is that it is more likely Smart Communications was attempting to steal Correct Solutions' customers by purchasing the inmate telecommunications platform provider upon which Correct Solutions relied to be able to provide such telecommunications services to its customer facilities and then directly soliciting Correct Solutions' customers offering telecommunications services with a 100% commission than it is that Correct Solutions was attempting to steal Smart Communications' customers where there is no allegation that Correct Solutions solicited any such customers' tablet, electronic mail service, or other non-telephone services and because Correct Solutions does not provide tablets, electronic mail service, or other services Smart Communications provides.

4.     Smart Communications has engaged in a deliberate and sustained campaign to harass, intimidate, insult, and injure Correct Solutions, Correct Solutions' customers, and others, deprive them of rightful revenues, and force them to incur substantial expenses, through the systematic employment of threats, vile and deceptive anticompetitive measures, and vexatious and baseless litigation tactics to avoid its responsibilities under the MSA and the Schedules while collecting revenue from the facilities which have become weary of Smart Communications' abysmal service and defective equipment.  Smart Communications' *modus operandi* throughout the relevant time period has been to grow its business by leveraging its contractual relationship with Correct Solutions to access its confidential information, trade upon its long-standing business relationships with its customer facilities, and establish its own relationship with

such facilities and then to respond to requests for repairs and notices of service problems by cutting off the services it provides, threatening Correct Solutions and/or its customers, filing baseless lawsuits, or all of the above. In sum, Smart Communications' plan – executed flawlessly so far – is to "get in the door" on Correct Solutions' coattails, steal Correct Solutions' customers, and then make life miserable and extremely costly for anyone seeking to break the ties with Smart Communications.

## Factual Background

5.      Counterclaim Plaintiff, Correct Solutions, LLC a/k/a Correct Solutions Group ("Correct Solutions") is a Louisiana limited liability company created on February 13, 2012 whose principal place of business is located in Lincoln Parish, Louisiana.

6.      Correct Solutions provides an inmate telephone platform through which it installs telecommunications equipment at correctional facilities and charges inmates or their contacts on a per-minute basis. Correct Solutions derives revenue from its platform, a portion of which it agrees to share with the correctional facilities pursuant to a commission arrangement.

7.      Since its formation, Correct Solutions has executed contracts with correctional facilities located throughout the United States to provide telecommunication equipment and pay-for-call telephones and services including automated operator assisted station-to-station or person-to-person collect telephone calls. Correct Solutions currently has approximately eighty (80) facilities under contract for its telecommunication equipment and services.

8.      Counterclaim Defendant, Smart Communications Holding, Inc. ("Smart Communications") is a Florida corporation with its principal place of business in Pinellas

County, Florida.  Smart Communications was formed on December 24, 2014 and provides tablets, kiosks and related services to correctional facilities.

9.     Counterclaim Defendant, Smart Communications Collier, Inc. ("Smart Collier") is a Florida corporation with its principal place of business in Pinellas County, Florida. Smart Collier was formed on February 2, 2012.

10.    Prior to 2019, neither Smart Communications nor Smart Collier had the ability or technology to provide telecommunications services and was not a competitor of Correct Solutions.

11.    In May 2017, Mark Turner of Correct Solutions met Jon Logan, the CEO of Smart Communications, at a trade show. Mr. Logan informed Mr. Turner that Smart Communications was having difficulty breaking into the correctional facility market for its tablets and related services. Mr. Turner and Mr. Logan thereafter began discussions as to how Correct Solutions could help Smart Communications in the industry and whether Smart Communications had the capability of providing and supporting tablets and kiosks for inmates to access emails and other related services which Correct Solutions desired to offer to its customers.

12.    To convince Correct Solutions that Smart Communications had correctional grade tablets and the capability of providing and supporting the kiosks and additional services for Correct Solutions' customers, Smart Communications traveled to Louisiana and made a presentation at  Correct Solutions' office. Smart Communications represented that its tablets were ruggedized, correctional grade tablets and that it had the capability and expertise to provide the proper equipment and timely services which Correct Solutions was seeking to offer to its customers.

13.    To further their discussions, on June 15, 2017, Correct Solutions and Smart Communications executed a Mutual Confidentiality and Nondisclosure Agreement ("NDA") pursuant to which they agreed to exchange confidential and/or proprietary information to determine if a future business agreement should be reached. The NDA required the parties to "hold all Confidential Information in trust and confidence" received from the opposing party. The NDA included safeguard provisions that prohibited Smart Communications and its employees from utilizing the information disclosed by Correct Solutions without the prior written consent of Correct Solutions, other than in furtherance of their business agreement and to perform its duties under the NDA. Under paragraph 8 of the NDA, Smart Communications acknowledged and agreed that any breach of the NDA would cause immediate and irreparable injury to Correct Solutions and that the NDA permitted the aggrieved party to seek and obtain monetary damages in addition to equitable relief. A full copy of the NDA is attached hereto as Exhibit A and by reference is made a part hereof.

14.    The inmate communications business – like many businesses – is relationship-driven. Correct Solutions dedicated significant resources and human capital in developing its business relationships with the roughly 80 facilities it serves, including the eight facilities at issue. The business contacts and relationship information developed over the years with its customer facilities are Correct Solutions' highly proprietary information.

15.    In reliance on the terms of the NDA and the obligations of Smart Communications to keep information confidential as required under the NDA, Correct Solutions introduced Smart Communications to a number of its customers, including the

eight which became subject to the MSA, and disclosed to Smart Communications confidential and proprietary information and data about those customers. Included in the confidential information were the names and contact information for the persons at the facilities who had responsibility for selecting and working with the vendors for the telecommunications systems at the facilities.

16.    After the execution of the NDA, Correct Solutions scheduled meetings with a number of its customers at their locations for Smart Communications to present its products and explain the services it could provide. Specifically, Smart Communications represented that it had the ability to provide electronic messaging, a secure network and internet, grievance and medical record disclosures, a law library, entertainment products which included books, movies, music and games and video visitation and represented that its tablets and kiosks were ruggedized, correctional grade and appropriate for use by the inmates. Several of the customers chose vendors other than Smart Communications after seeing Smart Communications' demo presentation. Washington County invited Tech Friends, a competitor of Smart Communications', to make a presentation on the tablets and related services but Washington County chose Smart Communications because of additional services Smart Communications' represented it could provide.

17.    In late July 2017, Rob Deglman of Smart Communications prepared a draft of a master services agreement and a schedule of services to be used for Correct Solutions' customer, Avoyelles Parish Sheriff's Office located in Marksville, Louisiana. Smart Communications' proposed master services agreement between Smart Communications and Correct Solutions included a seven (7) year term with automatic one-year renewals unless "either Party notifies the other Party with written notice of non-renewal at least

ninety (90) days prior to the expiration of the then current term." The schedule to this master services agreement proposed by Rob Deglman was to be a direct contract between Smart Communications and Correct Solutions' customer, Avoyelles Parish Sheriff's Office.

18.    Mark Turner of Correct Solutions rejected the proposed seven-year (7) term in the master services agreement because it was too long.  Correct Solutions further directed that the schedules for each individual facility shall between Correct Solutions and Smart Communications and shall not include Correct Solutions' customers as parties. Correct Solutions revised the master services agreement to provide that its term would be coterminous with the term of the particular contract between Correct Solutions and its customer. Mark Turner retained the non-renewal language drafted by Smart Communications in the master services agreement which gave both Correct Solutions and Smart Communications the ability to non-renew the master services agreement and related schedule if the notice was timely sent.  The revised master services agreement also retained the provisions that if a Party defaulted under the agreement, the non-defaulting Party must give written notice to the defaulting Party describing the nature of the default. The defaulting Party then had thirty (30) days to cure the defective performance with some exceptions.

19.    On August 31, 2017, Smart Communications accepted Mark Turner's changes, executed the Master Services Agreement ("MSA") and agreed to provide the equipment and the related services and systems that Correct Solutions was contractually obligated to provide its customers. Correct Solutions signed the MSA on September 13, 2017.

20.    In the latter part of 2017 and in 2018, Correct Solutions continued to arrange for Smart Communications to make demo presentations to Correct Solutions' customers to provide the tablets, kiosks and related services requested by those facilities. For certain of those facilities, Correct Solutions also invited Tech Friends to make a demo presentation so that the correctional facility could select the vendor they preferred and who could provide the equipment and services needed by that facility.

21.    In June 2018, Correct Solutions and Tech Friends entered into their first business relationship at a facility in Tulsa, Oklahoma. Correct Solutions had arranged for Smart Communications to make a demo presentation to the Tulsa facility in 2017, which occurred, but the facility decided not to use Smart Communications because Smart Communications did not offer certain services requested by the facility. Because of the quality of the equipment and suite of services provided by Tech Friends for Correct Solutions' customers, Correct Solutions and Tech Friends have continued to work together at other facilities, other than the eight correctional facilities which became subject to the MSA.

22.    Correct Solutions had contracts with the following eight customer facilities which gave Correct Solutions the exclusive license and/or right to install and operate pay-for-call telecommunications equipment and phones at each facility. Correct Solutions agreed for Smart Communications to be the subcontractor for additional equipment and services Correct Solutions had the exclusive license and right to provide to eight (8) customers. Correct Solutions' eight facility facilities were:

A.    Avoyelles Parish Marksville Detention Center located in Marksville, Louisiana; Correct Solutions' customer since May 5, 2016.

B.      Bowie County Correctional Center located in Bowie County, Texas;
Correct Solutions' customer since October 13, 2014.

C.      Lamar County Jail located in Purvis, Mississippi; Correct Solutions'
customer as of September 21, 2017.

D.      Metro - Moore Sheriff's Office located in Lynchburg, Tennessee;
Correct Solutions' customer as of February 16, 2018.

E.      Sebastian County Sheriff's Office located in Fort Smith, Arkansas;
Correct Solutions since March 27, 2017.

F.      The Justice Center and Medium Security Detention Facility located
in St. Louis, Missouri; Correct Solutions' customer since August 3, 2015.

G.      Washington County Sheriff's Office located in Fayetteville, Arkansas;
Correct Solutions' customer since September 25, 2014.

H.      Wayne County Sheriff's Office located in Jesup, Georgia; Correct
Solutions' customer as of February 6, 2018.

23.    The Schedules executed by Correct Solutions and Smart Communications
identified the hardware, software, systems and services required by the particular
customer pursuant to the contract between the customer and Correct Solutions. In each
of the eight Schedules, Smart Communications contracted to provide the facilities with
ruggedized, correctional grade tablets and/or kiosks and to provide at no cost to the
facility the labor, hardware and software needed for the continued operating, maintaining
and networking of the electronic messaging system. A true and accurate copy of the MSA
and the eight Schedules are attached hereto to as Exhibit B-1 and B-2 and by reference
are made a part hereof.

24.    As a result of Correct Solutions' introduction of its customers, Smart Communications was now providing its services to eight customers of Correct Solutions. Unbeknown to Correct Solutions, Smart Communications intended from the inception to use its contractual relationship with Correct Solutions and access to confidential and proprietary information about each of Correct Solutions' customers to establish a relationship with Correct Solutions' customers and steal the customer. On August 30, 2017, after Mr. Turner and Mr. Deglman reached an agreement on the terms of the master services agreement and schedule, Mr. Deglman told Jon Logan, CEO of Smart Communications, that "it will be up to us to get in and develop a relationship so that if CS loses, we stay." A copy of the August 30, 2017 email between Rob Deglman and Jon Logan is attached hereto as Exhibit C.

25.    Soon after installation, several of the facilities immediately encountered problems with the equipment and services provided by Smart Communications. As early as February 2018, the tablets furnished to Sebastian County were breaking and Smart Communications was not timely addressing replacements. On February 13, 2018, Correct Solutions contacted Smart Communications to resolve the issues at the facility. In May 2018, Sebastian County needed to replace 125 tablets that were broken or inoperable and needed 137 chargers replaced or repaired. In September 2018, Sebastian County had to return another 75 broken tablets. The issue with broken tablets continued at Sebastian County throughout 2019.

26.    Several of Correct Solutions' other customer facilities experienced continued problems with the product and services provided by Smart Communications. The kiosks provided to Washington County were often not working. The video visitation

installed by Smart Communications had not worked for more than one year. The inmates at Washington County experienced lock ups by the kiosks during their visitation. The facial recognition on the video visitation never worked. The customer support by Smart Communications was poor. As a result, on July 31, 2019, Captain Alan Johnson of Washington County notified Jennifer Tongate of Smart Communications and Rick Ferguson of Correct Solutions of Washington County's displeasure with Smart Communications and that Washington County intended to look for a new vendor to replace Smart Communications. A true and accurate copy of Captain Johnson's email is attached hereto as Exhibit D.

27. In early 2019 and in accordance with Smart Communications' plan to steal Correct Solutions' customers, Smart Communications and/or Smart Collier acquired the licensing rights to certain software and software systems owned by Lattice, Inc. ("the Lattice Acquisition"). Lattice, Inc. is the company that sold the Nexus Inmate Phone platform to Correct Solutions and who thereafter was providing the maintenance, support and updates to the platform and software which are vital to Correct Solutions' ability to operate and provide its telecommunications services to its facility customers. Jon Logan, the CEO of Smart Communications, is also the CEO of Smart Collier.

28. After the Lattice Acquisition, Smart Communications and/or Smart Collier hired certain service employees of Lattice, including Bruce Johnson, a thirty-six year employee who provided the maintenance and upgrades for Correct Solutions' platform and software for seven years. The Lattice Acquisition and the hiring of the employees of Lattice gave Smart Communications and Smart Collier the ability to offer an inmate telecommunications systems to correctional facilities who already had a

telecommunications system in service with Correct Solutions. Smart Communications and Smart Collier also intended to use the acquisition of the software licensing rights and the hiring of Bruce Johnson by Smart Collier to deprive Correct Solutions of the essential software maintenance and upgrades required by Correct Solutions to continue to provide telecommunications services to its customers including the eight customers included in the MSA.

29.     After the Lattice Acquisition and the hiring of Bruce Johnson, Smart Communications and Smart Collier engaged in deliberate and illicit attempts to steal Correct Solutions' telecommunications business from the customers Smart Communications met through Correct Solutions and to damage Correct Solutions' ability to provide such telecommunications services.  Their actions included misusing Correct Solutions' confidential and proprietary information, offering to provide the same telecommunications services to Correct Solutions' customer facilities which Correct Solutions was already contractually providing, failing to provide correctional grade tablets, equipment and services to Correct Solutions' customers, failing to timely respond to or address complaints from the facilities and the inmates, barring employees of Lattice from continuing to support and maintain Correct Solutions' platform and software and by misusing the court system to sue Bruce Johnson after he was hired by Correct Solutions to maintain, support and update Correct Solutions' platform and software.

30.     In April, May and June of 2019, several of the facilities were tiring of the poor equipment, poor service and lack of response by Smart Communications. Although they continued to report their problems to Smart Communications, they expressed their frustration to Correct Solutions. As a result, Correct Solutions contacted those facilities to

determine the extent of the problems and contacted its other customers to determine if they were also experiencing problems with the equipment and services by Smart Communications. Because of the multitude of issues and complaints coupled with Smart Communications' failure or refusal to remedy such issues, Correct Solutions commenced discussions with Tech Friends, a competitor of Smart Communications, about serving as a possible replacement for Smart Communications so that Correct Solutions could provide the equipment and services that Correct Solutions was contractually obligated to provide to its customers.  Those discussions continued during the summer of 2019.

31.    In April 2019, without Correct Solutions' knowledge, Smart Communications and Smart Collier moved forward on their efforts to try to steal Correct Solutions customers. On April 8, 2019, Frank Turner of the City of St. Louis, Missouri, one of Correct Solutions' customers whom Correct Solutions had introduced to Smart Communications, received an e-mail from Jennifer Tongate of Smart Communications which included solicitation materials from Smart Communications offering to provide the same telecommunications services Correct Solutions was under contract to provide for St. Louis. Smart Communications quoted a 100% commission to be paid to the City of St. Louis which was higher than the commission the City of St. Louis was receiving under its contract with Correct Solutions. In the solicitation materials, Smart Communications stated that "We do not need your phone revenue to operate. Other ITS providers, with lesser technology platforms, do need your phone revenue." Attached as Exhibit E is a true and accurate copy of the April 8, 2019 solicitation materials and email from Jennifer Tongate of Smart Communications, which Smart Communications references as a "mass marketing email" in paragraph 55 of the Second Amended Complaint.

32.     Smart Communications sent the e-mail to Frank Turner under the name of Jennifer Tongate as Frank Turner was Ms. Tongate's contact at the City of St. Louis through Correct Solutions. When Frank Turner questioned Ms. Tongate about the solicitation, Ms. Tongate stated that "it was one sent out from our marketing team to let our existing partner know we are now providing inmate phones." Ms. Tongate admitted that it was awkward in her position "since the handful of facilities I manage are mostly partnered with CSG" which was referencing Correct Solutions. Notwithstanding, the professed awkwardness, Ms. Tongate continued to directly solicit Frank Turner for their telephone business and stated that Smart Communications would pay the City of St. Louis a 100% phone commission if the City of St. Louis contracted with Smart Communications to provide all equipment and services at the City of St. Louis facility. A true and accurate copy of the email representing the further direct solicitation from Jennifer Tongate is attached hereto as Exhibit F. This further direct solicitation which was not referenced by Smart Communications in its Second Amended Complaint.

33.     The email address and contact information for Frank Turner utilized by Smart Communications and Jennifer Tongate for the two solicitations was part of the confidential proprietary information disclosed by Correct Solutions pursuant to the NDA and the MSA. This confidential proprietary information is not available to the public and is not readily accessible. But for Correct Solutions' introduction of Smart Communications to Frank Turner, Smart Communications would not have known to send the solicitation to him.

34.     After learning of the improper use of the confidential information to directly solicit its customer in violation of the NDA and the MSA, Correct Solutions provided

written notice of termination to Smart Communications dated July 17, 2019. As set forth in the July 17, 2019 letter, Correct Solutions asserted that the use of Confidential Information by Smart Communications to solicit the customers of Correct Solutions violated Smart Communications' obligations under the NDA and the MSA and was a direct interference with Correct Solutions' contractual agreement with its St. Louis, Missouri correctional facility customer. A copy of the July 17, 2019 Notice of Termination is attached hereto as Exhibit G.

35.   On August 2, 2019, Smart Communications filed suit against Correct Solutions in the Circuit Court for Hillsborough County, Florida and sought injunctive relief to prevent the termination of the MSA based on the July 17, 2019 notice sent by Correct Solutions.

36.   After the suit was filed, the Parties negotiated a stipulation to preserve the status quo which required the Parties to continue to perform their duties under the NDA, MSA and Schedules. Smart Communications prepared the initial draft of the stipulation but then submitted a revised draft which added a provision that would prohibit either Party from soliciting, attempting to hire or hiring any employee of the other Party.

37.   Before the Stipulation was signed, Correct Solutions learned that Smart Communications and Smart Collier had instructed employees at Lattice that they were prohibited from providing Correct Solutions any further maintenance and services to the Lattice software required by Correct Solutions to operate its telecommunications platform. Thus, the language Smart Communications attempted to add to the Stipulation was in furtherance of Smart Communications and Smart Colliers' plan to ensure that Correct Solutions would have no ability to continue to receive required maintenance,

support and updates for its platform and software thus rendering Correct Solutions unable to continue providing telecommunications services to its customers, including the eight facilities using Smart Communications.  Correct Solutions objected to the additional language and the Parties agreed that Correct Solutions would not be prohibited from recruiting and hiring former Lattice employee, Bruce Johnson.

38.     On August 30, 2019, the Parties submitted to the Court a Stipulation to Preserve the Status Quo Pending Final Hearing on the Merits which was approved by the state court judge by order dated September 10, 2019. A true and accurate copy of the Stipulation is attached hereto as Exhibit H.

39.     In reliance on the Stipulation entered in the state court litigation which confirmed Smart Communications' obligations to perform under the MSA and the Schedules, Correct Solutions stopped all discussions with Tech Friends as to the eight facilities and instead relied on Smart Communications to comply with its contractual obligations under the MSA and each of the Schedules and the Stipulation. Further, in reliance on the Parties' Stipulation, Correct Solutions began discussions with Bruce Johnson about employment with Correct Solutions so that Correct Solutions would continue to receive the maintenance, support and updates required to operate its telecommunications systems.

40.     Unbeknown to Correct Solutions, Smart Communications had been and was continuing to solicit Correct Solutions' other customers. Correct Solutions is unable to cite to or attach as an exhibit the documentary evidence as Smart Communications has marked the documents as "Confidential." Correct Solutions will be filing a motion with this Court seeking to have the "Confidential" designation stricken so that the documents

may be used by Correct Solutions to defend this action and in support of its Amended Counterclaim.

41.    Despite the agreement by Smart Communications that it would perform its contractual obligations under the MSA and Schedules, Washington County, Sebastian County, the City of St. Louis and Avoyelles Parish were continuing to experience problems with the equipment and services provided by Smart Communications. On August 15, 2019, Rick Ferguson requested that Correct Solutions' customers send their requests for repairs and services they need from Smart Communications to Correct Solutions so that Correct Solutions was informed of the problems and could ensure that Smart Communications - its subcontractor - timely and properly addressed those repairs and service needs. This did not stop the facilities from notifying Smart Communications of their continuing problems nor did it prevent Smart Communications from contacting the facilities to address complaints and problems.

42.    On August 23, 2019, Sebastian County sent a request to Smart Communications for 23 replacement tablets and a battery pack and reported that tablets were being broken and the batteries removed by inmates. Because the tablets were not correctional grade, inmates were easily breaking the tablets by twisting the plastic body and removing and reworking its parts into shanks. Rather than correct the problems or address the imminent safety issues the tablets were creating at Sebastian County, Smart Communications challenged the accuracy of the assertion by Sebastian County that the batteries could be removed from the tablets.  A copy of the August 2019 email exchanges including a photograph of the broken tablet and removed battery are attached hereto as Exhibit I.

43.     Smart Communications also received complaints from other facilities about the products and services being provided by Smart Communications. Correct Solutions is unable to cite to or attach as exhibits the documentary evidence as Smart Communications has marked the documents as "Confidential." Correct Solutions will be filing a motion with this Court seeking to have the Confidential" designation stricken so that the documents may be used by Correct Solutions to defend this action and in support of its Amended Counterclaim.

44.     Because of the history of problems with the tablets, Sebastian County notified Correct Solutions that Sebastian County no longer had any confidence in the ability of Smart Communications to provide a reliable and safe product for the facility and provided photos to Correct Solutions of a homemade knife made from the aluminum inside the tablets provided by Smart Communications.  Sebastian County advised that the lack of timely response by Smart Communications has caused much concern.

45.     On September 13, 2019, as a result of the safety risk that the tablets were creating at Sebastian County and Smart Communications' failure to address the defective tablets, Correct Solutions sent a Notice to Cure to Smart Communications which addressed the defective equipment and performance at Sebastian County. In the Notice to Cure, Correct Solutions pointed out that Smart Communications' tablets at the Sebastian County Detention Facility were not "correctional grade" in any functional sense and, as Sebastian County had already advised Smart Communications, the tablets were being easily dismantled by inmates and fashioned into crude weapons. The Notice to Cure also referenced that the batteries were readily removed from the tablets which allowed them to be used by inmates to charge illegal cell phones in the facility. The Notice to Cure

directed that Smart Communications cure the breach of contract and provide ruggedized and correctional grade tablets and commenced the thirty day cure period under the MSA and the Schedule. A true and correct copy of the September 13, 2019 Notice to Cure with photos of the shanks is attached as Exhibit J.

46. In response to the Notice to Cure and to avoid having to cure the defects, Smart Communications filed an Emergency Motion to Temporarily Enjoin Improper Termination of Agreement and to Enforce Court Approved Stipulation on Tuesday, September 17, 2019. An emergency hearing was scheduled for Friday, September 20, 2019.

47. Captain William Dumas of Sebastian County traveled to Florida from Arkansas to testify before the state court judge about the defective equipment and poor services Sebastian County was receiving from Smart Communications and the need for Smart Communications to provide ruggedized correctional grade tables. The state court judge elected to take no testimony or evidence, suggested that a resolution could be reached and engaged with the parties in discussions about the tablets provided to Sebastian County including whether ruggedized, correctional grade tablets were available to Smart Communications and whether the cost to cure was reasonable. The state court judge ruled, based on the agreement of the Parties, that Correct Solutions was authorized to continue to send Notices to Cure to Smart Communications but that Correct Solutions could not terminate the MSA and Schedule for Sebastian County without filing a Motion to Terminate, having a hearing on the Motion and the trial judge entering an order of termination. The state court judge offered during the hearing to provide Correct Solutions an emergency hearing on a Motion to Terminate if Smart Communications failed to cure.

48.     At the conclusion of the hearing, the state court judge instructed the Parties to use the opportunity after the hearing to discuss with Captain Dumas the problems Sebastian County was experiencing and possible cures. After the state court judge left the courtroom, Captain Dumas tried to explain to Smart Communications what Sebastian County needed and the issues the Sebastian County facility was having. Rather than engage in discussions about the problems and possible solutions, Smart Communications and/or its counsel threatened Captain Dumas, insulted his correctional facility and called him a liar. As was subsequently shown, Smart Communications had no intent to cure any of the problems at Sebastian County.

49.     Smart Communications and Smart Collier also continued with their quest to prevent Correct Solutions from having operational software and an operational telecommunications platform. On September 12, 2019, twelve days after signing and filing the Stipulation, Jon Logan, CEO of both Smart Communications and Smart Collier, met with Bruce Johnson and demanded that he sign a non-compete agreement. Jon Logan instructed Mr. Johnson that unless the non-compete was signed by 5:00 p.m. that day, Jon Logan would sue Bruce Johnson. Mr. Johnson refused to sign the non-compete and his employment was terminated effective September 11, 2019.

50.     On September 19, 2019, one day prior to the emergency hearing, Bruce Johnson accepted employment with Correct Solutions to continue to provide the required maintenance and upgrades for Correct Solution's software. On September 20, 2019, Smart Communications and Smart Collier filed suit against Bruce Johnson in Circuit Court for Pinellas County, Florida in the case styled *Smart Communications Holdings, Inc., a Florida Corporation, and Smart Communications Collier, Inc., a Florida*

*Corporation v. Bruce Johnson, as an individual and Jane or John Doe numbers 1 through 10*, Case No. 19-006366-CI. In their complaint Smart Communications and Smart Collier sought monetary damages and an injunction to prevent Bruce Johnson from "providing services to its direct competitor, Correct Solutions," despite the explicit terms of the Stipulation. Bruce Johnson moved to dismiss the complaint based on lack of jurisdiction since he is a resident of and worked for Lattice and for Smart Collier in New Jersey and the counts plead failed to state causes of action.[4]

51.     Smart Communications continued with its efforts to try to steal Correct Solutions' customers and used the problems at Sebastian County to try to solicit its business from Correct Solutions. During and after the expiration of the thirty-day period to cure the defective tablets and services at Sebastian County, Smart Communications made no effort to fix the defective tablets or to provide Sebastian County with ruggedized, correctional grade tablets as required by the MSA and Schedule.

52.     Although Smart Communications admitted it had the ability long ago to provide upgraded tablets which it claimed were ruggedized and correctional grade, it was not willing to provide those tablets under the contracts involving Correct Solutions. Rather, it tried to use its upgraded correctional grade tablets as an inducement to steal Sebastian County as a customer.

53.     On October 30, 2019, Jerry Lipsey, Smart Communications' "Quality Assurance Manager" made an unscheduled sales visit to Sebastian County. Captain Dumas told Mr. Lipsey about Smart Communications' failure to cure the defective tablets, the problem with the conversion of the defective tablets into weapons and the lack of

---

[4] As set forth in paragraph 70 of this Amended Counterclaim, Smart Communications and Smart Collier voluntarily dismissed their lawsuit against Bruce Johnson on June 19, 2020.

customer service by Smart Communications. Captain Dumas also informed Mr. Lipsey about his encounter in Florida with Smart Communications after the hearing and that the attorney for Smart Communications treated him poorly and called him a liar.

54.     In November 2019, in its continued efforts to steal Correct Solutions' customers, Smart Communications and Smart Collier, under the generic name "Smart Communications," submitted a written proposal to Captain Dumas for "our upgraded tablet system at Sebastian County." In the proposal, "Smart Communications" represented that it continually strived to provide its customers with the "latest and greatest" products and disclosed that it has had upgraded tablets since "long ago." Smart Communications falsely asserted that "it would have been glad to provide Sebastian County with options for upgrading to our newest tablet system long ago, especially in light of the issues your facility communicated with us, but the contract we are bound by, through Correct Solutions, does not provide for or even contemplate such an upgrade." In its proposal, Smart Communications and Smart Collier stated that "Smart Communications" had acquired the last available domestic license of telephone platform, in addition to hiring all of the employees and software engineers that have designed and supported the telephone system Sebastian County's current vendor is licensing and that it is currently using, which was a direct reference to Correct Solutions. In the proposal, Smart Communications and Smart Collier represented that the new tablets were true correctional designed tablets and had been through independent rugged durability testing to ensure the tablets were as corrections grade as possible. However, Smart Communications was not willing to provide correctional grade tablets to Sebastian County unless Sebastian County immediately signed a five-year contract for "Smart

Communications" to provide the telecommunications services being provided by Correct Solutions. In the proposal, Sebastian County was offered a $100,000 "Tech Grant," 100% commission to Sebastian County on the telephone revenue, free messaging credits and three VIP Tickets to Smart Communications' Technology Summit Cruise to Mexico. As shown by the Proposal, Smart Communications had correctional grade tablets throughout 2019 and it was intentionally continuing to provide defective and dangerous tablets to Correct Solutions' customers in order to cause Correct Solutions to be in breach of its contracts with the eight customers. A true and accurate copy of the Smart Communications' Proposal to Sebastian County is attached hereto as Exhibit K.

55.    Based on Smart Communications' refusal to address the problems at the facilities and the continued displeasure of the facilities with Smart Communications, Correct Solutions sent out timely Notices of Non-Renewal informing Smart Communications that the MSA and schedules for Washington County, Sebastian County and Wayne County would not renew if and when the customer renewed its contract with Correct Solutions. Correct Solutions sent the non-renewal notice for Washington County on October 4, 2019 advising the MSA and Schedule will expire January 3, 2020, and for Sebastian County and Wayne County on November 21, 2019, advising that the MSA and Schedule for Wayne County will expire on March 14, 2020 and for Sebastian County on April 23, 2020.

56.    In response to the Notices of Non-Renewal, Smart Communications filed its third emergency motion. The state court judge held a two-day evidentiary hearing on Smart Communications' Motion for Temporary Injunction in late December 2019.

Captain Alan Johnson of Washington County testified at the hearing about the defective equipment and poor service Smart Communications had provided at Washington County.

57.   Captain Johnson testified that both Tech Friends and Smart Communications made presentations to Washington County and Washington County selected Smart Communications for the tablets and related services. However, the County's experience with Smart Communications' products and services were not as represented.  Captain Johnson testified:

> We've had problems starting with the product that was described to us is not the product we got.  We  was advised that they had video visitation on the tablets. Our very first visitation scheduled was  July 20, 2018, and to date, today, we still have no video visitation on the tablets.  We constantly have problems with the server going down.  Sometimes it's a simple reboot solution. But calling customer service, you rarely get an answer.  And when you do, at best, it's several hours before you get a call back.  And when you're dealing with 710 inmates trying to schedule visitations and it's down for several hours, at best -- a lot of times, it's next day before you hear anything -- that puts a bind  on everything.  The product itself, the tablets theirselves are constantly being tore up.  I think this combination is from an inferior product that's poorly designed to it not working properly and the inmates getting upset about it and destroying them because of that.  So there's – I mean, it's a lot of different things.

58.   When asked if the tablets provided by Smart Communications were correctional grade, Captain Johnson said absolutely not and testified:

> I believe that tablet could be purchased – I compare it to a children's tablet that I can purchase at Walmart.  It's two pieces put together of plastic with rubber moldings on all four corners.  Immediately, the rubber piece are pulled off and then they have access to pry them open.  The day before we come in here, which would have been Tuesday, we had a battery -- we done a shakedown and found a battery that they had pulled out of one of the tablets and had wires that they pulled out and was already crossed and setting different things on fire, cigarettes or whatever -- we're not sure. They had burn marks on it, so I know they used it to burn something.

59.   When asked if the response time improved after his facility began to report their problems to Correct Solutions, Captain Johnson testified that it improved for a short

period of time but after a few months, it slowly deteriorated back. Consequently, Correct Solutions' request to its customer facilities to route complaints about Smart Communications' services and equipment through it improved response time, but only for a while.

60.    Captain Johnson testified that his facility was no longer willing to allow Smart Communications at its facility and told the state court judge that if he ruled that Smart Communications must continue as the subcontractor under the contract between Washington County and Correct Solutions, Washington County would have to terminate its contract with Correct Solutions.

61.    On January 3, 2020, the state court judge orally ruled that he was denying the Emergency Motion for an Injunction based on case law cited by Correct Solutions; namely that injunctive relief is not available when an adequate remedy of law applied.

62.    Five days after the judge's denial of the injunction, Jerry Lipsey of Smart Communications made another unscheduled sales visit to solicit Sebastian County and to convince Sebastian County to accept the November Proposal and sign a contract with Smart Communications. Captain Dumas informed Mr. Lipsey that Sebastian County was not interested or willing to do business with Smart Communications and that the facility considered the offer of the cruise to be unethical.

63.    After the denial of the injunction, Washington County contacted Smart Communications and requested a transition plan so that the termination of Smart Communications' services would be smooth. Correct Solutions also contacted Smart Communications and requested that Smart Communications contact the appropriate

representatives at Washington County to make the arrangements to remove its equipment.

64.     Rather than work on a smooth transition plan, Jerry Lipsey of Smart Communications called Captain Alan Johnson and left a voice mail message stating that he wanted to discuss the problems Washington County had been encountering and to try to salvage the contract. Captain Kenny Yates returned the call. Mr. Lipsey stated that he wanted to come to Washington County to get the facility to sign a new contract with Smart Communications and Captain Yates declined. Captain Yates informed Mr. Lipsey that Smart Communications had no contract with Washington County and he explained the problems he was aware of with Smart Communications at the facility. Captain Yates further stated that pursuant to a contract between Washington County and Summit, another vendor would be providing the equipment and services to Washington County. At the conclusion of the call, Captain Yates requested that Mr. Lipsey have someone from Smart Communications contact Washington County to set up an exit plan. Although Captain Yates was assured by Mr. Lipsey that someone would call, no one from Smart Communications ever contacted Washington County or Correct Solutions about scheduling a smooth transition.

65.     On January 21, 2020, Jak Kimball, Technology Director for Washington County, attempted to disable the Smart Jail Mail for the limited purpose of preventing inmates from scheduling visits for the following week after Smart Communications' equipment was removed.  He inadvertently disabled the system immediately. When he later attempted to log back onto the system to correct the error, Smart Communications kicked Jak Kimball off and shut down its system with no notice to Washington County or

the inmates who were using the services and equipment. Captain Yates thereafter called Mr. Lipsey to discuss the precipitous actions by Smart Communications and was informed that Smart Communications was terminating the entire system and was leaving it shut down.  Smart Communications then issued a public notice criticizing Washington County which further destroyed the relationship between Smart Communications and Washington County.

66.     On March 2, 2020, the state court judge announced his oral ruling and ruled that the MSA and Schedules between Smart Communications and Correct Solutions could never be terminated so long as Correct Solutions remained under contract with its customer facility.

67.     On March 3, 2020, Sebastian County issued its notice of non-renewal and advised Correct Solutions that Sebastian County would not be renewing its contract with Correct Solutions. As a result, the contract expired on April 24, 2020.  A true and accurate copy of the Notice of Non-Renewal is attached hereto as Exhibit L.

68.     On March 11, 2020, Sheriff Doug Anderson of Avoyelles Parish sent written notice to Correct Solutions advising that its contract with Avoyelles Parish would end as of June 30, 2020 and that a new Sheriff had been elected. Thereafter, the new Sheriff elected not to renew the contract with Correct Solutions and the contract expired on June 30, 2020.

69.     As a matter of Louisiana substantive law, an incumbent Sheriff cannot bind his successor Sheriff to a contract the incumbent has signed.

70.     On June 19, 2020, Smart Communications and Smart Collier filed a voluntary dismissal of their lawsuit against Bruce Johnson.

71.     In response to requests for proposals, Correct Solutions submitted proposals to Sebastian County and to Avoyelles Parish to provide telecommunications services only with no tablets or related services. Sebastian County accepted the proposal from Correct Solutions and entered into a new contract for the telecommunications services only. The revenue that Correct Solutions will receive under the new contract with Sebastian County is less than what it was entitled to receive under the prior contract which was terminated by Sebastian County because of Smart Communications' defective equipment, poor performance and insulting behavior toward Sebastian County. Avoyelles Parish did not accept the proposal submitted by Correct Solutions and, on information and belief, Correct Solutions asserts the defective equipment and poor services provided by Smart Communications factored into the decision to decline Correct Solutions' proposal.

72.     Smart Communications is continuing to directly solicit Correct Solutions' customers. As recently as early August 2020, Smart Communications treated representatives from Lamar County and one other facility under contract with Correct Solutions for an "all inclusive, all expenses paid" trip to Florida which included round trip airfare to Tampa, Florida, a hotel on Clearwater Beach and expensive dinners. Despite the fact that Lamar County has a contract with Correct Solutions through December 1, 2022 that renews annually for telecommunications services, Smart Communications tried to persuade Lamar County to enter into a contract with Smart Communications for those same services.

73.    Correct Solutions has retained the law firms of Harllee & Bald, P. A. and Roedel, Parsons, Koch, Blache, Balhoff & McCollister to represent its interests in this matter and is entitled to recover its attorneys' fees and costs.

**Count I**
**Breach of Contract**
**(NDA and MSA)**

74.    This is an action for breach of contract and for damages against Smart Communications.

75.    Correct Solutions realleges paragraphs 1 through 73 as if fully set forth in this Count One.

76.    The actions by Smart Communications were a breach of material terms of the NDA and the MSA, were an intentional attempt to interfere and/or actually interfered with Correct Solutions' contractual relationship with its existing contract with the City of St. Louis, Missouri, and were performed to try to steal Correct Solutions' customer. Accordingly, the MSA was properly terminated.

77.    As a direct and approximate cause of the breach, Correct Solutions has been damaged.

78.    All conditions precedent to bringing this action have been met or have occurred.

Wherefore, Correct Solutions requests entry of a judgment:

A.    Directing and requiring Smart Communications to remove all hardware and software systems except for the cabling and conduit which constitutes the property of Correct Solutions from Correct Solutions' customers' facilities identified on the Schedules and consistent with the MSA;

B.      Awarding damages against Smart Communications in favor of Correct Solutions;

C.      Awarding Correct Solutions its attorneys' fees and costs; and

D.      Awarding such other relief as the Court deems proper.

**Count II**
**Declaratory Judgment**
**(Coterminous)**

79.     This is an action for declaratory judgment pursuant to Chapter 86, Florida Statutes against Smart Communications.

80.     The allegations in paragraph 1 through 73 are hereby realleged in this paragraph.

81.     Paragraph 6 of the MSA sets forth the term of the agreement and provides as follows:

> This Agreement shall commence on the "Effective Date" and shall be coterminous with Customer's Agreement with Facility as defined by Facility Address in attached Schedule. For purposes of this Agreement, the "Effective Date" is defined as the date of the last signature on this Agreement. After the original term, this Agreement shall automatically renew in accordance with the Customer's Agreement with facility, listed as Attachment A, unless either Party notifies the other Party with written notice of non-renewal at least ninety (90) days prior to the expiration of the then current term.

82.     As a result of the notice of non-renewal sent by Correct Solutions for Washington County, Sebastian County and Wayne County, the MSA and Schedules between Correct Solutions and Smart Communications have expired. Smart Communications contends that so long as Correct Solutions' contracts with its eight customers renew, Correct Solutions has no right to non-renew the MSA or Schedules and that it remains obligated to retain Smart Communications as the subcontractor regardless

of the language in paragraph 6 of the MSA or Smart Communications' defective equipment and poor services.

83.     Pursuant to sections 86.011 and 86.021, Florida Statutes, Correct Solutions may seek a declaration of its rights under the MSA and related contracts.

84.     Correct Solutions is entitled to have its uncertainty removed with respect to its rights under the MSA and related contracts.

85.     A genuine present dispute exists between the parties as to the interpretation of paragraph 6 of the MSA.

86.     All interested parties and potential adverse interests are before this Court.

87.     Correct Solutions, through its request for a declaration of its rights is not merely seeking legal advice or to obtain answers to questions propounded out of curiosity.

Wherefore, Correct Solutions request this Court to enter a declaratory judgment:

A.     Determining that paragraph 6 of the MSA gave both Parties, Correct Solutions and Smart Communications, the right to non-renew the MSA and Schedule as to each of the eight facilities by providing written notice at least 90 days prior to the renewal date in the contract between the Facility and Correct Solutions;

B.     That the Notices of Non-Renewal for Washington County, Sebastian County and Wayne County were properly exercised and are valid;

C.     That the MSA and Schedules for Washington County, Sebastian County and Wayne County have expired;

D.     Awarding Correct Solutions its taxable costs; and

E.     Such further relief as this Court deems proper.

## Count III
## **Breach of Contract**
## (Sebastian County)

88.    This is an action for breach of contract and for damages against Smart Communications.

89.    The allegations in paragraphs 1 through 73 are hereby realleged in this paragraph.

90.    On March 27, 2017, Correct Solutions and Sebastian County entered into a Contract and Agreement pursuant to which Sebastian County granted Correct Solutions the exclusive right to install and maintain telephones and inmate telephone systems at Sebastian County.

91.    On September 13, 2017, Correct Solutions and Smart Communications executed the MSA pursuant to which Smart Communication agreed to provide the inmate communications system and equipment for certain of Correct Solutions customers which system and equipment would be further defined by a Schedule for each facility.

92.    On September 13, 2017, Correct Solutions and Smart Communications executed the Schedule for Sebastian County which detailed the equipment, products and services Smart Communications was obligated to provide at Sebastian County. Specifically, Smart Communications was obligated to provide to Sebastian County its proprietary Smart Tablet on a 1:1 inmate to tablets basis, to provide sufficient reserve tablets and to provide tablets that were ruggedized and correctional grade. Smart Communications further contracted to provide a fully functional electronic messaging system for the inmates, electronic general and medical requests and grievance forms,   a law library, its MailGuard patent pending postal mail elimination system  and represented

that it had the capability of seeing in real time any problems with tablets, batteries or other failures so that it could dispatch the appropriate parts and repair personnel very quickly. A true and accurate copy of the MSA between Correct Solutions and Smart Communications and the Schedule for Sebastian County are included in Exhibit B-1.

93.     Smart Communications breached the MSA and Schedule by providing non-correctional grade tablets that were easily and regularly broken by inmates, by failing to address the complaints and problems experienced by Sebastian County and by intentionally refusing to provide correctional grade tablets unless Sebastian County signed a contract for Smart Communications to provide telecommunications services which Correct Solutions was under contract to provide at Sebastian County.

94.     Since at least November 2019 Smart Communications has possessed tablets which it asserts are ruggedized and correctional grade and which would cure the defective tablets at Sebastian County. However, Smart Communications has failed to provide these tablets to Sebastian County notwithstanding the Notice to Cure, the September 20, 2019 hearing and its contractual obligations. Smart Communications was only willing to cure its breaches of the contract and provide ruggedized, correctional grade tablets to Sebastian County if Sebastian County replaced Correct Solutions with Smart Communications as its telecommunications provider and immediately signed a new contract with Smart Communications which included the telecommunications services being provided at the time by Correct Solutions under its contract with Sebastian County.

95.     Sebastian County's repeated requests to Smart Communications to cure its defective tablets and service continued to be ignored. On Friday morning, February 7, 2020, Ashley Smith, Director of Inmate Management Assistant at Sebastian County, sent

an email to Smart Communications again advising of the continuous problems with tablets and chargers and requested that a technician from Smart Communications come to the facility the following Wednesday. Jon Logan, the CEO of Smart Communications, responded to advise that "Our staff is not available on that day." He offered no other times to provide support. Rather, he stated that "We sent your agency a proposal for a new agreement that would include new upgrade hardware throughout your facility. To this date, your agency has never responded."

96.     In actuality, Captain Dumas personally met with Jerry Lipsey, the sales representative of Smart Communications and signor of the November 26, 2019 Proposal at the facility and informed Mr. Lipsey that Sebastian County was not willing to accept the Proposal.

97.     As a result of Smart Communications' breaches, Sebastian County non-renewed its contract with Correct Solutions and Correct Solutions has been damaged.

Wherefore, Correct Solutions demands judgment against Smart Communications for damages, special damages, lost profits, interest, costs and for such further relief as this Court deems proper.

## Count IV
## <u>Breach of Duty of Good Faith and Fair Dealing</u>
### (Sebastian County)

98.     This is an action for breach of good faith and fair dealing and for damages against Smart Communications.

99.     The allegations set forth in paragraph 1 through 73 are hereby realleged in this paragraph.

100.    In every contract, including the Sebastian County Agreement, an implied covenant of good faith and fair dealing exists.

101.    Smart Communications agreed that it would provide the proper equipment and timely services Correct Solutions was contractually obligated to provide to Sebastian County and acknowledged that Correct Solutions retained the exclusive and sole right to provide the telecommunications systems at Sebastian County.

102.    Smart Communications also agreed that if it defaulted in the performance of any obligation under the MSA or the Schedule, it would cure the default within thirty (30) days after receipt of the Notice to Cure.

103.    Smart Communications breached the covenant of good faith and fair dealing purposely by failing to cure its defective performance at Sebastian County, by providing non-correctional grade tablets that were easily and regularly broken by inmates, by failing to address the complaints and problems experienced by Sebastian County and by intentionally refusing to provide correctional grade tablets unless Sebastian County signed a contract with Smart Communications which allowed Smart Communications to provide the same telephone services which Correct Solutions was providing at Sebastian County.

104.    Smart Communications further breached the covenant of good faith and fair dealing by its joint efforts with Smart Collier in instructing the employees of Lattice that they could no longer maintain or support the Lattice software relied on by Correct Solutions to provide its telecommunications systems at correctional facilities, by filing suit against Bruce Johnson to enjoin from working for Correct Solutions and providing

the upgrades and maintenance required for Correct Solutions to operate its telephone system, and by trying to steal Sebastian County as its customer.

105.    As a result of Smart Communications' breaches, Correct Solutions has been damaged.

Wherefore, Correct Solutions demands judgment against Smart Communications for damages, special damages, lost profits, interest, cost and for such other relief as this Court deems proper.

## Count V
## Tortious Interference
### (Sebastian County)

106.    This is an action for tortious interference with a contract and/or business relationship and for damages against Smart Communications and Smart Collier.

107.    The allegations in paragraphs 1 through 73 are hereby realleged in this paragraph.

108.    Since September 13, 2017, Correct Solutions has enjoyed a contractual and advantageous business relationship with Sebastian County.

109.    Smart Communications and Smart Collier intentionally and unjustifiably interfered with Correct Solutions' relationship with Sebastian County using fraudulent, improper and unlawful means.

110.    Because Correct Solutions was contractually obligated to provide the equipment and services which Smart Communications was providing as a subcontractor, Smart Communications intentionally ignored the numerous requests by Sebastian County for proper equipment, services and repairs.

111.    Smart Communications and Smart Collier submitted a written proposal to Sebastian County which implied that Correct Solutions would no longer have the ability to service its software or provide telecommunications services.

112.    Smart Communications and Smart Collier instructed the employees of Lattice that they could no longer maintain or support the Lattice software relied on by Correct Solutions to provide it telecommunications systems at correctional facilities.

113.    Notwithstanding the Stipulation filed with the Court which allowed Correct Solutions to hire Bruce Johnson, Smart Communications and Smart Collier filed a frivolous lawsuit in Pinellas County and abused the courts by seeking an injunction to prohibit Mr. Johnson from working for Correct Solutions or providing the critical maintenance, support and updates to the platform and software required by Correct Solutions to operate its business.

114.    Smart Communications and Smart Collier used the improper means of providing financial incentives to Sebastian County employees including a $100,000 "Tech Grant," 100% commission to Sebastian County on the phone revenue, free messaging credits and three VIP Tickets to Smart Communication's Technology Summit Cruise to Mexico in order to persuade Sebastian County to get rid of Correct Solutions and contract with Smart Communications and/or Smart Collier.

115.    As a proximate result of Smart Communications' and Smart Collier's interference, Sebastian County non-renewed its contract with Correct Solutions and Correct Solutions has been damaged.

Wherefore, Correct Solutions demands judgment against Smart Communications and Smart Collier for damages, special damages, lost profits, interest, costs and such further relief as this Court deems proper.

**Count VI**
**<u>Breach of Contract</u>**
**(Avoyelles Parish)**

116.    This is an action for breach of contract and for damages against Smart Communications.

117.    The allegations in paragraphs 1 through 73 are hereby realleged in this paragraph.

118.    On May 5, 2016, Correct Solutions and Avoyelles Parish entered into three Proposal Contracts and Agreements pursuant to which Avoyelles Parish granted Correct Solutions the exclusive right to install and maintain telephones and inmate telephone systems at Avoyelles Parish.

119.    On September 13, 2017, Correct Solutions and Smart Communications executed the MSA pursuant to which Smart Communications agreed to provide the inmate communications system and equipment for certain of Correct Solutions customers which system and equipment would be further defined by a Schedule for each facility.

120.    On September 13, 2017, Correct Solutions and Smart Communications executed the Schedule for Avoyelles Parish which detailed the equipment, products and services Smart Communications was obligated to provide. Specifically, Smart Communications was obligated to provide to Avoyelles Parish its proprietary SmartKiosk on a 20:1 inmate to tablets ratio, to provide kiosks that were ruggedized and correctional

78

grade, to provide a fully functional electronic messaging system for the inmates, electronic general and medical requests and grievance forms, a law library, video visitation and its MailGuard patent pending postal mail elimination system and represented that it had the capability of seeing in real time any problems with tablets, batteries or other failures so that it could dispatch the appropriate parts and repair personnel very quickly. A true and accurate copy of the MSA between Correct Solutions and Smart Communications and Schedule for Avoyelles Parish are included in Exhibit B-1.

121.    To address the additional services which Correct Solutions was making available for Avoyelles Parish, Correct Solutions and Avoyelles Parish executed a First Amendment to Contract and Agreement wherein Correct Solutions became obligated to provide the equipment and services listed in the Attachment A to the Amendment.

122.    Smart Communications breached the MSA and Schedule by providing non-correctional grade kiosks that regularly failed and were easily and regularly broken by inmates and by failing to address the complaints and problems experienced by Avoyelles Parish.

123.    As a result of Smart Communications' breaches, Avoyelles Parish non-renewed its contract with Correct Solutions and Correct Solutions has been damaged.

Wherefore, Correct Solutions demands judgment against Smart Communications for damages, special damages, lost profits, interest, cost and for such further relief as this Court deems proper.

## Count VII
## Breach of Good Faith and Fair Dealing
### (Avoyelles Parish)

124.    This is an action for breach of good faith and fair dealing and for damages against Smart Communications.

125.    The allegations set forth in paragraph 1 through 73 are hereby realleged in this paragraph.

126.    In every contract, including the Avoyelles Parish Agreement, an implied covenant of good faith and fair dealing exists.

127.    Smart Communications agreed that it would provide the proper equipment and timely services Correct Solutions was contractually obligated to provide to Avoyelles Parish and acknowledged that Correct Solutions retained the exclusive and sole right to provide the telephone and telecommunications services for Avoyelles Parish.

128.    Smart Communications breached the covenant of good faith and fair dealing by failing to cure its defective performance at Avoyelles Parish, by providing non-correctional grade kiosks that failed, froze and were easily and regularly broken by inmates and by failing to address the complaints and problems experienced by Avoyelles Parish.

129.    Smart Communications further breached the covenant of good faith and fair dealing by its joint efforts with Smart Collier in instructing the employees of Lattice that they could no longer maintain or support the Lattice software relied on by Correct Solutions to provide its telecommunications systems at correctional facilities, by filing suit against Bruce Johnson to enjoin him from working for Correct Solutions and providing the maintenance, support and updates to the platform and software required

for Correct Solutions to operate its telecommunications system, all so that Smart Communications could steal Correct Solutions' customers.

130.    As a result of Smart Communication's breaches, Correct Solutions has been damaged.

Wherefore, Correct Solutions demands judgment against Smart Communications for damages, special damages, lost profits, interest, cost and for such other relief as this Court deems proper.

## Count VIII
## <u>Unfair Competition</u>

131.    This is an action for unfair competition and for damages against Smart Communications and Smart Collier.

132.    Correct Solutions realleges the allegations in paragraphs 1 through 73 in this paragraph.

133.    As a result of its acquisition of Lattice, Correct Solutions and Smart Communications and Smart Collier are competitors for purposes of marketing and selling their products and they compete for a common pool of customers.

134.    Smart Communications and Smart Collier have engaged in the conduct described above and continue to do so in order to (1) cause Correct Solutions' customers to believe that, as a result of the Lattice Acquisition, Correct Solutions' ability to provide the telecommunications services for its customers is at risk, (2) try to prevent Correct Solutions from having the resources it needs in order to keep its telecommunications platform operational so that Smart Communications and Smart Collier can solicit and try to steal Correct Solutions' existing customers, and (3) prevent Correct Solutions from obtaining new customers.

135.    As the direct and proximate result of the unfair competition by Smart Communications and Smart Collier, Correct Solutions has suffered damages and continues to suffer damages including but not limited to loss of good will, loss of customers, non-renewal of existing customers, additional wages and loss of sales.

Wherefore, Correct Solutions demands judgment against Smart Communications and Smart Collier for damages, special damages, lost profits, interest, costs, and for such further relief as the Court deems proper

### **Demand For Jury Trial**

Correct Solutions hereby demands a trial by jury on all issues so triable.

### **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that on August 17, 2020, the foregoing document was filed with the Court's CM/ECF system, which will send electronic notice to all counsel of record.

HARLLEE & BALD, P.A.

By: _/s/  *Kimberly A. Bald*_____
    KIMBERLY A. BALD, Trial Counsel
    Florida Bar No.: 0434190
    ADAM MOHAMMADBHOY
    Florida Bar No.: 0136367
    JAMES E. LYNCH
    Florida Bar No: 0046219
    202 Old Main Street
    Bradenton, FL 34205
    Telephone: 941-744-5537
    Facsimile: 941-744-5547
    E-mail: KAB@harlleebald.com
    E-mail:  AM@harlleebald.com
    E-mail: JEL@harlleebald.com
    E-mail: PT@harlleebald.com
    E-mail: LS@harlleebald.com
    E-mail: CL@harlleebald.com

Attorneys for Correct Solutions, LLC
a/k/a Correct Solutions Group

and

LUKE F. PIONTEK
Louisiana Bar No. 19979
GEORGE HARDY
Louisiana Bar No. 38012
Roedel, Parsons, Koch, Blache,
Balhoff & McCollister
8440 Jefferson Highway, Suite 301
Baton Rouge, LA. 70809
Telephone: 225/929-7033
Facsimile: 225/928-4925
Email: LPiontek@roedelparsons.com
Email: GHardy@roedelparsons.com
Co-Counsel for Defendants Correct
Solutions, LLC a/k/a Correct Solutions
Group