To: Rick Ferguson[rferguson@correctsolutionsgroup.com]
From: Mark Turner[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=8E45EC451E384993B1976A0BFDECAF46-MTURNER]
Sent: Mon 7/6/2020 9:11:56 PM Coordinated Universal Time
Subject: Sebastian County New Contract
Attachment: Sebastian County Contract Rev A 070620.pdf

Rick,
Here is the new contract for Sebastian County for their consideration with regard to the most recent proposal offering.
Thanks
MT

Correct Solutions 004970

# CONTRACT AND AGREEMENT

This inmate telephone and services "Shared Revenue" Agreement is entered into, by and between Sebastian County Sheriff's Office located at 800 South A Street, Fort Smith, AR 72901, herein known as "Customer" and Correct Solutions, LLC, located at 182 Bastille Lane, Ruston, Louisiana 71720, herein known as "CSG".

WHEREAS, CSG is engaged in the business of providing certain telecommunications equipment and related service and financial equipment and systems and charge-for-call telephone services, and providing automated-operator assisted station-to-station or person-to-person collect, pre-pay and debit telephone calls (Equipment), and;

WHEREAS, Customer has full operating and management responsibility for the detention facility, jail or prison, herein collectively known as the "Facility", and with respect to those premises so noted, wishes to establish an inmate communications services agreement as described herein:

NOW, THEREFORE, the parties hereto, in consideration of the mutual covenants and agreements contained herein and other good and valuable considerations, do hereby agree as follows:

1. **TERM.** This Agreement is effective on the latest signature date ("Effective Date"), and shall continue in effect for a period of two (2) years ("Initial Term") from the Effective Date. This Agreement will, after the Initial Term, automatically renew for a period of one (1) year unless either party notifies the other of their non-intent to renew at least 90 days prior to the end of the then current term.

2. **SCOPE OF AGREEMENT**

    2.1 In consideration of compensation provided herein, Facility grants to CSG exclusive rights to install and maintain telephones and/or inmate telephone systems within its building or on its private property ("Location") during the term of this Agreement. CSG and Facility have agreed upon specific rates for inmate collect, debit and advance pay calls as described in Attachment A of this Agreement.

    2.2 This Agreement includes all other premises, whether now existing (if a competing provider has a contract and equipment at such premises, this clause applies at the earliest termination opportunity) or subsequently acquired, under the control of Facility. Facility will notify CSG, in writing, of newly opened, acquired, or available premises, promptly, so CSG can evaluate installation of its Equipment at these premises.

    2.3 CSG shall the exclusive right to obtain usage and billing information, order, connect or disconnect inmate telephone services, select carriers, purchase available public utility

Correct Solutions 004971

equipment, handle all billing and payments. CSG shall be responsible for the payment of all charges in connection the Equipment and will be responsible for any bad debt and associated unbillables.

2.4 CSG shall install and maintain Equipment in good working order. CSG will agree to have Technicians dispatched on an agreed upon scheduled basis to keep all Equipment in good working order.

2.5 CSG agrees to provide Equipment as indicated in Attachment B for the Term of this Agreement.

2.6 CSG shall be responsible for the managing of all call detail records for Equipment, including but not limited to: the rating of each record in accord with rates, terms and conditions, for providing local, intraLATA, interLATA, and interstate telecommunications services as filed with the Public Utilities Commission, for the blocking and unblocking of user billing numbers, and preparation and processing of qualifying message records for billing and collection of revenue. All call detail records and recordings will be maintained for Facility by CSG for the duration of the term of this Agreement. Recordings will be kept for a period of 2 (two) years after which they will be pruned on a daily basis.

2.7 Facility agrees to provide adequate space for Equipment and easy accessibility for use during the normal operating hours of Facility. In the event Facility is not the owner of the premises, Facility shall, where necessary, obtain permission from building owner or owner's agent for the placement of CSG's Equipment, and shall be responsible for any fees for use of required riser cable and electric power.

2.8 Facility agrees to maintain the area around Equipment and ensure safe and ready access to the users of Equipment to CSG.

2.9 Facility agrees to all CSG to perform maintenance during the established hours of accessibility jointly agreed to by Facility and CSG, except when access must be denied to ensure the safety of CSG service personnel and/or maintain institutional control.

2.10 Facility agrees to allow CSG access to and use of house cable and inside wire at no cost, in order to install and provide inmate telephone service. Any new house cable or inside wire required during the contract term will be at the sole expense of Facility, unless otherwise negotiated by CSG.

2.11 Any relocation, expansion, addition, or deletion of Equipment for reasons other than safety, resulting in extraordinary expense and expected to be paid by CSG, must be agreed to by CSG in advance of the cost being occurred or alternatively, the cost paid by Facility.

2.12 Facility warrants that it has the authority to enter into this Agreement with CSG. Facility further warrants that the Equipment mentioned in Attachment A, attached hereto

Correct Solutions 004972

and incorporated herein by this reference, are on property owned by Facility or if Facility is not the owner of the premises, Facility has obtained permission from the building owner or owner's agent to enter into this Agreement.

2.13 CSG shall provide Facility with value-added features as listed in Attachment C.

2.14 In consideration for this Agreement, CSG shall pay Facility a monthly commission fee as listed in Attachment D.

3. **OWNERSHIP.** Facility agrees that legal title to all Equipment shall remain vested with CSG. Facility shall not remove or relocate Equipment without CSG's express consent. Relocation at Facility's request shall be at Facility's expense. CSG is to accept no liability for holes in walls, floors, or other surfaces that result from the installation or removal of Equipment. Upon termination of this Agreement, CSG shall be responsible only for the removal of Equipment. Facility shall restore the premises to their original condition. CSG shall not be responsible for damage to the premises that occur due to vandalism. CSG shall indemnify, defend and hold Facility harmless from liability in connection with the placement, maintenance, or usage of Equipment.

4. **LEGAL ENFORCEMENT.** If legal enforcement of the terms of this Agreement is necessary, the prevailing party shall be entitled to reasonable attorney's fees and costs. CSG and Facility mutually agree to cooperate to the fullest extent possible and the best of each party's ability to facilitate the provisioning of the terms described herein.

5. **LAWFULNESS OF AGREEMENT.** The parties acknowledge that this Agreement is subject to applicable federal, state, and local laws, rules, regulations, court orders, and governmental or agency orders governing the provision of Equipment.

6. **NONWAIVER.** The failure of either party to enforce strict performance of any provision of this Agreement shall not be construed as a waiver of its right to assert or rely upon such provision or any other provision of this Agreement.

7. **GOVERNING LAW.** This Agreement shall be interpreted, construed and enforced in all aspects in accordance with the laws of the State of Louisiana.

8. **SUCCESSORS AND ASSIGNS.** This Agreement shall be fully binding upon, inure to the benefit of and be enforceable by each party, their successors and assigns. No assignment of any right or interest in this Agreement (whether by contract, operation of law or otherwise) shall release or relieve either party of any of its obligations or liabilities under this Agreement.

9. **AMENDMENTS AND MODIFICATIONS.** Amendments and modifications to this Agreement, except for additions or deletions of Equipment as described in Attachment B must be in writing and signed by an authorized representative of each party.

Correct Solutions 004973

**To:** Rick Ferguson[rferguson@correctsolutionsgroup.com]
**From:** Mark Turner[/O=EXCHANGELABS/OU=EXCHANGE ADMINISTRATIVE GROUP (FYDIBOHF23SPDLT)/CN=RECIPIENTS/CN=8E45EC451E384993B1976A0BFDECAF46-MTURNER]
**Sent:** Mon 7/6/2020 9:11:56 PM Coordinated Universal Time
**Subject:** Sebastian County New Contract
**Attachment:** Sebastian County Contract Rev A 070620.pdf

Rick,

Here is the new contract for Sebastian County for their consideration with regard to the most recent proposal offering.

Thanks

MT

Correct Solutions 004970

# CONTRACT AND AGREEMENT

This inmate telephone and services "Shared Revenue" Agreement is entered into, by and between Sebastian County Sheriff's Office located at 800 South A Street, Fort Smith, AR 72901, herein known as "Customer" and Correct Solutions, LLC, located at 182 Bastille Lane, Ruston, Louisiana 71720, herein known as "CSG".

WHEREAS, CSG is engaged in the business of providing certain telecommunications equipment and related service and financial equipment and systems and charge-for-call telephone services, and providing automated-operator assisted station-to-station or person-to-person collect, pre-pay and debit telephone calls (Equipment), and;

WHEREAS, Customer has full operating and management responsibility for the detention facility, jail or prison, herein collectively known as the "Facility", and with respect to those premises so noted, wishes to establish an inmate communications services agreement as described herein:

NOW, THEREFORE, the parties hereto, in consideration of the mutual covenants and agreements contained herein and other good and valuable considerations, do hereby agree as follows:

1. **TERM.** This Agreement is effective on the latest signature date ("Effective Date"), and shall continue in effect for a period of two (2) years ("Initial Term") from the Effective Date. This Agreement will, after the Initial Term, automatically renew for a period of one (1) year unless either party notifies the other of their non-intent to renew at least 90 days prior to the end of the then current term.

2. **SCOPE OF AGREEMENT**

    2.1 In consideration of compensation provided herein, Facility grants to CSG exclusive rights to install and maintain telephones and/or inmate telephone systems within its building or on its private property ("Location") during the term of this Agreement. CSG and Facility have agreed upon specific rates for inmate collect, debit and advance pay calls as described in Attachment A of this Agreement.

    2.2 This Agreement includes all other premises, whether now existing (if a competing provider has a contract and equipment at such premises, this clause applies at the earliest termination opportunity) or subsequently acquired, under the control of Facility. Facility will notify CSG, in writing, of newly opened, acquired, or available premises, promptly, so CSG can evaluate installation of its Equipment at these premises.

    2.3 CSG shall the exclusive right to obtain usage and billing information, order, connect or disconnect inmate telephone services, select carriers, purchase available public utility

Correct Solutions 004971

equipment, handle all billing and payments. CSG shall be responsible for the payment of all charges in connection the Equipment and will be responsible for any bad debt and associated unbillables.

2.4 CSG shall install and maintain Equipment in good working order. CSG will agree to have Technicians dispatched on an agreed upon scheduled basis to keep all Equipment in good working order.

2.5 CSG agrees to provide Equipment as indicated in Attachment B for the Term of this Agreement.

2.6 CSG shall be responsible for the managing of all call detail records for Equipment, including but not limited to: the rating of each record in accord with rates, terms and conditions, for providing local, intraLATA, interLATA, and interstate telecommunications services as filed with the Public Utilities Commission, for the blocking and unblocking of user billing numbers, and preparation and processing of qualifying message records for billing and collection of revenue. All call detail records and recordings will be maintained for Facility by CSG for the duration of the term of this Agreement. Recordings will be kept for a period of 2 (two) years after which they will be pruned on a daily basis.

2.7 Facility agrees to provide adequate space for Equipment and easy accessibility for use during the normal operating hours of Facility. In the event Facility is not the owner of the premises, Facility shall, where necessary, obtain permission from building owner or owner's agent for the placement of CSG's Equipment, and shall be responsible for any fees for use of required riser cable and electric power.

2.8 Facility agrees to maintain the area around Equipment and ensure safe and ready access to the users of Equipment to CSG.

2.9 Facility agrees to all CSG to perform maintenance during the established hours of accessibility jointly agreed to by Facility and CSG, except when access must be denied to ensure the safety of CSG service personnel and/or maintain institutional control.

2.10 Facility agrees to allow CSG access to and use of house cable and inside wire at no cost, in order to install and provide inmate telephone service. Any new house cable or inside wire required during the contract term will be at the sole expense of Facility, unless otherwise negotiated by CSG.

2.11 Any relocation, expansion, addition, or deletion of Equipment for reasons other than safety, resulting in extraordinary expense and expected to be paid by CSG, must be agreed to by CSG in advance of the cost being occurred or alternatively, the cost paid by Facility.

2.12 Facility warrants that it has the authority to enter into this Agreement with CSG. Facility further warrants that the Equipment mentioned in Attachment A, attached hereto

Correct Solutions 004972

and incorporated herein by this reference, are on property owned by Facility or if Facility is not the owner of the premises, Facility has obtained permission from the building owner or owner's agent to enter into this Agreement.

2.13  CSG shall provide Facility with value-added features as listed in Attachment C.

2.14  In consideration for this Agreement, CSG shall pay Facility a monthly commission fee as listed in Attachment D.

3. **OWNERSHIP.** Facility agrees that legal title to all Equipment shall remain vested with CSG. Facility shall not remove or relocate Equipment without CSG's express consent. Relocation at Facility's request shall be at Facility's expense. CSG is to accept no liability for holes in walls, floors, or other surfaces that result from the installation or removal of Equipment. Upon termination of this Agreement, CSG shall be responsible only for the removal of Equipment. Facility shall restore the premises to their original condition. CSG shall not be responsible for damage to the premises that occur due to vandalism. CSG shall indemnify, defend and hold Facility harmless from liability in connection with the placement, maintenance, or usage of Equipment.

4. **LEGAL ENFORCEMENT.** If legal enforcement of the terms of this Agreement is necessary, the prevailing party shall be entitled to reasonable attorney's fees and costs. CSG and Facility mutually agree to cooperate to the fullest extent possible and the best of each party's ability to facilitate the provisioning of the terms described herein.

5. **LAWFULNESS OF AGREEMENT.** The parties acknowledge that this Agreement is subject to applicable federal, state, and local laws, rules, regulations, court orders, and governmental or agency orders governing the provision of Equipment.

6. **NONWAIVER.** The failure of either party to enforce strict performance of any provision of this Agreement shall not be construed as a waiver of its right to assert or rely upon such provision or any other provision of this Agreement.

7. **GOVERNING LAW.** This Agreement shall be interpreted, construed and enforced in all aspects in accordance with the laws of the State of Louisiana.

8. **SUCCESSORS AND ASSIGNS.** This Agreement shall be fully binding upon, inure to the benefit of and be enforceable by each party, their successors and assigns. No assignment of any right or interest in this Agreement (whether by contract, operation of law or otherwise) shall release or relieve either party of any of its obligations or liabilities under this Agreement.

9. **AMENDMENTS AND MODIFICATIONS.** Amendments and modifications to this Agreement, except for additions or deletions of Equipment as described in Attachment B must be in writing and signed by an authorized representative of each party.

Correct Solutions 004973

10. **SEVERABILITY.** In the event that a court, governmental agency, or regulatory body with proper jurisdiction determines that this Agreement or a provision of this Agreement is unlawful, this Agreement, or that provision of this Agreement to the extent it is unlawful, shall terminate. If a provision of this Agreement is terminated but the parties can legally, commercially and practicably continue without the terminated provision, the remainder of this Agreement shall continue in effect.

11. **LIMITATION OF LIABILITY.** In the event of a service interruption caused by CSG, CSG liability shall be limited to the use of reasonable diligence under the circumstances, for restoration of service. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR INCIDENTAL, SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES, INCLUDING LOST REVENUE, LOSS OF PROFITS OR OTHER COMMERCIAL OR ECONOMIC LOSS ARISING OUT OF THE PERFORMANCE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION NEGLIGENT PERFORMANCE OR FAILURE TO PERFORM.

12. **DEFAULT.** If either party fails to perform its obligations under this Agreement, failure shall constitute default and, in such event, written notice shall be given to provide an opportunity to remedy such default. Should the defaulting party fail to remedy such default within ten (10) working days from date of such notice, the non-defaulting party shall have the right, in addition to all other rights and remedies available at law or in equity, to terminate this Agreement in whole or in part.

13. **REGULATORY.** The parties acknowledge that underlying telecommunications Equipment may be provided by regulated providers and where applicable, provider tariffs, catalogs and price lists may apply.

14. **AMENDMENTS AND MODIFICATIONS.** Amendments and modifications to this Agreement, except for additions or deletions of telephones as described in Attachment B, must be in writing and signed by an authorized representative from each Party.

15. **NOTICES.** Any notices or other communications to be given under this Agreement shall be sent to the following persons:

| FOR CUSTOMER | FOR CSG |
|---|---|
| Attn: | Attn: Patrick Temple |
| Address:<br>800 South A Street<br>Fort Smith, AR 72901 | Address:<br>182 Bastille Lane<br>Ruston, LA 71270 |

16. **ENTIRE AGREEMENT.** This Agreement including all schedules, amendments and exhibits, constitutes the entire Agreement between the parties and supersedes all prior agreements and oral or written representations with respect to the subject matter hereto.

Correct Solutions 004974

10. **SEVERABILITY.** In the event that a court, governmental agency, or regulatory body with proper jurisdiction determines that this Agreement or a provision of this Agreement is unlawful, this Agreement, or that provision of this Agreement to the extent it is unlawful, shall terminate. If a provision of this Agreement is terminated but the parties can legally, commercially and practicably continue without the terminated provision, the remainder of this Agreement shall continue in effect.

11. **LIMITATION OF LIABILITY.** In the event of a service interruption caused by CSG, CSG liability shall be limited to the use of reasonable diligence under the circumstances, for restoration of service. IN NO EVENT SHALL EITHER PARTY BE LIABLE TO THE OTHER FOR INCIDENTAL, SPECIAL, INDIRECT OR CONSEQUENTIAL DAMAGES, INCLUDING LOST REVENUE, LOSS OF PROFITS OR OTHER COMMERCIAL OR ECONOMIC LOSS ARISING OUT OF THE PERFORMANCE OF THIS AGREEMENT, INCLUDING WITHOUT LIMITATION NEGLIGENT PERFORMANCE OR FAILURE TO PERFORM.

12. **DEFAULT.** If either party fails to perform its obligations under this Agreement, failure shall constitute default and, in such event, written notice shall be given to provide an opportunity to remedy such default. Should the defaulting party fail to remedy such default within ten (10) working days from date of such notice, the non-defaulting party shall have the right, in addition to all other rights and remedies available at law or in equity, to terminate this Agreement in whole or in part.

13. **REGULATORY.** The parties acknowledge that underlying telecommunications Equipment may be provided by regulated providers and where applicable, provider tariffs, catalogs and price lists may apply.

14. **AMENDMENTS AND MODIFICATIONS.** Amendments and modifications to this Agreement, except for additions or deletions of telephones as described in Attachment B, must be in writing and signed by an authorized representative from each Party.

15. **NOTICES.** Any notices or other communications to be given under this Agreement shall be sent to the following persons:

| FOR CUSTOMER | FOR CSG |
|---|---|
| Attn: | Attn: Patrick Temple |
| Address:<br>800 South A Street<br>Fort Smith, AR 72901 | Address:<br>182 Bastille Lane<br>Ruston, LA 71270 |

16. **ENTIRE AGREEMENT.** This Agreement including all schedules, amendments and exhibits, constitutes the entire Agreement between the parties and supersedes all prior agreements and oral or written representations with respect to the subject matter hereto.

Correct Solutions 004974

**For Sebastian County Sheriff's Office**

_____ Signature

_____ Print

_____ Date

**For Sebastian County Sheriff's Office**

_____ Signature

_____ Print

_____ Date

**For Correct Solutions Group**

_____ Signature

_____ Print

_____ Date

Correct Solutions 004975

## ATTACHMENT A

## RATE SCHEDULE

Rates for calls within the Inmate Call Control Platform will be programmed per the table below:

| Rates - Sebastian Cty, AR | |
|---|---|
| **PREPAID CALLS** | **Minute** |
| LOCAL | $0.30 |
| IntraLATA Toll | $0.30 |
| InterLATA | $0.30 |
| InterSTATE | $0.21 |
| International | $1.00 |
| **PIN DEBIT CALLS** | **Minute** |
| LOCAL | $0.30 |
| IntraLATA Toll | $0.30 |
| InterLATA | $0.30 |
| InterSTATE | $0.21 |
| International | $1.00 |

Simple two fee structure for account funding:
$5.95 for Account Funding utilizing live operator
$3.00 for Account Funding utilizing IVR, Web, Kiosk, Mobile App

Correct Solutions 004976

## ATTACHMENT B

## PROVIDED EQUIPMENT

**Inmate Call Control Platform.** The CSG provided Platform will be installed to accommodate all inmate telephones as needed and portable telephones as needed. Platform will be programmed per the requirements of the County to reflect times of operation etc.

Inmate call platform, servers, routers and switches are the property of CSG and will be provided at no cost to Customer.

**Video Visitation Platform** – The CSG provided Video Visitation Platform equipment will consist of fifteen (15) inmate side video visitation terminals, seven (7) public side video visitation terminals, one (1) cart video visitation terminal, one (1) Lobby Scheduling Monitor and one (1) Lobby Registration and Scheduling Terminal.

The Video Visitation Platform will be installed by CSG. All equipment will remain the property of CSG and will be provided at no cost to Customer for the duration of Initial Term and Annual Renewals.

Correct Solutions 004977

## ATTACHMENT C

## VALUE-ADDED FEATURES

CSG will provide, at no charge to Customer, 2 (two) lobby kiosks.

Correct Solutions 004978

## ATTACHMENT D

## FINANCIAL SCHEDULE

In consideration for this exclusive Contract and Agreement, CSG shall pay Customer a Commission Fee of 74% (Seventy-Four Percent) of the Total Gross Revenue for completed inmate telephone calls regardless of call type, with exception to Interstate Calls due to FCC ruling.

CSG shall provide Customer with a monthly commission report that details all call types, call volumes and call rates. All rates and charges under this Agreement shall conform to the Public Service Commission regulations of Arkansas.

Correct Solutions 004979